**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

RENATO GUIMARAES, JR.,                                    Case No. 05-CV-2210(DC)

                                    Plaintiff,

                    -against-                             **ANSWER**

SPEISER, KRAUSE, NOLAN & GRANITO,
a professional corporation, f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,
                                    Defendant.
---------------------------------------------------------X

        Defendant, Speiser Krause, A Professional Corporation, sued herein as Speiser, Krause,

Nolan & Granito a professional corporation f/k/a Speiser, Krause, Madole & Lear a professional

corporation ("Speiser Krause"), hereby responds to the Compliant of Renato Guimaraes, Jr.

("Guimaraes") as follows:


**I.      Answer**

1.      Speiser Krause admits that Guimaraes is an individual but denies knowledge or

        information sufficient to form a belief that Guimaraes is a citizen of Brazil, and denies

        knowledge or information sufficient to form a belief that Guimaraes is an attorney in

        Brazil.


2.      Speiser Krause admits that it is a professional corporation.  Speiser Krause denies that at

        all material times it was engaged in the practice of law in the State of Florida.  Speiser

        Krause denies that it maintained an office in the State of Florida during all material times.

        Speiser Krause admits that it professes to have expertise in the litigation of aircraft crash

disasters. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 2.

3.    Speiser Krause admits that the Complaint seeks damages in excess of $75,000, and that a controversy between a citizen of a Sate and a citizen or subject of a foreign state is alleged. Speiser Krause admits that the Court has subject matter jurisdiction over the case or controversy being alleged, should a case or controversy be found to exist. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 3.

4.    Speiser Krause denies the allegations contained in Complaint paragraph 4.

5.    Speiser Krause denies the allegations contained in Complaint paragraph 5.

6.    Speiser Krause admits that an aircraft crash occurred on or about October 31, 1996 in Brazil. Except as expressly admitted, Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 6.

7.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 7, except for information from investigative authorities that this Court, in its discretion, may receive as evidence at trial by judicial notice and other means.

8.     Speiser Krause admits the Guimaraes contacted one of its attorneys.  Except as expressly

admitted, Speiser Krause denies the allegations contained in Complaint paragraph 8.

9.     Speiser Krause admits that Arthur Ballen met Guimaraes in Florida in or about December

1996.  Except as expressly admitted, Speiser Krause denies the allegations contained in

Complaint paragraph 9.

10.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Complaint paragraph 10 as to the work performed by

Guimaraes.  Except as expressly admitted, Speiser Krause denies the allegations

contained in Complaint paragraph 10.

11.    Speiser Krause admits that annexed to the Complaint as Exhibit 1is a letter which was

faxed to Guimaraes.  Except as expressly admitted, Speiser Krause denies the balance of

the allegations set forth in Complaint paragraph 11.

12.    Speiser Krause denies the allegations contained in Complaint paragraph 12.

13.    Speiser Krause denies the allegations contained in Complaint paragraph 13.

14.    Speiser Krause admits that annexed to the Complaint as Exhibit 2 is a letter which

Speiser Krause generated.  Except as expressly admitted, Speiser Krause denies the

balance of the allegations contained in Complaint paragraph 14.

15.   Speiser Krause denies the allegations contained in Complaint paragraph 15.

16.   Speiser Krause denies the allegations contained in Complaint paragraph 16.

17.   Speiser Krause admits that annexed to the Complaint as Exhibit 3 is a letter which Speiser Krause prepared.  Except as expressly admitted, Speiser Krause denies the balance of the allegations contained in Complaint paragraph 17.

18.   Speiser Krause denies the allegations contained in Complaint paragraph 18.

19.   Speiser Krause admits it instituted litigation against Northrop.  Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 19.

20.   Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 20, except that this Court may take judicial notice of the process and orders of other courts and refers interpretation of those orders as matters of law for the trial Court to determine.  Except as expressly admitted, Speiser Krause denies the balance of the allegations contained in Complaint paragraph 20.

21.   Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 21.

22. Speiser Krause admits settling some causes of action against Northrup and others, but denies knowledge or information sufficient to form a belief as to the truth of the balance of the allegations contained in Complaint paragraph 22. Speiser Krause neither admits nor denies any allegation which would violate attorney-client privilege regarding the amount any client received or the documents signed by any client in any legal proceeding.

23. Speiser Krause neither admits nor denies that the Andrews case settled in 2001 for any sum, absent waiver by the client of the attorney-client privilege. Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning the Berliner case. Except as expressly admitted, Speiser Krause denies the balance of the allegations contained in Complaint paragraph 23.

24. Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 24.

25. Speiser Krause denies knowledge or information sufficient to form a belief as to the existence, status, enforceability, or validity of the "Brazilian Judgment." Speiser Krause denies knowledge or information sufficient to form a belief as to any advice rendered by Guimaraes to any third party. Speiser Krause denies the balance of the allegations contained in Complaint paragraph 25, except neither admits nor denies the allegations concerning payments to clients if the same violate or could violate the attorney-client privilege.

26.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
       of the allegations contained in Complaint paragraph 26.

27.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
       of the allegations contained in Complaint paragraph 27.

28.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs
       1 through 27, inclusive as if set forth in full hereat.

29.    Speiser Krause denies the existence of a fee-sharing agreement, and Guimaraes's
       performance thereof.  Speiser Krause denies Guimaraes provided "liaison services as
       necessary."  Speiser Krause denies knowledge or information sufficient to form a belief
       as to the truth of the allegation concerning Guimaraes's prosecution of any case in Brazil.
       Speiser Krause denies Guimaraes's allegation of instrumentality.  Speiser Krause denies
       knowledge or information sufficient to form a belief as to Guimaraes's alleged "lead
       counsel" capacity in the Brazilian action.  Speiser Krause denies the Guimaraes's actions
       as set forth in Complaint paragraph 29 "enabled Speiser Krause to reach the Global
       Settlement."  Speiser Krause denies that Guimaraes has "earned his 25% share of the
       overall 25% attorney fee paid to Speiser Krause as to all families who have accepted the
       Global Settlement."  Speiser Krause denies the balance of the allegations set forth in
       Complaint paragraph 29.

30.    Speiser Krause denies the allegations contained in Complaint paragraph 30.

31.     Speiser Krause denies the allegations contained in Complaint paragraph 31.

32.     Speiser Krause denies the allegations contained in Complaint paragraph 32.

33.     Speiser Krause denies the allegations contained in Complaint paragraph 33.

34.     Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs
         1 through 33, inclusive as if set forth in full hereat.

35.     Speiser Krause denies the allegations contained in Complaint paragraph 35.

36.     Speiser Krause denies the allegations contained in Complaint paragraph 36.

37.     Speiser Krause denies the allegations contained in Complaint paragraph 37.

38.     Speiser Krause denies the allegations contained in Complaint paragraph 38.

39.     Speiser Krause denies the allegations contained in Complaint paragraph 39.

40.     Speiser Krause denies the allegations contained in Complaint paragraph 40.

41.     Speiser Krause denies the allegations contained in Complaint paragraph 41.

42.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 41, inclusive as if set forth in full hereat.

43.    Speiser Krause denies the allegations contained in Complaint paragraph 41.

44.    Speiser Krause denies the allegations contained in Complaint paragraph 43.

45.    Speiser Krause denies the allegations contained in Complaint paragraph 44.

46.    Speiser Krause denies the allegations contained in Complaint paragraph 46.

47.    Speiser Krause denies the allegations contained in Complaint paragraph 47.

48.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 47, inclusive as if set forth in full hereat.

49.    Speiser Krause denies the allegations contained in Complaint paragraph 49, except it acted as fiduciary for all sums belonging and paid to its clients.

50.    Speiser Krause denies the allegations contained in Complaint paragraph 50.

51.    Speiser Krause denies the allegations contained in Complaint paragraph 51.

52.    Speiser Krause denies the allegations contained in Complaint paragraph 52.

53.    Speiser Krause denies the allegations contained in Complaint paragraph 53.

54.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 27, inclusive as if set forth in full hereat.

55.    Speiser Krause denies the allegations contained in Complaint paragraph 55.

56.    Speiser Krause denies the allegations contained in Complaint paragraph 56 except admits it earned attorneys' fees for legal services performed for clients.

57.    Speiser Krause denies the allegations contained in Complaint paragraph 57.

58.    Speiser Krause denies the allegations contained in Complaint paragraph 58.

59.    Speiser Krause denies the allegations contained in Complaint paragraph 59.

60.    Speiser Krause denies the allegations contained in Complaint paragraph 60.

61.    Speiser Krause denies the allegations contained in Complaint paragraph 61.

62.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs

1 through 27, inclusive as if set forth in full hereat.

63.    Speiser Krause denies the allegations contained in Complaint paragraph 63.

64.    Speiser Krause denies the allegations contained in Complaint paragraph 64.

65.    Speiser Krause denies the allegations contained in Complaint paragraph 65.

66.    Speiser Krause denies the allegations contained in Complaint paragraph 66.

## II.    DEFENSES

### First Defense

1.    Guimaraes has failed to state a claim upon which relief can be granted.

### Second Defense

2.    Guimaraes's claims are barred, in whole or in part, by the statute of limitations.

### Third Defense

3.    Guimaraes's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Defense

4.    Guimaraes's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Defense

5.    Guimaraes's claims are barred, in whole or in part, by the doctrine of laches.

### Sixth Defense

6.    Guimaraes's claims are barred, in whole or in part, by the doctrine of unclean hands.

**Seventh Defense**

7.    Guimaraes's claims are bared, in whole or in part, because there was no privity of contract between Guimaraes and Speiser Krause.

**Eighth Defense**

8.    Guimaraes's claims are barred, in whole or in part, because Guimaraes does not have standing to assert his claims.

**Ninth Defense**

9.    Guimaraes's claims are barred, in whole or in part, because Guimaraes cannot demonstrate any legally cognizable damage.

**Tenth Defense**

10.    Guimaraes's claims are barred, in whole or in part, because Guimaraes has not suffered any injury in fact.

**Eleventh Defense**

11.    Guimaraes's claims are barred, in whole or in part, by his failure to mitigate damages.

**Twelfth Defense**

12.    Guimaraes has failed to state an adequate basis for the imposition of a constructive trust.

**Thirteenth Defense**

13.    Guimaraes has failed to state an adequate basis for an award of punitive damages.

**Fourteenth Defense**

14.    Guimaraes has failed to state an adequate basis for an award of costs and disbursements.

**Fifteenth Defense**

15.    Guimaraes has failed to state an adequate basis for an award of attorney fees.

**Sixteenth Defense**

16.    Guimaraes's claims are barred, in whole or in part, by documentary evidence.

**Seventeenth Defense**

17.    Guimaraes's claims are barred, in whole or in part, by the doctrine of agency.

**Eighteenth Defense**

18.    Guimaraes's claims are barred, in whole or in part, by the doctrine of unconscionability.

**Nineteenth Defense**

19.    Guimaraes's claims are barred, in whole or in part, because Guimaraes did not confer any benefit of Speiser Krause.

**Twentieth Defense**

20.    Guimaraes's claims are barred, in whole or in part, because Speiser Krause did not accept any benefit from Guimaraes.

**Twenty First Defense**

21.    Guimaraes's claims are barred, in whole or in part, because Guimaraes did not expect any payment from Speiser Krause.

**Twenty Second Defense**

22.    Guimaraes's claims are barred, in whole or in part, because Guimaraes failed to identify any actionable wrong committed by Speiser Krause against Guimaraes.

### Twenty Third Defense

23.    Guimaraes's conversion cause of action is barred, in whole or in part, because Guimaraes has failed to allege ownership of, or entitlement to any funds.

### Twenty Fourth Defense

24.    Guimaraes's claims are barred, in whole or in part, because Guimaraes failed to identify any unauthorized dominion by Speiser Krause over any funds belonging to Guimaraes.

### Twenty Fifth Defense

25.    Guimaraes's constructive trust claim is barred, in whole or in part, because Guimaraes failed to identify any fiduciary duty owed by Speiser Krause to Guimaraes.

### Twenty Sixth Defense

26.    Guimaraes's claims are barred, in whole or in part, by Guimaraes's failure to join one or more indispensable parties, to wit: Dr. Wanderly Minitti, and the clients referred to in the Complaint, without whose joinder the actions and claims alleged in the Plaintiff's Complaint may not be judicially resolved.

### Twenty Seventh Defense

27.    Guimaraes's claims are barred, in whole or in part, because Guimaraes's damages, if any, were proximately caused by the negligence, wrongdoing and/or malfeasance of other third parties, served or unserved.

**Twenty Eighth Defense**

28.    Guimaraes's claims are barred, in whole or in part, based on the doctrine of illegality.

**Twenty Ninth Defense**

29.    Guimaraes's claims are barred, in whole or in part, by the statute of frauds.

## III.    AS AND FOR A COUNTERCLAIM FOR INDEMNITY

Defendant Speiser Krause counterclaims against the Plaintiff Guimaraes, as follows:

1.    In or about November 2004 plaintiff Dr. Wanderly Minitti "Minitti," as plaintiff therein, commenced an action against Speiser Krause in the United States District Court for the Southern District of New York under Case No. 04 CV 07976 (DC)(RLE) (the "Minitti Case"). Thereafter Minitti amended his complaint in the Minitti Case on or about January 6, 2005. Copies of Minitti's First Amended Complaint and Speiser Krause's Answer are annexed as exhibits A and B.

2.    In his First Amended Complaint, Minitti claims to have been damaged by reason of Guimaraes' actions and inactions, seeks money damages and declaratory and other relief.

3.    Upon information and belief, third-party defendant Guimaraes's actions, inactions and conduct caused or contributed to any damages claimed by Minitti.

4.    By reason of the foregoing, if any judgment is recovered in the Minitti Action against Speiser Krause, third-party defendant Guimaraes will be obligated to contribute to or indemnify Speiser Krause from the same, in whole or in part, to the extent that Guimaraes's conduct,

action or inaction caused plaintiff's damages.

WHEREFORE, Spesier Krause respectfully prays for a judgment dismissing the Complaint and that if any judgment is rendered against the Defendant as a result of the Minitti Case, that the plaintiff be required to indemnify Speiser Krause and for such other and further relief as to this Court seems just, plus the costs and disbursements of this action.

Dated: New York, New York
March 30, 2005

                                        Yours, Etc.,
                                        Apuzzo & Chase, LLC

                    By:                 _William J. Apuzzo_
                                        William J. Apuzzo (WA 1312)
                                        Attorney for Defendant
                                        800 Third Avenue - Suite 800
                                        New York, NY 10022
                                        (212) 297-0885

**EXHIBIT A**

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

**ECF CASE**

Dr. Wanderley Minitti,

## SUMMONS IN A CIVIL CASE

V.

Speiser, Krause, Nolan & Granito, P.C.

CASE NUMBER:

**04 CV 07976**

**JUDGE CHIN**

TO: (Name and address of defendant)

Speiser, Krause, Nolan & Granito, P.C.
140 East 45th Street, 34th Floor
New York, New York 10017

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Frank L. Pellegrini, Esq.
Pellegrini & Associates, LLC
350 Broadway, 10th Floor
New York, New York 10013

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_Jessica Ross_

(BY) DEPUTY CLERK

OCT 0 8 2004

DATE



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DR. WANDERLEY MINITTI,

Plaintiff,

- against -

SPEISER, KRAUSE, NOLAN & GRANITO, PC,

Defendants.
------------------------------------------------------------x

04 CV 07976

**COMPLAINT**

Jury Trial Demanded

JUDGE CHIN

RECEIVED OCT 08 2004 S.D.N.Y. CASHIERS

Plaintiff, DR. WANDERLEY MINITTI (hereinafter "MINITTI"), through his attorneys, PELLEGRINI & ASSOCIATES, LLC, respectfully alleges upon knowledge with respect to himself and his own actions and upon information and belief as to all other matters as and for his complaint against defendant, SPEISER, KRAUSE, NOLAN & GRANITO, PC, ("hereinafter SPEISER, KRAUSE"), as follows:

**NATURE OF THE ACTION**

1.    This is a collection action for unpaid attorneys fees owed to a foreign attorney arising from an international plane crash that took place in Brazil. Plaintiff seeks declaratory relief to 28 U.S.C. §2201 and compensatory and punitive damages pursuant to quantum meruit as well as various state common law causes of action.

**JURISDICTION**

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff asserts jurisdiction over defendant per 28 U.S.C. §1367. Plaintiff requests that this Court exercise pendant jurisdiction over those state law claims arising out of the same common nucleus of operative facts as plaintiff's federal claims.

1

## VENUE

3.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391(a) because defendant maintains a business office in the Southern District and a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of the property that is the subject of the action is situated in the Southern District.

## PARTIES

4.    Plaintiff, MINITTI, is a Brazilian attorney duly admitted to practice law before the courts of Brazil and a member of the Brazilian Bar Association.  He was the attorney appointed by a Brazilian court to pursue Financial Support payments from an American corporation by enforcing the terms of a Letter Rogatory.

5.    Defendant, SPEISER, KRAUSE, is an American based law firm that was jointly retained by most of the families of the subject aviation crash to pursue judgments against the various defendants in the United States.

## FACTS

6.    This action arises from an international plane crash that occurred in Brazil that resulted in the deaths of ninety-nine passengers and crewmembers.  Sixty-five families of the victims of the crash engaged counsel to pursue an action against the responsible parties.  Defendant, SPEISER & KRAUSE, and Renato Guimaraes, Jr. (hereinafter "Guimaraes"), a Brazilian attorney, were retained as joint counsel for this purpose.

7.    Shortly thereafter, an action was commenced in Brazil against Northrop Grumman Corporation (hereinafter referred as "Northrop") and other defendants on behalf of the twenty-six families of the victims.

2

8.    Northrop appeared in the Brazilian action and mounted a vigorous defense to the suit. This action was initiated, litigated and tried by Guimaraes without any participation or assistance from defendant, SPEISER, KRAUSE. On June. 30, 2000, judgment was entered against Northrop for two million Brazilian Reals: approximately one million U.S. dollars per family.

9.    Due to Northrop's bad faith litigation tactics during the course of the litigation, the presiding Brazilian court increased the judgment by twenty percent as a form of penalty. The court also added an additional twenty percent as attorneys' fees.

10.    In addition, the court ordered a special fund be created whereby each of the families of the victims would receive 2/3 of the total judgment as "Financial Support Payments."

11.    Pursuant to an independent calculation by third party experts, the court assessed the financial support of twenty-six of the families as being $8,642,802.94 for the period of October 1996 through November of 2000.

12.    The court ordered Northrop to pay the above referenced sum within twenty-hours. However, the attorneys for Northrop disavowed authority to accept service of the order on behalf of Northrop even though these same attorneys had accepted service for Northrop throughout the underlying Brazilian action.

13.    This bad faith evasion of service of process resulted in plaintiff being retained by Guimaraes to pursue Financial Support payments from Northrop in both Brazil and the United States. To that extent, plaintiff obtained appointment by the Brazilian court to enforce the $8,642,802.94 Financial Support judgment via a Letter of Rogatory.

3

14.    Defendant, SPEISER, KRAUSE, failed to pursue these financial support monies for their clients in any jurisdiction or venue in the United States.

15.    Plaintiff engaged New York counsel, Richard Peskin, to enforce the Letter Rogatory in Federal Court in both Southern and Eastern Districts.

16.    The Southern District declined to hear plaintiff's application (via Peskin) and the Eastern District partially granted the Letter Rogatory.

17.    Defendant opposed both applications even though the end result may have permitted their clients to obtain some badly needed financial relief in terms of support payments.

18.    Plaintiff's effort to secure partial enforcement of the Brazilian judgment in the United States spurred Northrop towards settlement. In fact, at least fourteen of the twenty-six victims' families entered into settlement agreements after the Letters Rogatory were filed in Federal District Court.

19.    These settlements totaled over eight million dollars of which and defendant pocketed more than two million dollars in attorney fees and costs. Plaintiff did not see one penny of these funds despite all of his effort in trying to secure recovery via the Letter Rogatory. In contrast, defendant did very little to justify its fee award besides allowing plaintiff to do most of the work in terms of the above referenced applications.

20.    Plaintiff now seeks recovery of fifty (50%) percent of the attorney fees that were generated as a result of the fourteen settlements described above on the basis he did most of the work but received no money for his efforts.

4

## FIRST CAUSE OF ACTION FOR RECOVERY
## OF ATTORNEY FEES BASED ON QUANTUM MERUIT

21.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "20" above as if fully set forth herein.

22.    As a result of the above-described actions, the defendant individually and/or vicariously by and through their agents, servants and/or employees, deprived plaintiff of the equitable share of the attorneys fees resulting from the settlement of the claims of the fourteen families involved in the underlying Brazilian suit.

23.    As a result of the foregoing, plaintiff suffered damages.

## SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT

24.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "23" above as if fully set forth herein.

25.    By not meaningfully contributing to the recovery of monies on behalf of the victims' families, defendant enjoyed attorney fees in gross excess to what it actually deserved at plaintiff's direct expense.

26.    As a result of the foregoing, plaintiff suffered damages.

## THIRD CAUSE OF ACTION FOR CONVERSION

27.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "26" above as if fully set forth herein.

28.    Defendant's refusal to share its fees by maintaining sole possession of the funds unlawfully excluded plaintiff from its share of the fee proceeds.

29.    As a result of the foregoing, plaintiff suffered damages.

## FOURTH CAUSE OF ACTION FOR PUNITIVE DAMAGES

30.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "29" above as if fully set forth herein.

5

31.    The aforesaid deprivation and resulting injuries to plaintiff were due to the willful, wanton, reckless and/or malicious conduct of the defendant, individually and/or vicariously by and through its agents, servants and/or employees.

32.    As a result of the foregoing, plaintiff suffered damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows

**A.    Declaratory relief as follows**

1.    A declaration that plaintiff had a property interest in the attorney fees available from the settlement proceeds taken by the defendant.

2.    A declaration that plaintiff performed valuable legal services that materially contributed to the ultimate settlement that was obtained.

3.    A declaration that the reasonable value of the work plaintiff performed in pursuing the Letter of Rogatory in the United States was at least ONE MILLION DOLLARS ($1,000,000.00).

**B.    Compensatory Damages**

1.    Compensatory damages in an amount to be fixed at trial but not less than ONE MILLION DOLLARS ($1,000,000) for the third cause of action.

2.    Punitive damages in an amount to be fixed at trial but not less than ONE MILLION DOLLARS ($1,000,000) by reason of the wanton, willful and malicious character of the conduct complained of on the first through fourth causes of action.

3.    An award of costs and disbursements to plaintiff.

6

4.    An award of attorney fees.

5.    Such other and further relief as this Court may deem just, proper and equitable.

Dated: New York, New York
       October 8, 2004.

Yours, etc.,

PELLEGRINI & ASSOCIATES, LLC
Attorneys for Plaintiff

By: _____
       Frank L. Pellegrini (FP-0876)
       350 Broadway, 40th Floor
       New York, NY 10013
       Phone:  (212) 219-8312
       Facsimile:  (212) 226-3224

TO:    Speiser Krause Nolan & Granito, PC
       140 East 45th Street, 34th Floor
       New York, New York 10017

7

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. WANDERLEY MINITTI,

                     Plaintiff,

     - against -

SPEISER, KRAUSE, NOLAN & GRANITO, PC,

                  Defendants.
------------------------------------------------------------x

04 CV 07976 (DC)(RLE)

**AMENDED COMPLAINT**

Jury Trial Demanded

     Plaintiff, DR. WANDERLEY MINITTI (hereinafter "MINITTI"), through his attorneys, PELLEGRINI & ASSOCIATES, LLC, respectfully alleges upon knowledge with respect to himself and his own actions and upon information and belief as to all other matters as and for his complaint against defendant, SPEISER, KRAUSE, NOLAN & GRANITO, PC, ("hereinafter SPEISER, KRAUSE"), as follows:

## NATURE OF THE ACTION

    1.    This is a collection action for unpaid attorneys fees owed to a foreign attorney arising from an international plane crash that took place in Brazil. Plaintiff seeks declaratory relief to 28 U.S.C. §2201 and compensatory and punitive damages pursuant to quantum meruit as well as various state common law causes of action.

## JURISDICTION

    2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff asserts jurisdiction over defendant per 28 U.S.C. §1367. Plaintiff requests that this Court exercise pendant jurisdiction over those state law claims arising out of the same common nucleus of operative facts as plaintiff's federal claims.

1

## VENUE

3.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391(a) because defendant maintains a business office in the Southern District and a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of the property that is the subject of the action is situated in the Southern District.

## PARTIES

4.     Plaintiff, MINITTI, is a Brazilian attorney duly admitted to practice law before the courts of Brazil and a member of the Brazilian Bar Association.  He was the attorney appointed by a Brazilian court to pursue Financial Support payments from an American corporation by enforcing the terms of a Letter Rogatory.

5.     Defendant, SPEISER, KRAUSE, is an American based law firm that was jointly retained by most of the families of the subject aviation crash to pursue judgments against the various defendants in the United States.

## FACTS

6.     This action arises from the October 31, 1996 crash of TAM Fokker flight 402, in Sao Paolo, Brazil, which killed ninety-nine passengers and crew members. Shortly after the accident, sixty-five retainer agreements were signed jointly, where Renato Guimaraes, Jr. (a Brazilian lawyer) and Defendant SPEISER, KRAUSE  (a New York-based law firm) agreed to represent the victims' families in return for a contingent fee, to be split jointly, of 25 percent of any monies collected with an additional 2% reimbursement allowance for costs.

7.     Shortly thereafter, an action was commenced in Brazil against Northrop Grumman and other defendants on behalf of 65 families of the victims.  This action

was brought in the Second Part of the III Civil Regional Court of Jabaquara/Saude,

("Jabaquara Court"), Sao Paolo, Brazil, Action # 1509/98.  The action alleged

negligence due to a defective thrust reverser that was designed and manufactured by

solely by Northrop Grumman.

8.    Northrop Grumman appeared in the Jabaquara Court through its

counsel the law firm of Pinheiro Neto and defended itself in that proceeding.  After

lengthy trial brought and prosecuted only by Renato Guimares, Jr., without the

participation or aid of Defendant SPEISER, KRAUSE, a final judgment was rendered

by the Jabaquara Court on June 30, 2000.  The judgment was then served on

Northrop Grumman and duly published in the State of San Paulo Law Journal, as

required under Brazilian Law.

9.    That Brazilian judgment required that Northrop Grumman pay for the

pain and suffering of the victims' in the amount of two million Brazilian Reals

(approximately $1,111,111.11) per family.  The judgment also required that Northrop

Grumman pays as follows:

   i.    an additional 20% of the amount assigned as "formal value of the
         matter." This payment is due since Northrop was deemed in contempt of
         court for failure to deposit a bond prior to the litigation, as directed by
         judicial decision;

   ii.   an additional 20% of the amount of the judgment as attorneys' fees; and

   iii.  2/3 of the amount of the last salary of each victim through the age of 65.

10.   The Jabaquara Court, based on paragraph 9(iii) above, in an ancillary

action similar to a child-support or alimony collection action under New York State

Laws, directed Northrop Grumman to pay immediately to the families two-thirds of the

amount of the last salary of each victim through the age of 65, as financial support

payments for what is known in Brazilian Law as food relief ("Financial Support

3

Payments"). Following an independent calculation ordered by the Jabaquara Court, the amount of the Financial Support Payments payable and overdue to 26 of the victims' families was determined to be US $8,642,802.94, corresponding to the period between October, 1996 through November, 2000.

11. This proceeding for the enforcement of Financial Support Payments was assigned the Index Number 1509/98-E. This proceeding was also brought and prosecuted by Renato Guimares, Jr. and Plaintiff MINITTI without any help and/or participation by defendant SPEISER, KRAUSE. The food relief granted, and to be satisfied by Northrop Grumman through Financial Support Payments to the victims' families is final.

12. The Jabaquara Court ordered the service of Northrop Grumman for payment of the Financial Support Payments in 24 hours, or be subject to seizure and attachment of its assets. The Counsel for Northrop Grumman in Brazil refused to accept service for payment of the Financial Support Payments.

13. Northrop Grumman did not comply with the Jabaquara Court's orders; rather it chose to make itself unavailable for service in Brazil, having closed its Brazilian office shortly after the accident. The victims' families did not receive any Financial Support Payments.

14. The Jabaquara Court, in an effort to compel Northrop Grumman to meet its obligations to the victims' families, requested through a Letter Rogatory, that the United States Courts serve Northrop Grumman in connection to the Financial Support Payments or be subjected to seizure and attachment of its assets. The Letters Rogatory was assigned to Plaintiff MINITTI to be filed in the United States Court and to follow the pertinent proceedings for its accomplishment. Annexed hereto as **Exhibit "A"** are

4

copies of the Certificates from the Brazilian Court, dated February 1, 2001 and
February 2, 2001, stating that Plaintiff MINITTI is defending the rights of the victims
and <u>that there have been no settlement proposal from Northrop Grumman.</u>

15.    Defendant SPEISER, KRAUSE, as attorneys for the victims' families,
jointly with Renato Guimaraes, Jr., did not pursue in any manner the enforcement of
the Letters Rogatory in the United States.

16.    Renato Guimaraes, Jr. then retained Plaintiff MINITTI to follow and
prosecute the enforcement of the Financial Support Payments and the Letters
Rogatory by executing a power of attorney and retainer agreement assigning his
powers in the Financial Support Payments proceedings to Plaintiff MINITTI, including
rights to retain other United States counsel to assist in the prosecution of the Letters
Rogatory. Annexed hereto as **Exhibits "B" and "C"** are copies of the Retainer
Agreement, dated October 16, 2000, between Renato Guimaraes, Jr. and Plaintiff
MINITTI and Power of Attorney, dated December 22, 2000, between Renato
Guimaraes, Jr. and Plaintiff MINITTI respectively.

17.    Plaintiff MINITTI then engaged the services of, through a retainer
agreement, Richard Peskin, a New York State Attorney, to bring the Letters Rogatory to
the attention of the appropriate court in the United States. Together Plaintiff MINITTI
and Richard Peskin, Esq. filed the Letters Rogatory in the Southern District of New
York on January 9, 2001 and later in the Eastern District of New York. Annexed
hereto as **Exhibit "D"** is a copy of the Retainer Agreement, dated January 5, 2001,
between Richard S. Peskin, Esq., Plaintiff MINITTI and Renato Guimaraes, Jr.

18.    The Southern District Court declined to decide on the request contained
in the Letters Rogatory, and indicated that the Eastern District court was the venue

5

with jurisdiction over the matter, since Northrop Grumman's New York office is located in Bethpage, New York. Curiously, co-counsel for the victims' families, Defendant SPEISER, KRAUSE appeared at the Letters Rogatory proceeding in the unusual role of opposing the Jabaquara Court's request that Northrop Grumman be served for the payment of Financial Support Payments in 24 hours or be subjected to seizure and attachment of its assets, in direct violation of its promise in the retainer agreements with the victims' families to zealously represent their interests. Its appearance opposing the motion to act on the Letter Oratory posed difficulties for the 26 victims' families, who had retained Defendant SPEISER, KRAUSE to pursue the owed food relief in the form of Financial Support Payments, which without the proper service on Northrop Grumman would prevent any future Financial Support Payment proceedings in Brazil.

19.    The Eastern District Court granted in part of the Jabaquara Court's request contained in the Letters Rogatory, having ordered the service of Northrop Grumman to the extent that Northrop Grumman was to be deemed served of the Brazilian court order to pay the victims' families the amount of Financial Support Payments. Mr. Granito, a partner of Defendant SPEISER, KRAUSE, was present at the Letters Rogatory hearings at the Eastern District Court, and, consistently with Defendant SPEISER, KRAUSE previous behavior at the Southern District hearing, was hostile and non-cooperative when interacting with Plaintiff MINITTI and Richard Peskin, Esq. while they pursued the enforcement of the Letters Rogatory. Northrop Grumman and its New York attorneys were served of the Eastern District decision by the U.S. Marshall as determined by the United States Federal Judge.

20.    Defendant SPEISER, KRAUSE acted solely in its own interest by pursuing settlement only, and opposing the Letters Rogatory proceedings which would have allowed the flow of the proceedings for enforcement of Financial Support Payments to the victims' families.

21.    Defendant SPEISER, KRAUSE aggressively pursued settlements in detriment of actually working for the attachment of Northrop Grumman assets in Brazil. In addition, Defendant SPEISER, KRAUSE retained the services of another Brazilian attorney, Mr. Luis Roberto de Arruda Sampaio ("Sampaio"), for the sole purpose of directly contacting the victims' families and convincing them to settle their cases. All this was done without the knowledge of Renato Guimaraes, Jr., who gradually started to receive notices from the victims' families canceling their retainer agreements with him, as Sampaio succeeded in his efforts on behalf of Defendant SPEISER, KRAUSE

22.    Defendant SPEISER, KRAUSE paid a percentage to Sampaio of each settlement he was able to reach. In fact, as a tool of persuasion to get victims' families to cancel the retainer agreement to Renato Guimaraes, Jr., Sampaio mailed to some of the victims' families a copy of a judgment in another unrelated air crash case in which Mr. Guimaraes had worked, and which outcome was not favorable to the clients of Renato Guimaraes, Jr.

23.    In spite of Defendant SPEISER, KRAUSE's lack of interest in serving Northrop Grumman in the United States to pay the Financial Support Payments to the victims' families, Defendant SPEISER, KRAUSE benefited from the service of Northrop Grumman to further their intent to rush victims' families into settlements. At least 14 of the 26 families of the victims' families named as plaintiffs in the Letters Rogatory

entered into settlements, and ALL such settlements occurred AFTER the filing of the

Letters Rogatory on January 9, 2001 with the Southern District Court in New York.

(See, Exhibit "A").

24.    As a result of these settlements, Defendant SPEISER, KRAUSE collected

US $ 8,412,538.03 on behalf of the 14 families with attorney's fees and costs of

$2,271,385.20.  None of this amount had been or has been shared with Plaintiff

MINITTI in any way.  Plaintiff MINITTI has been forced to, after having done all the

work prosecuting the Financial Support Payments and Letters Rogatory proceedings in

Brazil and in the United States, to now hire additional United states counsel to pursue

fees and costs that Plaintiff MINITTI is owed by Defendant SPEISER, KRAUSE. Plaintiff

MINITTI has sustained out-of-pocket expenses over $144,000.00. Defendant SPEISER,

KRAUSE, on the other hand, has done nothing beyond agreeing to a quick settlement

and then attempted to frustrate all attempts to follow and prosecute the Financial

Support Payments and Letters Rogatory proceedings.

25.    Plaintiff now seeks recovery of fifty (50%) percent of the attorney fees that

were generated as a result of the fourteen settlements described above on the basis he

did most of the work but received no money for his efforts.  Plaintiff in this case has

done nearly all of the work that led to these settlements and therefore asks the court

to use its power in equity to award the plaintiff a just proportion of the fees.

**FIRST CAUSE OF ACTION FOR RECOVERY
OF ATTORNEY FEES BASED ON QUANTUM MERUIT**

26.    Plaintiff repeats and re-alleges the allegations contained in paragraphs

"1" through "25" above as if fully set forth herein.

27.    As a result of the above-described actions, the defendant individually

and/or vicariously by and through their agents, servants and/or employees, deprived

8

plaintiff of the equitable share of the attorneys fees resulting from the settlement of the claims of the fourteen families involved in the underlying Brazilian suit.

28.    As a result of the foregoing, plaintiff suffered damages.

## SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT

29.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "28" above as if fully set forth herein.

30.    By not meaningfully contributing to the recovery of monies on behalf of the victims' families, defendant enjoyed attorney fees in gross excess to what it actually deserved at plaintiff's direct expense.

31.    As a result of the foregoing, plaintiff suffered damages.

## THIRD CAUSE OF ACTION FOR CONVERSION

32.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "31" above as if fully set forth herein.

33.    Defendant's refusal to share its fees by maintaining sole possession of the funds unlawfully excluded plaintiff from its share of the fee proceeds.

34.    As a result of the foregoing, plaintiff suffered damages.

## FOURTH CAUSE OF ACTION FOR PUNITIVE DAMAGES

35.    Plaintiff repeats and re-alleges the allegations contained in paragraphs "1" through "34" above as if fully set forth herein.

36.    The aforesaid deprivation and resulting injuries to plaintiff were due to the willful, wanton, reckless and/or malicious conduct of the defendant, individually and/or vicariously by and through its agents, servants and/or employees.

37.    As a result of the foregoing, plaintiff suffered damages.

9

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered as follows

**A.    Declaratory relief as follows**

1.    A declaration that plaintiff had a property interest in the attorney fees available from the settlement proceeds taken by the defendant.

2.    A declaration that plaintiff performed valuable legal services that materially contributed to the ultimate settlement that was obtained.

3.    A declaration that the reasonable value of the work plaintiff performed in pursuing the Letter of Rogatory in the United States was at least ONE MILLION DOLLARS ($1,000,000.00).

**B.    Compensatory Damages**

1.    Compensatory damages in an amount to be fixed at trial but not less than ONE MILLION DOLLARS ($1,000,000) for the third cause of action.

2.    Punitive damages in an amount to be fixed at trial but not less than ONE MILLION DOLLARS ($1,000,000) by reason of the wanton, willful and malicious character of the conduct complained of on the first through fourth causes of action.

3.    An award of costs and disbursements to plaintiff.

4.    An award of attorney fees.

5.    Such other and further relief as this Court may deem just, proper and equitable.

Dated: New York, New York
      January 6, 2005

                      Yours, etc.,

                      PELLEGRINI & ASSOCIATES, LLC
                      Attorneys for Plaintiff

                      By: _____
                            Frank L. Pellegrini (FP-0876)
                            330 Broadway, 10th Floor
                            New York, New York 10013
                            Phone:  (212) 219-8312
                            Facsimile:   (212) 226-3224

TO:    William Joseph Apuzzo, Esq.
        685 Third Avenue – Suite 2700
        New York, New York 10017

**Exhibit A**




# LEGAL TRANSLATION SYSTEMS
# DE PAULA TRANSLATIONS
## 421 SEVENTH AVENUE – SUITE 901
## NEW YORK, NY 10001
### (212) 629-4541  FAX: (212) 629-4542  E-mail: depaula@nyic.com
http://www.portuguesetranslations.com
http://www.academictranslations.com  http://www.immigrationtranslations.com
INSURED

## AFFIDAVIT OF ACCURACY

### I HEREBY CERTIFY THAT THIS IS A TRUE TRANSLATION OF THE ORIGINAL DOCUMENT, AS PRESENTED TO ME, FROM PORTUGUESE INTO ENGLISH

### (CERTIFICATE FROM THE BRAZILIAN COURT)

This affidavit refers exclusively to the correctness of the attached translation. This document should not be construed as an affidavit of authenticity of the original document, as pertaining to form, content or official character of signatory.

STATE OF NEW YORK)
                                          ss
COUNTY OF NEW YORK)

I, CARLOS A. DE PAULA, being duly sworn, depose and say that I am thoroughly familiar with the above languages, and that the translation attached hereto has been prepared and/or revised by me and that it is a true and correct translation of the original language document as presented to me, to the best of my knowledge, ability and belief.

Sworn to before me in    FEB 0 5 2001
New York,

_____
CARLOS A. DE PAULA, B.S.
Member American Translators Association
ATA Membership number 217642

DEBORAH R. SROUR
NOTARY PUBLIC, State of New York
No. 02SR5020196
Qualified in New York County
Commission Expires January 9, 2002

GAL TRANSLATION SYSTEMS/DE PAULA TRANSLATIONS
NTH AVENUE - SUITE 901 - NEW YORK, N.Y. 10001 (212) 629-4541
FAX (212) 629-4542 e-mail: depaula@nyic.com

.CIARY

.AO PAULO

LUIS FERNANDO NEVES, Substitute Court Clerk, Regional Courthouse III - Jabaquara and Saude, in this County, Capital of the State of Sao Paulo, as provided by law.

CERTIFIES that in fulfillment of the ruling, filed under page 2149 of the proceedings, and reviewing the SENTENCE issued in connection to the case brought by MARIA BIBIANA PINTO PIZZARRO SA FORTES AND OTHERS against NORTHUP GRUMMAN CORPORATION and TELEFLEX CONTROL SYSTEMS INCORPORATED, headquartered in 1840 Century Park East, Los Angeles, California, 90067, and 1950 Williams Drive, Oxnard, California, 93030, I found that, they have been entered under number 1509/98E, and that the object thereof is the payment of damages and financial support, by virtue of death of passengers in an aircraft crash. I CERTIFY that until this date there has been no settlement proposal by defendant NORTHRUP GRUMMAN CORPORATION, for the payment of financial support payments; a Rogatory letter was issued to the State of New York, NY (correcting the previously issued Certificate), and the victims rights are being defended by WANDERLEY MINITTI, ESQ. NOTHING ELSE TO REPORT. In witness hereof. Issued in this city of Sao Paulo, on February 02, 2001. I (Pedro S. Vieira Lima), Court Reporter typed it. I (Luis Fernando Neves), Deputy Court Clerk, signed it.

Signed by LUIS FERNANDO NEVES

Deputy Court Clerk

State Fees R$7.00 (Already paid)

2nd Civil Court
Regional Courthouse III - Jab/Saude

Translation prepared by: CARLOS DEPAULA
02/05/01- 2:46 PM - D:\tradcorp\MARIA BIBIANA SA FORTES X NORTHROP GRUMMAN.doc

# PODER JUDICIÁRIO
## SÃO PAULO

LUIS FERNANDO NEVES, Escrivão-Diretor Substituto do Segundo Ofício Cível do Foro Regional III – Jabaquara e Saúde desta Comarca da Capital do Estado de São Paulo, na forma da lei.

## CERTIFICA

Em cumprimento ao r. despacho de fls. 2149, e revendo em Cartório a seu cargo os autos da CARTA DE SENTENÇA requerida por MARIA BIBIANA PINTO PIZZARRO SA FORTES E OUTROS contra NORTHRUP GRUMMAN CORPORATION e TELEFLEX CONTROL SYSTEMS INCORPORATED, com sede em 1840 Century Park East, Los Angeles – Califórnia, , 90067 E 1950 Williams Drive Oxnard, Califórnia, 93030, e deles verificou constar que foram registrados sob nº 1509/92E, e tem por objeto a indenização pela morte de passageiros em acidente aéreo. CERTIFICO que até a presente data não houve nenhuma proposta de acordo ou transação por parte da ré NORTHRUP GRUMMAN CORPORATION, para o pagamento das dívidas de caráter alimentar; sendo expedido a Carta Rogatória para o Estado de Nova York, NY, (em retificação a Certidão expedida anteriormente), a defesa dos direitos das vítimas representadas pelo Dr. WANDERLEY MINITTI. NADA MAIS) O referido é verdade e dá fé. Dada e passada nesta cidade de São Paulo, aos 02 de fevereiro de 2001. Eu, _____ (Pedro S. Vieira Lima) Esc. datilografei. Eu, _____ (Luís Fernando Neves) Escrivão Diretor substituto, subscrevi e assino.

LUIS FERNANDO NEVES
Escrivão Diretor Substituto

Ao Estado:- R$ 7,00 (já recolhido em guia própria).

2º Ofício Cível
Foro Reg III – Jab/Saúde
Rua Joel Jorge de Melo, 424
CEP 04128-080 – São Paulo
IN TALICIA AP V S MACEDO
Escrivã-Diretora
AP ROBERTO GOMES



# LEGAL TRANSLATION SYSTEMS
# DE PAULA TRANSLATIONS
## 421 SEVENTH AVENUE – SUITE 901
## NEW YORK, NY 10001
## (212) 629-4541   FAX: (212) 629-4542   E-mail: depaula@nyic.com
http://www.portuguesetranslations.com
http://www.academictranslations.com   http://www.immigrationtranslations.com
INSURED

# AFFIDAVIT OF ACCURACY

### I HEREBY CERTIFY THAT THIS IS A TRUE TRANSLATION OF THE ORIGINAL DOCUMENT, AS PRESENTED TO ME, FROM PORTUGUESE INTO ENGLISH

### (CERTIFICATE FROM THE BRAZILIAN COURT)

This affidavit refers exclusively to the correctness of the attached translation. This document should not be construed as an affidavit of authenticity of the original document, as pertaining to form, content or official character of signatory.

STATE OF NEW YORK)                    ss
COUNTY OF NEW YORK)

I, CARLOS A. DE PAULA, being duly sworn, depose and say that I am thoroughly familiar with the above languages, and that the translation attached hereto has been prepared and/or revised by me and that it is a true and correct translation of the original language document as presented to me, to the best of my knowledge, ability and belief.

Sworn to before me in FEB 05 2001
New York,

CARLOS A. DE PAULA, B.S.
Member American Translators Association
ATA Membership number 217642

DEBORAH R. SROUR
NOTARY PUBLIC, State of New York
No. 02SR5020198
Qualified in New York County
Commission Expires January 9, 2002

LEGAL TRANSLATION SYSTEMS/DE PAULA TRANSLATIONS
EVENTH AVENUE - SUITE 901 - NEW YORK, N.Y. 10001 (212) 629-4541
FAX (212) 629-4542 e-mail: depaula@nyic.com

JICIARY

SAO PAULO

NATALICIA AP. V.S. DE MACEDO, Court Clerk, Regional Courthouse III - Jabaquara and Saude, in this County, Capital of the State of Sao Paulo, as provided by law.


CERTIFIES that in fulfillment of the ruling, filed under page 2149 of the proceedings, and reviewing the SENTENCE issued in connection to the case brought by MARIA BIBIANA PINTO PIZZARRO SA FORTES AND OTHERS against NORTHUP GRUMMAN CORPORATION and TELEFLEX CONTROL SYSTEMS INCORPORATED, headquartered in 1840 Century Park East, Los Angeles, California, 90067, and 1950 Williams Drive, Oxnard, California, 93030, I found that, they have been entered under number 1509/98E, and that the object thereof is the payment of damages and financial support, by virtue of death of passengers in an aircraft crash. I CERTIFY that until this date there has been no settlement proposal by defendant NORTHRUP GRUMMAN CORPORATION, for the payment of financial support payments; a Rogatory letter was issued to the State of Florida, Miami, and the victims rights are being defended by WANDERLEY MINITTI, ESQ. NOTHING ELSE TO REPORT. In witness hereof. Issued in this city of Sao Paulo, on February 01, 2001. I (Silvia Ribeiro Alves), Court Reporter typed it. I (Natalicia Ap. V.S. De Macedo), Deputy Court Clerk, signed it.

Signed by NATALICIA AP. V.S. DE MACEDO
Court Clerk

State Fees R$7.00 (Already paid)

2nd Civil Court

Translation prepared by: CARLOS DEPAULA
02/05/01- 2:46 PM - D:\tradcorp\MARIA BIBIANA SA FORTES X NORTHROP GRUMMAN.doc

# PODER JUDICIÁRIO
### SÃO PAULO

2.ª Ofício Civel
Foro Reg. III - Jabaquara/Saúde
Rua Joel Jorge de Melo, 424
CEP 04128-080 - São Paulo
NATALÍCIA AP. V.S. MACEDO
Escrivã Diretora
SILVIO ROBERTO GOMES
Oficial Maior

NATALÍCIA AP. V. S. DE MACEDO, Escrivã Diretora
do Segundo Ofício Cível do Foro Regional III
Jabaquara e Saúde desta Comarca de   Capital
ou Estado de São Paulo, na forma da lei. ETC

            C  E  R  T  I  F  I  C  A

em cumprimento ao r. despacho de fls. 2149, e revendo o Cartório
a seu cargo os autos da CARTA DE SENTENÇA requerida por MARIA
BIBIANA PINTO PIZZARRO SÁ FORTES E OUTROS contra NORTHRUP GRUMMAN
CORPORATION e TELEFLEX CONTROL SYSTEMS INCORPORATED, com sede em
1840 Century Park East, Los Angeles - California, 90067 e 1950
Williams Drive Oxnard, California, 93030; deles verificou constar
que foram registrados sob o nº 1507/98E, tem por objeto a
indenização pela morte de passageiros em acidente aéreo.
CERTIFICO que até a presente data não houve nenhuma proposta de
acordo ou transação por parte da ré NORTHRUP GRUMMAN CORPORATION,
para o pagamento das dívidas de caráter alimentar; sendo expedido
a Carta Rogatória para o Estado da FLORIDA, MIAMI,  a defesa dos
direitos das vítimas representadas pelo Dr. WANDERLEY MINITTI.
NADA MAIS. O  referido é verdade e dá fé. São Paulo, 01 de
fevereiro de 2001. Eu,          Silvia Ribeiro Alves, escrevente,
datilografei. Eu,                    Natalícia Ap. V. de S. Macedo,
Escrivã-Diretora, subscrevi e assino.



                              NATALÍCIA AP. V. S. DE MACEDO
                                Escrivã - Diretora



Custas recolhidas
em guia própria no
valor de R$ 7,00

Exhibit B



## MANOEL ANTONIO SCHIMIDT

Tradutor Público Juramentado e Intérprete Comercial
Matrícula Nº 490 da Junta Comercial do Estado de São Paulo

Praça da Sé, 21 - 14º Andar - Conj. 1.409 - Tel.: (0xx11) 239-1077 - Fax: (0xx11) 3105-8603 - São Paulo - SP

LIVRO Nº  0251  FOLHA Nº      1 TRADUÇÃO Nº   I-53.361/001

I, the undersigned Sworn Translator and Commercial
Interpreter, hereby CERTIFY this is the description and
faithful translation of a DOCUMENT written in Portuguese,
which I translate as follows:

**Renato Guimarães Jr.**
**P.H.D. by USP, Professor at UNICAMP**
**Master of Comparative Law, GWU, IASP**

Phone No. (019) 3289-8989, 3289-8990  Fax No. 3289-4315
Rua Francisco de Toledo, 511
University - 13.083-470, Campinas SP

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
October 31, 1996

**Subrogation**

I hereby subrogate, to Dr. WANDERLEY MINITTI, Lawyer,
enrolled before the Brazilian Bar Association, Section of
São Paulo, telephone number (011) 3051-6965, with office at
Largo São Francisco, No. 181 - 7th floor, Centro, Capital
and reserve the same to me, the powers granted - by the 65
(sixty five) families of the tragedy occurred to the
aircraft - Fokker 100 of TAM, in which 99 persons were
killed and 10 houses were destroyed in Jabaquara on the
date stated above, due to the "reverse" supplied by
Northrop Grumman Corporation and Teleflex plus the pilots
lack of training - through the 65 Power of Attorneys -
RETAINER AGREEMENTS, granted to me and jointly with the Law
Firm called Speiser Krause and/or Speiser, Krause, Madole &
Lear or any other firm associated to the same group of
American lawyers, according to the sole and uniform model
attached, for the 65 Brazilian families which were
addressed to said firm by me and through the processes sent
by the Honorable Judge William McDonald, of the Superior
Court of the State of California, County of Orange, Case
No. 783990, Linda Andrews et al, v. Northrop Grumman
Corporation, for which I am responsible before the
Brazilian Justice, and also according the processes Index
No. 120256/1997, Celia Berliner et al, v. Northrop Grumman
Corporation, TAM et al, Supreme Court of the State of New
York, County of New York, Honorable Judge Jane S. Salomon,

INSCRIÇÃO: RG 3.441.239   -   CPF 346.307.328-53   -   PMSP (ISS) 8.545.237-8   -   IAPAS 110.591.000-74

RENATO GUIMARÃES JR.
Doutor pela USP, Professor da UNICAMP
*Master of Comparative Law, GWU, IASP*
Fone (019) 3289-8989, 3289-8990-fax-3289-4315, 3289-2921, rua Francisco de Toledo, 511
Cidade Universitária - 13.083-470, Campinas, São Paulo, Brazil

## RETAINER AGREEMENT
## *TAM BRAZILIAN FOKKER 100*
### October 31, 1996

### Substabelecimento

Substabeleço, na pessoa do Dr. WANDERLEY MINITTI, advogado, *Ordem dos Advogados do Brasil*, de São Paulo, fone ( 011 ) 3051-6965, com escritório no Largo de São Francisco, nº 181, 7º andar, Centro, Capital, reservando os mesmos para mim, os poderes outorgados - por todas as 65 ( sessenta e cinco ) famílias da tragédia do avião Fokker 100, da *TAM*, que matou, por causa do "reverso" da *Northrop Grumman Corporation* e da Teleflex , e com a falta de treinamento dos pilotos, 99 pessoas, destruindo 10 casas, no Jabaquara, na data acima – através das 65 procurações-*RETAINER AGREEMENTS*, a mim e em conjunto com a firma *Speiser Krause* e/ou *Speiser, Krause, Madole & Lear* ou outra qualquer firma coligada ao mesmo grupo de advogados americanos, conforme o modelo anexo único e uniforme para as 65 famílias brasileiros que encaminhei àquela firma e por cujos processos, enviados pelo **Honorable Judge William McDonald,** *Superior Court of the State of California, County of Orange, Case No. 783990, Linda Andrews et al, v. Northrop Grumman Corporation, sou responsável perante a Justiça do Brasil, e em harmonia, também,* com os processos Index No. 120256/1997, Celia Berliner et al, v. Northrop Grumman Corporation, *TAM et al,* Supreme Court of ths State of New York, County of New York, **Honorable Judge Jane S. Solomon,** United States of America, e especialmente para despachar a documentação de 12 p.p. por mim assinada.

Campinas, SP, Brazil, October 16, 2000.

JURAM

**Exhibit C**



## MANOEL ANTONIO SCHIMIDT

Tradutor Público Juramentado e Intérprete Comercial
Matrícula N° 490 da Junta Comercial do Estado de São Paulo

Praça da Sé, 21 - 14° Andar - Conj. 1.409 - Tel.: (0xx11) 239-1077 - Fax: (0xx11) 3105-8603 - São Paulo - SP

LIVRO N°    0251    FOLHA N°              1 TRADUÇÃO N°    I-53.359/001

I, the undersigned Sworn Translator and Commercial
Interpreter, hereby CERTIFY this is the description and
faithful translation of a DOCUMENT written in Portuguese,
which I translate as follows:

ANEXO "A"

**Renato Guimarães Jr.**
P.H.D. by USP, Professor at UNICAMP
Master of Comparative Law, GWU, IASP
Phone No. (019) 3289-8989, 3289-8990  Fax No. 3289-4315
Rua Francisco de Toledo, 511
University - 13.083-470, Campinas SP

December 22, 2000.

Dr. Wanderley Minitti Esq.
Advocate at the Court of Law
of São Paulo, Capital

Dear Dr. Minitti

Confirming our deal, I hereby authorize you to retain a law
firm in the United States not just to prosecute the
Rogatory Letter, but also, upon acceptance by the families,
to replace the law firm Speiser & Krause, with which I
represent sixty five (65) Brazilian Families in the actions
filed in California and New York and they failed to
represent them for almost one year being limited to
intermediate agreements with Northrop, Teleflex, TAM et al
and their insurance companies, said agreements being null
and void before the Brazilian laws, as I have stated in all
litigations I acted before the Brazilian Justice Court and
have communicated to the Honorable American Judges.

The legal fees to be established shall be in the same form,
but inferior to those signed by Speiser & Krause, provided
the same share be established to me.

Sincerely,

(s.) illegible
    Renato Guimarães Jr.

NOTHING ELSE was contained in said original, which I return with
this faithful translation. In WITNESS WHEREOF, I have hereunto
set my hand and seal of office, this February 19, 2001.

                                                        vb

                    Manoel Antonio Schimidt
                       Sworn Translator

INSCRIÇÃO: RG 3.441.239   -   CPF 346.307.328-53   -   PMSP (ISS) 8.545.237-8   -   IAPAS 110.591,000-74

0192394315          RENATO GUIMARÃES          841 P01    DEC 22 '00  13

# RENATO GUIMARÃES JR.

Doutor pela USP, Professor da UNICAMP
*Master of Comparative Law, GWU*, IASP
Fone (019) 3289-8939, 3289-8990-fax-3289-4315, 3289-2921, rua Francisco de Toledo, 511
Cidade Universitária - 13.083-470, Campinas, SP

Em 22, dezembro, 2000.

Ilmo. Sr.
Dr. Wanderley Minitti,
DD. Advogado no Foro de
São Paulo, Capital

Prezado Dr. Minitti,

Confirmando nossos entendimentos, autorizo o senhor a contratar Escritório de Advocacia nos Estados Unidos não só para o cumprimento da Carta Rogatória mas também, aceitando as famílias, substituir o Escritório *Speiser Krause*, com o qual represento 65 famílias brasileiras, nas ações na Califórnia e Nova York, e que há quase um ano deixaram de defendê-las, limitando-se a intermediar acordos com a *Northrop, Teleflex, TAM et al* e suas seguradoras, acordos esses vis e nulos de acordo com as Leis do Brasil, conforme tenho denunciado em todas as ações em que atuo na Justiça Brasileira - e comunicado aos dignos Juízes americanos.

Os honorários a ser estabelecidos deverão ser nos moldes, mas inferiores, aos firmados pela *Speiser Krause*, preservada a mesma participação minha.

Cordialmente,

*Renato Guimarães Jr.*

4

**Exhibit D**

**RICHARD S. PESKIN**
ATTORNEY AT LAW
301 MADISON AVENUE
4th FLOOR
NEW YORK, NEW YORK 10017

ADMITTED IN NEW YORK & FLORIDA

(212) 953-6868 x100
Fax (212) 953-6022
Eskyre@aol.com

### RETAINER AGREEMENT
### LETTER ROGATORY DATED DECEMBER 20, 2000 RELATING TO THE
### TAM FOKKER 100 ACCIDENT IN SAO PAULO, BRAZIL OCTOBER 31, 1996

1. This agreement confirms the terms upon which you Renato Guimaraes, Jr. have retained me Richard S. Peskin, to represent you in connection with the above-referenced matter. In exchange for my fee set forth below I will take all legal steps necessary to transmit Letters Rogatory to the United States District for the Southern District of New York and to enforce such a proceeding via litigation.

2. This agreement is executed by Wanderley Minitti pursuant to an authorization of Renato Guimaraes, Jr. dated December 22nd, 2000 that becomes part of this retainer as Exhibit A.

3. Renato Guimaraes, Jr. represents that the law firm of Speiser & Krause did not participate in any way by filing a notice of appearance or otherwise in the action filed in Brazil, which precipitated the issuance of the above-mentioned Letter Rogatory.

4. The total legal fees in this matter will be twenty-four (24%) percent handled as set forth below at such time as Northtrop Grumman shall comply with the instructions contained in the Letters Rogatory.

   *sixteen point sixty seven*

   a) Four (4%) percent (equivalent to ~~twenty-five~~ (16.67%) percent of Twenty-Four (24%)) of any sums so deposited shall be deemed earned, due and owing after its release by the judge in Brazil or in the United States.

   b) Six (6%) percent to Renato Guimaraes, Jr. (equivalent to twenty-five (25%) percent of Twenty-Four (24%)) of any sums so deposited shall be deemed earned, due and owing after its release by the judge in Brazil or in the United States.

   *fifty eight point thirty three*

   c) Fourteen (14%) percent (equivalent to ~~twenty-five~~ (58.33%) percent of Twenty-Four (24%)) to Wanderley Minitti. of any sums so deposited shall be deemed earned, due and owing after its release by the judge in Brazil or in the United States.

1

5. The legal fees for this Letters Rogatory shall be deemed earned, due and owing despite any settlement or agreement that may occur in the future.

6. In the event such a deposit regarding this matter is made in the United States, Richard S. Peskin is authorized to retain his share of legal fees and to hold the shares of Wanderley Minitti and Renato Guimaraes, Jr. in his escrow account for their benefit.

7. If the said sum is deposited in the United States, Richard S. Peskin will release the shares of Wanderley Minitti and Renato Guimaraes, Jr. according to their directions.

8. In the event a deposit regarding this matter is made in Brazil, Wanderley Minitti is authorized to retain his share of legal fees and to hold the shares of Richard S. Peskin and Renato Guimaraes, Jr. for their benefit.

9. If deposited in Brazil, Wanderley Minitti will release the shares of Richard S. Peskin and Renato Guimaraes, Jr. according to their directions.

10. No other services other than those itemized in this agreement are included.

11. You hereby grant to Richard S. Peskin power of attorney to execute all complaints, claims, contracts, settlements, drafts, releases, verifications, dismissals, and orders regarding this matter as you yourself could execute. You also authorize me to release from escrow, funds to pay the legal fees.

12. All the expenses regarding the prosecution of this rogatory letter are being paid by Wanderley Minitti i.e. travel, costs, filing fees, copies, certified translator and others.

13. In the event of a filing of new Letters Rogatory this retainer will apply.

ACCEPTED AND AGREED:          ACCEPTED AND AGREED:          ACCEPTED AND AGREED:

_____       _____       _____
RICHARD S. PESKIN, ESQ.       WANDERLEY MINITTI, ESQ.       WANDERLEY MINITTI, ESQ.
                                                            On behalf of
                                                            RENATO GUIMARAES, JR.
Date: January 5, 2001         Date: January 5, 2001         Date: January 5, 2001

2

## CERTIFICATION OF SERVICE

I, undersigned, an attorney at law in the State of New York, hereby certify that

the foregoing Plaintiff's Amended Complaint was served upon:

William Joseph Apuzzo, Esq.
685 Third Avenue – Ste. 2700
New York, New York 10017-4024

by causing a true copy of same, enclosed in a properly addressed wrapper, to be

deposited on January 6, 2005 with the United States Postal Service for delivery via first

class mail at the address designated above.

FRANK L. PELLEGRINI

Dated: January 6, 2005

155411.1