**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. No. 05 CV 02210 (DC)

X==================================================X

RENATO GUIMARAES, JR.,

Plaintiff,

-against-

SPEISER, KRAUSE, NOLAN & GRANITO
a professional corporation f/k/a SPEISER,
KRAUSE, MADOLE & LEAR,
a professional corporation,

Defendant.

X==================================================X

***MEMORANDUM OF LAW***
***IN SUPPORT***
***OF DEFENDANT'S MOTION***
***FOR SUMMARY JUDGMENT***

Dated: New York, New York
September 21, 2006

*Prepared by:*
Apuzzo & Chase
Attorneys for Defendant
800 Third Avenue - 8th Floor
New York, NY 10022

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| **Preliminary Statement** | | 1 |
| **STATEMENT OF FACTS** | | 2 |
| | **ARGUMENT** | |
| **I** | **THE STANDARD FOR GRANTING SUMMARY JUDGMENT** | 6 |
| **II** | **ABSENT A MEETING OF THE MINDS, PLAINTIFF CANNOT ESTABLISH A CONTRACT. ABSENT A CONTRACT, THERE CAN BE NO BREACH** | 8 |
| | **A. Prima Facie Requirements for Breach of Contract** | 8 |
| | **B. The Parties Never Agreed on Fees or Responsibilities** | 11 |
| | **C. The Lear Fax is Unambiguous and Does Not Support a Meeting of the Minds** | 16 |
| | *The Tribune/Arcadian/Adjustrite Test* | 18 |
| | *Factor 1- Language of the Agreement* | 19 |
| | *Factor 2 - Context of Negotiations* | 21 |
| | *Factor 3 - Open Terms* | 22 |
| | *Factor 4 - Part Performance* | 25 |
| | *Factor 5 - The "Proposed Arrangement" Contemplated by the Lear Fax is of the Sort Ordinarily and Necessarily Committed to Writing* | 26 |
| **III** | **WHEN PLAINTIFF'S CONDUCT BECAME AVERSE TO THE INTERESTS OF SPEISER KRAUSE AND ITS CLIENTS, THE PLAINTIFF ABANDONED THEIR CAUSES, WAS DISCHARGED FOR CAUSE, AND FORFEITED HIS RIGHT TO ANY FEE** | 26 |
| **IV** | **PLAINTIFF'S CONSTRUCTIVE TRUST CLAIM MUST FAIL AS A MATTER OF LAW** | 28 |
| | **A. Plaintiff Failed to Demonstrate The Existence of a Fiduciary Relationship Between the Parties** | 28 |
| | **B. Plaintiff's Has an Adequate remedy at Law** | 32 |
| | **C. Plaintiff Failed to Allege a Promise, Express or Implied, or a Transfer Made in Reliance on That Promise** | 33 |
| **V** | **PLAINTIFF CANNOT ESTABLISH A CONVERSION CLAIM** | 34 |
| | **A. Plaintiff's Claim for Conversion is Merely a Restatement of his Contract Claim** | 35 |
| | **B. Plaintiff had no Legal Ownership of Specifically Identifiable Property** | 37 |
| **VI** | **PLAINTIFF CANNOT ESTABLISH A VIABLE CLAIM FOR AN ACCOUNTING** | 38 |
| **Conclusion** | | 40 |

Defendant Speiser Krause Nolan & Granito ("Speiser Krause") respectfully submits this Memorandum in Support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in its favor dismissing the First Amended Complaint (the "FAC") filed by plaintiff Renato Guimaraes, Jr. ("Guimaraes").

**Preliminary Statement**

Lacking a single material dispute over the facts, this case calls out for resolution by summary judgment. Plaintiff's breach of contract claim presents an issue of contract interpretation - a legal issue appropriate for resolution by this court. Specifically, plaintiff's breach of contract claim involves the interpretation of a fax sent by Speiser Krause's Gerard Lear on February 5, 1997, and the legal effect of the subsequent client retainer agreements contemplated and implicated by that fax. It is undisputed that there is no other writing evidencing or constituting the existence of the purported contract. It is also undisputed that the Lear fax speaks only of a "proposed arrangement" between Speiser Krause, *its clients*, and "Brazilian counsel." The parties' dispute lies in the proper interpretation of the Lear Fax.

Plaintiff claims, based on the Lear fax, the existence of a legally-enforceable contract that solely and independently entitles him to 1/4 of all of Speiser Krause's TAM-related fees. It is undisputed that Speiser Krause contemplated sharing some portion of its fees with Brazilian counsel. What is in dispute, however, is that Speiser Krause agreed to pay plaintiff a fixed percentage of the fees it earned in the TAM cases.

The first question for this Court to determine is whether the term "Brazilian counsel," expressly succeeded by the plural pronoun "their," could reasonably refer to "Renato Guimaraes," permitting the maintenance of this breach of contract claim. In the absence of a meeting of the minds on the point, no contract could have been formed. In the absence of a

contract, there can be no breach. The second question this Court will answer is whether, in view of the uncontested facts and admissions, plaintiff's actions constitute an abandonment and subsequent termination for cause by the TAM clients. The third issue this court will address is whether plaintiff has pleaded or is capable of establishing a fiduciary relationship between himself and Speiser Krause, in the absence of which the constructive trust and accounting claims must fail. Finally, Speiser Krause asks this Court to decide whether plaintiff has adequately pleaded, or can establish, a tortious wrong independent of the alleged contract so that the conversion claim must similarly fail. In the presence of admittedly binding contracts concerning the same subject matter – attorneys fees to be derived from legal representation in connection with the TAM litigation – which make no mention of the alleged fee sharing agreement between the parties (because there was none), plaintiff's claims are legally insufficient. In these circumstances, the Court will find that Speiser Krause is entitled to dismissal of plaintiff's claims as a matter of law.

## STATEMENT OF FACTS

On October 31, 1996 Transportes Aereos Regionais, S.A. Airlines ("TAM") flight 402 departing from Sao Paolo, Brazil bound for Rio de Janeiro, Brazil crashed, killing all 99 persons aboard (the "TAM air disaster"). FAC ¶6.[1] As a result of this crash, the victims' families

[1]Plaintiff's First Amended Complaint, Speiser Krause's Answer and Counterclaim, and Plaintiff's Reply to Speiser Krause's Counterclaim are attached as Exhibits A, B and C, respectively, to the accompanying Attorney's Affidavit of William J. Apuzzo, sworn to on September 22, 2005 ("Apuzzo Aff."). Speiser Krause's First Interrogatories of Plaintiff are annexed to the Apuzzo Aff. as Exhibit D. Plaintiff's responses to those Interrogatories are annexed as Exhibit E, and cited as "PIR#[response number]." Speiser Krause's request for clarification of those responses is annexed as Exhibit F. Plaintiff's supplementation of his Interrogatory Responses are Annexed as Exhibit G, and cited "PSIR#[response number]." Relevant excerpts of transcripts of depositions are attached to the Apuzzo Aff. as Exhibits H and I, and cited as "[deponent name] Dep. p[page number]." Where a multi-day deposition was taken, the transcript is also identified by date. Exhibits from depositions are cited as "[production number]" and attached to the Apuzzo Aff. as Exhibits J through I. The "Revogas" issued by TAM clients terminating plaintiff are attached to the Apuzzo Aff. as Exhibit "R." The retainer agreements of the TAM clients are annexed as Exhibit S.

("TAM clients") made claims against TAM, the manufacturer of the aircraft Fokker, B.V., component manufacturers Northrop Grumman Corporation , Teleflex Controls Corp. and others (hereinafter, collectively "TAM Defendants"). In 1996, plaintiff contacted Speiser Krause to inquire as to their interest in representing TAM clients. FAC ¶8. After meetings and communications with plaintiff, Speiser Krause sent its representative to Brazil to meet with potential TAM clients. Plaintiff agreed to assist Speiser Krause in obtaining TAM clients, and in handling some of the Brazilian legal issues which required a Brazilian attorney.

On February 5, 1997, Gerard Lear, Speiser Krause's managing partner send plaintiff a fax for use in answering any inquiries made by potential TAM clients concerning Speiser Krause's legal fees. The text of the fax provides in full:

> I would like to confirm the proposed arrangement between our firm and the families of the victims of the TAM Fokker disaster of October 31, 1996. Our firm will charge the sum of 33⅓% for the handling of each such case. Of this fee, a total of 25% will be paid to Brazilian counsel for their services. We look forward to once again working actively with your office. Exhibit 1 to FAC (hereinafter the "Lear Fax").

On August 11, 1998, in response to offers of representation being made by other law firms, and at the request of TAM clients, Speiser Krause reduced its contingent fee to 25% of the amounts recovered. Exhibit 3 to FAC.

In the spring of 1997, Speiser Krause's representatives traveled to Brazil to be interviewed by potential TAM clients, and their local counsel. On May 23, 1997, Speiser Krause attorney Arthur Ballen wrote:

> This is to confirm our agreement that all participating attorneys who refer cases to us shall receive 10% of the net attorney fee.
>
> You are authorized to tell the referring attorneys of this arrangement and our firm stands behind this commitment. Exhibit 2 to FAC.

During the course of the following year, Speiser Krause was retained by 64 Brazilian TAM clients, most of whom were counseled by their own Brazilian lawyers. Guimaraes 10/7/05 Dep., pp.73-74, 11/2/05 Dep., p.152-153; PSIR #4. Of the 64 written retainer agreements, plaintiff's name appears, along with Speiser Krause, on 29. Apuzzo Aff. Exh S. Plaintiff is not licensed to practice law in the United States of America. Guimaraes 10/7/05 Dep., p. 10. None of Speiser Krause's attorneys are licensed to practice law in Brazil.

Acting under its retainers on behalf of its TAM clients, Speiser Krause instituted legal actions in the state courts of New York and California. Later, the California court dismissed the cases on *forum non conveniens* grounds, except stayed entry of its order of dismissal, pending settlement by the parties, or failure by the Brazilian courts to obtain jurisdiction over the TAM defendants. FAC ¶20. Speiser Krause retained the services of attorney Irineu Strenger to file a Brazilian legal proceeding on behalf of the TAM clients, against the TAM defendants. A. Ballen Dep. pp. 77-78. Plaintiff joined attorney Strenger in filing an action against the TAM defendants on behalf of 26 TAM clients. *Id.* Speiser Krause was not listed as co-counsel or in any other capacity on the 26 retainers concerning this engagement.

In January 2000, after several years of litigation against the underlying TAM Defendants, Speiser Krause was able to negotiate settlement offers from those parties. FAC ¶22. In order to accept those offers, Speiser Krause's TAM clients were required to have their settlements approved by the Brazilian courts. *Id.* On June 30, 2000 after these settlement offers were made, the regional court of Jabaquara, Brazil, in a parallel proceeding, issued a judgment against several TAM defendants (the "Jabaquara Judgment"). *See* FAC ¶24. It is undisputed that the monetary value awarded to the plaintiffs by the Jabaquara judgment exceeded the prior settlement offers obtained by Speiser Krause, and included a loser-pays attorney fee of 20%.

FAC ¶¶22-24.  The attorneys fees were principally awarded to plaintiff, and recited a value of

millions of Brazilian Reals.  FAC ¶24.  Evidently, as of this date, the Jabaquara judgment

remains unenforceable and uncollectible.[2]

Many of the TAM clients, against plaintiff's advice, elected to accept the negotiated

settlement offers.  FAC ¶25.  Plaintiff has conceded that he acted against the interests of the

TAM clients in connection with their decisions to accept the settlements.  Guimaraes 11/2/05

Dep., p.103.  Plaintiff also concedes that his actions in regard to the negotiated settlements were

against the interests of Speiser Krause.  *Id.*  Plaintiff's opposition to the acceptance of the

negotiated settlements did not stop there.  Instead, plaintiff embarked on a campaign to malign

the negotiated settlements and impugn Speiser Krause's character, in an effort to undermine

Speiser Krause's credibility with its clients.  As part of this campaign, plaintiff applied to the

Brazilian attorney general, asking that office to nullify the settlements Speiser Krause's clients

had accepted.  *Id.* at 103-104.  Among other things, plaintiff accused Speiser Krause of

"betraying" their clients, and engaging in criminal acts.  Guimaraes 11/17/05 Dep., p.74-75, and

Guimaraes Dep. Exh. 47 (Doc. No. RG-00362-364); Apuzzo Aff., Exhibit J; (Doc. No. RG

00413 in writing to the Jabaquara Judge, plaintiff referenced the "betrayal of Speiser Krause in

siding with Northrop [Gumman, an underlying defendant] against the Brazilians"); and Apuzzo

Aff., Exh J, (Doc No. RG 00386-00388 affidavit sworn by plaintiff in which he states, *inter alia*:

". . .Mr. Gerard R. Lear's Affidavit is, at least to Brazilian Ethical and Legal Standards of a Code

of Responsibilities of Attorneys, not only a plenty act of malpractice but, to be exact, an astonish

case of high legal treason in Court. . .").

---

[2]The reasons for the unenforceability of the Jabaquara judgment are beyond the scope of the space
limitations of this brief.  However, defendant is aware of at least four written decisions denying recognition of the
Jabaquara judgment.

## ARGUMENT

## I.     THE STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)  Summary judgment is an important procedure "to secure the just, speedy and inexpensive determination of [an] action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).  The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the non-moving party bears the burden of proof. *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2554. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an essential element of its case. *Id.*

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S. Ct. 1348, 1355 (1986).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356.  Rule 56(e) requires that the non-moving party "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256  (1986).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York*, 72

F.2d 1040, 1048 (2d Cir. 1995)(citing *Celotex*, 477 U.S. at 322-23). "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d cir. 1996)(citing *Anderson*, 477 U.S. at 247-48). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (1994). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990)(quoting *Anderson* 477 U.S. at 252).

"Summary judgment is appropriate if the evidence offered, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004). "Under traditional principles of contract law, questions as to what the parties said, what they intended, and how a statement by one party was understood by the other are questions of fact. . . ." *Ronan Associates, Inc. v. Local 94-94A-94B, International Union of Operating Engineers, AFL-CIO*, 24 F.3d 447, 449 (2d Cir. 1994). But once the facts are established, "the matter of whether or not there was a contract . . . is an issue of law." *Id.; see also Evolution Online Systems v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 (2d Cir. 1998).[3]

---

[3]Thus, even on a motion to dismiss, where a court must accept as true all of the factual allegations in a complaint, it is "not obliged to accept the allegations of the complaint as to how to construe such documents." *Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also International*

## II    ABSENT A MEETING OF THE MINDS, PLAINTIFF CANNOT ESTABLISH A CONTRACT.  ABSENT A CONTRACT, THERE CAN BE NO BREACH.

Plaintiff's contract claim to may not proceed while ignoring the plain, unambiguous meaning of the words used in uncontroverted documents before this Court, and by failing to give effect to the commercial relationship between the parties.  Guimaraes posits an interpretation of the Lear Fax and the parties' relationship that ignores the plain meaning of the words used, and seeks to deny the parties' subsequent admissions, actions, and writings.  An examination of the Lear Fax reveals that it bears none of the hallmarks of a contract.  Giving effect to the words set forth in the Lear Fax, and guided by logic, linguistics and grammar, Speiser Krause establishes that the "25%" to be "paid to Brazilian counsel for their services" was not a matter of clumsy phrasing nor of circumlocution; the appearance of that figure refers to the negotiating parameters within which Speiser Krause was willing to do business with plaintiff and "direct, individual and referring attorneys" at the time the fax was sent. Lear Aff. ¶¶5,6.  Because the record before this Court clearly establishes that the Lear Fax was simply a negotiations-stage communication, and that neither party believed, nor could they have reasonably believed a binding contract was formed thereby, Speiser Krause is entitled to summary judgment on plaintiff's breach of contract claim.

### A.    Prima Facie Requirements for Breach of Contract

To establish a claim for breach of contract, a plaintiff must prove: (1) that an agreement existed between it and defendant; (2) what the respective obligation of the parties were; (3) that the plaintiff performed its obligations under the agreement; (4) that the defendant breached the agreement by failing to perform its obligations; and (5) that the plaintiff suffered damages as a

---

*Audiotext Network, Inc. v. American Telephone and Telegraph Co.*, 62 F.3d 69, 71-72 (2d Cir. 1995).

result of the breach. *Paper Corp. of the United States v. Scholler Technical Papers, Inc.*, 807 F.Supp. 337, 341 (SDNY 1992). "Under New York law, no contract exists, nor may one be implied, where parties do not agree to its material terms." *Tower International, Inc. v. Caledonian Airways, Ltd.*, No CV-93-1122, 1996 WL 68531, at *4 (EDNY 1/26/96).[4]   In addition, there must be a showing of "a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound." *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926, 1999 WL 47239, at *15 (SDNY 2/3/1999) (*quoting Oscar Prods., Inc. v. Zacharius*, 893 F.Supp. 250, 255 [SDNY1995] ).

Mutual asset, or "meeting of the minds," is manifested by an offer followed by an acceptance of an arrangement having definite essential terms. *Harrison v. Grobe*, 790 F.Supp. 443, 447 (SDNY 1992), *aff'd* 984 F.2d 594 (2d Cir. 1993); *see also, Rosenbaum v. Premier Sydell, Ltd.* 240 A.D.2d 556, 557, 659 N.Y.S2d 52, 53 (2d Dept. 1997)("Before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained."); *Outrigger Construction Co v. Bank Leumi Trust Co.* 240 A.D.2d 382, 384, 658 N.Y.S.2d 394, 396 (2d Dept. 1997)(holding that an oral contract based on an "agreed price and reasonable value" was too vague and uncertain to constitute an enforceable contract); *see also Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir. 1987) (for an agreement to be enforced, "it must be sufficiently 'definite and explicit so [that the parties'] intention may be ascertained to a reasonable degree of certainty.")

---

[4] See also *First Investors Corp. v. Liberty Mutual Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998)(To prevail on a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract between the plaintiff and defendant; (2) performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach)

The offer must be accepted in accordance with its terms for a contract to result. *Brand v. 15 West 72nd Street Owners Corp.*, 117 Misc.2d 652, 655, 458 N.Y.S.2d 1011, 1013 (Sup. Ct. NY Cty. 1983). The acceptance, or manifestation of assent, must also be clear, unambiguous and unequivocal. *King v. King*, 208 A.D.2d 1143, 617 N.Y.S.2d 593, 594 (3d Dept. 1994). Thus, "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *166 Mamaroneck Ave. Corp v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 575 N.E.2d 104, 571 N.Y.S.2d 686, 687 (1991).

Where a defendant disputes plaintiff's allegation that an agreement was formed, the plaintiff "has the burden of establishing all essential terms of the alleged contract, with sufficient definiteness that the court can interpret its terms. Plaintiff must also establish that there was a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound." *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.* 874 F.Supp. 606, 611 (SDNY 1995); *cf. Cronk v. State*, 100 Misc.2d 680, 684, 420 N.Y.S.2d 113, 116 (Ct. Cl. 1979). Intent to contract is determined under an objective standard. *J. Baranello & Sons v. Hausmann Industries, Inc.*, 571 F.Supp. 333, 338-39 (EDNY 1983). Plaintiffs seeking to enforce alleged oral contracts bear even heavier burdens of proof. *See Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). To ensure that parties are not trapped into "surprise contractual obligations that they never intended," *(Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989)), more than agreement on each detail is required, there must be an overall agreement to enter into a binding contract. *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F.Supp. 606, 613 (SDNY 1995).

No contract is formed where there is no meeting of the minds or where the parties did not intend to be bound. *Trade & Indus. Corp. v. Euro Brokers Inv. Corp.*, 222 A.D.2d 364, 368-69, 635 N.Y.S.2d 227, 230 (1st Dept. 1995)(dismissing breach of contract cause of action based upon

preliminary agreement that clearly was not intended to be a binding agreement). "Under New York law, an agreement is enforceable if a meeting of the minds has occurred as to the contract's 'material terms'." *Major League Baseball Properties, Inc. v. Opening Day Productions, Inc.*, 385 F.Supp.2d. 256 (SDNY 2005) citing *Michael Coppel Promotions Pty. Ltd. v. Bolton*, 982 F.Supp. 950, 954 (SDNY 1997); see also *Four Seasons Hotels Ltd. v. Vinnik*, 127 A.D.2d 310, 317, 515 N.Y.S.2d 1, 6 (1st Dept. 1987); *Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d 495, 506 (SDNY2001)) ("If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.").

Price or compensation are material terms in a contract requiring definiteness. *Id. citing Cooper Square Realty, Inc. v. A.R.S. Mgmt. Ltd.*, 181 A.D.2d 551, 551, 581 N.Y.S.2d 50 (1st Dept. 1992). Moreover, a future agreement to agree on compensation is too indefinite for enforcement. *Id.* citing *Ellenberg v. Schneider*, 109 Misc.2d 1058, 1063, 441 N.Y.S.2d 581 (Sup.Ct. NY Cty. 1981); and *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109-10, 417 N.E.2d 541, 436 N.Y.S.2d 247 (1981) ("[I]t is rightfully well settled in the common law of contracts ... that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable.").

**B. The Parties Never Agreed on Fees or Responsibilities.**

Plaintiff attempts to cast the Lear Fax as evincing a "ratification" of the admittedly-unsettled fee-sharing discussions that were conducted in Key Largo, Florida in December 1996:

> Q. What was your understanding when you received this [the Lear Fax], what did this mean to you?
>
> A. Just like today, it was complimentary written evidence of our understanding which was left open in Key Largo, you know, well, depend, Renato, how many clients, let's see, we'll discuss this later, and then it's time to fix it.

Plaintiff 11/2/05 Dep. p. 162 l.19 - 25. Notwithstanding his admission of open terms, plaintiff attempts to view the Lear Fax as a definitive agreement:

Q. And at the time that these were signed by the clients, did you have an understanding that there was an agreement between yourself and Speiser Krause concerning the legal fees?

A. Yes, the letter.

Q. You had an understanding?

A. Yes.

Q. Did you have any understanding of the legal work that you would be required to perform for the clients pursuant to these retainer agreements?

A. Yes, I will be responsible for all Brazilian legal papers, actions, anything related with the Brazilian law will be under my duties.

Q. Did that include any action in Jabaquara?

A. No, that was not foreseen at that moment. That came later when they said Renato, we are going to sue Northrop here in California and be prepared for the next step because sure they will raise forum nonconveniens.

Plaintiff's 11/2/05 Dep. p. 148 l. 16 - p. 149 l. 13. However, just four days after receiving the allegedly-definitive Lear fax, plaintiff admitted uncertainty concerning the compensation term. In view of this uncertainty plaintiff wrote to Speiser Krause:

> "I would like to ask your understanding on my interpretation regarding the 'total of 25%. . . to Brazilian counsel for their service,' in view of three possible situations: ... I may accept a reasonable, fair division of this 25% portion between me and the other attorneys under your recommendation which may also include a portion of your 75% of the original 33% of the fee..." Apuzzo Aff., Exhibit L (Doc. No. RG-0021-22).

On February 19, 1997, plaintiff admitted more uncertainty concerning the allegedly definitive arrangement he seeks to read into the Lear Fax, again confirming that the compensation term had not been fixed:

> Still shocking with your saying of yesterday that now there is chance to you to retreat from your definitive letter of as early as February 5, signed by SKML-Gerard R. Lear - "to confirm the proposed arrangement . . for handling of each such case. . ." - on behalf of all families and their attorneys I respectfully urge you to consider the fact that in the last two and half weeks that latter, your retainer agreement (". . . to prosecute or settle all claims for damages. . . will file and pursue such actions as are necessary by whatever form of action you deem appropriate". . .) . . .plus a four-page letter from me explaining all the details of your commitment, fees, etc.; . . . So, in the verge of a desperate public situation - if you cancel your confirmation signed on February 5 about our arrangement - let me offer you some insights which in this critical hour may help your legal researchers and specialists in legal strategy... I even refuse to imagine the overwhelming, frightening problems I and other attorneys will have to face with our potential clients, (ethical and disciplinary charges, libel) and , of course, my own credibility - built along 35 years of professionalism, hard with the big guys who hate me (Mrs. Ballen knowns one of two of these cases including one against MasterCard on which the USDOJ Attorney General Janet Reno paid attention) - and preserved with the public by clearly confirming to them international, sophisticate, reliable legal services committed to this complex litigation and suddenly, after two and half weeks of big and deep, very deep activities toward this most essential goal for harmed, devastated people, giving them an unprecedented hope for Justice, both in wide public and in confidential meetings - I and other attorneys, who trusted me, may not offer your representation to these families anymore.
>
> Forgive me if I am too candid or straight, or if I even may appear a little rude in my broken English, but I am just trying to be only sincere in expressing my perception of the facts at this point. The attorneys of the families and I are firm in repeating what Gerard R. Lear wrote to us on February 5: "we look forward to once again working actively with your office" - and also hearing so at 12 noon today. Apuzzo Aff., Exhibit M (Doc. No. RG-0026-28).

Indeed, over a year later, on July 17, 1998, the parties were still holding discussions regarding plaintiff's compensation. As plaintiff wrote:

> To make the whole matter simpler, I am ask you, if I may, two numbers only: (1) how much do you want for your work as a consultant firm here against TAM; (2) out of the above percentage, how much do you deem would be a fair share for my work here as the attorney responsible for the said lawsuit against TAM in Brazil.
>
> If you and I can agree on these two numbers then I will write to the families saying that my fee will be zero for them, since my fee will be, also in the TAM case in Brazil, out of SK's fee as a consultant. Apuzzo Aff., Exhibit N, (Doc. No. RG-0082-83).

Of course, Speiser Krause remained under retainer by their TAM clients, so the whole concept of a "consulting" role was absurd. Speiser Krause did not respond. Two weeks later on August 1, 1998 plaintiff reiterated his demand:

> As I urged you on 7/17, your decision on a fee to be shared according (1) to the role of SK and (2) the role that I must play as lead attorney for such case in Brazil - is deeply needed ASAP.

In the same communication, plaintiff threatened to promise the TAM clients a reduced fee of "10% contingency":

> Any way, if SK and I can not make a decision at all on our fee and shares until the time of the meeting, I will have to respond to the families that I will charge 10% contingency and let SK own decision to a latter [sic] opportunity. Apuzzo Aff., Exhibit O (Doc No. RG-0085-0086).

Speiser Krause was compelled to respond, and did on August 7, 1998, warning plaintiff not to purport to enter into any "agreements" on its behalf:

> It is <u>urgent</u> that you not discuss with Brazilian attorneys Speiser Krause's potential 'consulting' agreement. It is simply not the proper moment to begin discussions of our firm's role as consultants on the cause of the crash. This is not our primary focus at this point - we still intend on obtaining settlement offers on behalf of the family members.
>
> We trust that you will do nothing further in terms of trying to solidify a consulting agreement and any sort of fee which our firm might charge for such service. Apuzzo Aff., Exhibit P (Doc No RG-0090-0091).

Further, as late as the year 2000, plaintiff has admitted to confusion or continuing discussions with Speiser Krause over TAM-related fees and division thereof. As plaintiff testified:

> Q. From the time that you had these clients sign retainers for the Brazilian actions, let's use the date of the retainer, October 1998, how much time was it before you had this discussion with [Speiser Krause attorney] Arthur Ballen over the coffee about sharing of fees?
>
> A. Well, that was 1998, we start to have a difference around 2000. Around two years, roughly, because not like its, it was a kind of strange talk, you know, Renato, you have to cooperate, you know, you don't have to worry about

everything, things like that. So it's not one day, it was a kind of ongoing game, say, I don't believe what they are going to, and so forth.

Q. But the conversation –

A. Two-and-a-half years.

Guimaraes Dep. 10/7/05, p. 82, 1.16 - p.83, 1. 7. Thus, it is clear that as late as two and a half years after the allegedly definitive compensation term was established by the Lear Fax, the parties were still discussing plaintiff's fees. In this circumstance, no reasonable jury could find a meeting of the minds.

Aside from his alleged agreement with Speiser Krause, plaintiff claims at least three other sources for TAM-related attorneys fees. The first, is a "voluntary" referral fee he believes he may or may not receive from Walter Lack, for referring Speiser Krause's TAM clients:

Q. So, if I understand you correctly, if Walter Lack gets an attorney's fee of one-third of the recovery, you are not going to receive any part of that one-third fee?

A. Not by contract, maybe voluntarily as a referee. But even as a referral, I have no contract at all, but the families shall pay me because I have a contract on 26 of them.

. . .

Q. And do you expect that because you referred the families to Walter Lack that he would give you some fee as a referral?

A. Well, only if it is voluntarily, Renato, you were a nice guy, this case, take a beer, here is your check. I will not knock on his door though, that is not our understanding.

Plaintiff's 11/2/05 Dep., p. 79, 1. 20 - p.81, 1.22.

Plaintiff's second separate compensation scheme concerns requests to the Brazilian courts to withhold any funds prior to any disbursal to the TAM clients so that plaintiff may first secure his fee. Under this scheme, plaintiff claims a right to 10% of the amounts that these clients have been awarded. Plaintiff argues that he has no obligation to share this fee with Speiser Krause.

Q. And is it correct that if you're successful in these claims [against TAM Clients in Brazil for attorneys fees], you're not going to share any of these fees with Speiser Krause; is that correct?

A. The 10 per cent, no, 10 per cent is only my exclusive as any other Brazilian attorney has, I don't know how much, each with their own clients for the central forum against TAM, nothing to do with California case.

. . .

Q. Are you suing Speiser Krause for legal fees related to the same work that you performed which forms the basis of your litigation against the clients?

A. . . . In the very complicated [case] I have only my share with Speiser Krause. In the domestic, 65 different cases against TAM in central forum, . . . I have 26. . . . I know [my fee in those cases] is 10 per cent. . . .

Plaintiff 11/2/05 Dep. p. 90, l. 24 - p.92, l. 12. Plaintiff admits to being paid "between $150,000 or $200,000, probably, less or more." in this manner, but has refused to produce documents concerning these payments. Plaintiff's 10/7/05 Dep. at p. 121, l. 22 -p. 122, l.8.

Plaintiff's third compensation scheme for TAM-related fees is currently being prosecuted in the California courts, in connection with the cases plaintiff referred to California attorney Walter Lack. A copy of plaintiff's Complaint in that matter is annexed to the Apuzzo Aff. as Exhibit Q. Under this scheme, plaintiff seeks to enforce the Jabaquara court's award of attorneys fees.[5] Plaintiff alleges a cause of action against the insurers for the underlying TAM defendants, for not recognizing his charging lien.

**C. The Lear Fax is Unambiguous and Does Not Support a Meeting of the Minds**

The dispute over plaintiff's breach of contract cause of action turns on the meaning and effect of the Lear Fax which definitively establishes that no binding contract was created between the parties. Read literally, this communication envisions future binding writings between Speiser Krause and its clients. Specifically, the Lear Fax envisions the entry into written retainer

---

[5]Defendant has demanded production of all documents concerning plaintiff's California legal proceeding. Plaintiff, however, has failed to produce any documents relative to this proceeding.

agreements, a course Speiser Krause subsequently undertook with its clients. This communication concerns only "proposed arrangement," rather than a binding commitment. The proposed "fee sharing," if any, was to occur between Speiser Krause and "Brazilian counsel," rather than, as plaintiff claims "Renato Guimaraes, Jr."

The Lear fax is unambiguous: it merely acknowledges the parties' prior discussions regarding potential prospective business, and a range from which plaintiff could earn some fee. Plaintiff's attempts to fabricate a final and binding contract – entitling him to 1/4 of Speiser Krause's fees - based upon this writing are unavailing. Plaintiff has not identified any other writing as evidencing an agreement between himself and Speiser Krause in regard to TAM-related fees. As plaintiff testified:

Q. . . . Speiser Krause has a written retainer that they gave to TAM clients, it was a retainer, you've seen this; correct?

A. Yes, along with me.

Q. This written retainer with the TAM clients, that's an agreement as to legal fees with those clients; is that correct?

A. Yes, among us.

. . .

Q. Did Speiser Krause ever tell you they would pay you some legal fee for your work whether or not they received any money from the TAM air disaster?

A. They would pay only contingent on receiving.

Q. Did they tell you that?

A. Yes. It's written there, ***that's the only contract Speiser Krause and Renato had***, if we, Speiser Krause and Renato, we are going to share, how much. Then come another letter just between us, clients don't have to pay, any rules here, just between Speiser Krause and Renato, we make the division, 75 [percent] to Speiser Krause, 25 per cent to Renato.

Q. You're referring to two documents, you said the first one was you agreed to share and then the second one was that it actually came up with the percentage, 75/25?

A. Yes.

. . .

MR. APUZZO: I just want to be very clear on this.

MR. RIGUERA: I understand. He's saying there's one written agreement with Speiser Krause about the fee sharing, then came the retainer agreements.

Q. What your attorney just stated; is that correct?

A. Yes, because I wanted to make sure how much would be my share.

Q. In other words, the first one is the written letter saying 75/25 to the Brazilian attorneys, all right?

A. Yes.

Q. And the second one is when they came to Brazil and made a retainer agreement with the clients that had your name on it?

A. Yes.

Plaintiff's 11/2/05 Dep. p. 61, l.10 to p.66, l. 6. (emphasis supplied).

Courts analyze the issue of whether an informal writing can support finding a binding contract under a test enunciated in *Teachers Insurance & Annuity Association v. Tribune Co.*, 670 F.Supp 491 (SDNY 1987) ("*Tribune"*), and later approved by the Second Circuit Court of Appeals in *Arcadian Phosphates, Inc. v. Arcadian Corp.* 884 F.2d 69, 71-72 (1989)("*Arcadian*"), and *Adjustrite Systems v. GAB Business Services*, 145 F.3d 543, 548 (1998) ("*Adjustrite*"). Under the five-part *Tribune* test, courts assay the parties' objective intent to be bound as manifested by their words, acts and conduct, rather than by their subjective hopes or intent. *Adjustrite* 145 F.3d at 548-549. Courts applying the *Tribune* test look to:

(1) the language of the agreement;
(2) the context of the negotiations;
(3) the existence of open terms;
(4) partial performance; and
(5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions.

*Arcadian* 884 F.2d at 72, *citing Tribune*, 670 F.Supp. at 499-503; *see also Adjustrite* 145 F.3d at 549, FN 6 (citing same). By applying the *Tribune* test to the present case, the Court will find that the Lear fax is not a binding preliminary agreement between the parties. As a result, plaintiff's breach of contract cause of action must be dismissed.

***Factor 1- Language of the Agreement***

"The first factor, the language of the agreement, is the most important." *Adjustrite*, *supra* 145 F.3d at 549 (quotation marks omitted). Here, the language of the Lear Fax strongly supports the conclusion that it was not a fully-binding preliminary agreement. The fax contains no words of contract or agreement. It instead refers to "proposed arrangements" and "working actively." The Lear Fax does not provide that the parties were bound by its terms. Neither the Lear fax nor the retainer agreements contain a signature line for plaintiff to manifest his own acceptance of the purported "offer." As plaintiff testified:

> Q. Let me make it easier. Was there a printed signature line on any of these documents for your signature?
>
> A. No, only accepted by Speiser Krause. . . .
> Plaintiff's 11/2/05 Dep. p. 148, l.2 - l.5.

While the Lear Fax contains no explicit reservation of Speiser Krause's right not to be bound, one could hardly expect to see such a reservation in such a short, informal communication. Moreover "[t]he fact that the [a]greement contains no express reservation of the right not to be bound is not dispositive." *Id.* 145 F.3d at 550 n.7. However, an implied reservation is strongly present. The "proposed arrangements" could only conceivably become binding on Speiser Krause once it was retained by a TAM client, who bore the right to approve any attorney-fee arrangement.

The language of the Lear fax also illuminates the universe of Brazilian counsel that Speiser Krause contemplated working with. Specifically, plaintiff's assertion that the term "Brazilian counsel" really refers to "him" is inherently implausible, contravenes fundamental principles of English grammar, and could not support any rational jury finding to that effect. Personal pronouns refer to the phrase of the clause by which they are immediately preceded. In his strained attempt to "accommodate" the unambiguous language of the Lear fax, Guimaraes unsuccessfully argues that perhaps Speiser Krause was under the mistaken impression that he was not a sole practitioner, but rather had multiple attorneys in his employ. As plaintiff testified:

Q. And when he uses the words "their services," did you have any question of the English use of the words ["]their services["]?

A. Much later, much later professor in America told me ["]counsel["] is a word is used singular and plural. I was not aware of that, so I said they think I have other employees in my office, but I have suspicion right from the beginning he was making a trap.

Q. [Y]ou thought that Speiser Krause assumed you had other employees in your office; is that correct?

A. That's the way to accommodate ["]their service[s"], ["]their["] is plural. And I start reading all kinds of grammar books to discover why they say ["]their["]. ["]Their["] should be another attorney. . . .

Q. Did [Speiser Krause] know at the time that you didn't have other employees?

A. . . . I'm sure I told them.

Q. You told them it was a solo practitioner?

A. Yes.

Guimaraes 11/2/05 Dep., p. 164, l. 14 - p. 165 l. 22.

A literal reading of the Lear fax does not support plaintiff's claim that "Brazilian counsel" refers solely to "Renato Guimaraes;" nor does it support plaintiff's claim that "their services" refers to "your services" or, more simply, to "you." In English the word "their" is the

third person plural possessive pronoun. The American Heritage Book of English Usage Ch.1, §52. ("pronouns, personal")(1996). The Lear Fax thus refers to plaintiff along with "direct, individual and referral attorneys." Lear Aff. ¶¶5,6.

Because the Lear's Fax is unambiguous, under New York law, its meaning must be gleaned solely from "within the four corners of the instrument, and not from extrinsic evidence." *British International Insurance Co. Ltd. v. Seguros La Republica, S.A.* 342 F.3d 78, 82 (2d Cir. 2003). Furthermore, the lack of ambiguity makes the meaning of the language, and consequently its effect on contract formation, a question of law proper for summary judgment. For the foregoing reasons, the first factor, weighs heavily in favor of finding that no binding agreement was created thereby.

***Factor 2 - Context of Negotiations***

The second factor of the *Tribune* test - context of the negotiations - militates strongly against finding a binding agreement in the Lear Fax. "New York follows the generally accepted rule that when the parties negotiating a proposed contract express an intent not to be bound until their negotiations have culminated in the execution of a formal contract, they cannot be bound until that event has occurred." *Jim Boulton Corp. v. William Wrigley Jr. Co*, 902 F.2d 1074, 1081 (2d Cir. 1990). "Because of this freedom to determine the exact point at which an agreement becomes binding, a party can negotiate candidly, secure in the knowledge that he will not be bound until execution of what both parties consider to be [a] final document." *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1986); *see also R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (noting that this rule helps "give parties the power to contract as they please"). Thus, "when a party gives forthright, reasonable signals that

it means to be bound only by a written agreement, courts should not frustrate that intent." *R.G. Group, supra*, 751 F.2d at 75. In this case, those final documents were the TAM client retainers.

That Speiser Krause was negotiating the terms of its retention with prospective TAM clients, and that the terms of those retentions were still very much in the negotiation stage is made immediately clear by the first sentence of the Lear fax. "I would like to confirm the proposed arrangement between our firm and the families of the victims of the TAM Fokker disaster. . ." (emphasis supplied). As is clear, this is nothing more than a preliminary discussion, encouraging Guimaraes to put prospective TAM clients in contact with Speiser Krause. Moreover, the proposal envisioned was between Speiser Krause and its prospective clients.

New York contract law does not recognize a breach of contract claim if a hoped-for contract fails to materialize. *See e.g. Aksman v. Xiongwei Ju*, 21 A.D.2d 493, 799 N.Y.S.2d 493, 495 (1st Dept. 2005)(a "letter of intent, which is clearly a preliminary non-binding proposal to agree, conclusively negates plaintiff's breach of contract claim"); *Inside Swing v. LeChase*, 236 A.D.2d 884, 653 N.Y.S.2d 474, 475 (4th Dept. 1997)(dismissing breach of contract claim where letter of intent supports only non-binding preliminary agreement to negotiate).

***Factor 3 - Open Terms***

The third factor – the existence of open items – also weighs heavily in Speiser Krause's favor. As set forth in *Tribune*, "There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." *Tribune*, 670 F.Supp. at 499. Plaintiff's Complaint, as well as his interrogatory responses have failed to identify any of the customary terms one would expect in an agreement of this type. As established above, the compensation

term wasn't fixed. In addition - any proposed fee-sharing arrangement would have to have been made known to the client. Plaintiff's resort to the most conclusory of descriptions concerning the services he was to or did provide is no more convincing. SIR#4.

In general, under New York law, no enforceable contract is formed where a material term of the contract is left for future negotiations. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1010 (2d Cir.1996). Compensation is a material term. *Major League Baseball Properties, Inc. v. Opening Day Productions, Inc.*, 385 F.Supp.2d. 256 (SDNY 2005). Thus, a purported contract that leaves the compensation term to be determined by future negotiations is "a mere agreement to agree" and is considered too indefinite to be enforceable. *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 840 (2d Cir.1993) (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 249 [1981] ); *see also Ellenberg v. Schneider*, 109 Misc.2d 1058, 1062-63, 441 N.Y.S.2d 581, 585 (Sup.Ct. Nassau Cty.1981). Even viewed in a light most favorable to plaintiff, the record before this Court establishes that the compensation term was not fixed by the Lear Fax.

First, although Lear's fax states that Speiser Krause would pay 25% of its fees on each such case to "Brazilian counsel," the fax contained no details concerning the number form, or means of dividing that 25% between such counsel. While Speiser Krause committed itself to paying 10% its fees to referring attorneys, Lear's fax did not provide a means by which the remaining 15% of the total 25% available would be divided among cooperating counsel, resulting in a definitive fee for plaintiff. This is true, and obviously so, because Speiser Krause could not have known nature or extent of the Brazilian legal required. Furthermore, as Lear reliably testified, it was impossible at that stage to know the *number* of Brazilian attorneys claiming to represent a given claimant. Lear 10/12/05 Dep. at p.68. *See Soya Processing Co. v.*

*Sirota*, 104 F.Supp. 428 (SDNY 1952) (a confirmation intended to be a memorandum of a prior oral agreement is not enforceable if it omits a material term)

Second, Lear's fax does not specify any sort of joint retention between plaintiff, Speiser Krause and the prospective TAM clients. One would reasonably expect such a provision if Lear's fax was meant to be a final, definitive and binding statement of intent to be bound. Third, Lear's fax does not specify that Guimaraes will be in charge of any (or even some) Brazilian proceedings (should those proceedings become necessary); it does not specify the forum in the United States in which Speiser Krause would bring suit. It is undisputed that Speiser Krause hired Professor Strenger to prosecute the Brazilian actions. A. Ballen Dep. at p. 78.

Additional open terms one would expect to see addressed in a binding agreement would include the parties' relative or proportional responsibilities for funding litigation expenses (these include, but are not limited to expert fees, local counsel fees, and filing fees, etc., etc.).

Finally, even if Lear's fax could be construed as a proposal to share fees with Guimaraes (or 'ratification of the discussions'), the arrangement would have to have been acceptable to, and approved by each TAM client. For, in the absence of such approval, no representation or fee-sharing could occur.

"In determining whether omitted terms are essential to a contract, New York courts adopt a flexible approach and look at the 'broad framework' of a contract." *Adjustrite, supra* 145 F.3d at 550 (internal citations omitted). Under plaintiff's conception, Speiser Krause was committing itself to provide 25% of the fees it hoped to earn in a complex, multinational litigation to a Brazilian sole practitioner who, by his own admission had only very limited aviation law experience. Guimaraes 10/7/05 Dep., pp.23-24.

***Factor 4 - Part Performance***

The fourth factor – partial performance of the alleged agreement – is neutral. While there is no dispute that Guimaraes spend - and continues to spend - time performing both legal and non-legal work in connection with various legal proceedings against the TAM defendants, there is simply no proof that such work was referable solely in regard to Guimaraes' alleged agreement with Speiser Krause. Indeed, very early on, Speiser Krause experienced difficulties coordinating their activities with Guimaraes. For example, at one point, plaintiff actually asked the Brazilian courts to dismiss the TAM client's actions, thinking that would give life to American jurisdiction in the cases. Guimaraes 10/7/05 Dep. at p. 160. Speiser Krause was required to inform plaintiff of the impropriety of this request. *Id.*

In addition, it is impossible to discern whether any of work Guimaraes alleges he performed was done in reference to the 25% agreement he claims was formed on the basis of Lear's February 5, 1997 letter, as opposed to as a referring attorney under the May 1997 letter sent by Arthur Ballen. Guimaraes' work could just as easily have been performing pursuant to his entry into the second set of retainer agreements with 26 Brazilian TAM clients. Significantly, Guimaraes testified that any attorneys fees he was to earn by virtue of these proceedings were to be "all his" and not split with Speiser Krause. Plaintiff 11/2/05 Dep. p. 90, l. 24 - p.92, l. 12.

Perhaps most significantly in the context of this case, it is an undisputed reality of Speiser Krause's contingency fee-based business that they do not get paid in the absence of recovery from the underlying defendants. Guimaraes was fully aware of this fact. Guimaraes 11/2/05 Dep., p.59. Any agreement between Speiser Krause and plaintiff would have implicitly relied on his cooperation to resolve the cases for the TAM clients, whether by suit, settlement or otherwise. However, in early 2000, after Speiser Krause had negotiated individual settlements on

behalf of its TAM clients, Brazilian court approval was necessary in order to process settlements. Id. at 98, FAC ¶22; Plaintiff made his disdain for the proposed settlements known, and refused to process the settlements, thereby abandoning Speiser Krause's clients. Id. at 99. Speiser Krause's clients were consequently forced to revoke plaintiff's power to represent them (issue "Revogas" in the Brazilian parlance), and hire Brazilian counsel for this purpose. In this regard, Guimaraes' certainly didn't comport himself as if he were laboring under a binding contract, and his actions are only consistent with finding that there was no binding agreement.

***Factor 5 - The "Proposed Arrangement" Contemplated by the Lear Fax is of the Sort Ordinarily and Necessarily Committed to Writing***

The fifth factor is whether the putative agreement is of the sort which is usually committed to writing. This factor also heavily favors Speiser Krause. Indeed the Code of Professional Responsibility requires contracts of the type alleged by plaintiff here, to be in writing. NY-DR § 2-107(A) provides that a lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of the lawyer's law firm, unless the division is in proportion to the services performed by each lawyer or, by a writing given the client, each lawyer assumes joint responsibility for the representation.

## III WHEN PLAINTIFF'S CONDUCT BECAME AVERSE TO THE INTERESTS OF SPEISER KRAUSE AND ITS CLIENTS, THE PLAINTIFF ABANDONED THEIR CAUSES, WAS DISCHARGED FOR CAUSE, AND FORFEITED HIS RIGHT TO ANY FEE.

Plaintiff's refusal to assist his clients in obtaining the settlements, once those clients made their wishes known to him, constitutes an abandonment. *Holmes v. Evans*, 129 N.Y. 140, 29 N.E. 233 (1891). The *Holmes* case laid the foundation for a long succession of cases that confirm that an attorney who abandons his or her client is not entitled to a fee. As a condition precedent to recovery under the alleged contract, a lawyer must show his own performance.

When a lawyer places his own interests in conflict with his clients', he is unentitled to any fee. *In Re Clarke's Estate*, 12 N.Y.2d 183, 237 N.Y.S.2d 694 (1962). *Clarke, supra*, involved an attorney who got a monetary kickback from a broker on an estate sale of property. The Court of Appeals reiterated the "fixed rule of law denying compensation in cases of divided loyalty of fiduciaries or their attorneys." 12 N.Y.2d at 188.

Here, at least 17 TAM clients were required to discharge plaintiff in light of his refusal to act in their best interests, including his failure to comply with their decision to accept the negotiated settlements. These Brazilian for-cause terminations are called "Revogas" and were filed along with the Brazilian court settlement applications. Apuzzo Aff., Exh. R (17 Revogas). Plaintiff contacted the Brazilian attorney general's office in an effort to thwart these settlements. Plaintiff's 11/2/05 Dep. at p. 98. Plaintiff was aware that his refusal to process the settlements in the Brazilian court was contrary to the expressed interests of the TAM clients. *Id.* at 101-102. Plaintiff was also aware that his actions in this regard were contrary to Speiser Krause's interests. *Id.* at p. 103-105. Based upon these undisputed facts and admissions, there is no issue that plaintiff was discharged by these clients for cause.

When a client has discharged his attorney for cause, the attorney is not entitled to any fee, contingent or in *quantum meruit*. *Poltronieri v. Talasco*, 11 A.D.2d 694, 204 N.Y.S.2d 613 (2d Dept. 1960), *aff'd* 9 NY2d 797, 215 A.D.2d 509 (1961)(attorney discharged for cause who did not diligently prosecute an action, denied any fee); *see also, Campagnola v. Mulholland Minion & Roe*, 76 N.Y.2d 38, 43-44, 555 N.E.2d 611, 556 N.Y.S.2d 239 (1990). In *Campagnola, supra*, the Court of Appeals held that as a matter of public policy, an attorney sued for malpractice by his client cannot offset his fee in the underlying personal injury action. "Where the discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific

retainer agreement." 76 N.Y.2d at 44. Where, as here, there is no factual dispute that the attorney was discharged for cause, the issue of a fee dispute between plaintiff and Speiser Krause must be summarily decided against the attorney discharged for cause. *Byrne v. Leblond*, 23 A.D.3d 640, __ N.Y.S.2d ___, 2006 WL 205063 (2d Dept. 2006). *Byrne, supra* holds that a fee dispute of a discharged attorney, if not discharged for cause, can elect immediate *quantum meruit* compensation, or await a contingent percentage recovery based upon a proportionate share of the work performed by that attorney on the whole case, taking into consideration the relative contributions of the lawyers. *See also*, *Oconnor v. Spencer (1977) Inv. Ltd. Partnership*, 8 Misc.3d 658, 798 N.Y.S.2d 888, 2005 Slip.Op. 25198 (NY Cty 2005).

## IV PLAINTIFF'S CONSTRUCTIVE TRUST CLAIM MUST FAIL AS A MATTER OF LAW

The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment, and restore legal title to one who, in equity, owns the res. *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 360 (2d Cir.1999); *Simonds v. Simonds*, 45 N.Y.2d 233, 380 N.E.2d 189, 193, 408 N.Y.S.2d 359 (1978); *Sharp v. Kosmalski*, 40 N.Y.2d 119, 351 N.E.2d 721, 723, 386 N.Y.S.2d 72 (1976); *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380(1919) (Cardozo, J.). Plaintiff's Fourth Cause of Action alleges that by accepting the proceeds of the settlements into its trust account or into an escrow account under its control, Speiser Krause undertook fiduciary duties in the handling of those funds to all who were entitled to a share of those funds. (FAC ¶14). Plaintiff has failed to allege, and cannot establish any fiduciary relationship in this case. As a result, the Fourth Cause of Action must fail.

### A. Plaintiff Failed to Demonstrate The Existence of a Fiduciary Relationship Between the Parties

Constructive trusts may not be imposed in the absence of a confidential or fiduciary

relation between the parties. *Rodgers v. Roulette Records, Inc.*, 677 F.Supp. 731, 738-39 (SDNY

1988).[6] By virtue of the alleged fee sharing agreements, Guimares and defendants stood in an

ordinary, arms-length commercial relationship. *Brasport, S.A. v. Hoechst Celanese Corp.*, 747

F.Supp. 199 (SDNY 1990)(Under New York law, a manufacturer has no fiduciary duty to its

exclusive sales agent). Purely commercial transactions do not give rise to a fiduciary

relationship. See *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 33 A.D.2d

766, 766, 306 N.Y.S.2d 599, 600 (1st Dept 1969), aff'd, 30 N.Y.2d 34, 281 N.E.2d 142, 330

N.Y.S.2d 329, cert. denied, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972).

Plaintiff claims that a fiduciary relationship exists because defendants collected money on

behalf of plaintiff in the form of attorneys fees for settlements. Specifically, plaintiff alleges that

"Speiser Krause's fiduciary duties included the duty to properly disburse those funds or instruct

the escrow agent to disburse those funds to clients and to co-counsel in accordance with the

contractual agreements in place pursuant to the original Retainer Agreements and the February 5,

1997, and May 23, 1997 letters..." (FAC ¶ 49)

This claim fails for many reasons. A fiduciary relationship exists "when confidence is

reposed on one side and there is resulting superiority and influence on the other." *U.S. v.

Chestman*, 947 F.2d 551, 568 (2d Cir.1991) (citations omitted). "A fiduciary relationship

involves discretionary authority and dependency," and is marked by "reliance, and de facto

control and dominance." *Id.* Relationships that are inherently fiduciary in nature include those

---

[6]New York law generally requires four elements for a constructive trust: (1) a confidential or fiduciary relationship, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment. *In Re First Central Financial Corp.*, 377 F3d 209 (2d Cir. NY 2004); *Simonds v Simonds*, 45 NY2d 233, 408 NYS2d 359, 380 NE2d 189 (1978); *Consumers Union of US, Inc. v State*, 5 NY3d 327, 806 NYS2d 99, 840 NE2d 68 (2005).

"between attorney and client, executor and heir, guardian and ward, principal and agent, trustee and trust beneficiary, and senior corporate official and shareholder." *Id.*

Here, plaintiff has failed to allege and cannot establish any fiduciary relationship between the parties. In the absence of the "de facto control and dominance" required to create a confidential or fiduciary relationship, plaintiff's constructive trust claim must fail. See *Chestman*, 974 F.2d at 568. (Absent dominance and influence there is no fiduciary relationship). See also *Better Benefits v. Protective Life Ins.*, 2004 WL 633730 (SDNY 2004) (citation omitted). Here, plaintiff is under no such burden of dominance or control. Indeed in this case plaintiff proudly exercised his opinion in contrast to the expressed wishes of Speiser Krause and inveighed against the settlements Speiser Krause had negotiated. Plaintiff's 11/2/05 Dep. at pp. 97-99.

In *Kurzman Karelsen & Frank, LLP v. Kaiser*, 283 A.D.2d 330, 726 N.Y.S.2d 404 (1st Dept. 2001), the appellate court reviewed the trial court's dismissal of all but the breach of contract claims which had been pleaded by the former law partner of an attorney who had recovered fees after settling a case he took with him upon leaving his former firm. The departing lawyer wrote to his former partners advising that he "will pay" a percentage "of any monies that come into my hands by reason of my contingency fee arrangement." *Kurzman, supra*, 283 A.D.2d at 330-331. When the departing partner received money by virtue of the contingent representation, but failed to pay the successor to his former partnership, his former partners sued, alleging breaches of fiduciary duties, violation of the New York Code of Professional Responsibility, conversion, accounting and a claim for money had and received. *Id.* The First Department upheld the trial court's dismissal of each cause of action, finding that the departing partner's written promise "was a future contingent promise to pay that could only give rise to a breach of contract claim." *Id.*

Simply stated, a fiduciary relationship does not arise out of a mere obligation to pay for services, even where it is alleged that those services are payable out of a specific fund. *Gerstel v. Workmen's Benefit Fund of U.S.A., Inc.*, 5 Misc.2d 1012, 159 N.Y.S.2d 705 (Sup. Ct., NY Cty. 1956), judgment modified on other grounds, 4 A.D.2d 937, 167 N.Y.S.2d 998 (1st Dept. 1957)see also *U.S v. Cassese*, 273 F.Supp.2d 481, 486 (SDNY 2003)(a fiduciary duty did not exist where the parties were merely "arms-length business partners"); *Waldman v. Englishtown Sportswear, Ltd.*, 92 A.D.2d 833, 460 N.Y.S.2d 552 (1st Dept. 1983) (that defendant "may owe money to plaintiff for compensation ... does not make that defendant a fiduciary"); *Nat'l Comm. on Observance of Mother's Day v. Kirby, Block & Co.*, 17 A.D.2d 390, 234 N.Y.S.2d 432 (2d Dept. 1962).

In this case, plaintiff simply alleges that Speiser Krause breached its fiduciary duty to disburse the funds in accordance with its contractual arrangements by failing and refusing to pay Guimaraes his share attorneys fees. FAC ¶ 50. As no other fiduciary relationship is identified, plaintiff has not satisfied the first requirement for the creation of a constructive trust. Collecting and remitting money due to a contractual counterparty does not make one a fiduciary. *Rosenblatt v. Christie, Manson & Woods Ltd.*, 2005 WL 2649027 (SDNY 2005).

Similarly in this case, Speiser Krause's collection of its own TAM fees does not make it plaintiff's fiduciary. In addition, never having received plaintiff's property, Speiser Krause could not have been acting as his fiduciary. *National Committee on the Observance of Mother's Day, Inc. v. Kirby, Block & Co.*, 17 A.D.2d 390, 234 N.Y.S.2d 432, 434 (1st Dept.1962).

The placement of the settlement funds into Speiser Krause's "trust account" or "escrow account under its control" (FAC ¶ 49), does not create a fiduciary relationship between plaintiff and defendant. Plaintiff is not claiming a percentage of the overall settlement funds which were

placed into trust accounts upon receipt, but rather "his share of the attorney fee for each family's

settlement", a percentage, he alleges of Speiser Krause's attorneys fees.  (FAC ¶ 50)  As the

Court is well aware, it is statutorily required and customary for attorneys to place settlement

funds into trust accounts before calculating and remitting disbursements. Speiser Krause's TAM

fees recovered from the overall settlement funds need not have been placed in trust accounts, as

defendants were under no special duty to segregate its fees recovered after all necessary

disbursements were made. See generally *In re Black & Geddes, Inc. (Dampskibsselskabet AF

1912 Aktieselskab v. Black & Geddes, Inc.)*, 35 B.R. 830, 836 (Bankr.SDNY1984).

Because there was no fiduciary relationship between the parties, plaintiff's constructive

trust claim must fail.

**B.     Plaintiff's Has an Adequate remedy at Law**

A constructive trust is not an appropriate remedy when the rights of the parties are

controlled by an alleged agreement. *In Re First Central Financial Corp.*, 377 F.3d 209 (2d Cir.

2004).  Therefore, plaintiff may not seek to impose a constructive trust based upon the alleged

fee-sharing agreement.  It is well-established under New York law that "equity will not entertain

jurisdiction where there is an adequate remedy at law." *Boyle v. Kelley*, 42 N.Y.2d 88, 91, 365

N.E.2d 866, 396 N.Y.S.2d 834 (1977). With respect to constructive trusts specifically, New York

courts have held that "[a]s an equitable remedy, a constructive trust should not be imposed unless

it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucci*, 117 A.D.2d 892, 498

N.Y.S.2d 902, 905 (3d Dept. 1986); see also *Evans v. Winston & Strawn*, 303 A.D.2d 331, 757

N.Y.S.2d 532 (1st Dept. 2003) ("Plaintiffs' claim for a constructive trust was properly dismissed

since plaintiffs do not claim that [defendant] is unable to repay plaintiffs' capital contributions,

and it does not otherwise appear that the legal remedy of damages will be inadequate.")

Plaintiff in its complaint bases its relief "in accordance with the contractual arrangements in place pursuant to the original Retainer Agreements and the February 5, 1997, and May 23, 1997 letters described above" (FAC ¶ 49). The Retainer Agreements and letters described above, and plaintiff's general assertion of defendants' "obligation under the fee sharing agreement" (FAC ¶ 31), which provide the basis for plaintiff's breach of contract claim, are plaintiff's assertion of its contractual right, or plaintiff's adequate remedy at law. Plaintiff has not alleged, and is incapable of establishing any set of facts under which money damages will not make plaintiff whole.

**C. Plaintiff Failed to Allege a Promise, Express or Implied, or a Transfer Made in Reliance on That Promise**

Plaintiff's complaint fails to allege a promise and transfer made in reliance on that promise. For this reason alone plaintiff's cause of action for a constructive trust is deficient. In order to establish entitlement to a constructive trust, a promise and a transfer of title or property made in reliance of that promise must be shown. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 351 N.E.2d 721, 386 N.Y.S.2d 72 (1976).

Plaintiff has not alleged that it had a prior interest in any property. *Security Pacific Mortg. and Real Estate Services Inc. v. Republic of Phillippines*, 962 F.2d 204 (2d Cir. 1992); *In Re Zelnik*, 271 A.D.2d 18, 709 N.Y.S.2d 400 (1st Dept. 2000); *Bontecou v. Goldman*, 103 A.D.2d 732, 477 N.Y.2d 192 (2d Dept. 1984); *Matter of Wells*, 36 A.D.2d 471, 321 N.Y.S.2d 200 (4th Dept. 1971) aff'd 29 N.Y.2d 931, 280 N.E.2d 95, 329 N.Y.S.2d 322 (1972)("A constructive trust has been imposed where property is parted with on the faith of an oral promise [citation omitted], but none may be imposed by one who has no interest in the property prior to obtaining a promise that such an interest will be given to him). Rather, plaintiff alleges that "Guimaraes has

performed legal services on behalf of the families of the victims of the TAM air disaster as requested by Speiser Krause and the clients" (FAC ¶ 36). Throughout the complaint plaintiff refers to "services" provided but fails to identify a specific property interest (FAC ¶ 35 et seq.) It is clear that plaintiff seeks to be compensated for its services, and not a property interest. As a result for this reason as well, plaintiff's constructive trust cause of action should be dismissed.

**V PLAINTIFF CANNOT ESTABLISH A CONVERSION CLAIM**

Plaintiff fails to state a valid claim for conversion. To state a conversion claim, the plaintiff must allege that (1) it had legal ownership or an immediate superior right of possession to specific identifiable personal property, and (2) defendants exercised unauthorized dominion over the property to the exclusion of the plaintiff's rights. *Shams v. Fisher*, 107 F.Supp.2d 266, 282 (SDNY 2000); *Vigilant Ins. Co. of America v. Housing Auth. of the City of El Paso, Texas*, 87 N.Y.2d 36, 637 N.Y.S.2d 342 (1995); *Aetna Casualty & Surety Co. v. Glass*, 75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept. 1980); *Rosa v. May Davis Group*, 152 F.Supp.2d 526 (SDNY 2001)("To withstand a motion to dismiss, a conversion claim must allege (1) an actionable wrong other than breach of contract caused plaintiff's injury; (2) plaintiff had ownership of the funds at the time they were converted; (3) defendant exercised unauthorized dominion over the funds; (4) the funds were specific and identifiable; and (5) the defendant was to have treated the funds in a particular manner but they were not so treated."); See *Citadel Management Inc. v. Telesis Trust, Inc.*, 123 F.Supp.2d 133, 148 (SDNY 2000).

Plaintiff's alleges that pursuant to the contractual arrangements and the settlements described above (FAC ¶ 55), within the last four years Speiser Kause collected attorney fees on all settlements (FAC ¶ 56), Guimaraes has demanded payment of his 25% share of the attorney fee that Speiser Krause has received on settlement funds, but Speiser Krause has refused to pay

Guimaraes his share (FAC ¶ 57), and that Speiser Krause has converted the funds for its own use and benefit.

**A. Plaintiff's Claim for Conversion is Merely a Restatement of his Contract Claim**

A plaintiff cannot make out a conversion claim when it is merely alleging that defendants owed plaintiff money pursuant to a contract between the parties. *Global Entertainment Inc. v. NY Telephone Co.*, 2000 WL 1672327 (SDNY 2000); *Interstate Adjusters v. First Fidelity Bank*, 251 A.D.2d 232, 234, 675 N.Y.S.2d 42, 44 (1st Dept. 1998)("A conversion claim cannot be based only on the allegation that a defendant received money and failed to remit payment to the plaintiff").

In the case at hand, plaintiff attempts to state a cause of action for conversion "[p]ursuant to the contractual arrangements" between the parties. (FAC ¶ 55). Thus, this claim is nothing but a restatement of its breach of contract claim. *Interstate Adjusters v. First Fidelity Bank*, 251 A.D.2d 232, 675 N.Y.S.2d 42 (1st Dept. 1998); *In re Vinogradova*, 270 B.R. 159 (Bankr. SDNY 2001); *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F. Supp.2d 133 (SDNY 2000)(An action for conversion cannot be maintained where the damages being sought are for a mere breach of contract); see *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir.1993); *Fraser v. Doubleday & Company, Inc.*, 587 F.Supp. 1284, 1288 (SDNY1984); *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 863, 521 N.Y.S.2d 917, 918 (1987); *National Committee on the Observance of Mother's Day, Inc. v. Kirby, Block & Co.*, 17 A.D.2d 390, 234 N.Y.S.2d 432, 434 (1st Dept.1962) ("What defendants received was the proceeds from the sales of their own goods, a part of which proceeds, when ascertained, they would owe to plaintiff.").

Plaintiff cannot have it both ways, claiming under the alleged "contract" and yet seeking tort recovery based upon the same "facts." This is precisely what plaintiff tries to do when he

alleges that "Speiser Krause's responsibilities included collecting the overall attorney fee. . . and remitting Guimaraes' share. . ." FAC ¶55. The existence of any such tort duty to compensate plaintiff is flatly negated by the alleged "contract." Mere restatement of a breach of contract claim absent independent facts sufficient to give rise to tort liability warrants dismissal. The case law confirms this common-sense conclusion *Yeterian v. Heather Mills N.V. Inc.*, 183 A.D.2d 493, 583 N.Y.S.2d 439, 440 (1st Dept 1992). For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some "wrong" that is separately actionable. See *Elma RT v. Landesmann Int'l Marketing Corp.*,2000 WL 297197 (SDNY 2000); see also *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995). To sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights. *Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1288 (SDNY1984); Eklund v. Pinkey, 27 A.D.3d 878, 810 N.Y.S.2d 547 (3d Dept 2006)("Plaintiffs were required to set forth more than vague and conclusory allegations of conversion and such charges had to be supported by factual assertions of specific wrongdoing").

Here, the "wrong" attributed to defendants does not differ in any way from the "wrong" alleged in plaintiff's contractual and quasi-contractual claims. Plaintiff's conversion claim, predicated on defendant's allegedly wrongful failure and refusal to pay Guimaraes' claimed share of contractual attorneys fees is merely duplicative of plaintiff's contract claim. See *Richbell Information Services, Inc. v. Jupiter Partners, L .P.*, 309 A.D.2d 288, 306, 765 N.Y.S.2d 575, 590 (1st Dept. 2003) ("We are not persuaded by [the] argument that conversion is a wrong qualitatively different from a mere breach of contract, so that it is not duplicative; such reasoning would resuscitate every redundant tort claim, regardless of its theory"); *Wolf v. National Council*

*of Young Israel*, 264 A.D.2d 416, 417, 694 N.Y.S.2d 424, 425 (2d Dept 1999); see also *Wechsler v. Hunt Health Sys., Ltd.*, 2004 WL 1801318 (SDNY 2004).

In *Kurzman Karelsen & Frank, LLP, supra*, the Appellate Division, First Department, dismissed plaintiff's conversion claim based on a fee-sharing agreement. The Court held:

> The alleged fee-sharing agreement confirmed by Kaiser, which used the phraseology "I will pay" to plaintiff a percentage "of any monies that come into my hands by reason of my contingency fee arrangement" with the client, was a future contingent promise to pay that could give rise only to a breach of contract claim. It did not constitute an assignment of a portion of the client's recovery, or convey a present interest in any specific fund. Thus, plaintiff's breach of fiduciary duty, accounting, conversion, and money had and received claims are either unfounded or duplicative of the breach of contract claim, and were properly dismissed. 283 A.D.2d 330, 726 N.Y.S.2d 404 (1st Dept. 2000)(internal citations omitted).

This is squarely on point to the allegations here, and as a result, plaintiff's conversion claim should be dismissed as a matter of law.

**B. Plaintiff had no Legal Ownership of Specifically Identifiable Property**

Speiser Krause is also entitled to judgment as a matter of law since plaintiff has not and cannot establish that he ever had ownership rights in the attorneys fees at issue. Conversion cannot be sustained absent "legal ownership or an immediate superior right of possession to specific identifiable property" *Aetna Casualty & Surety Co. v. Glass*, 75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept.1980). Defendants never held property belonging to plaintiff, since the *res* at issue is attorneys fees from the underlying settlements, a percentage of which plaintiff claims he is entitled to. Plaintiff fails to allege, and cannot establish facts demonstrating his title, possession, or control over any money or property allegedly converted by defendants. See *El-Khoury v. Karasik*, 265 A.D.2d 372, 697 N.Y.S.2d 299 (2d Dept 1999); *Galtieri v. Kramer*, 232 A.D.2d 369, 648 N.Y.S.2d 144 (2d Dept 1996); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dept.1982)(Similarly, commissions due to a sales

agent are not subject to conversion since the plaintiff has never had "ownership, possession or control of the money"). By alleging that defendants had an obligation to pay plaintiff what it was owed, and by failing to allege "ownership, possession, or control of the specific funds in question", plaintiff failed to allege a cause of action in conversion. *Stack Electric v DiNardi Construction Corp.*, 161 A.D.2d 416, 555 N.Y.S.2d 346 (1st Dept. 1990).

*Kurzman Karelsen & Frank, LLP, supra,* specifically held that a fee-sharing agreement did not "convey a present interest in any specific fund." 283 A.D.2d 330, 726 N.Y.S.2d 404 (1st Dept 2000). Plaintiff here has not identified the specific money to which it was entitled, and has failed to either allege or identify any injury it suffered apart from that caused by the alleged breach of contract. *K I C Chemicals, Inc. v. ADCO Chemical Co.*, 1996 WL 122420 (SDNY 1996); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dept. 1982); see also W. Page Keeton et. al, Prosser and Keeton on the Law of Torts §§ 15, at 91 n.30 (5th ed. 1984 & 1988 Supp.) ("the traditional rule is that money cannot be converted unless there is an obligation to return, specific, segregated monies"). Consequently, plaintiff can not maintain its claim that defendants converted its money.

**VI PLAINTIFF CANNOT ESTABLISH A VIABLE CLAIM FOR AN ACCOUNTING**

Plaintiff asks this Court to conduct a judicial accounting because "Speiser Krause was and is obligated as a fiduciary and otherwise to provide accountings to Guimaraes of the settlements that have been funded, the costs deducted before calculation of the fees, the amount of the fees, and the amount of Guimaraes' share of the fees, and to pay that share of the fees to Guimaraes" (FAC ¶ 63). "A party seeking an accounting must first establish four conditions: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in

some cases, a demand for an accounting and a refusal." *Pressman v. Estate of Steinvorth*, 860 F.Supp. 171(SDNY 1994); *Beck v. CIT Group/Credit Finance, Inc.*, 1998 WL 655547 (SDNY 1998); *Kastle v. Steibel*, 120 A.D.2d 868, 502 N.Y.S.2d 538, 539 (3d Dept. 1986); *Grossman v. Laurence Handprints-N.J., Inc.*, 90 A.D.2d 95, 455 N.Y.S.2d 852, 858 (2d Dept. 1982). The existence of a fiduciary relationship between plaintiff and defendant and wrongdoing on the part of the defendant are essential elements of the complaint where an accounting is demanded. *Id.* Here, plaintiff does not plead, and cannot establish any fiduciary or trust relationship entailing a duty owed to him by Speiser Krause.

As set forth in Point IV, *supra*, plaintiff has failed to establish a fiduciary relationship. The fiduciary relationship required for a constructive trust and an accounting does not differ. *See, eg, Olshansky v. Sutton*, 2001 WL 99857 (SDNY 2001); *Rodgers v. Roulette Records, Inc.*, 677 F.Supp. 731, 738-39 (SDNY 1988). Further, a fiduciary relationship does not arise simply out of an agreement to share attorney's fees. *Kurzman Karelsen & Frank, LLP v. Kaiser*, 283 AD2d 330, 726 NYS2d 404 (1st Dept 2000)(dismissing plaintiff's action for an accounting based on the fee-sharing agreement).

Plaintiff has similarly failed allege, and cannot demonstrate a wrongdoing by Speiser Krause. Plaintiff did not allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights. *See, Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1288 (SDNY1984).

Finally, plaintiff's Accounting claim must also be dismissed because plaintiff has an adequate remedy at law. As in *Kurzman Karelsen & Frank, LLP, supra,* here plaintiff's claims in equity should be dismissed because, "[t]he alleged fee-sharing agreement...could give rise only to a breach of contract claim." 283 AD2d 330, 726 NYS2d 404 (1st Dept. 2000). Although plaintiff

alleges that an accounting is proper "based on the complicated calculation necessary to determine the amount owed to Guimaraes" (FAC ¶ 65), the mere allegation that plaintiff may be unable to ascertain the amount of damages claimed does not entitle him to equitable relief by way of an accounting. *See Arnold Productions, Inc. v. Favorite Films Corp.*, 298 F.2d 540, 542-32 (2d Cir.1962)(accounting improper absent a fiduciary relationship and because plaintiff could discover "by means of familiar discovery devices" any information it needed to establish damages for its breach of contract claim); *Leveraged Leasing Admin. Corp., PacifiCorp. Capital, Inc.*, 87 F.3d 44, 49 (2d Cir.1996).

**Conclusion**

For all of the foregoing reasons defendant Speiser Krause prays for an order granting summary judgment in its favor.

Dated: New York, New York
September 22, 2006

Respectfully submitted,

By: ______________________
William J. Apuzzo (WA-1112)
Apuzzo & Chase
*Attorneys for Defendant*
800 Third Avenue - 8th Fl.
New York, NY 10022
(212) 297-0885

To: Richard E. Berman, Esq.
Berman, Kean & Riguera, P.A.
*Attorneys for Plaintiff*
2101 West Commercial Blvd., Ste. 2800
Ft. Lauderdale, FL 33309
(954)735-0000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

RENATO GUIMARAES, JR.,

Plaintiff,

**ECF Case**

-against-

No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

---------------------------------------------------------------X

***Attorney's Certificate of Service***

This is to certify that a copy of the foregoing has been sent by FedEx Overnight Delivery on this date to each of the following:

Richard E. Berman, Esq.
Berman, Kean & Riguera, P.A.
2101 West Commercial Blvd., Ste. 2800
Ft. Lauderdale, FL 33309
(954)735-0000

and that the foregoing was left with said overnight courier prior to the time for which that courier stops accepting overnight deliveries.

Dated: New York, New York
September 22, 2006

William J. Apuzzo (WA-1312)
Attorneys for Defendant
800 Third Avenue - 8th Floor
New York, NY 10022
Tel.: (212) 297-0885

**DEFENDANT-MOVANT'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

1.    Plaintiff, Renato Guimaraes, Jr., is a Brazilian Attorney.  First Amended Complaint at ¶1.

2.    At all times relevant to this litigation, plaintiff was a sole practitioner.  Guimaraes 11/2/05 Dep., p. 164, l. 14 - p. 165 l. 22.

3.    Defendant, Speiser Krause Nolan & Granito ("Speiser Krause") is a professional corporation engaged in the practice of law in the United States of America. First Amended Complaint at ¶2.

4.    Speiser Krause's practice consists primarily of aviation-related tort litigation. First Amended Complaint at ¶2.

5.    On October 31, 1996, a passenger jet operated by Transportes Aeres Regionais, SA airlines crashed killing 99 persons.  The aircraft was manufactured by Fokker, BV, a European company, and components of the aircraft were manufactured by Northrop Grumman Corporation, a United States Corporation. First Amended Complaint at ¶¶6-7.

6.    Subsequent to the air crash, plaintiff contacted Speiser Krause on behalf of several families of the victims aboard the flight ("TAM clients") for the purpose of pursuing damage claims in the United States against parties liable.  First Amended Complaint at ¶8.

7.  In December 1996, plaintiff met with Arthur Ballen, a Speiser Krause attorney, at his home in Florida.  First Amended Complaint at ¶9.

8.  At the meeting in Florida in December 1996, plaintiff and Arthur Ballen discussed the possibility of legal representation of the families of the victims of the TAM air crash.  First Amended Complaint at ¶9

9.  Plaintiff left the December 1996 meeting without an agreement with Speiser Krause regarding fee-division between himself and Speiser Krause in connection with the representation of any potential TAM clients.  Guimaraes 11/17/05 Dep., p.13.

10.  Plaintiff left the December 1996 meeting without an agreement with Speiser Krause regarding relative responsibilities concerning cooperating in representing families of the victims of the TAM air crash.  Guimaraes 11/17/05 Dep., p. 15.

11.  On February 5, 1997, Gerard Lear, a Speiser Krause attorney, faxed a letter to plaintiff.  A copy of this letter is attached as Exhibit 1 to plaintiff's Complaint herein, and is a true and accurate copy.  First Amended Complaint at ¶10, Exh.1.

12.  The text of Gerard Lear's February 5, 1997 fax refers to "Brazilian Counsel" and "their services."  First Amended Complaint at Exh. 1.

13.  The word "their" is a plural possessive pronoun.

14.    Speiser Krause agreed to represent TAM clients in connection with the TAM air crash pursuant to written retainer agreements. Apuzzo Aff., Exh. S.

15.    On May 23, 1997, Speiser Krause delivered a document to plaintiff in Brazil. A true and accurate copy of this document is annexed as Exhibit to the Complaint. First Amended Complaint at ¶14, Exh.2.

16.    Speiser Krause was retained by 65 Brazilian TAM clients to recover money damages on their behalf. First Amended Complaint at ¶16; Apuzzo Aff., Exh. S.

17.    On some of Speiser Krause's retainer agreements, plaintiff's name also appears. Apuzzo Aff. Exh. S; First Amended Complaint ¶16.

18.    On August 11, 1997, Speiser Krause reduced it's contingency fee under its retainers with its TAM clients from 33⅓% to 25%, by transmitting a letter to that effect. A copy of this letter is annexed to the Complaint as Exhibit 3, and is a true and accurate copy. First Amended Complaint at ¶16, 17, Exh. 3.

19.    Speiser Krause initiated lawsuits on behalf of its TAM clients in the State courts of New York and California. First Amended Complaint at ¶19.

20.    The California actions were consolidated. First Amended Complaint at ¶20.

21.     The consolidated California case was dismissed on *forum non conveniens* grounds, but
        entry of the order dismissing the case was stayed pending settlement or the outcome of
        parallel litigation pending in Brazil.  First Amended Complaint at ¶20.

22.     Following the issuance of the order of dismissal and simultaneous stay in the
        consolidated California case, Speiser Krause hired Dr. Ireneu Strenger, a Brazilian
        attorney, to file an action on behalf of its TAM clients in Brazil.   Arthur Ballen Dep., pp.
        77-78.

23.     Dr. Strenger and Mr. Guimaraes filed a complaint on behalf of the TAM clients in the 2d
        Civil Court of Regional Court III in Sao Paolo, Brazil.   First Amended Complaint at ¶21.

24.     In the early part of the year 2000, Speiser Krause negotiated with and received offers of
        settlement from the TAM defendants for its Brazilian TAM clients.  First Amended
        Complaint at ¶22.

25.     These settlement offers were subject to each family signing formal settlement documents
        and obtaining necessary approvals from the Brazilian courts.  First Amended Complaint
        at ¶22.

26.     On June 30, 2000, the Brazilian court rendered a judgment in the cases filed there.  First
        Amended Complaint at ¶24.  (The "Jabaquara judgment").

27.     The total value of the Jabaquara judgment exceeded $100,000,000. First Amended

        Complaint at ¶24.


28.     Despite the superior amount of the dollar value of the Jabaquara judgment to the

        settlement offers Speiser Krause had negotiated, and contrary to plaintiff's advice, many

        of Speiser Krause's TAM clients elected to accept the negotiated offers of settlement.

        First Amended Complaint at ¶25.


29.     Plaintiff attempted to nullify the accepted negotiated settlements, by reporting them to the

        Brazilian Attorney General as illegal. Guimaraes 11/2/05 Dep., p.103-104.


30.     Plaintiff accused Speiser Krause of criminality, disloyalty, and betrayal as concerns the

        TAM clients. Guimaraes 11/17/05 Dep., p.74-75; Apuzzo Aff. Exhs. J, K.


31.     Plaintiff refused to perform the legal services required in order for the TAM clients to get

        their settlements approved by the Brazilian court. Guimaraes 11/2/05 Dep., p.101-103.


32.     Plaintiff acted contrary to the objectives made known to him by the TAM clients, by

        refusing to assist them in processing their settlements by having them approved by the

        Brazilian court. Guimaraes 11/2/05 Dep., p.103.


33.     Plaintiff acted contrary to the objectives Speiser Krause made known to him when he

refused to finalize the settlements accepted by the TAM clients.  Guimaraes 11/2/05 Dep., p.103-105.

34.    Plaintiff never hired Speiser Krause to act as his attorney.

35.    Speiser Krause never acted as plaintiff's attorney.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

RENATO GUIMARAES, JR.,

Plaintiff,

-against-

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

-----------------------------------------------------------X

Case No. 05-CV-2210(DC)

**AFFIDAVIT OF GERARD LEAR**

State of Virginia )
County of Arlington ) ss.:

Gerard Lear, being duly sworn, deposes and says:

1. I am the managing attorney of Speiser, Krause, Nolan & Granito ("Speiser Krause"), defendant in this action, and I have personal knowledge of the facts herein stated. I submit this affidavit in support of Speiser Krause's motion for summary judgment.

2. Speiser Krause is a law firm specializing in aviation-related tort matters.

3. In 1996, our firm was contacted by Renato Guimaraes, Jr., a Brazilian attorney, for purposes of representing potential clients resulting from the crash of TAM flight 402, a Brazilian passenger jet in Brazil on October 31, 1996.

4. After some discussion between Mr. Guimaraes and other representatives of Speiser Krause, I was asked to prepare a document on the firm's letterhead so that Mr. Guimaraes could circulate it among potential clients and their local counsel. On February 5, 1997, I

faxed such a letter to Mr. Guimaraes.  The letter described a 33⅓% contingent fee that

Speiser Krause would be willing to receive from clients for providing legal services in

connection with the crash of TAM flight 402, and also stated that Speiser Krause would

pay up to 25% of our fee to Brazilian counsel for these potential clients.

5.    It has been my experience in foreign mass tort litigation, that a single tort victim can

generate several surviving family claimants, each of these having their own separate

counsel.  That is specifically why I used the words "their" and "counsel" in my February 5,

1997 fax.

6.    I did not send this fax to Mr. Guimaraes to "ratify" any fee-sharing discussions as has

been alleged in the Complaint.  At the time the fax was sent, we had no idea how many

clients would ultimately decide to retain our firm, nor did we know the amount of work,

if any, that would be required of Brazilian counsel.  By necessity, our discussions with

Mr. Guimaraes concerning his role, responsibilities, and fees were in flux.  Speiser

Krause never agreed to pay 25% of our legal fees in the TAM cases to plaintiff.

7.    We did pay Mr. Guimaraes' expenses when he requested reimbursement.  Early on, we

considered coming to some agreement with Mr. Guimaraes concerning compensation,

especially in cases where Mr. Guimaraes acted as local counsel.  However, when Mr.

Guimaraes stopped cooperating with our TAM clients, it became necessary to compensate

other Brazilian counsel for their work.

8. In 2000, when many of Speiser Krause's TAM clients accepted the settlement offers proposed by the defendants, their local counsel were required to apply to the Brazilian courts to obtain approval of the settlements. Mr. Guimaraes not only refused to assist these clients in processing the settlements, he also tried to convince the clients to reject the settlements. As a result, 17 TAM clients expressly discharged him and retained other counsel to complete the settlement process.

9. As of today, Mr. Guimaraes has convinced at least eight of Speiser Krause's TAM clients to discharge us, and to retain other U.S. law firms. These firms include Engstrom, Lipscomb & Lack. Those TAM clients have still not resolved their claims on this near 10 year anniversary of their losses.

10. I am also informed that plaintiff has claimed the existence of a fiduciary relationship between our firm and himself. Speiser Krause never represented Mr. Guimaraes in a legal capacity, and I am aware of no other fiduciary relationship being alleged or existing between Mr. Guimaraes and my firm.

WHEREFORE your deponent respectfully prays that the defendant's motion be granted in all respects, and for such other, further or different relief as to this court may seem just, proper or equitable.

Gerard Lear

Sworn to before me this 21st day of September 2006

Notary Public

My Commission Expires May 31, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

RENATO GUIMARAES, JR.,

Plaintiff,

-against-

No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

-----------------------------------------------------------X

State of New York )
County of New York ) ss.:

William J. Apuzzo, being duly sworn, deposes and says:

1. I am an attorney duly admitted to practice law before the United States District Court for the Southern District of New York. I am a partner at Apuzzo & Chase, attorneys for the defendant Speiser, Krause, Nolan & Granito, PC ("Speiser Krause"), in this matter. I submit this affidavit in connection with Speiser Krause's motion for summary judgment in this matter.

2. Discovery was completed on August 11, 2006.

3. Annexed hereto as Exhibit "A" is a true and accurate copy of the Amended Complaint of plaintiff Renato Guimaraes, Jr., ("Guimaraes") dated December 2, 2004.

4.      Annexed hereto as Exhibit "B" is a true and accurate copy of Speiser Krause's Answer in

this matter.

5.      Presently pending before this Court is Speiser Krause's motion to amend its Answer to

assert an additional counterclaim.

6.      Annexed hereto as Exhibit "C" is a true and accurate copy of Guimaraes' Reply to

Speiser Krause's counterclaim.

7.      Annexed hereto as Exhibit "D" are Speiser Krause's First Interrogatories of plaintiff.

8.      Annexed hereto as Exhibit "E" are plaintiff's Responses to Speiser Krause's First Set of

Interrogatories.

9.      Annexed hereto as Exhibit "F" is Speiser Krause's request to plaintiff for clarification of

his Interrogatory Responses.

10.     Annexed hereto as Exhibit "G" is plaintiff's Supplemental Responses to Speiser Krause's

First Set of Interrogatories.

11.     Annexed hereto as Exhibit "H" are relevant excerpts from the transcript of the deposition

of plaintiff, taken 10/7/05, 11/2/05, and 11/17/05.

12.     Annexed hereto as Exhibit "I" are relevant excerpts from the transcripts of the

        depositions of defendant's witnesses Arthur Ballen taken 10/11/05, and Gerard Lear

        taken 10/12/05.


13.     On May 19, 2005, Speiser Krause served plaintiff with its First Request for the

        Production of Documents.


14.     Annexed hereto as Exhibit "J" is a one page certified translation of a letter from plaintiff

        to the Brazilian judge, which plaintiff signed on 5/4/01, and was translated on 5/10/01.

        This document was produced by plaintiff in response to Speiser Krause's First Request

        for the Production of Documents bearing production number RG-00413.


15.     Annexed hereto as Exhibit "K" is a three page attorney's affidavit sworn to by plaintiff on

        2/6/01.  This document was produced by plaintiff in response to Speiser Krause's First

        Request for the Production of Documents bearing production numbers RG-00386-388.


16.     Annexed hereto as Exhibit "L" is a two page fax from plaintiff to Speiser Krause dated

        2/11/97.  This document was produced by plaintiff in response to Speiser Krause's First

        Request for the Production of Documents bearing production numbers RG-00021-22.


17.     Annexed hereto as Exhibit "M" is a three page fax from plaintiff to Speiser Krause dated

        2/19/97.  This document was produced by plaintiff in response to Speiser Krause's First

        Request for the Production of Documents bearing production numbers RG-00026-28.

18. Annexed hereto as Exhibit "N" is a two page fax from plaintiff to Speiser Krause dated 7/17/98. This document was produced by plaintiff in response to Speiser Krause's First Request for the Production of Documents bearing production numbers RG-00082-83.

19. Annexed hereto as Exhibit "O" is a two page fax from plaintiff to Speiser Krause dated 8/1/98. This document was produced by plaintiff in response to Speiser Krause's First Request for the Production of Documents bearing production numbers RG-00085-86.

20. Annexed hereto as Exhibit "P" is a two page fax from Speiser Krause to plaintiff dated August 7, 1998. This document was produced by plaintiff in response to Speiser Krause's First Request for the Production of Documents bearing production numbers RG-00090-91.

21. Annexed hereto as Exhibit "Q" is a certified conformed copy of plaintiff's own Amended Complaint dated May 10, 2005, and filed in California Superior Court, Los Angeles County. This Amended Complaint purports to allege causes of action against Northorp Grumman Corporation, United States Aircraft Insurance Group, and others concerning attorney's fees in the TAM matter.

22. Annexed hereto as Exhibit "R" are true and accurate copies of confidential writings from 17 TAM clients constituting "Revogas"(or revocation) of plaintiff's powers of attorney to act on their behalf.

23. Annexed hereto as Exhibit "S" are true and accurate copies of confidential retainers between Speiser Krause and its Brazilian TAM clients.

24. Submitted along with this motion is the Affidavit of Speiser Krause's Gerard Lear, sworn to 10/21/06.

25. Submitted along with this motion is Speiser Krause's Statement pursuant to Local Civil Rule 56.1.

WHEREFORE, your deponent respectfully prays that for an order dismissing plaintiff's complaint herein, and for such other, further and different relief as to this Court may seem just, proper or equitable.

William J. Apuzzo
(WA-1312)

Sworn to before me this 22nd day of September 2006.

Notary Public

NICOLE APUZZO FILANNINO
Notary Public, State of New York
No. 02FI5021975
Qualified in Westchester County
Commission Expires 12/27/2009

# EXHIBIT "A"

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

RENATO GUIMARAES, JR., an individual,

**SUMMONS IN A CIVIL CASE**

V.

CASE NUMBER: 04-22927 CIV-KING

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, f/k/a SPEISER KRAUSE, MADOLE & LEAR, a professional corporation.

MAGISTRATE JUDGE O'SULLIVAN

TO: (Name and address of defendant)

SPEISER KRAUSE in accordance with Federal Rule of Civil Proc. 4(h)
~~Miami Center - 10th Floor~~
~~201 S. Biscayne Blvd.~~
~~Miami, FL 33131-4327~~

c/o Gerard R. Lear
2300 Clarendon Blvd # 306
Arlington VA 22201

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Jose R. Riguera, Esq.
Berman, Kean & Riguera, PA
2101 W. Commercial Blvd., Ste 4100
Ft. Lauderdale, FL 33309
Tel. (954) 735-0000

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Clarence Maddox
CLERK

DATE

[signature]
(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

RENATO GUIMARAES, JR., an individual,

Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

CASE NO. 04-22927-CIV-KING

______________________________/

## AMENDED COMPLAINT

Plaintiff, RENATO GUIMARAES, JR. ("Guimaraes"), an individual, by and through his undersigned counsel, sues Defendant, SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR ("Speiser Krause"), and alleges as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff, Guimaraes, is an individual over the age of eighteen who is a citizen of Brazil. Guimaraes is an attorney in Brazil.

2. Defendant, Speiser Krause is a professional corporation which at all material times was engaged in the practice of law in the State of Florida with an office in Miami, Florida. Speiser Krause professes to have expertise and extensive experience in the litigation of aircraft crash disasters, including but not limited to foreign aircraft crash disasters.

3. This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

4. This Court has personal jurisdiction over Defendant, Speiser Krause pursuant to the Florida Long-Arm Statute, §48.193(1)(a), Florida Statutes because at all times material to this action Speiser Krause was operating, conducting, engaging in, or carrying on a business or business venture in this state or had an office or agency in this state. Specifically, Speiser Krause, conducted business in Florida through its licensed attorneys practicing from its Miami, Florida office.

5. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because jurisdiction of this action is founded only on diversity of citizenship and Defendant, Speiser Krause, resides in this judicial district.

**General Allegations**

6. On October 31, 1996, an aircraft operated by Transportes Aereos Regionais, S.A. Airlines ("TAM") departing from Sao Paulo, Brazil, and bound for Rio de Janeiro, Brazil, crashed approximately 24 seconds after take off, killing 99 people. This event is hereinafter referred to as the "TAM air disaster."

7. The aircraft was manufactured by Fokker, B.V. ("Fokker"), and included as a component part a thrust reverser manufactured by Northrop Grumman Corporation ("Northrop") in the State of Florida. Investigating authorities determined that the crash resulted from the improper opening of the thrust reverser on take off, which in turn reduced the amount of thrust to a level

below that needed for a successful take off. TAM, Fokker, and Northrop are collectively referred to herein as "the underlying defendants."

8. Guimaraes, who is a distinguished attorney in Brazil, contacted Speiser Krause on behalf of several families of victims who died in the TAM air disaster, for the purpose of associating with Speiser Krause in pursuing litigation in the United States against TAM, Northrop, Fokker, and any other parties that could be legally liable for the TAM air disaster.

9. During December 1996, Guimaraes and his son attended a two-day meeting in Key Largo, Florida, at the home of Arthur E. Ballen, Esq., a member of Speiser Krause. During said meeting, Guimaraes and Mr. Ballen (on behalf of Speiser Krause) discussed in detail the possibility of a fee-sharing arrangement between Guimaraes and Speiser Krause in connection with the legal representation of the families of victims of the TAM air disaster. During this extensive meeting, Guimaraes and Speiser Krause reached an understanding with regard to the parties' respective responsibilities in representing the families under the fee-sharing arrangement. Furthermore, the parties discussed the fees to be charged by Speiser Krause and Guimaraes in connection with said representation.

10. Pursuant to the foregoing understanding, Guimaraes returned to Brazil and immediately commenced work on the case in Sao Paolo, Brazil and began signing up clients in accordance with the fee-sharing agreement discussed by the parties.

11. On February 5, 1997, Gerard R. Lear, Esq., another member of Speiser Krause, faxed a letter to Guimaraes in Brazil ratifying the agreement reached between Guimaraes and Speiser Krause during the Key Largo, Florida meeting and confirming that Speiser Krause and

Guimaraes would be entitled to a contingent fee of 33 1/3% for the handling of each such case, with any such fee to be divided 75% to Speiser Krause and 25% to Guimaraes. A copy of Speiser Krause's February 5, 1997 letter is attached hereto and incorporated herein by reference as Exhibit "1."

12. Pursuant to the parties' agreement, Guimaraes' responsibilities were to include acting as a liaison with the families of the victims in Brazil, translating legal documents, explaining legal strategies to the families and their direct, individual and referral attorneys in Brazil, assisting in gathering any facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian press on legal matters relating to the crash, and handling any collateral legal proceedings in Brazil required to support the United States litigation that Speiser Krause would prosecute.

13. The parties agreed that Speiser Krause would handle the primary litigation against Northrop and other responsible parties in an action to be filed by Speiser Krause in Orange County, California, and that Guimaraes would handle any ancillary litigation to be filed in Brazil to support the main case in the United States.

14. On May 23, 1997, Guimaraes and Speiser Krause augmented their contract with a further written agreement stating that attorneys referring additional families of TAM air disaster victims to Speiser Krause would be compensated by payment of 10% of the net attorney fees. Guimaraes and Speiser Krause agreed that although said 10% referral fee was to be calculated on the overall attorney fee, it was to come out of Speiser Krause's share of the fees. A copy of Speiser Krause's May 23, 1997, letter confirming this additional agreement is attached hereto

FEB-10-2005 14:02 SPEISER KRAUSE 7035227905 P.19/35

and incorporated herein by reference as Exhibit "2."

15. Pursuant to foregoing agreement, beginning in March, 1997, and continuing throughout 1997, Guimaraes and Speiser Krause obtained Retainer Agreements from a total of sixty-five (65) families of the victims of the TAM air disaster, said families to be represented jointly by Guimaraes and Speiser Krause in accordance with the fee-sharing agreement.

16. These Retainer Agreements originally listed Speiser Krause and Guimaraes as co-counsel for the litigation at the agreed rate of 33 1/3%. However, at Speiser Krause's insistence, and in order to meet competition from other attorneys seeking to represent families of the victims of the crash, Guimaraes and Speiser Krause subsequently agreed to represent the clients at a reduced fee of 25%.

17. Thus, on August 11, 1997, Speiser Krause prepared a letter notifying all clients that the overall attorney's fee would be reduced from 33-1/3% to 25%. A copy of the Speiser Krause letter notifying all clients of this reduction is attached hereto and incorporated herein by reference as Exhibit "3."

18. Despite this reduction in the overall attorney's fee, Guimaraes and Speiser Krause did not effect any change in the allocation of the fee between themselves. Therefore, Guimaraes was at all times entitled to receive 25% of any attorney's fee received by Speiser Krause in connection with the representation of families of the victims of the TAM air disaster.

19. Speiser Krause eventually initiated litigation against Northrop and others in the Orange County Superior Court for all the families who had signed Retainer Agreements, except for one family, Berliner, which sued only in New York.

FEB-10-2005 14:02 SPEISER KRAUSE 7035227905 P.20/35

20. Sixty-three cases were consolidated with the lead case, Andrews, et al. v. Northrop Grumman Corp., Case No. 783990. However, the Court in the Orange County case stayed all of those cases except the Andrews case itself on grounds of *forum non conveniens*, and ordered the plaintiffs to file their actions in Brazil. The Court ruled that the cases would only proceed in California if the Brazilian court declined jurisdiction or if Northrop did not litigate as a good faith defender according to the Brazilian law and judicial decisions.

21. Following the stay of the Orange County action, and with Guimaraes as lead counsel, the families who had signed Retainer Agreements with Guimaraes and Speiser Krause filed suit against Northrop and others in the 2nd Civil Court of Regional Court III in Sao Paulo as Case No. 1,509/98. The Brazilian court accepted jurisdiction and that case was litigated in that jurisdiction by Guimaraes, with no involvement by Speiser Krause.

22. In or about January 2000, only a few months before judgment was rendered by the Brazilian court, Speiser Krause reached a global settlement (the "Global Settlement") with the underlying defendants for all cases except Andrews and Berliner in the total amount of $40,402,778, subject to each family signing formal settlement documentation and obtaining the necessary approvals from the Brazilian courts. Speiser Krause allocated the total amount of the settlement among the settling families.

23. In addition, the Andrews case settled separately in 2001 for $6,500,000, and the Berliner case settled separately with Fokker, B.V. only for approximately $3,000,000.

24. On June 30, 2000, the Brazilian court rendered a judgment in the case filed there (the "Brazilian Judgment"). At then current exchange rates, the Brazilian court awarded each family

$1,111,111.11, plus 2/3 of the last annual salary earned by each decedent from the date of the accident until that decedent would have been 65, plus a 20% contempt of court penalty against Northrop for failing to post a bond that the Court had required, plus another 20% for attorneys fees. The total value of the Brazilian Judgment at then current exchange rates was over $100,000,000.

25. Despite the issuance of the Brazilian Judgment, and contrary to the advice of Guimaraes, many of the families jointly represented by Guimaraes and Speiser Krause elected to accept the Global Settlement and have been paid the share of the settlement that Speiser Krause allocated.

26. All conditions precedent to the institution of this action have been performed, excused, or waived.

27. Guimaraes has retained the undersigned law firm and is obligated to pay said firm a reasonable fee for its services.

**COUNT I**
**<u>Breach of Contract</u>**

28. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

29. Guimaraes performed all obligations on his part to be performed in connection with the fee-sharing agreement with Speiser Krause. Specifically, Guimaraes provided liaison services as necessary during the process of procuring Retainer Agreements from the families and prosecution of the case in the United States, and Guimaraes prosecuted the case in Brazil when Speiser Krause lost the *forum non conveniens* motion in California. Guimaraes was instrumental

in the result obtained, as the prosecution of the case in Brazil, in which he acted as lead counsel, enabled Speiser Krause to reach the Global Settlement. Accordingly, Guimaraes has earned his 25% share of the overall 25% attorney fee paid to Speiser Krause as to all families who have accepted the Global Settlement.

30. Guimaraes has repeatedly demanded payment from Speiser Krause of his share of the attorney's fee for the cases that have settled.

31. Speiser Krause has breached its obligation under the fee-sharing agreement by failing and refusing to pay Guimaraes his share of the attorneys fee.

32. In further breach of the agreement, and as a means of justifying or supporting its non-payment to Guimaraes, Speiser Krause unilaterally revised the first page of the Retainer Agreement of several clients who executed the 25% fee Retainer Agreements by deleting any reference to Guimaraes as co-counsel. Thus, some Retainer Agreements reflect Guimaraes and Speiser Krause as co-counsel with a 33-1/3% fee, while others reflect only Speiser Krause as counsel at a 25% fee. At least one Retainer Agreement reflects Guimaraes and Speiser Krause as co-counsel with the fee changed by hand from 33-1/3% to 25%.

33. Guimaraes has been damaged as a direct and proximate result of Speiser Krause's breach of the agreement. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

**COUNT II**
**Quantum Meruit**

34. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 10 and 15 through 27 above as if fully set forth herein.

35. In or about December 1996, Speiser Krause requested that Guimaraes assist it in representing the families of victims of the TAM air disaster by acting as a liaison with the families of the victims in Brazil, translating legal documents, explaining legal strategies to the families and their direct, individual and referral attorneys in Brazil, assisting in gathering any facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian press on legal matters relating to the crash, and handling any collateral legal proceedings in Brazil required to support the United States litigation that Speiser Krause would prosecute.

36. Guimaraes has performed legal services on behalf of the families of the victims of the TAM air disaster as requested by Speiser Krause and the clients.

37. Speiser Krause and the clients jointly represented by Guimaraes and Speiser Krause substantially and materially benefitted from the services which Guimaraes performed on their behalf and at their request.

38. Guimaraes' services as described herein were constantly rendered over an extended period of time.

FEB-10-2005 14:02 SPEISER KRAUSE 7035227905 P.24/35

39. Speiser Krause impliedly promised to pay Guimaraes the reasonable value of the services rendered by Guimaraes in connection with the representation of the clients.

40. Guimaraes has been damaged as a direct and proximate result of Speiser Krause's actions. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

41. Speiser Krause will be unjustly enriched at Guimaraes' expense if Speiser Krause is not required to pay Guimaraes the reasonable value of the services described herein.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

**COUNT III**
**Unjust Enrichment**

42. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

43. Guimaraes conferred a benefit upon Speiser Krause by performing the legal services on behalf of the families of the victims of the TAM air disaster as described herein.

44. Speiser Krause appreciated the benefit conferred upon it by Guimaraes.

45. Speiser Krause's acceptance of the services performed by Guimaraes without compensating Guimaraes would be inequitable under the circumstances.

46. Guimaraes has been damaged as a direct and proximate result of Speiser Krause's actions. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

47. Speiser Krause will be unjustly enriched at Guimaraes' expense if Speiser Krause is not required to pay Guimaraes the reasonable value of the services described herein.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

## COUNT IV
## Constructive Trust Based on Breach of Fiduciary Duties

48. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

49. In accepting the proceeds of the settlements into its trust account or into an escrow account under its control, Speiser Krause undertook fiduciary duties in the handling of those funds to all who were entitled to a share of those funds. Speiser Krause's fiduciary duties included the duty to properly disburse those funds or instruct the escrow agent to disburse those funds to the clients and to co-counsel in accordance with the contractual arrangements in place pursuant to the original Retainer Agreements and the February 5, 1997, and May 23, 1997 letters described above.

FEB-10-2005 14:02 SPEISER KRAUSE P.26/35

50. Speiser Krause breached its fiduciary duty to disburse the funds in accordance with those arrangements by failing and refusing to pay Guimaraes his share of the attorney fee for each family's settlement, and instead keeping Guimaraes' share of the attorneys fee for itself.

51. As a direct and proximate result of Speiser Krause's breach of its fiduciary duties as described above, Speiser Krause holds Guimaraes' share of the fee for each settlement as a constructive trustee, and is obligated to pay over those fees to Guimaraes. Guimaraes is entitled to 25% of any fees collected by Speiser Krause on those settlements.

52. The acts of Speiser Krause as described herein were done with malice, oppression, fraud and ill will toward Guimaraes, with the intent to vex, injure and annoy Guimaraes, and with a conscious disregard of Guimaraes's rights.

53. Guimaraes has been damaged as a direct and proximate result of Speiser Krause's breach of its fiduciary duties. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, punitive damages, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

**COUNT V**
**Conversion**

54. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

55. Pursuant to the contractual arrangements and the settlements described above, Speiser Krause acted on behalf of Guimaraes in collecting Guimaraes' portion of the attorney fee due as a result of the settlement funds paid by or on behalf of the underlying defendants. Speiser Krause's responsibilities included collecting the overall attorney fee out of the specific settlement funds received and remitting Guimaraes' share of those specific funds to Guimaraes.

56. Within the last four years, Speiser Krause collected attorney fees on all settlements funded by or on behalf of the underlying defendants.

57. Guimaraes has demanded payment of his 25% share of the attorney fee that Speiser Krause has received on settlement funds collected for the TAM air disaster victims, but Speiser Krause has failed and refused, and continues to fail and refuse, to pay Guimaraes his share of the attorney fee derived from these settlement funds.

58. Speiser Krause has intentionally concealed from Guimaraes the identities of the specific families for whom Speiser Krause has collected settlement funds, the exact amounts collected, and the dates on which those funds were collected and on which the fees paid on those collected settlement amounts were disbursed, all with the intent of depriving Guimaraes of his fee and the information on which to base collection of his fee. Speiser Krause has repeatedly denied Guimaraes' requests for information concerning the settlements. To prevent Guimaraes from

learning that information, Speiser Krause has circumvented plaintiff by retaining separate counsel in Brazil to secure the necessary court approvals of the settlements. That attorney has gone as far as issuing a death threat to plaintiff to bar plaintiff from obtaining information concerning the specifics of which settlements funded and when.

59. Speiser Krause has converted the funds belonging to Guimaraes for its own use and benefit.

60. Guimaraes has been damaged as a direct and proximate result of Speiser Krause's conversion of Guimaraes' funds. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

61. The acts of Speiser Krause as described herein were done with malice, oppression, fraud and ill will toward Guimaraes, with the intent to vex, injure and annoy Guimaraes, and with a conscious disregard of Guimaraes's rights.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, punitive damages, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

FEB-10-2005 14:03 SPEISER KRAUSE

COUNT VI
<u>Accounting</u>

62. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

63. At all times mentioned herein, by reason of its undertaking pursuant to the fee-sharing agreement and promises described above to collect the settlement funds and to receive the overall attorney fees and disburse plaintiff's share to Guimaraes, Speiser Krause was and is obligated as a fiduciary and otherwise to provide accountings to Guimaraes of the settlements that have been funded, the costs deducted before calculation of the fees, the amount of the fees, and the amount of Guimaraes' share of the fees, and to pay that share of the fees to Guimaraes.

64. Within the last four years, settlements negotiated by Speiser Krause for families of the victims of the TAM air disaster have been approved and funded, and defendant has calculated and disbursed the costs and attorney fees that have come due as a result of those settlements. The calculation of the amount due is so complicated as to make an ordinary legal action demanding a fixed sum impracticable, in that the total settlement amount of $40,402,778 must be allocated to individual families or claimants, only those families or claimants who have obtained court approval in Brazil may receive settlement funds, litigation costs must be deducted from each recipient's share, the attorney fee must be calculated on that share, and then plaintiff's 25% of the attorney fee must be calculated. Guimaraes does not have access to much of the information necessary to perform these calculations, which is in the sole possession of Speiser Krause.

65. Because of the complicated calculation necessary to determine the amount owed to Guimaraes, Speiser Krause's sole possession of the information needed for that determination, and Speiser Krause's undertaking of the fiduciary obligation to disburse the funds to those entitled, including the attorneys, Guimaraes does not know the exact amount of money due to him from Speiser Krause, and that sum cannot be ascertained without an accounting by Speiser Krause of the settlements that have funded and the costs and attorney fees thereon. Guimaraes is informed and believes that the amount owed exceeds the jurisdictional limit of this Court and could be as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

66. Guimaraes has demanded that Speiser Krause account to Guimaraes for the settlements funded and for Guimaraes' share of attorney fees on those settlements. Speiser Krause has refused, and continues to refuse, to render the accounting and to pay Guimaraes his share of the attorney fees.

WHEREFORE, Plaintiff, Guimaraes demands judgment for an accounting of the attorney fees owed to him by Speiser Krause on the settlements by families of victims of the TAM air disaster which have funded, and for payment over to Guimaraes of the amount determined to be owed by that accounting, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

FEB-10-2005 14:03 SPEISER KRAUSE 7033527905 P.31/35

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

**DEMAND FOR JURY TRIAL**

Guimaraes demands a trial by jury on all issues triable by a jury. Dated this 2 day of December, 2004.

**BERMAN, KEAN & RIGUERA, P.A.**
2101 W. Commercial Blvd.
Suite 4100
Fort Lauderdale, FL 33309
Telephone: (954) 735-0000
Facsimile: (954) 735-3636

By: ______________________
Richard E. Berman
Florida Bar No.: 254908
Jose R. Riguera
Florida Bar No.: 860905

\\server-01\rebdata\Guimaraes, Renato\1147-001\Style\3605.wpd

FEB-10-2005 14:03 SPEISER KRAUSE 7035227905 P.32/35

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA SUITE 1080
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2436
(972) 404-1401 FAX: (972) 404-8707

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 376-4400 FAX: (305) 376-0337

February 5, 1997

VIA FACSIMILE 011 55 19 239 4495

Renato Guimarães, Esq.
Campinas, Brazil

RE: TAM Fokker 100 accident in Sao Paulo, Brazil on October 31, 1996

Dear Mr. Guimarães:

I would like to confirm the proposed arrangement between our firm and the families of the victims of the TAM Fokker disaster of October 31, 1996. Our firm will charge the sum of 33 1/3% for the handling of each such case. Of this fee, a total of 25% will be paid to Brazilian counsel for their services.

We look forward to once again working actively with your office.

Sincerely,

SPEISER, KRAUSE, MADOLE & LEAR

GERARD R. LEAR

/js



LAW OFFICES

SPEISER, KRAUSE, MADOLE & NOLAN

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR
1300 NORTH SEVENTEENTH STREET
SUITE 3[illegible]
ROSSLYN, VIRGINIA 22209
(703) 522-7500
FAX (703) 522-7905

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
2 PARK PLAZA, SUITE 1000
IRVINE, CALIFORNIA 92714
(714) 553-1421
FAX (714) 553-1240

TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET
34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011
FAX (212) 953-6483

TEXAS OFFICE
SPEISER, KRAUSE, MADOLE & MENDELSOHN
300 CONVENT STREET, SUITE 20[illegible]
SAN ANTONIO, TEXAS 78205-37[illegible]
(210) 250-6000
FAX (210) 250-6[illegible]

May 23, 1997

6.° Oficial de Registro de Titulos e Documentos e Civil de Pessoa Juridica
Cópia arquivada em Microfilme sob N.° 906285

Dr. Renato Guimaraes, Jr.
Campinas,
Sao Paulo, Brazil

RE: T.A.M. Accident - Case against Northrop Grumman

Dear Dr. Guimaraes:

This is to confirm our agreement that all participating attorneys who refer cases to us shall receive 10% of the net attorney fee.

You are authorized to tell the referring attorneys of this arrangement and our firm stands behind this commitment.

Most cordially yours,

ARTHUR E. BALLEN

AEB/rp

VIA FAX (To Maksoud Hotel - 011-55-11-253-4544)

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX. (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-432-
(305) 375-9400 FAX (305) 375-0327

August 11, 1997

TO: All Clients - T.A.M Accident of 10/31/96

The following is hereby implemented as a change to our retainer agreement:

1. The contingent legal fee has been lowered from **THIRTY-THREE AND ONE-THIRD PERCENT TO TWENTY-FIVE PERCENT.**

2. There are no costs whatsoever to client if the case is not successful.

3. The costs are limited to TWO PERCENT (2%) in the event the case is settled at the claims stage and there is a THREE PERCENT (3%) cap (maximum) if a trial has began.

4. The deduction for costs comes off the gross settlement before attorney fees are paid.



# EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

RENATO GUIMARAES, JR.,

Plaintiff,

-against-

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

-----------------------------------------------------------X

Case No. 05-CV-2210(DC)

**ANSWER**

Defendant, Speiser Krause, A Professional Corporation, sued herein as Speiser, Krause, Nolan & Granito a professional corporation f/k/a Speiser, Krause, Madole & Lear a professional corporation ("Speiser Krause"), hereby responds to the Compliant of Renato Guimaraes, Jr. ("Guimaraes") as follows:

## I. Answer

1. Speiser Krause admits that Guimaraes is an individual but denies knowledge or information sufficient to form a belief that Guimaraes is a citizen of Brazil, and denies knowledge or information sufficient to form a belief that Guimaraes is an attorney in Brazil.

2. Speiser Krause admits that it is a professional corporation. Speiser Krause denies that at all material times it was engaged in the practice of law in the State of Florida. Speiser Krause denies that it maintained an office in the State of Florida during all material times. Speiser Krause admits that it professes to have expertise in the litigation of aircraft crash

disasters.  Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 2.

3.      Speiser Krause admits that the Complaint seeks damages in excess of $75,000, and that a controversy between a citizen of a Sate and a citizen or subject of a foreign state is alleged.  Speiser Krause admits that the Court has subject matter jurisdiction over the case or controversy being alleged, should a case or controversy be found to exist.  Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 3.

4.      Speiser Krause denies the allegations contained in Complaint paragraph 4.

5.      Speiser Krause denies the allegations contained in Complaint paragraph 5.

6.      Speiser Krause admits that an aircraft crash occurred on or about October 31, 1996 in Brazil.  Except as expressly admitted, Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 6.

7.      Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 7, except for information from investigative authorities that this Court, in its discretion, may receive as evidence at trial by judicial notice and other means.

8. Speiser Krause admits the Guimaraes contacted one of its attorneys. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 8.

9. Speiser Krause admits that Arthur Ballen met Guimaraes in Florida in or about December 1996. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 9.

10. Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 10 as to the work performed by Guimaraes. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 10.

11. Speiser Krause admits that annexed to the Complaint as Exhibit 1is a letter which was faxed to Guimaraes. Except as expressly admitted, Speiser Krause denies the balance of the allegations set forth in Complaint paragraph 11.

12. Speiser Krause denies the allegations contained in Complaint paragraph 12.

13. Speiser Krause denies the allegations contained in Complaint paragraph 13.

14. Speiser Krause admits that annexed to the Complaint as Exhibit 2 is a letter which Speiser Krause generated. Except as expressly admitted, Speiser Krause denies the balance of the allegations contained in Complaint paragraph 14.

15.    Speiser Krause denies the allegations contained in Complaint paragraph 15.

16.    Speiser Krause denies the allegations contained in Complaint paragraph 16.

17.    Speiser Krause admits that annexed to the Complaint as Exhibit 3 is a letter which Speiser Krause prepared.  Except as expressly admitted, Speiser Krause denies the balance of the allegations contained in Complaint paragraph 17.

18.    Speiser Krause denies the allegations contained in Complaint paragraph 18.

19.    Speiser Krause admits it instituted litigation against Northrop.  Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 19.

20.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 20, except that this Court may take judicial notice of the process and orders of other courts and refers interpretation of those orders as matters of law for the trial Court to determine.  Except as expressly admitted, Speiser Krause denies the balance of the allegations contained in Complaint paragraph 20.

21.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 21.

22.    Speiser Krause admits settling some causes of action against Northrup and others, but

denies knowledge or information sufficient to form a belief as to the truth of the balance

of the allegations contained in Complaint paragraph 22. Speiser Krause neither admits

nor denies any allegation which would violate attorney-client privilege regarding the

amount any client received or the documents signed by any client in any legal proceeding.

23.    Speiser Krause neither admits nor denies that the Andrews case settled in 2001 for any

sum, absent waiver by the client of the attorney-client privilege.  Speiser Krause denies

knowledge or information sufficient to form a belief as to the truth of the allegations

concerning the Berliner case.  Except as expressly admitted, Speiser Krause denies the

balance of the allegations contained in Complaint paragraph 23.

24.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Complaint paragraph 24.

25.    Speiser Krause denies knowledge or information sufficient to form a belief as to the

existence, status, enforceability, or validity of the "Brazilian Judgment." Speiser Krause

denies knowledge or information sufficient to form a belief as to any advice rendered by

Guimaraes to any third party.  Speiser Krause denies the balance of the allegations

contained in Complaint paragraph 25, except neither admits nor denies the allegations

concerning payments to clients if the same violate or could violate the attorney-client

privilege.

26.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Complaint paragraph 26.

27.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Complaint paragraph 27.

28.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs

1 through 27, inclusive as if set forth in full hereat.

29.    Speiser Krause denies the existence of a fee-sharing agreement, and Guimaraes's

performance thereof.  Speiser Krause denies Guimaraes provided "liaison services as

necessary."  Speiser Krause denies knowledge or information sufficient to form a belief

as to the truth of the allegation concerning Guimaraes's prosecution of any case in Brazil.

Speiser Krause denies Guimaraes's allegation of instrumentality.  Speiser Krause denies

knowledge or information sufficient to form a belief as to Guimaraes's alleged "lead

counsel" capacity in the Brazilian action.  Speiser Krause denies the Guimaraes's actions

as set forth in Complaint paragraph 29 "enabled Speiser Krause to reach the Global

Settlement."  Speiser Krause denies that Guimaraes has "earned his 25% share of the

overall 25% attorney fee paid to Speiser Krause as to all families who have accepted the

Global Settlement."  Speiser Krause denies the balance of the allegations set forth in

Complaint paragraph 29.

30.    Speiser Krause denies the allegations contained in Complaint paragraph 30.

31.    Speiser Krause denies the allegations contained in Complaint paragraph 31.

32.    Speiser Krause denies the allegations contained in Complaint paragraph 32.

33.    Speiser Krause denies the allegations contained in Complaint paragraph 33.

34.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 33, inclusive as if set forth in full hereat.

35.    Speiser Krause denies the allegations contained in Complaint paragraph 35.

36.    Speiser Krause denies the allegations contained in Complaint paragraph 36.

37.    Speiser Krause denies the allegations contained in Complaint paragraph 37.

38.    Speiser Krause denies the allegations contained in Complaint paragraph 38.

39.    Speiser Krause denies the allegations contained in Complaint paragraph 39.

40.    Speiser Krause denies the allegations contained in Complaint paragraph 40.

41.    Speiser Krause denies the allegations contained in Complaint paragraph 41.

42.     Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 41, inclusive as if set forth in full hereat.

43.     Speiser Krause denies the allegations contained in Complaint paragraph 41.

44.     Speiser Krause denies the allegations contained in Complaint paragraph 43.

45.     Speiser Krause denies the allegations contained in Complaint paragraph 44.

46.     Speiser Krause denies the allegations contained in Complaint paragraph 46.

47.     Speiser Krause denies the allegations contained in Complaint paragraph 47.

48.     Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 47, inclusive as if set forth in full hereat.

49.     Speiser Krause denies the allegations contained in Complaint paragraph 49, except it acted as fiduciary for all sums belonging and paid to its clients.

50.     Speiser Krause denies the allegations contained in Complaint paragraph 50.

51.     Speiser Krause denies the allegations contained in Complaint paragraph 51.

52.    Speiser Krause denies the allegations contained in Complaint paragraph 52.

53.    Speiser Krause denies the allegations contained in Complaint paragraph 53.

54.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 27, inclusive as if set forth in full hereat.

55.    Speiser Krause denies the allegations contained in Complaint paragraph 55.

56.    Speiser Krause denies the allegations contained in Complaint paragraph 56 except admits it earned attorneys' fees for legal services performed for clients.

57.    Speiser Krause denies the allegations contained in Complaint paragraph 57.

58.    Speiser Krause denies the allegations contained in Complaint paragraph 58.

59.    Speiser Krause denies the allegations contained in Complaint paragraph 59.

60.    Speiser Krause denies the allegations contained in Complaint paragraph 60.

61.    Speiser Krause denies the allegations contained in Complaint paragraph 61.

62.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs

1 through 27, inclusive as if set forth in full hereat.

63. Speiser Krause denies the allegations contained in Complaint paragraph 63.

64. Speiser Krause denies the allegations contained in Complaint paragraph 64.

65. Speiser Krause denies the allegations contained in Complaint paragraph 65.

66. Speiser Krause denies the allegations contained in Complaint paragraph 66.

## II. DEFENSES

### First Defense

1. Guimaraes has failed to state a claim upon which relief can be granted.

### Second Defense

2. Guimaraes's claims are barred, in whole or in part, by the statute of limitations.

### Third Defense

3. Guimaraes's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Defense

4. Guimaraes's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Defense

5. Guimaraes's claims are barred, in whole or in part, by the doctrine of laches.

### Sixth Defense

6. Guimaraes's claims are barred, in whole or in part, by the doctrine of unclean hands.

**Seventh Defense**

7. Guimaraes's claims are bared, in whole or in part, because there was no privity of contract between Guimaraes and Speiser Krause.

**Eighth Defense**

8. Guimaraes's claims are barred, in whole or in part, because Guimaraes does not have standing to assert his claims.

**Ninth Defense**

9. Guimaraes's claims are barred, in whole or in part, because Guimaraes cannot demonstrate any legally cognizable damage.

**Tenth Defense**

10. Guimaraes's claims are barred, in whole or in part, because Guimaraes has not suffered any injury in fact.

**Eleventh Defense**

11. Guimaraes's claims are barred, in whole or in part, by his failure to mitigate damages.

**Twelfth Defense**

12. Guimaraes has failed to state an adequate basis for the imposition of a constructive trust.

**Thirteenth Defense**

13. Guimaraes has failed to state an adequate basis for an award of punitive damages.

**Fourteenth Defense**

14. Guimaraes has failed to state an adequate basis for an award of costs and disbursements.

**Fifteenth Defense**

15. Guimaraes has failed to state an adequate basis for an award of attorney fees.

**Sixteenth Defense**

16. Guimaraes's claims are barred, in whole or in part, by documentary evidence.

**Seventeenth Defense**

17. Guimaraes's claims are barred, in whole or in part, by the doctrine of agency.

**Eighteenth Defense**

18. Guimaraes's claims are barred, in whole or in part, by the doctrine of unconscionability.

**Nineteenth Defense**

19. Guimaraes's claims are barred, in whole or in part, because Guimaraes did not confer any benefit of Speiser Krause.

**Twentieth Defense**

20. Guimaraes's claims are barred, in whole or in part, because Speiser Krause did not accept any benefit from Guimaraes.

**Twenty First Defense**

21. Guimaraes's claims are barred, in whole or in part, because Guimaraes did not expect any payment from Speiser Krause.

**Twenty Second Defense**

22. Guimaraes's claims are barred, in whole or in part, because Guimaraes failed to identify any actionable wrong committed by Speiser Krause against Guimaraes.

**Twenty Third Defense**

23. Guimaraes's conversion cause of action is barred, in whole or in part, because Guimaraes has failed to allege ownership of, or entitlement to any funds.

**Twenty Fourth Defense**

24. Guimaraes's claims are barred, in whole or in part, because Guimaraes failed to identify any unauthorized dominion by Speiser Krause over any funds belonging to Guimaraes.

**Twenty Fifth Defense**

25. Guimaraes's constructive trust claim is barred, in whole or in part, because Guimaraes failed to identify any fiduciary duty owed by Speiser Krause to Guimaraes.

**Twenty Sixth Defense**

26. Guimaraes's claims are barred, in whole or in part, by Guimaraes's failure to join one or more indispensable parties, to wit: Dr. Wanderly Minitti, and the clients referred to in the Complaint, without whose joinder the actions and claims alleged in the Plaintiff's Complaint may not be judicially resolved.

**Twenty Seventh Defense**

27. Guimaraes's claims are barred, in whole or in part, because Guimaraes's damages, if any, were proximately caused by the negligence, wrongdoing and/or malfeasance of other third parties, served or unserved.

**Twenty Eighth Defense**

28. Guimaraes's claims are barred, in whole or in part, based on the doctrine of illegality.

**Twenty Ninth Defense**

29. Guimaraes's claims are barred, in whole or in part, by the statute of frauds.

## III. AS AND FOR A COUNTERCLAIM FOR INDEMNITY

Defendant Speiser Krause counterclaims against the Plaintiff Guimaraes, as follows:

1. In or about November 2004 plaintiff Dr. Wanderly Minitti "Minitti," as plaintiff therein, commenced an action against Speiser Krause in the United States District Court for the Southern District of New York under Case No. 04 CV 07976 (DC)(RLE) (the "Minitti Case"). Thereafter Minitti amended his complaint in the Minitti Case on or about January 6, 2005. Copies of Minitti's First Amended Complaint and Speiser Krause's Answer are annexed as exhibits A and B.

2. In his First Amended Complaint, Minitti claims to have been damaged by reason of Guimaraes' actions and inactions, seeks money damages and declaratory and other relief.

3. Upon information and belief, third-party defendant Guimaraes's actions, inactions and conduct caused or contributed to any damages claimed by Minitti.

4. By reason of the foregoing, if any judgment is recovered in the Minitti Action against Speiser Krause, third-party defendant Guimaraes will be obligated to contribute to or indemnify Speiser Krause from the same, in whole or in part, to the extent that Guimaraes's conduct,

action or inaction caused plaintiff's damages.

WHEREFORE, Spesier Krause respectfully prays for a judgment dismissing the Complaint and that if any judgment is rendered against the Defendant as a result of the Minitti Case, that the plaintiff be required to indemnify Speiser Krause and for such other and further relief as to this Court seems just, plus the costs and disbursements of this action.

Dated: New York, New York
March 30, 2005

Yours, Etc.,
Apuzzo & Chase, LLC

By: [signature]

William J. Apuzzo (WA-1312)
Attorney for Defendant
800 Third Avenue - Suite 800
New York, NY 10022
(212) 297-0885

# EXHIBIT "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)

RENATO GUIMARAES, JR.,

Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

______________________________________/

**REPLY TO DEFENDANT'S COUNTERCLAIM**

Plaintiff, RENATO GUIMARAES, JR. ("GUIMARAES"), by and through his undersigned counsel, files this Reply to Defendant's, SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR ("SPEISER, KRAUSE"), Counterclaim and alleges as follows:

1. Plaintiff admits so much of paragraph 1 of Defendant's Counterclaim as alleges that Dr. Wanderly Minitti ("Minitti") commenced an action against SPEISER, KRAUSE in the United States District Court for the Southern District of New York under Case No. 04-CV07976 (DC) (RLE) (the "Minitti Case"), and thereafter Minitti amended his complaint in the Minitti Case on or about January 6, 2005. Plaintiff admits that Exhibit "A" attached to the Defendant's Counterclaim appears to be Minitti's original Complaint. Plaintiff states that Exhibit "B" attached to the Defendant's Counterclaim appears to be Minitti's Amended Complaint.

2. Plaintiff denies the allegations contained in paragraph 2 of the Defendant's

Counterclaim. Plaintiff refers the Court to Minitti's Amended Complaint for the true characterization of Minitti's claim against SPEISER, KRAUSE.

3. Plaintiff denies the allegations contained in paragraph 3 of the Defendant's Counterclaim.

4. Plaintiff denies the allegations contained in paragraph 4 of the Defendant's Counterclaim.

5. Plaintiff denies each and every allegation of the Defendant's Counterclaim not specifically admitted herein.

**AFFIRMATIVE DEFENSES TO COUNTERCLAIM FOR INDEMNITY**

1. As and for his first affirmative defense, Plaintiff alleges that Defendant fails to state a cause of action for indemnity because Defendant does not allege the existence of any special duty running from GUIMARAES to SPEISER, KRAUSE, which is an essential element of a cause of action for indemnity. On the contrary, in its entire pleading SPEISER, KRAUSE denies existence of any contractual or other legally implied relationship between GUIMARAES and SPEISER, KRAUSE.

2. As and for his second affirmative defense, Plaintiff alleges that Defendant fails to state a cause of action for indemnity because Defendant does not allege that GUIMARAES breached any duty that would give rise to the Defendant's right for indemnification, or that SPEISER, KRAUSE's injury would result from the Plaintiff's breach of such duty.

3. As and for his third affirmative defense, Plaintiff alleges that Defendant fails to state

a cause of action for indemnity because it does not allege that SPEISER, KRAUSE was without fault.

4. As and for his fourth affirmative defense, Plaintiff alleges the defense of waiver. Since SPEISER, KRAUSE denies the existence of any contractual or other legally implied relationship between SPEISER, KRAUSE and GUIMARAES, Defendant has waived its right to assert the purported claim for indemnity.

5. As and for his fifth affirmative defense, Plaintiff alleges the defense of estoppel. Since SPEISER, KRAUSE denies the existence of any contractual or other legally implied relationship between SPEISER, KRAUSE and GUIMARAES, Defendant is estopped from asserting its right to the purported claim for indemnity.

6. As and for his sixth affirmative defense, Plaintiff alleges that the damages claimed by Defendant would be the result of SPEISER, KRAUSE's own conduct, and not the conduct of GUIMARAES.

7. As and for his seventh affirmative defense, Plaintiff alleges that the damages claimed by Defendant would be the result of the acts of third parties, including Minitti, and not due to the alleged conduct of the Plaintiff.

8. As and for his eighth affirmative defense, Plaintiff alleges the defense of unclean hands.

9. As and for his ninth affirmative defense, Plaintiff states that Defendant has not suffered any injury in fact.

10. As and for his tenth affirmative defense, Plaintiff alleges the defense of failure to

mitigate damages.

11. As and for his eleventh affirmative defense, Plaintiff alleges the defense of setoff.

WHEREFORE, Plaintiff, GUIMARAES, demands judgment in his favor on Defendant's Counterclaim together with the costs of this litigation and for such other and further relief as this Court deems just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 25, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **William J. Apuzzo, Attorney for Defendant, 800 Third Avenue, Suite 800, New York, NY 10022.**

Dated: April 25, 2005

s/ Richard E. Berman
Counsel of Record for Plaintiff

Richard E. Berman, Esq. (RB–2715)
Berman, Kean & Riguera, P.A.
2101 W. Commercial Blvd., Suite 2800
Ft. Lauderdale, FL 33301
Telephone: (954) 735-0000

\\Server-01\REBData\Guimaraes, Renato\1147-001\Style\6656.wpd

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RENATO GUIMARAES, JR.,

Plaintiff,

-against-

SPEISER, KRAUSE, NOLAN & GRANITO a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.
-----------------------------------------------------------X

**ECF Case**

No. 05 CV 02210 (DC)

**DEFENDANT'S INTERROGATORIES TO PLAINTIFF**

THE FOLLOWING INTERROGATORIES are to be answered by the Plaintiff Renato Guimaraes, Jr., separately and under oath within the time permitted by law. The requested information must be provided regardless of whether it is possessed by the Plaintiff personally or by agents, employees, representatives or persons acting on behalf of the said Plaintiff. If you (Plaintiff) or anyone acting on your behalf should discover any new information or should change a position, you are obligated to supplement your answers within the time permitted by law.

1. Please identify each communication between plaintiff Renato Guimaraes, Jr. and any person or persons from Herman & Mermelstein, P.A., concerning representation of any claimant as a result of the TAM air crash of October 31, 1996, included in this request are the date(s) of said communication(s), whether the communication was oral or written. If oral, please state whether each communication was in person or telephonic, and the sum and substance of said

communication. If written, please identify the document by its production number; if written communication has not been produced, state the reason each such communication has been withheld from production, the contents of said document, and a list of authors, addressees, senders and recipients of each such communication.

2. Please identify each communication between plaintiff Renato Guimaraes, Jr. and any person or persons from Walter Lack's and/or Engstrom, Lipscomb & Lack, APLC, concerning representation of any claimant as a result of the TAM air crash of October 31, 1996, included in this request are the date(s) of said communication(s), whether the communication was oral or written. If oral, please state whether each communication was in person or telephonic, and the sum and substance of said communication. If written, please identify the document by its production number; if written communication has not been produced, state the reason each such communication has been withheld from production, the contents of said document, and a list of authors, addressees, senders and recipients of each such communication.

3. Please identify each communication between plaintiff Renato Guimaraes, Jr. and any other attorney (excepting defendant Speiser Krause, Walter Lack and/or Engstrom, Lipscomb & Lack APLC and Herman & Mermelstein, P.A.), concerning representation of any claimant as a result of the TAM air crash of October 31, 1996, included in this request are the date(s) of said communication(s), whether the communication was oral or written. If oral, please state whether each communication was in person or telephonic, and the sum and substance of said communication. If written, please identify the document by its production number;

if written communication has not been produced, state the reason each such communication has been withheld from production, the contents of said document, and a list of authors, addressees, senders and recipients of each such communication.

4. Did you ever enter into a contract with any TAM victim's family members to provide legal services on their behalf? If your answer is anything other than an unqualified "No," please set forth the following information specifically and in detail:

a. The identity of each party to the contract, the family member, the date the contract was entered into, and if the contract was ever terminated the date or dates of each such termination. Also, please indicate the reason, if any, for each termination of the relationship.

b. The nature and description of the legal services that were to be provided under any such contract, and the identity of every person who was to provide such services, and the nature and description of the services that you actually provided.

c. Please identify every contract, retainer agreement, letter of engagement or writing that relates to the establishment of your relationship with any TAM victim's family, by stating its title, date, signatories, and serial stamp number.

5. Did you ever represent a TAM victim's family with respect to any matters other than those which are the subject of this litigation? If you answer is anything other than an unconditional "No," please set forth the following information specifically and in detail with respect to each case or matter:

a. The nature of the matter [i.e. Civil, Criminal, Probate, Transactional] and if Civil, please state the name of the parties to each such proceeding, location of the proceeding, index number, etc.

b. The periods during which the matter was handled;

c. The type of work performed and documents prepared pursuant to your representation.

6. Did you ever refer a TAM victim's family to another legal professional for assistance? If your answer is "No," please state every reason why you did not make such a referral. If, however, your answer is anything other than an unconditional "No," please set forth the following information for each such TAM victim's family specifically and in detail:

a. The name, occupation, area of specialization, address and telephone number of each person to whom you referred any TAM victim's family;

b. The date upon which the referral took place;

c.     The purpose of the referral;

d.     Please identify every writing that relates to the referral, by stating its date, signatories and a brief summary of its contents. Please set forth the name, address and telephone number of the custodian of each such writing and its location;

e.     Please provide details with respect to any splitting or division of fees with respect to any referral. If any fees were to be split, state whether or not each TAM victim's family was so informed;

f.     State the manner in which you communicated the referral to each TAM victim's family and the date of each such communication;

g.     Identify each and every legal proceeding you have instituted against any legal professional to whom you referred any TAM victim's family.

7.     Did you ever refuse to act on any TAM victim's family's behalf? If you answer is anything other than an unqualified "No," please set forth the following information specifically and in detail for each refusal:

a.     The date, time and place of the refusal;

b. A description of the matter involving the refusal and specific reason for the refusal;

c. State whether or not you ever told a TAM victim's family to refuse a settlement offer proposed to him or her. If so, for each such time, state the date and the method by which you informed the TAM client that they should refuse a proposed settlement.

8. Were you fired by any TAM client? If your answer is anything other than an unqualified "No," please set forth the following information specifically and in detail for each termination by each TAM client:

a. The date you were terminated;

b. The reason (if any) each TAM client provided for your termination;

c. State the manner in which your termination was communicated to you by each TAM client, if oral, provide the sum and substance thereof and if in writing, affix or identify a copy.

9. With respect to the matter involving Dr. Wanderely Minitti, with respect to the TAM clients, please identify each and every function, appearance, legal proceeding and drafting work that you engaged in on each TAM client's behalf, and with respect to each, please set forth the following information specifically and in detail:

a.     A description of the work performed;

b.     The date the work was performed, the approximate amount of time involved;

c.     If the matter involved a motion, hearing or trial, please describe all rulings, verdicts, judgments and other results.

10.     With respect to the matter involving Dr. Wanderely Minitti, with respect to the TAM clients, please provide detailed reasons why you chose:

a.     To hire Dr. Minitti;

b.     To attempt to domesticate the Jabaquara judgment in the United States.

11.     Please set forth and describe specifically and in detail, each and every breach of the subjects contract(s) that you claim the Defendant committed; and with respect to each breach,:

a.     set forth the date that you claim the breach occurred,

b.     the conduct or lack thereof that contributed to and/or constituted the breach, and

c.      the particular promise, agreement and/or provision, paragraph or clause that was breached.

12.    Please set forth and describe specifically and in detail, each and every service you claim to have rendered on behalf of the defendant. In addition, please set forth the following information specifically and in detail:

a.      The date(s) upon which you claim that the service was rendered;

b.      A detailed description of each service that was rendered and the actual time that you spent performing the service;

c.      Whether or not the Defendant specifically requested the service. If the service was provided pursuant to the Defendant's request, please state the date, approximate time, and the method of communication by which the Defendant made the request; and

d.      The amount that you claim to be the fair value of the service that was rendered.

13.    Please set forth specifically and in detail each item of damage and cost you seek to recover from defendants, including the nature and extent of each item of cost or damage, and, the manner in which each such item of damage and/or cost was calculated.

14. Please identify specifically and in detail each document relied upon or supporting your response to Interrogatory No. 10, above.

15. Please state whether or not you have instituted any legal proceeding against any former TAM client and, if so identify the parties to each such proceeding, the nature of the relief sought, the forum in which such legal proceeding(s) has been instituted, current status of each such proceeding, and the index or other identifying number of each such proceeding.

Dated: New York, New York
January 30, 2006

Yours, etc.,
Apuzzo & Chase

By: ______________________
William J. Apuzzo (WA-1312)
Attorneys for Defendant
800 Third Avenue / 8th Floor
New York, NY 10022
Tel.: (212) 297-0885

To: Jose Riguera, Esq.
Berman, Kean & Riguera, P.A.
2101 West Commercial Blvd., Ste. 2800
Ft. Lauderdale, FL 33309

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RENATO GUIMARAES, JR.,

Plaintiff,

-against-

SPEISER, KRAUSE, NOLAN & GRANITO a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.
------------------------------------------------------------X

**ECF Case**

No. 05 CV 02210 (DC)

***Attorney's Certificate of Service***

This is to certify that a copy of the foregoing has been sent by FedEx Overnight Delivery on this date to each of the following:

Jose Riguera, Esq.
Berman, Kean & Riguera, P.A.
2101 West Commercial Blvd., Ste. 2800
Ft. Lauderdale, FL 33309

and that the foregoing was left with said overnight courier prior to the time for which that courier stops accepting overnight deliveries.

Dated: New York, New York
January 30, 2006

[signature]
William J. Apuzzo (WA-0312)
Attorneys for Defendant
800 Third Avenue - 8th Floor
New York, NY 10022
Tel.: (212) 297-0885

**EXHIBIT "E"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)
THE HONORABLE DENNY CHIN

RENATO GUIMARAES, JR.,

Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

______________________________/

**NOTICE OF SERVICE OF ANSWERS TO INTERROGATORIES**

Plaintiff, RENATO GUIMARAES, JR. ("Guimaraes"), by and through the undersigned counsel, hereby serves this Notice of Service of Answers to Interrogatories propounded by Defendant, SPEISER, KRAUSE, NOLAN & GRANITO ("Speiser Krause") in this matter on the 30th day of January, 2006.

**BERMAN, KEAN & RIGUERA, P.A.**
Attorney for Plaintiff
2101 W. Commercial Blvd.
Suite 2800
Ft. Lauderdale, FL 33309
Telephone: (954) 735-0000
Facsimile: (954) 735-3636

By:______________________
Richard E. Berman
RB 2715

Guimaraes v. Speiser Krause
CASE NO.: 05-CV-2210(DC)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been sent via fax and U.S. Regular mail this 17th day of March, 2006, to:

William J. Apuzzo, Esq.
Apuzzo & Chase, LLC
800 Third Avenue, Suite 800
New York, NY 10022

**BERMAN, KEAN & RIGUERA, P.A.**

By:____________________
Richard E. Berman

2

## GENERAL OBJECTIONS

1. Plaintiff objects to each of Defendant's Interrogatories that seeks information protected by the attorney-client privilege, work product privilege, accountant's privilege, or any other available privilege or protection. Any Answer herein which provides or agrees to provide information refers only to information that is not protected by any privilege or protection.

2. Plaintiff objects to each of Defendant's Interrogatories that seeks confidential information or material. Plaintiff will provide such confidential information only in appropriate circumstances, subject to the execution of a mutually agreeable confidentiality agreement, and subject to the entry of a protective order.

3. Plaintiff objects to each of Defendant's Interrogatories that seeks information without specifying a relevant time frame. Such Interrogatories are vague, ambiguous, and unduly burdensome.

## ANSWERS

Without waiver of any of the foregoing objections, and subject thereto, Plaintiff responds and specifically objects to each Interrogatory as follows:

1. Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes does not specifically recall each communication between himself and Herman & Mermelstein, P.A. concerning the matters requested. Nevertheless, the general substance of the communications related to Guimaraes' efforts to retain Herman & Mermelstein, P.A. to replace Speiser Krause in representing the TAM clients in connection with their claims for damages arising out of the TAM accident that occurred on October 31, 1998. Guimaraes has already produced to Speiser Krause all documents he believes to be in his possession, custody or control which relate to the requested communications. Guimaraes will undertake

to further review his files and records to determine whether he is in possession of any additional documents responsive to this request.

2. Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes does not specifically recall each communication between himself and Engstrom, Lipscomb & Lack concerning the matters requested. Nevertheless, the general substance of the communications related to Guimaraes' efforts to retain Engstrom, Lipscomb & Lack to replace Speiser Krause in representing the TAM clients in connection with their claims for damages arising out of the TAM accident that occurred on October 31, 1998. Guimaraes has already produced to Speiser Krause all documents he believes to be in his possession, custody or control which relate to the requested communications. Guimaraes will undertake to further review his files and records to determine whether he is in possession of any additional documents responsive to this request.

3. Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes does not specifically recall each communication between himself and any other attorney (excepting Speiser Krause Speiser Krause, Walter Lack and/or Engstrom, Lipscomb & Lack, APLC, and Herman & Mermelstein, P.A.) concerning the matters requested. Nevertheless, Guimaraes generally recalls communicating with several attorneys about the possibility of retaining those attorneys to replace Speiser Krause in representing the TAM clients in connection with their claims for damages arising out of the TAM accident that occurred on October 31, 1998. The attorneys Guimaraes contacted include, but are not necessarily limited to, McDonald & McDonald, Goldberg & Associates, P.A., Colson Hicks, Eidson, P.A.; Boyd & Greene, LLC; Zarco Einhorn & Salkowsky; Goldstein, Tanen & Trench, P.A.; Peter M. Commette, Esq.; Ferrell Schultz, Rossman Baumberger & Reboso and Zuckerman Spaeder LLP. Guimaraes has already produced to Speiser Krause all documents he believes to be in his possession, custody or control which relate to the requested communications. Guimaraes will undertake to further review his files and records to determine whether he is in possession of any additional documents responsive to this request.

4. Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that, pursuant to the fee sharing agreement between the parties, Guimaraes and Speiser Krause acted as co-counsel for a total of sixty-five (65) Brazilian clients who were family members of the victims of the TAM airline crash that occurred on October 31, 1996. The identify of the 65 TAM clients is known to Speiser Krause and is reflected in numerous documents produced in this litigation by both Guimaraes and Speiser Krause, including, but not limited to, the retainer agreements themselves. Similarly, the nature and

description of the legal services provided, can be ascertained from the documents exchanged by the parties, as well as the testimony given by Guimaraes during his deposition in this case. In addition, Guimaraes had a separate retainer agreement with 26 of the TAM families in connection with a separate lawsuit filed by Guimaraes in Brazil against TAM. Guimaraes agrees to supplement his production in this case to include copies of the retainer agreements for these 26 families.

5.    No.

6.    Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome.   Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that, in furtherance of the fee sharing agreement between Guimaraes and Speiser Krause, Guimaraes was instrumental in the decision of the TAM clients to retain Speiser Krause and Guimaraes in connection with the TAM accident.   The written agreements retaining Guimaraes and Speiser Krause have already been produced in this litigation and are in the possession of Speiser Krause.   Pursuant to the fee sharing arrangement between Guimaraes and Speiser Krause, Guimaraes was to receive 25% of any attorney's fee collected by Speiser Krause in connection with the TAM case. Each TAM client was aware of the fee sharing agreement between Guimaraes and Speiser Krause.   In or about April 2000, a disagreement developed between Guimaraes and Speiser Krause concerning the terms of a global settlement negotiated by Speiser Krause without any consultation with or prior approval from the TAM clients.   In Guimaraes' opinion, the settlement offers presented by Speiser Krause were too low and would not adequately compensate the victims. Accordingly, Guimaraes refused to recommend to the TAM clients that they accept the settlement offers presented by Speiser Krause.   Speiser Krause then began urging the TAM clients to terminate Guimaraes services because he would not comply with Speiser Krause's direction that he recommend to the TAM clients that they accept the global settlement. hereafter, Guimaraes endeavored to hire replacement counsel to continue to represent the TAM clients in connection with their claim for damages against the TAM defendants. In that regard, Guimaraes referred certain TAM clients to Herman & Mermelstein, P.A. in approximately January 2001. Upon information and belief, each of the clients signed retainer agreements with Guimaraes and Herman & Mermelstein, P.A. pursuant to which Herman & Mermelstein was to receive as their fee 24% of any recovery, and Guimaraes was to receive 25% of the attorney's fee.   Guimaraes subsequently referred certain TAM clients to Engstrom, Lipscomb & Lack.   Upon information and belief, each of the clients signed retainer agreements with Engstrom, Lipscomb & Lack pursuant to which Engstrom, Lipscomb & Lack was to receive as their fee 25% of any recovery. Guimaraes does not have any agreement to split this fee with Engstrom, Lipscomb & Lack. Guimaraes will undertake to further review his files and records to determine whether he is in possession copies of the retainer agreements with Herman & Mermelstein, P.A. and also with Engstrom, Lipscomb & Lack.

Guimaraes commenced the instant lawsuit against Speiser Krause to recover his share of the attorney's fees collected by Speiser Krause in accordance with the fee sharing agreement between the parties. In addition, Guimaraes filed a civil proceeding in Brazil against Speiser Krause approximately 4 years ago, but that proceeding was dismissed on jurisdictional grounds. Furthermore, Guimaraes made a formal request to the attorney general in Sao Paolo state for a criminal investigation against Speiser Krause. Guimaraes is not currently aware of the status of that proceeding.

7.      Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that in or about April 2000, a disagreement developed between Guimaraes and Speiser Krause concerning the terms of a global settlement negotiated by Speiser Krause without any consultation with or prior approval from the TAM clients. In Guimaraes' opinion, the settlement offers presented by Speiser Krause were too low and would not adequately compensate the victims. Accordingly, Guimaraes refused to recommend to the TAM clients that they accept the settlement offers presented by Speiser Krause. Guimaraes does not specifically recall each communication between himself and the TAM clients wherein he recommended that they refuse the global settlement proposed by Speiser Krause.

8.      Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that, to the best of his recollection and belief, he was terminated by the following TAM clients:

a.      Mohamad Shaikhzadeh
b.      Lucio De Castro Pinto
c.      David Luiz Boianovsky
d.      Wolfgang Hans Janstein
e.      Cornelia Gnugge Bauer
f.      Rubens De Azevedo Britto
g.      Carla Generalli Nazareth
h.      Ricardo Alan Calonico Maciel
i.      Sergio Aparecido Bleinat
j.      Luis Antonio Amando De Barros
k.      Gilberto Alves Aquino, Jr.
l.      Walter Luiz Manhaes
m.      Maria Silvanete de Lima
n.      Geraldo Luis Arede de Barros
o.      Mauricio Frateschi Sa Fortes
p.      Luis Lauro Romero

q.     Louwerinus Hoogerheide
r.     Elias Alves Rocha de Queiroz
s.     Roberto Fischer
t.     Regina Lucia Lemos Valerio

Guimaraes does not specifically recall each communication between himself and the TAM clients who terminated his services. Guimaraes does not specifically recall the dates or manner of each said termination, except that he believes that each of the clients sent a letter terminating his services. Guimaraes has already produced to Speiser Krause copies of all letters in his possession which he received from TAM clients who terminated his services. To the best of Guimaraes' information and belief, the TAM clients referenced above terminated his services because Guimaraes objected to the global settlement negotiated by Speiser Krause which Guimaraes believed to be too low and would not adequately compensate the victims.

9.     Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that he authorized Dr. Wanderley Minitti ("Minitti") to file letters rogatory in the United States to enforce certain financial support payments ordered by the Brazilian court. Guimaraes did not participate in the work performed by Minitti in connection with the letters rogatory.

10.    Guimaraes selected Minitti because he had prior experience with the letters rogatory procedure. Guimaraes attempted to domesticate the Jabaquara judgment in the United States because, in his opinion, the settlement offers presented by Speiser Krause were too low and would not adequately compensate the victims. The amounts awarded in the Jabaquara judgment were substantially greater and Guimaraes believed that it would be in the best interests of the TAM clients to reject the settlement proposed by Speiser Krause and to attempt to enforce the Jabaquara judgment in the United States.

11.    Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that Speiser Krause breached its obligation under the fee-sharing agreement between Guimaraes and Speiser Krause by failing and refusing to pay Guimaraes his 25% share of the attorneys fees received by Speiser Krause in connection with the TAM case. Speiser Krause further breached its obligation by paying other counsel fees that rightfully belonged to Guimaraes after urging the clients to terminate Guimaraes because he would not comply with Speiser Krause's direction that he recommend to the TAM clients that they accept the global settlement. Guimaraes refers Speiser Krause to the Amended Complaint in this action for a further description of the claims asserted by Guimaraes.

12. Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, and without waiving same, Guimaraes asserts that the services he rendered on behalf of Speiser Krause included, but was not necessarily limited to, providing liaison services as necessary during the process of procuring retainer agreements from the TAM clients and during the prosecution of the case in the United States by Speiser Krause. In this regard, Guimaraes attended numerous meetings with Speiser Krause and clients, prepared and translated documents as needed for the representation of the clients, and coordinated communications between Speiser Krause and the clients, their local attorneys, and member of the media in Brazil. Guimaraes also communicated with local authorities concerning the investigation into the cause of the TAM accident. Furthermore, Guimaraes assisted Speiser Krause attorneys on issues of Brazilian law in connection with Speiser Krause's efforts to oppose a motion to dismiss the litigation commenced by Speiser Krause in California on *forum non conveniens* grounds. After Speiser Krause lost the *forum non conveniens* motion, Guimaraes was the lead attorney in prosecuting the litigation in Brazil against the TAM defendants. Guimaraes does not specifically recall the dates and times when he rendered each of these services, however, these services were rendered on behalf of Speiser Krause over a continuous period of time from the time of the TAM crash until the year 2000 when Speiser Krause began urging the TAM clients to terminate Guimaraes' services because he would not comply with Speiser Krause's direction that he recommend to the TAM clients that they accept the global settlement. Each of these services were requested and accepted by Speiser Krause, either explicitly or implicitly, and Speiser Krause benefitted from the services rendered by Guimaraes. The amount Guimaraes claims to be the fair value of the services rendered on behalf of Speiser Krause is 25% of the attorney's fee recovered by Speiser Krause in connection with the TAM cases as contemplated by the fee sharing agreement between the parties.

13. See the response to Interrogatory number 12.

14. None.

15. Guimaraes has commenced a civil proceeding in Brazil against the family of the following TAM decedents: (1) Roberto Fischer and Walter Luiz Manhaes. The nature of the action is to collect attorney's fees owed by these clients to Guimaraes for legal services he rendered in the litigation he filed against TAM in Brazil. The cases were filed in the Forum Joao Mendes in Sao Paolo. The cases are still in preliminary stages.

Renato Guimaraes, Jr.

**STATE OF CALIFORNIA**
**COUNTY OF** ______________

The foregoing instrument was acknowledged before me this __________ day of March, 2006, by Renato Guimaraes, Jr., who is personally known to me or who has produced ______________________________ as identification.

______________________
Notary Public - State of California

______________________
Print Name of Notary

Seal:

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Fresno } ss.

On 3/17/06 (Date) before me, Anita Bernardi Clifton, Notary Public (Name and Title of Officer (e.g., "Jane Doe, Notary Public"))

personally appeared Renato Guimaraes Jr. (Name(s) of Signer(s))

☐ personally known to me

☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ANITA BERNARDI CLIFTON
COMM. #1640306
NOTARY PUBLIC-CALIFORNIA
FRESNO COUNTY
My Comm Exp. Feb. 20, 2010

Place Notary Seal Above

WITNESS my hand and official seal.

Anita Bernardi Clifton
Signature of Notary Public

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: Signature page Defendant's Interrogatories to Plaintiff

Document Date: ____________ Number of Pages: ____________

Signer(s) Other Than Named Above: ____________

### Capacity(ies) Claimed by Signer(s)

Signer's Name: ____________
☒ Individual
☐ Corporate Officer — Title(s): ____________
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ____________

Signer Is Representing: ____________

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: ____________
☐ Individual
☐ Corporate Officer — Title(s): ____________
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ____________

Signer Is Representing: ____________

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

# EXHIBIT "F"

APUZZO & CHASE

*Law Offices*

800 Third Avenue - Suite 800
New York, New York 10022
Tel. (212) 297-0885
Fax (212) 297-0887

William J. Apuzzo (FL & NY)
(Florida Bar No. 369357)
email: wapuzzo@apuzzolaw.com
David Chase (NY)
email: dchase@apuzzolaw.com

4448 Cordia Circle
Coconut Creek, Florida 33066
Tel. (866) 485-2262
Fax.(561) 820-8106

Of Counsel:
Nicole A. Filannino (NY)
P. Charles DiLorenzo (NY & NJ)
Michael J. Pangia (NY & DC)

March 29, 2006

**Via Fax and Regular Mail**
Jose R. Riguera, Esq.
Berman, Kean & Riguera, P.A.
2101 West Commercial Blvd.
Suite 2800
Ft. Lauderdale, FL 33309
(954) 735-3636

—15 Pages total—

Re: Minitti v. Speiser Krause
Guimaraes v. Speiser Krause

Dear Mr. Riguera

This will acknowledge receipt of the Answers to Interrogatories that you submitted in response to Defendant's Interrogatories of Mr. Guimaraes, after two extensions of time for you to supply the same.

Unfortunately, the answers are deficient and require supplementation by your client. In all candor, I believe that you know this to be the case without my prompting. I have taken the time to specifically identify the deficient answers, and "spell out" the problems that require further response by your client:

**Your General Objections:**

1. First, we must take issue with your blanket, unsupported claim of "privilege" with respect to the Interrogatories. Next, in any event, you have failed to specifically identify the materials for which you are claiming privilege and, moreover, you have even failed to identify the particular type of privilege that you are claiming, leaving us to guess whether the unsubstantiated privilege is any of "attorney-client, work product[], accountant's[], or any other available privilege or protection." As you are well aware, you are required to provide specific information to facilitate the determination in that regard.

2. Second, your general objection on the ground of "confidentiality" is confounding. Confidentiality is not a valid basis on which to withhold documents and, in any event, there is a confidentiality agreement in place in this litigation.

3. Your third general objection seeks to limit responses based upon the specification of a time frame. The Interrogatories seek answers given at any "relevant" time. Unless otherwise specified in a given Interrogatory, the "relevant" time as concerns this litigation is from the date of the TAM air crash to the date of your Answer. Therefore, any documents or responses being withheld on the basis of this objection must be immediately provided.

**Answers to Specific Interrogatories:**

Interrogatory 1:

Please identify each communication between plaintiff Renato Guimaraes, Jr. and any person or persons from Herman & Mermelstein, P.A., concerning representation of any claimant as a result of the TAM air crash of October 31, 1996, included in this request are the date(s) of said communication(s), whether the communication was oral or written. If oral, please state whether each communication was in person or telephonic, and the sum and substance of said communication. If written, please identify the document by its production number; if written communication has not been produced, state the reason each such communication has been withheld from production, the contents of said document, and a list of authors, addressees, senders and recipients of each such communication.

Plaintiff's Answer States:

The Interrogatory is vague, overbroad and unduly burdensome, and that "the general substance of the communications related to Guimaraes' efforts to retain Herman & Mermelstein, P.A. to replace Speiser Krause in representing TAM clients. . ."

Deficiency with respect to Answer to Interrogatory:

The question is relevant and proper in view of the issues and arguments likely to arise during the course of this litigation. Accordingly, your answer is incomplete, evasive and insufficient. As such, you are required to identify specific information concerning these communications, including, as set forth in this Interrogatory:

- date(s) of each communication;
- whether the communication was in person or telephonic;
- the sum and substance of each communication;
- production number (if applicable);
- author list;
- addressee list; and
- sender(s) and recipient(s)

Interrogatory No. 2:

Please identify each communication between plaintiff Renato Guimaraes, Jr. and any person or persons from Walter Lack's and/or Engstrom, Lipscomb & Lack, APLC, concerning representation of any claimant as a result of the TAM air crash of October 31, 1996, included in this request are the date(s) of said communication(s), whether the communication was oral or written. If oral, please state whether each communication was in person or telephonic, and the sum and substance of said communication. If written, please identify the document by its production number; if written communication has not been produced, state the reason each such communication has been withheld from production, the contents of said document, and a list of authors, addressees, senders and recipients of each such communication.

Plaintiff's Answer States:

The Interrogatory is vague, overbroad and unduly burdensome, and that "the general substance of the communications related to Guimaraes' efforts to retain Engstrom, Lipscomb & Lack to replace Speiser Krause in representing TAM clients. . ."

Deficiency with respect to Answer to Interrogatory:

The question is relevant and proper in view of the issues and arguments likely to arise during the course of this litigation. Accordingly, your answer is incomplete, evasive and insufficient. As such, you are required to identify specific information concerning these communications, including, as set forth in this Interrogatory:

- date(s) of each communication;
- whether the communication was in person or telephonic;
- the sum and substance of each communication;
- production number (if applicable);
- author list;
- addressee list; and
- sender(s) and recipient(s)

Interrogatory No. 3:

Please identify each communication between plaintiff Renato Guimaraes, Jr. and any other attorney (excepting defendant Speiser Krause, Walter Lack and/or Engstrom, Lipscomb & Lack APLC and Herman & Mermelstein, P.A.), concerning representation of any claimant as a result of the TAM air crash of October 31, 1996, included in this request are the date(s) of said communication(s), whether the communication was oral or written. If oral, please state whether each communication was in person or telephonic, and

the sum and substance of said communication. If written, please identify the document by its production number; if written communication has not been produced, state the reason each such communication has been withheld from production, the contents of said document, and a list of authors, addressees, senders and recipients of each such communication.

Plaintiff's Answer States:

The Interrogatory is vague, overbroad and unduly burdensome, and that "Guimaraes does not specifically recall each communication between himself and any other attorney (excepting Speiser Krause Spesier Krause [sic] Walter Lack and/or Engstrom, Lipscomb & Lack, APLC, and Herman & Mermelstein, P.A.) concerning the matters requested." However, your answer goes on to state that Guimaraes contacted:

- McDonald & Mcdonald
- Goldberg & Associates, P.A.
- Colson Hicks Eidson, P.A.
- Boyd & Greene, LLC
- Zarco Einhorn & Salkowsky;
- Goldstein, Tanen & Trench, P.A.
- Peter M. Commette, Esq.
- Ferrell Schultz, Rossman Baumberger & Reboso and
- Zucerkman Spaeder LLP

Deficiency with respect to Answer to Interrogatory:

The question is relevant and proper in view of the issues and arguments likely to arise during the course of this litigation. Accordingly, your answer is incomplete, evasive and insufficient. I'm sure that you are aware that the standard for discovery does not require that the requested information be admissible, only that it "appear to be reasonably calculated to lead to the discovery of admissible evidence." As such, you are required to identify specific information concerning these communications, including, as set forth in this Interrogatory:

- date(s) of each communication;
- whether the communication was in person or telephonic;
- the sum and substance of each communication;
- production number (if applicable);
- author list;
- addressee list; and
- sender(s) and recipient(s)

Interrogatory No. 4:

Did you ever enter into a contract with any TAM victim's family members to provide legal services on their behalf? If your answer is anything other than an unqualified "No," please set forth the following information specifically and in detail:

a. The identity of each party to the contract, the family member, the date the contract was entered into, and if the contract was ever terminated the date or dates of each such termination. Also, please indicate the reason, if any, for each termination of the relationship.

b. The nature and description of the legal services that were to be provided under any such contract, and the identity of every person who was to provide such services, and the nature and description of the services that you actually provided.

c. Please identify every contract, retainer agreement, letter of engagement or writing that relates to the establishment of your relationship with any TAM victim's family, by stating its title, date, signatories, and serial stamp number.

Plaintiff's Answer States:

Guimaraes objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Notwithstanding the foregoing objections, "Guimaraes asserts that, pursuant to the fee sharing agreement between the parties, Guimaraes and Speiser Krause acted as co-counsel for a total of sixty-five (65) Brazilian clients who were family members of the victims of the TAM airline crash that occurred on October 31, 1996. The identify [sic] of the 65 TAM clients is known to Speiser Krause and is reflected in numerous documents produced in this litigation by both Guimaraes and Speiser Krause, including, but not limited to, the retainer agreements themselves. Similarly, the nature and description of the legal services provided, can be ascertained from the documents exchanged by the parties, as well as the testimony given by Guimaraes during his deposition in this case. In addition, Guimaraes had a separate retainer agreement with 26 of the TAM families in connection with a separate lawsuit filed by Guimaraes in Brazil against TAM. Guimaraes agrees to supplement his production in this case to include copies of the retainer agreements for these 26 families.

Deficiency with respect to Answer to Interrogatory:

In the first instance, this question calls for a simple "yes" or "no" answer as to whether or not Mr. Guimaraes entered into a

contract with any TAM victim's family members to provide legal services on their behalf. The lengthy boilerplate answer that you provided on your client's behalf simply does not answer the question, is incomplete, evasive and insufficient. In the event the answer was not "No," you were required to provide specific, detailed information concerning the identity of the contracting client. In event a written agreement contract exists between Mr. Guimaraes and any of the TAM Victim's families, you are required to identify each such agreement by production number. If Mr. Guimaraes lacks any written evidence of contracting with any TAM victim's family, he might merely indicate that as of this date, he has no facts or evidence to support his claim that he had any written contract with a TAM victim's family.

Furthermore, your answer identifies at least two cases in which Mr. Guimaraes claims involvement, in a legal capacity, on behalf of 65 and 26 families, respectively. This Interrogatory seeks "the nature and description of the legal services that were to be provided under any such contract, and the identity of every person who was to provide such services, and the nature and description of the services that you actually provided." Accordingly, you are required to answer the Interrogatory by providing the nature and description of the legal services that Mr. Guimaraes was to provide in each of these cases. Included in "nature and description" is a description of the services Mr. Guimaraes was to provide, whether those services were to be on his own or in conjunction with other attorneys, and the identity of the defendants in each such case. If the nature and the description of the Brazilian (26 family) and American (65 family) lawsuits were in any way distinct, describe in which way(s) the several suits were distinct. State the date(s) said agreement(s) were reached.

Interrogatory No. 6:

Did you ever refer a TAM victim's family to another legal professional for assistance? If your answer is "No," please state every reason why you did not make such a referral. If, however, your answer is anything other than an unconditional "No," please set forth the following information for each such TAM victim's family specifically and in detail:

a. The name, occupation, area of specialization, address and telephone number of each person to whom you referred any TAM victim's family;

b. The date upon which the referral took place;

c. The purpose of the referral;

d. Please identify every writing that relates to the referral, by stating its date, signatories and a brief summary of its contents. Please set forth the name, address and telephone number of the custodian of each

such writing and its location;

e. Please provide details with respect to any splitting or division of fees with respect to any referral. If any fees were to be split, state whether or not each TAM victim's family was so informed;

f. State the manner in which you communicated the referral to each TAM victim's family and the date of each such communication;

g. Identify each and every legal proceeding you have instituted against any legal professional to whom you referred any TAM victim's family.

Plaintiff's Answer States:

This Interrogatory is vague, overbroad and unduly burdensome. "[I]n furtherance of the fee sharing agreement between Guimaraes and Speiser Krause, Guimaraes was instrumental in the decision of the TAM clients to retain Speiser Krause and Guimaraes in connection with the TAM accident." That, pursuant to the "fee sharing arrangement . . . Guimaraes was to receive 25% of any attorney's fee collected by Speiser Krause." That "[i]n or about April 2000, a disagreement developed between Guimaraes and Speiser Krause concerning the terms of a global settlement negotiated by Speiser Krause without any consultation owith or prior approval from the TAM clients." That, "Each TAM client was aware of the fee sharing agreement between Guimaraes and Speiser Kruase." That "Guimaraes referred certain TAM clients to Herman & Mermelstein, P.A. in approximately January 2001." That "Guimaraes was to receive 25% of [Herman & Mermelstein's] fee." That "Guimaraes subsequently referred certain TAM clients to Engstrom, Lipscomb & Lack." That "each of the clients signed retainer agreements with Engstrom, Lipscomb & Lack" under which Engstrom, Lipscomb & Lack was to receive 25% of any recovery as their fee. And that Guimaraes has no agreement with Engstrom, Lipscomb & Lack.

Deficiency with respect to Answer to Interrogatory:

This question is material, proper, and seeks discovery of relevant, admissible evidence. While it is true that Mr. Guimaraes is not required to provide information that he does not have, nevertheless, he is required to make a diligent search of those materials, documents and records that he has access to. It is difficult to believe that the information requested in this Interrogatory is not contained somewhere in the files and records that Mr. Guimaraes has access to.

Simply put, is it Guimaraes' contention that he referred any TAM clients to Speiser Kruase? If so identify by name any TAM

client so-referred.  Upon such identification you are required to set forth the area of specialization Guimaraes believed Speiser Krause to have when making each such referral to each such TAM client.  In addition, for each such referral identify: the date of the referral, the purpose of the referral, any writing (by production number) supporting the referral, and the manner in which any fee-splitting was communicated to each TAM client (together with the date(s) of each such communication).

As concerns the referenced referrals to Herman & Mermelstein, you are required to specifically identify the communications, dates of communications and production numbers of each document of, concerning or relating to Mr. Guimaraes' referral of TAM clients. In event such referrals were oral, the date(s) and sum and substance of the communications must be set forth.

As concerns the referenced referrals to Engstrom, Lipscomb & Lack, you are required to specifically identify the communications, dates of communications and production numbers of each document of, concerning or relating to Mr. Guimaraes' referral of TAM clients. In event such referrals were oral, the date(s) and sum and substance of the communications must be set forth.  Furthermore, your statement that "Guimaraes does not have any agreement to split this fee with Engstrom, Lipscomb & Lack" is incomplete.  Subsection "e" of this interrogatory seeks details with respect to splitting or division of fees, including whether or not any TAM victim's family has been informed of the means by which Mr. Guimaraes hopes to be compensated as a result of the efforts of Engstrom, Lipscomb & Lack.  If Mr. Guimaraes does not intend to be compensated for the "Lack cases" then so state.  If Mr. Guimaraes expects the division of compensation between himself and Mr. Lack's firm to be based upon a process other than arithmetic formula, then so-state.

Concerning your answer that a "disagreement developed between Guimaraes and Speiser Krause concerning the terms of a global settlement . . . without any consultation with or prior approval from the TAM clients." Please identify the so-called "global settlement" to which you refer, and state whether the "disagreement" concerning the same was the purpose of Guimaraes' referral of TAM clients to each of Herman & Mermelstein, P.A., Engstrom, Lipscomb & Lack, McDonald & Mcdonald, Goldberg & Associates, P.A., Colson Hicks Eidson, P.A., Boyd & Greene, LLC, Zarco Einhorn & Salkowsky, Goldstein, Tanen & Trench, P.A., Peter M. Commette, Esq., Ferrell Schultz, Rossman Baumberger & Reboso, and Zucerkman Spaeder LLP.

As concerns subdivision g, please provide details (index number, forum, parties, and documents (including order of dismissal)) concerning the civil proceeding Mr. Guimaraes filed against Speiser Krause approximately 4 years ago, and provide details concerning the formal request to the attorney general in

Sao Paolo state for criminal investigation against Speiser Krause. If documents have been produced, identify them by production number. Finally, please clarify whether or not Mr. Guimaraes has instituted any legal proceedings against Dr. Minitti at any time.

Interrogatory No. 7:

Did you ever refuse to act on any TAM victim's family's behalf? If you answer is anything other than an unqualified "No," please set forth the following information specifically and in detail for each refusal:

a. The date, time and place of the refusal;

b. A description of the matter involving the refusal and specific reason for the refusal;

c. State whether or not you ever told a TAM victim's family to refuse a settlement offer proposed to him or her. If so, for each such time, state the date and the method by which you informed the TAM client that they should refuse a proposed settlement.

Plaintiff's Answer States:

This Interrogatory is vague, overbroad and unduly burdensome. Guimaraes refused to recommend to the TAM clients that they accept the settlement offers presented by Speiser Krause.

Deficiency with respect to Answer to Interrogatory:

This is not an answer. This question is relevant and proper in view of the issues and arguments likely to arise during the course of this litigation. Quite simply, did Mr. Guimaraes ever refuse any request of a TAM family? Other than as concern's Mr. Guimaraes' opinion regarding the adequacy of any settlement terms proposed, did Mr. Guimaraes ever refuse a TAM client's request to authorize, take steps to authorize, or facilitate the authorization of any settlement? If so, what form did the refusal take, to which client(s) was (were) the refusal(s) made, and when did Mr. Guimaraes so refuse? As concerns Mr. Guimaraes' opinion regarding the adequacy of any settlement, this Interrogatory asks for specific, detailed information concerning the basis of his refusal and therefore, logically, the basis of his opinion. Accordingly, specify in detail the bases of Mr. Guimaraes' opinion that the settlement offers on which he refused to act were "too low and would not adequately compensate the victims."

Interrogatory No. 8:

Were you fired by any TAM client? If your answer is anything other than an unqualified "No," please set forth the following information specifically and in detail for each termination by each TAM client:

a.    The date you were terminated;

b.    The reason (if any) each TAM client provided for your termination;

c.    State the manner in which your termination was communicated to you by each TAM client, if oral, provide the sum and substance thereof and if in writing, affix or identify a copy.

Plaintiff's Answer States:
     This Interrogatory is vague, overbroad, and unduly burdensome. The 20 TAM clients listed terminated Guimaraes because Guimaraes objected to the global settlement negotiated by Speiser Krause which Guimaraes believed to be too low and would not adequately compensate the victims.

Deficiency with respect to Answer to Interrogatory:
     First, we must take issue with your blanket response to this Interrogatory.  Second, and as you are well aware, this question is material, proper and seeks discovery of admissible evidence. Third, you are required to specify the date(s) of each such termination; in the case of any written termination, supply, or identify by bates number, each termination letter.

Interrogatory No. 11:
     Please set forth and describe specifically and in detail, each and every breach of the subject contract(s) that you claim the Defendant committed; and with respect to each breach,:

a.    set forth the date that you claim the breach occurred,

b.    the conduct or lack thereof that contributed to and/or constituted the breach, and

c.    the particular promise, agreement and/or provision, paragraph or clause that was breached.

Plaintiff's Answer States:

     This Interrogatory is vague, overbroad, and unduly burdensome. Speiser Krause breached its obligation under the fee-sharing agreement by failing and refusing to pay Guimaraes his 25% share of the attorneys fees received by Speiser Krause in connection with the TAM case.  Speiser Krause further breached its obligation by paying other counsel fees that rightfully belonged to Guimaraes after urging the clients to terminate Guimaraes because he would not comply with Spesier Krause's direction that he recommend to the TAM clients that they accept the global settlement.  You also refer Speiser Krause to the Amended Complaint.

Deficiency with respect to Answer to Interrogatory:

As you are well aware, this question is material, proper and seeks discovery of admissible evidence. The date(s) of each asserted breach are material to this litigation, and you are required to furnish the same. The Interrogatory also simply asks the particular promise, agreement and/or provision, paragraph or clause that Mr. Guimaraes asserts Speiser Krause breached. Reference to the Complaint is unhelpful. In response to this Interrogatory, identify the Agreement Guimaraes claims existed between himself and Speiser Krause, and the particular term or provision which was breached. Specifically, identify the basis of Guimaraes' claim that he was entitled to "his 25% of the attorneys fees received by Speiser Krause in connection with the TAM case." What provision, paragraph or clause of which agreement obligated Speiser Krause to pay Mr. Guimaraes 25% of any attorneys fees Speiser Krause recovered in the TAM case?

Finally, to the extent you claim the existence of a "direction" by Speiser Krause to the TAM clients to accept a "global settlement," as a basis for a breach by Speiser Krause of any agreement, provide details concerning such direction including to whom and by whom made, and the date of such direction(s).

Interrogatory No. 12:

Please set forth and describe specifically and in detail, each and every service you claim to have rendered on behalf of the defendant. In addition, please set forth the following information specifically and in detail:

a. The date(s) upon which you claim that the service was rendered;

b. A detailed description of each service that was rendered and the actual time that you spent performing the service;

c. Whether or not the Defendant specifically requested the service. If the service was provided pursuant to the Defendant's request, please state the date, approximate time, and the method of communication by which the Defendant made the request; and

d. The amount that you claim to be the fair value of the service that was rendered.

Plaintiff's Answer States:

Guimaraes objected to this Interrogatory on the ground that it is vague, overbroad and unduly burdensome. Your answer then lists seven types of services Mr. Guimaraes claims to have performed, as follows:

1.  Provision of liaison services as necessary during the process of procuring retainer agreements;

2.  Attendance at meetings with Speiser Krause and clients;

3.  Preparation and translation of documents "for representation of clients;"

4.  Coordination of communications between Speiser Krause and the clients, their local attorneys, and member[s] of the Brazilian media;

5.  Communication with local authorities concerning the investigation into the cause of the TAM accident;

6.  Assisted Speiser Krause on issues of Brazilian law in connection with Speiser Krause's efforts to oppose a motion to dismiss the litigation commenced by Speiser Krause in California on *forum non conveniens* grounds; and

7.  Lead attorney in prosecuting the litigation in Brazil against the TAM defendants.

Deficiency with respect to Answer to Interrogatory:

Obviously, the information sought in response to this Interrogatory is material, and relevant to this litigation, and will readily lead to admissible evidence. Your categorized responses are deficient, incomplete and addressed in order:

1.  When did Mr. Guimaraes provide the "liaison services" during the process of procuring retainer agreements from the TAM clients? Concerning which clients were these liaison services provided? What actions (activities) undertaken by Mr. Guimaraes constituted the "liaison services?" Did Speiser Krause ask Mr. Guimaraes to provide these services? If so, when, and by whom? How much time did Mr. Guimaraes spend providing "liaison services" to Speiser Krause? What is the fair and reasonable value of the "liaison services" provided by Mr. Guimaraes?

2.  What meetings did Mr. Guimaraes attend in regard to the prosecution of the case in the United States by Speiser Krause? Where were these meetings? When were they held? Who were the attendees? Did Speiser Krause ask Mr. Guimaraes to attend these meetings? If so, when did Speiser Krause make such request and by whom was it made? How much time did Mr. Guimaraes spend attending meetings in regard to the prosecution of the case in the United States by Speiser Krause? What is the fair and

reasonable value of Mr. Guimaraes' attendance at these meetings?

3. Which documents did Mr. Guimaraes prepare and translate for representation of clients? If these documents have been produced, identify them by production number. Did Speiser Krause ask Mr. Guimaraes to translate or prepare these documents? If so, when did Speiser Krause so request and who at Speiser Krause made such request? How much time did Mr. Guimaraes spend preparing or translating documents for representation of clients? What is the fair and reasonable value of Mr. Guimaraes' preparation and translation of these documents?

4. Which communications between Speiser Krause and the clients, their local attorneys, and members of the Brailian media did Guimaraes coordinate? What did this coordination consist of (i.e. what acts or activities)? For which clients did Mr. Guimaraes coordinate? For which local attorneys? For which members of the Brazilian media? When did this coordination take place? When did it stop? Did anyone at Speiser Krause request that Mr. Guimaraes coordinate the communications? If so, who at Speiser Krause requested that Mr. Guimares coordinate communications? When was the request made? How much time did Mr. Guimaraes spend coordinating communications? What is the fair and reasonable value of Mr. Guimaraes' coordination of communications?

5. With which local authorities did Mr. Guimaraes communicate concerning the investigation into the cause of the TAM accident? When were these communications made? Were these communications in writing? If so, identify them by serial production number. Did Speiser Krause request that Mr. Guimaraes correspond with local authorities concerning the investigation into the cause of the TAM accident? If so, who at Speiser Krause made such request, and when was it made? If in writing, identify by production number. How much time did Mr. Guimaraes spend communicating with the local authorities concerning the investigation into the cause of the TAM accident? What is the fair and reasonable value of Mr. Guimaraes' communications with local authorities concerning the investigation into the cause of the TAM accident?

6. What assistance on issues of Brazilian law did Mr. Guimaraes' provide to Speiser Krause in connection with Speiser Krause's efforts to oppose the Californian motion to dismiss on *forum non conveniens* grounds? Please provide a detailed list of the issues of Brazilian law on

which Mr. Guimaraes provided assistance. For each, state whether Speiser Krause requested that Mr. Guimaraes provide such assistance. If so, identify who at Speiser Krause made such a request, and when was it made. If in writing, provide production numbers. State the amount of time Mr. Guimaraes spent providing assistance to Speiser Krause on issues of Brazilian law in connection with Speiser Krause's efforts to oppose the California motion to dismiss on *forum non conveniens* grounds. What is the fair and reasonable value of Mr. Guimaraes' assistance on issues of Brazilian law in connection with Speiser Krause's efforts to oppose the *forum non conveniens* motion in California?

7. State the date upon which Mr. Guimaraes became "lead attorney" in prosecuting "the litigation in Brazil against the TAM defendants." Identify the client(s) on whose behalf he so acted. If, for any TAM client Mr. Guimaraes ceased acting as "lead attorney" state the date such actions ceased. Provide detailed information concerning Mr. Guimaraes' activities as "lead attorney" in prosecuting the litigation in Brazil against the TAM defendants. For each of these activities, state whether Speiser Krause ever asked Guimaraes to perform such activity. If so, identify who at Speiser Krause made such request, and the date(s) of each such request(s). State the amount of time spent by Mr. Guimaraes acting as "lead attorney" in prosecuting "the litigation in Brazil against the TAM defendants." State the fair and reasonable value of Mr. Guimaraes' actions as "lead attonrey" in prosecuting "the litigation in Brazil against the TAM defendants."

Interrogatory No. 13:

Please set forth specifically and in detail each item of damage and cost you seek to recover from defendants, including the nature and extent of each item of cost or damage, and, the manner in which each such item of damage and/or cost was calculated.

Plaintiff's Answer States:

See the response to Interrogatory number 12.

Deficiency with respect to Answer to Interrogatory:

This Interrogatory is neither vague, overbroad nor unduly burdensome. The Interrogatory seeks a dollar value of Plaintiff's computation of damages, and the process by which such value was arrived at. Accordingly, please supply the same immediately.

Interrogatory No. 15:

Please state whether or not you have instituted any legal proceeding against any former TAM client and, if so identify the parties to each such proceeding, the nature of the relief sought, the forum in which such legal proceeding(s) has been instituted, current status of each such proceeding, and the index or other identifying number of each such proceeding.

Plaintiff's Answer States:

Guimaraes has commenced a civil proceeding in Brazil againsst the family of Roberto Fischer and Walter Luiz Manhaes. The nature of the action is to collect attorney's fees owed by these clients to Guimaraes for legal services he rendered in the litigation he filed against TAM in Brazil. The cases were filed in the Forum Joao Mendes in Sao Paolo. The cases are still in preliminary stages.

Deficiency with respect to Answer to Interrogatory:

First, to the extend that any documents exist concerning the action or actions identified above, produce them immediately. To the extent such documents have been produced, identify them by production number immediately.

Second, please clarify whether one or two suits against clients for fees is presently pending. The answer refers to plural decedents, but only lists one (1) client.

Third, if these cases are issued index or other identifying number(s), furnish the same forthwith.

As you know, under the Federal Rules of Civil Procedure, and Local Rules of the Southern District, we are required to confer in an effort resolve our discovery problems. With respect to the deficiencies set forth above, if you disagree or take issue with any of them, would you please so inform me in writing. Absent such a response, I will anticipate receipt of your supplemental answers to our First Set of Interrogatories.

Very truly yours,

David Chase

# EXHIBIT "G"

# BERMAN, KEAN & RIGUERA, P.A.

ATTORNEYS AT LAW
2101 WEST COMMERCIAL BOULEVARD
SUITE 2800
FT. LAUDERDALE, FLORIDA 33309

TELEPHONE: (954) 735-0000
TELECOPIER: (954) 735-3636

RICHARD E. BERMAN••
MICHAEL I. KEAN*•
JOSE R. RIGUERA

ANGEL ARMAS•
ORION G. CALLISON, III□
CRISTINA E. GROSCHEL
BRIAN J. MCCARTHY•••+
ELENA WILDERMUTH***

•• Also Admitted NY Bar
*• Also Admitted PA Bar
+ Also Admitted NJ Bar
□ Also Admitted AL Bar
• Also Admitted IL Bar
*** LL.M. in Taxation

OF COUNSEL

VINCENT J. ALTINO, P.A.
ROBERT S. FORMAN, P.A.
LILLIAN S. KACHMAR**

April 12, 2006

**Via Fax and U.S. Regular Mail**
David Chase, Esq.
Apuzzo & Chase, LLC
800 Third Avenue, Suite 800
New York, NY 10022

***Re: Guimaraes v. Speiser Krause***
***Case No.: 05-CV-2210(DC)***

Dear Mr. Chase:

This letter is in response to your letter dated March 29, 2006 concerning alleged deficiencies in Mr. Guimaraes responses to Defendant's Interrogatories to Plaintiff served January 30, 2006.

I will address each of the points raised in your letter in the order presented. However, I first want to make some general observations. We disagree with your assertion that the responses were "incomplete, evasive and insufficient." The answers provided are true and complete to the best of Mr. Guimaraes' knowledge and ability. Furthermore, you repeatedly assert in your letter that the interrogatories are "relevant and proper in view of the issues and arguments likely to arise during the course of this litigation." I don't understand why you repeatedly make this assertion since we did not interpose any objections based on relevancy.

Interrogatory 1:

Mr. Guimaraes has already responded under oath that he does not specifically recall the communications requested in this interrogatory. Specifically, he does not recall the date of each such communication, whether the communication was in person or telephonic, or the sum and substance of each such communication. Nevertheless, Mr. Guimaraes has responded by providing the general nature of the communications he had with Herman & Mermelstein concerning the TAM clients, to wit, Mr. Guimaraes' efforts to retain Herman & Mermelstein, P.A. to replace Speiser Krause in representing the TAM clients in connection with their claims for damages arising out of the TAM accident that occurred on October 31, 1998. In addition, your office has ascertained from the

deposition of Mr. Herman that the initial communications between Mr. Guimaraes and Herman & Mermelstein concerning this matter occurred either sometime in late 2000 or January 2001.

Interrogatory 2:

Mr. Guimaraes has already responded under oath that he does not specifically recall the communications requested in this interrogatory. Specifically, he does not recall the date of each such communication, whether the communication was in person or telephonic, or the sum and substance of each such communication. Nevertheless, Mr. Guimaraes has responded by providing the general nature of the communications he had with Walter Lack and/or Engstrom, Lipscomb & Lack concerning the TAM clients, to wit, Mr. Guimaraes' efforts to retain Walter Lack and/or Engstrom, Lipscomb & Lack to replace Speiser Krause in representing the TAM clients in connection with their claims for damages arising out of the TAM accident that occurred on October 31, 1998. In addition, the initial communications between Mr. Guimaraes and Engstrom, Lipscomb & Lack concerning this matter occurred in early 2004.

Interrogatory 3:

Mr. Guimaraes has already responded under oath that he does not specifically recall the communications requested in this interrogatory. Specifically, he does not recall the date of each such communication, whether the communication was in person or telephonic, or the sum and substance of each such communication. Nevertheless, Mr. Guimaraes has identified those attorneys he recalls communicating with concerning the possibility of having them represent the TAM clients in connection with their claims for damages arising out of the TAM accident that occurred on October 31, 1998.

Interrogatory 4:

The answer (which should be obvious from our prior response) is "Yes."

The identity of the 65 TAM clients with whom Mr. Guimaraes contracted is as follows:

Mohamad Shaikhzadeh
Lucio De Castro Pinto
David Luiz Boianovsky
Carlos Mario Fournier Vieira
Marcelo Do Amaral Ferrao
Wolfgang Hans Janstein
Cornelia Gnugge Bauer
Laercio Cremasco
Jose Rahal Abu Assali
George Klepetar
Rubens De Azevedo Britto

Ivo Roberto Gutjahr
Carla Generalli Nazareth
Alberto Coimbra Vieira
Ricardo Alan Calonico Maciel
Paulo de Albuquerque Prado Filho
Luiz Fernando Sampaio Gouvea
Sergio Aparecido Bleinat
William Arjona Chong
Henrique Mentone Filho
Jose Pereira Duarte
Luis Antonio Amando De Barros
Gilberto Alves Aquino, Jr.
Olavo Ruy Camargo Ferreira
Paulo Marcelo Caluby de Araujo
Aluisio Camargo Fonseca
Andre Estevao Marques Botelho
Walter Luiz Manhaes
Alexandre Magalhaes Vaz de Mello
Maria Silvanete de Lima
Eduardo Silva Tavares Haydt
Geraldo Luis Arede de Barros
Mauricio Frateschi Sa Fortes
Luis Carlos Simoes de Almeida
Rilton de Oliveira Rodrigues
Felix Elias Balassiano
Luis Lauro Romero
Jose Wilson Nogueira
Francisco Jose Rodrigues
Luiz Claudio Tamiello
Arthur Eduardo Gasparian
Marizele A.S. Simioni
Marta De Alemeida Palma
Louwerinus Hoogerheide
Elias Alves Rocha de Queiroz
Roberto Fischer
Amauri Pimenta de Almeida
Aguinaldo Barbosa de Figuereido
Julio Dutra de Toledo
Christiano De Gusmao Neto
Henrique Marques Trindade
Zelia Menin
Marilene Gimenes Haddad
Ariovaldo Ricioli

Regina Lucia Lemos Valerio
Gustavo de Almeida Maffei Serrano
Marcos Aurelio Rios
Trindade Ruiz Fernandes Pereira
Jose Celso Ruiz Pereira
Maria Helena Pereira Beltramin
Marta Costa Fantini
Carlos Yukio Morishito
Mauro Rodrigues de Matos
Flavio de Araujo Filho

The retainer agreements for the referenced clients were already produced to Speiser Krause and bear bates # RG00460-RG579. The information concerning the date of the contract, the title of the document, the identity of the signatories, and the serial stamp number may be ascertained from the documents themselves. Mr. Guimaraes has exercised his option pursuant to Fed.R.Civ.P. 33 (d), to produce Mr. Guimaraes his business records from which the answer to this interrogatory may be derived or ascertained. Furthermore, the burden of deriving or ascertaining the requested information is substantially the same for Speiser Krause as it is for Mr. Guimaraes.

The identity of those clients who terminated Mr. Guimaraes' services is provided in response to Interrogatory No. 8. Mr. Guimaraes does not specifically recall the dates or manner of each said termination, except that he believes that each of the clients sent a letter terminating his services. Mr. Guimaraes has already produced to Speiser Krause copies of all documents in his possession which he received from TAM clients who terminated his services. (See bates stamp #s RG00337-RG00359, RG00586-RG00665, and RG00681-RG00692). To the best of Mr. Guimaraes' information and belief, the TAM clients referenced above terminated his services because Mr. Guimaraes objected to the global settlement negotiated by Speiser Krause which Mr. Guimaraes believed to be too low and would not adequately compensate the victims. The information concerning the date of termination may be ascertained from the documents themselves. Mr. Guimaraes has exercised his option pursuant to Fed.R.Civ.P. 33 (d), to produce Mr. Guimaraes his business records from which the answer to this interrogatory may be derived or ascertained. Furthermore, the burden of deriving or ascertaining the requested information is substantially the same for Speiser Krause as it is for Mr. Guimaraes.

The nature and description of the legal services to be provided consisted of serving as co-counsel with Speiser Krause in connection with the clients' claims to recover damages from responsible parties arising from the TAM airline crash that occurred on October 31, 1996 in Sao Paolo, Brazil. These services included, but were not necessarily limited to, providing liaison services as necessary during the process of having the clients retain Speiser Krause to prosecute claims in the United States and later during the prosecution of those claims, attending meetings with Speiser Krause and clients, preparing and translating documents as needed for the representation of the clients, coordinating communications between Speiser Krause and the clients, communicating with local authorities concerning the investigation into the cause of the TAM accident, providing assistance to

Speiser Krause attorneys on issues of Brazilian law in connection with Speiser Krause's efforts to oppose the *forum non conveniens* motion, and prosecuting litigation in Brazil against the TAM defendants after Speiser Krause lost the *forum non conveniens* motion in the California action.

The identity of the 26 TAM clients with whom Mr. Guimaraes contracted separately for purposes of filing a lawsuit in Brazil against the TAM airlines defendants is as follows:

Mohamad Shaikhzadeh
Lucio De Castro Pinto
David Luiz Boianovsky
Wolfgang Hans Janstein
Cornelia Gnugge Bauer
Rubens De Azevedo Britto
Carla Generalli Nazareth
Ricardo Alan Calonico Maciel
Sergio Aparecido Bleinat
William Arjona Chong
Jose Pereira Duarte
Luis Antonio Amando De Barros
Gilberto Alves Aquino, Jr.
Walter Luiz Manhaes
Alexandre Magalhaes Vaz de Mello
Maria Silvanete de Lima
Geraldo Luis Arede de Barros
Mauricio Frateschi Sa Fortes
Rilton de Oliveira Rodrigues
Luis Lauro Romero
Louwerinus Hoogerheide
Elias Alves Rocha de Queiroz
Roberto Fischer
Zelia Menin
Regina Lucia Lemos Valerio
Mauro Rodrigues de Matos

Mr. Guimaraes has already agreed to supplement his production in this case to include copies of the retainer agreements for these 26 families.

Interrogatory 6:

As already stated, Mr. Guimaraes referred a total of 65 TAM clients to Speiser Krause. The area of specialization is aviation disaster litigation. The purpose of each referral was to prosecute litigation of those clients' claims in the United States against the responsible parties arising from the TAM airline crash that occurred on October 31, 1996 in Sao Paolo, Brazil. Mr. Guimaraes does not recall

the specific date on which each referral was made. However, each client that retained Speiser Krause was aware of Mr. Guimaraes' role as co-counsel and of his fee sharing agreement with Speiser Krause. Pursuant to the fee sharing arrangement between Mr. Guimaraes and Speiser Krause, Mr. Guimaraes was to receive 25% of any attorney's fee collected by Speiser Krause in connection with the TAM case.

As already stated in response to Interrogatory No. 2, Mr. Guimaraes referred certain TAM clients to Herman & Mermelstein, P.A. in approximately January 2001. Mr. Guimaraes has already responded under oath that he does not specifically recall the communications with Herman & Mermelstein, P.A. concerning the referral of TAM clients.

As already stated in response to Interrogatory No. 3, Mr. Guimaraes referred certain TAM clients to Engstrom, Lipscomb & Lack in approximately January 2004. Mr. Guimaraes has already responded under oath that he does not specifically recall the communications with Engstrom, Lipscomb & Lack concerning the referral of TAM clients. Furthermore, Mr. Guimaraes does not have a written agreement with Engstrom, Lipscomb & Lack concerning the division of fees. However, Walter Lack has testified that it is his intention to compensate Mr. Guimaraes from his portion of any attorneys' fees he derives from representation of the TAM clients.

Mr. Guimaraes is in the process of obtaining the specific information requested in subsection "g" of this Interrogatory and agrees to supplement his response to this interrogatory once he obtains that information.

Interrogatory 7:

We disagree with your opinion that the answer provided "is not an answer." Mr. Guimaraes does not specifically recall the date, time and place of each communication wherein he recommend that a TAM client reject the global settlement unilaterally negotiated and proposed to the clients by Speiser Krause. The parties have exchanged numerous documents concerning Mr. Guimaraes' communication with the TAM clients wherein he advises that they reject the settlement. See, e.g., SK000026, SK000620-SK000626.

Interrogatory 8:

Mr. Guimaraes does not specifically recall the dates or manner of each said termination, except that he believes that each of the clients sent a letter terminating his services. Mr. Guimaraes has already produced to Speiser Krause copies of all documents in his possession which he received from TAM clients who terminated his services. (See bates stamp #s RG00337-RG00359, RG00586-RG00665, and RG00681-RG00692). To the best of Mr. Guimaraes' information and belief, the TAM clients referenced above terminated his services because Mr. Guimaraes objected to the global settlement negotiated by Speiser Krause which Mr. Guimaraes believed to be too low and would not adequately compensate the victims. The information concerning the date of termination may be ascertained

from the documents themselves. Mr. Guimaraes has exercised his option pursuant to Fed.R.Civ.P. 33 (d), to produce Mr. Guimaraes his business records from which the answer to this interrogatory may be derived or ascertained. Furthermore, the burden of deriving or ascertaining the requested information is substantially the same for Speiser Krause as it is for Mr. Guimaraes.

Interrogatory 11:

See letter dated February 5, 1997 from Gerard Lear to Renato Guimaraes in which he confirms Speiser Krause's agreement to pay Mr. Guimaraes 25% of the fees recovered by Speiser Krause in connection with the representation of the victims of the TAM air disaster (RG00006).

As previously stated, Speiser Krause unilaterally reached a global settlement concerning the TAM clients' claims sometime in or around April 2000. Shortly thereafter, Speiser Krause visited Brazil and counseled and directed the TAM to accept those settlements without any explanation for the amount proposed. When Mr. Guimaraes objected to the settlement negotiated by Speiser Krause because he believed the amount was too low and would not adequately compensate the victims, Speiser Krause recommended to the clients that they terminate Mr. Guimaraes' services and retain substitute counsel to move forward with seeking court approval of the settlements. Thereafter, Speiser Krause refused to pay Mr. Guimaraes for any of the services he had rendered in connection with the TAM case.

Interrogatory 12:

Mr. Guimaraes stands by his prior answer. He does not specifically recall the date that each service was rendered. However, the services described were continuously provided over an extended period of time stretching from late 1996 through the year 2000. We specifically object to your attempt interpose the **additional** questions identified in your letter dated March 29, 2006 under the guise of seeking supplementation of the response to this Interrogatory. Further, we note that such detailed follow-up questions are more appropriately asked in a deposition. Your office had ample opportunity to ask these questions of Mr. Guimaraes during his approximately 14 hours of deposition in this case.

Interrogatory 13:

The amount Guimaraes claims to be the fair value of the services rendered on behalf of Speiser Krause is 25% of the attorney's fee recovered by Speiser Krause in connection with the TAM cases as contemplated by the fee sharing agreement between the parties. Assuming the figures contained in Exhibit 59 marked at the deposition of Leigh Ballen taken October 10, 2005 is accurate, Mr. Guimaraes is entitled to $1,824,800 or 25% of $7,299,200. Mr. Guimaraes reserves the right to amend this response should additional information become available through discovery or otherwise.

Interrogatory 15:

First, these documents have never been requested by Speiser Krause. Accordingly, Mr. Guimaraes is under no obligation to produce them pursuant to the belated demand in your letter. Furthermore, these are public documents equally accessible to Speiser Krause. Second, to clarify, there are two pending lawsuits. I have requested that Mr. Guimaraes provide me the index or identifying numbers and will supplement this response once I receive that information.

Very truly yours,
***BERMAN, KEAN & RIGUERA, P.A.***

Jose R. Riguera

JRR/dlf

cc: Richard E. Berman, Esq.

\\Server-01\REBData\Guimaraes, Renato\1147-001\Letterhead\14405_2.wpd

**BERMAN, KEAN & RIGUERA, P.A.**
**2101 West Commercial Boulevard**
**Suite 2800**
**Fort Lauderdale, Florida 33309**
**Telephone (954) 735-0000**
**Telecopier (954) 735-3636**

# FACSIMILE TRANSMISSION

DATE: April 12, 2006

SEND TO: William J. Apuzzo, Esq.

FAX NO.: (212) 297-0887

FROM: Jose R. Riguera, Esq.

RE: Guimaraes v. Speiser Krause

TOTAL PAGES, INCLUDING THIS COVER SHEET:

IF THERE ARE ANY PROBLEMS IN RECEIVING, PLEASE CALL: Deanne Ferrese

This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender above by telephone (collect call if necessary) and return the original facsimile to us at the above address via the U.S. Mail. Thank you.

COMMENTS: **Letter of even date is attached.** (without enclosures)

\\Server-01\REBData\Guimaraes, Renato\1147-001\Fax\14629.wpd

# BERMAN, KEAN & RIGUERA, P.A.

ATTORNEYS AT LAW

2101 WEST COMMERCIAL BOULEVARD
SUITE 2800
FT. LAUDERDALE, FLORIDA 33309

TELEPHONE: (954) 735-0000
TELECOPIER: (954) 735-3636

RICHARD E. BERMAN••
MICHAEL I. KEAN**
JOSE R. RIGUERA

ANGEL ARMAS•
ORION G. CALLISON, III¤
CRISTINA E. GROSCHEL
BRIAN J. MCCARTHY••+
ELENA WILDERMUTH***

OF COUNSEL

VINCENT J. ALTINO, P.A.
ROBERT S. FORMAN, P.A.
LILLIAN S. KACHMAR**

•• Also Admitted NY Bar
** Also Admitted PA Bar
+ Also Admitted NJ Bar
¤ Also Admitted AL Bar
• Also Admitted IL Bar
*** L.L.M. in Taxation

April 12, 2006

**Via Fax and U.S. Mail**
William J. Apuzzo, Esq.
Apuzzo & Chase, LLC
800 Third Avenue, Suite 800
New York, NY 10022

***Re: Guimaraes v. Speiser Krause***
***Case No.: 05-CV-2210(DC) (S.D.N.Y.)***

Dear Mr. Apuzzo:

This is in response to your letter dated March 15, 2006 concerning additional documents to be produced by Mr. Guimaraes. I will respond to each of the items in the order set forth in your letter. I have not yet obtained all of the documents requested, but I wanted to provide you those that I have obtained to date.

The written agreement between Mr. Guimaraes and Herman & Mermelstein was included in the documents produced last week by Walter Lack at his deposition.

10/07/05 Deposition Transcript

Page 71, Line 7: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 121, Line 13: Attached (RG-00815).

Page 143, Line 20: There is no written agreement between Engstrom, Lipscomb & Lack's and Mr. Guimaraes.

11/12/05 Deposition Transcript

Page 42, Line 12: Previously produced (see RG00667-RG00674).

Page 43, Line 6: Attached (RG00816-RG00841).

Page 44, Line 11: Attached (RG00842-RG00854).

Page 46, Line 6: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 83, Line 7: Documents were withheld by Engstrom, Lipscomb & Lack on the basis of attorney-client privilege. A privilege log will be prepared.

Page 89, Line 16: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 95, Line 5: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 105, Line 10: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 105, Line 16: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 114, Line 16: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 135, Line 22: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 136, Line 14: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Page 136, Line 20: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

11/17/05 Deposition Transcript

Page 58, Line 24: Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Additional information requests made during the deposition.

11/2/05 Deposition Transcript

Page 126, Line 13: Trinidade Ruiz, Jose Celso and Maria Helena.

As to the Retainers for persons damaged "on the ground," Mr. Guimaraes is in the process of obtaining these documents. We will furnish them to you upon receipt.

Very truly yours,
*BERMAN, KEAN & RIGUERA, P.A.*

Jose R. Riguera

JRR/dlf

cc: Renato Guimaraes, Jr. (via e-mail)
Richard E. Berman, Esq.

\\Server-01\REBData\Guimaraes, Renato\1147-001\Letterhead\14280.wpd

# EXHIBIT "H"

COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

DR. WANDERLEY MINITTI,

Plaintiff,

- against - No. 04 CV 07976 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO, PC,

Defendant.

-----------------------------------------x

RENATO GUIMARAES, JR.,

Plaintiff,

- against - No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

-----------------------------------------x

Friday, October 7, 2005
10:15 a.m.
Held at the Offices of
Apuzzo & Chase, LLC
800 Third Avenue
New York, New York 10022

EXAMINATION BEFORE TRIAL of

RENATO GUIMARAES, JR., Plaintiff

held as above noted, pursuant to Notice, before Catherine Armentano, C.S.R., a Notary Public of the State of New York.

COURT REPORTER'S CERTIFICATION

I, Catherine Armentano, Certified Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose deposition is hereinbefore set forth, was duly sworn by me and that the within transcript is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

CATHERINE ARMENTANO, C.S.R.

Renato Guimaraes, Jr.

A. Not in my office, but in this case I have many many fellow attorneys who work for the semi-purpose in this case exchanging information, so forth.

Q. Do you have a secretary?

A. No, but sometime I have somebody to work for me for a secretary duties, something like that.

Q. And are you an attorney at law?

A. Yes, I am.

Q. In which jurisdictions are you admitted to practice law?

A. Well, in Brazil, as long you are with the bar, present bar, you can practice law all over the country regardless the state. Unless there is pass some limitation of the case, then you have to inform the local bar, which is not my case.

Q. And are you admitted to practice in any other countries besides Brazil?

A. No, I am not.

Q. Have you ever been a witness in a deposition?

A. Yes, in Brazil sometime, yes.

Q. Can you please tell us when you were

Renato Guimaraes, Jr.

when we had started.

That was his idea, was reasonable. I agree on the spot because without Speiser Krause, I would never get Northrop there, even though because Speiser Krause lost the forum non-convenience in California.

Q. When these were signed in October of 1998, didn't you already have retainer agreements signed by the same clients for all the TAM actions?

A. Not this family, I don't believe, no, no. I have other retainer letters much earlier.

Q. Let me make this clear. There came a time after the TAM crash when you got a lot of clients to come and sign retainers; correct?

A. No. It start one by one. The first one was from the pilot widow and the mother of the copilot.

Q. There were 65 claimants, give or take, in the TAM cases; correct?

A. Yes.

Q. Before October of 1998, when you had these signed, how many of these TAM cases were signed up in a retainer for Speiser Krause and you?

A. How many before?

Renato Guimaraes, Jr.

Q. Yes.

A. I would assume all 65 because here is according with Speiser Krause.

Q. So, you had one agreement with the clients for the TAM cases with Speiser Krause, correct? And then you had this agreement with the clients naming yourself; is that correct?

A. Yes. And before agreement with Speiser Krause and Renato I do have, not too many, but I have several clients which sign the agreement with me only.

Q. Of the 65 TAM clients that signed the retainer agreements with you and Speiser Krause, when did you complete all of them having signed up, when was it finished?

A. When the statute of limitations in California according to Speiser Krause was ending. And Speiser & Krause gave me instructions, and I say to all it's time to run off to America, whoever wants Speiser & Krause has to decide now, or then it will be too late.

Q. Approximately how long was that?

A. Well, it should be one year after the accident, according to Speiser Krause.

Renato Guimaraes, Jr.

Ballen. Every judge looked to him.

And I lost. No, it's a Brazilian cause, we have to pursue it here, so we lost. So, I have to, we have to, live with that. So, I try my best, but that was not foreseen in the beginning. That's because Steve Marks gave the speech, the lecture in symposium, remember, in Daytona Beach, in the university, Aeronautic University, don't play with foreign non-convenience.

Today people are smart, today reading and computer, they have information, globalization, and here is the problem in Brazil. That's a good lesson for everyone, not to use too much without knowing where are you going your case to.

Q. From the time that you had these clients sign retainers for the Brazilian actions, let's use the date of the retainer, October of 1998, how much time was it before you had this discussion with Arthur Ballen over the coffee about sharing of the fees?

A. Well, that was 1998, we start to have a difference around 2000. Around two years, roughly, because not like this, it was a kind of strange talk, you know, Renato, you have to

Renato Guimaraes, Jr.

cooperate, you know, you don't have to worry about everything, things like that. So it's not one day, it was a kind of ongoing game, say, I don't believe what they are going to, and so forth.

Q. But the conversation --

A. Two-and-a-half years.

MR. BERMAN: For the record, Exhibit 57 is composed of Bates SK000051 and SK000050.

MR. APUZZO: This will be number 2.

(Document handed to the witness.)

(The witness examines document.)

Q. Can you recognize this document?

A. Yes. I don't see my signature is my kind.

Q. Can you identify it for us?

A. Yes. When we have the annex, we did not desire the Brazilian court to accept the case against Northrop there, but Judge Russo did accept. And this become an all new case in Brazil, so, we have to develop strategy.

Professor Irineu and I, and all other attorneys, have different views on that. And I

THE WITNESS: I don't know directly but I think so, but it is in the public record in Brazil in my proceedings, because I inject that, see it is not fair, they are paying only this, I want much more than this, and all prosecutors and --

MR. APUZZO: Based upon the fact that the witness says it's a public record and was produced, we respectfully request this.

(Production Request.)

MR. BERMAN: I respectfully agree with your position. We will have it obtained, that record, and produce that to the other side.

MR. PELLEGRINI: I don't have to call for production of any records if they're going to be produced.

MR. APUZZO: Fine.

Q. On the fees that you received the $145,000 and the $75,000 for most of the 26 clients, do you have an estimate approximately how much that was, the total?

Renato Guimaraes, Jr.

A. Amount of money?

Q. Yes, just the 26 families getting the $145,000 and the $75,000.

A. I think it's something between $150,000 or $200,000, probably less or more.

Q. For all of the 26 families?

A. That's right, yes, approximately.

Q. I see.

A. Because only 10 per cent I received.

Q. All right, you answered the question I was going up to.

MR. BERMAN: I understood it the same way he did.

MR. APUZZO: That's fine.

Q. So, you got about $150,000 of those fees, on those fees?

A. Yes.

Q. Did you also get sucumbencia?

A. No, because it was not a final decision, it was something new also in the code of consumer protection.

Q. When did you receive those fees?

A. Right in the beginning. In fact, when I present the complaint, the first motion, to

Renato Guimaraes, Jr.

from the Brazilian point of view.

Tim Cook has a different angle, you know, he is very much concerned about the judge in Santa Ana, California. And attorneys in Brazil are all focus on TAM case. Renato, don't disturb my simple case against TAM here in the central forum. So, it was a complex situation. It was a fan dance.

Q. Did Speiser Krause tell you that it was improper for you to request that the cases be dismissed in Brazil?

A. I guess so, if I read, but I did not pay attention for Speiser Krause, I trust I have a chance.

If we prevail, we will not be in this room, everyone would have lots of money, thanks to Speiser Krause and my aggressive or disciplinary action, but I lost.

Example, I was right here in Kennedy Airport and by chance I saw TAM office, a small door. I said, wow, I thought TAM is here in New York, Arthur Ballen, let's sue TAM here, Northrop together.

It took one year to a very scholar

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

DR. WANDERLEY MINITTI,

Plaintiff,

- against - No. 04 CV 07976 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO, PC,

Defendant.

---------------------------------------x

RENATO GUIMARAES, JR.,

Plaintiff,

- against - No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation f/k/a SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation,

Defendant.

---------------------------------------x

Wednesday, November 2, 2005
10:10 a.m.
Held at the Offices of
Apuzzo & Chase, LLC
800 Third Avenue
New York, New York 10022

CONTINUED

EXAMINATION BEFORE TRIAL of

RENATO GUIMARAES, JR., Plaintiff

held as above noted, pursuant to Notice, before Catherine Armentano, C.S.R., a Notary Public of the State of New York.

COURT REPORTER'S CERTIFICATION

I, Catherine Armentano, Certified Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose deposition is hereinbefore set forth, was duly sworn by me and that the within transcript is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

CATHERINE ARMENTANO, C.S.R.

A. Yes, all those, pain and suffering and the economic losses and punitive damages.

MR. CHASE: I just want to make sure, is the answer yes?

MR. APUZZO: Yes.

Q. Was it your understanding that if no money damages were recovered by the TAM clients that you would not receive a fee for your legal services?

MR. RIGUERA: Bill, I just want to clarify. David, were you saying it's contingent on all three, therefore if only two --

MR. CHASE: No.

MR. RIGUERA: Because I thought the answer was clear in the beginning then you interjected.

MR. APUZZO: Let's read back the last question and answer.

(Whereupon the portion of the record referred to was read back by the Court Reporter.)

A. Yes, sure, contingent, no gain, no money.

clients; correct?

Q. Yes. When I said the very first time at this deposition several weeks ago, when I refer to the TAM cases, the TAM clients, I'm referring to the air crash that occurred on October 31st of 1996. So, whenever I refer generally to TAM clients, TAM cases, they're all referring to cases that came out of that crash.

Now, next step, Speiser Krause has a written retainer that they gave to the TAM clients, it was a retainer, you've seen this; correct?

A. Yes, along with me.

Q. This written retainer with the TAM clients, that's an agreement as to legal fees with those clients; is that correct?

A. Yes, among us.

Q. Now, do you understand that your agreement with Speiser Krause to share in the legal fees depended upon the existence of the agreement, the retainer agreement, with the client?

A. I will say they are twin contracts, family clients. So, under the umbrella of Speiser Krause/Renator rests all 65 agreements of Speiser Krause and Renato with every family in Brazil, 65

families. Did I answer your question?

Q. I think you did, I would like just to clarify.

MR. CHASE: Can we step out?

(Off the record.)

Q. My partner has pointed something out, I just want to make sure there's no confusion.

Besides for the written retainer agreements that were prepared by Speiser Krause for the TAM clients, there's another set of retainer agreements that was prepared by you for I think 26 families for the Jabaquara action; is that correct?

In other words, there were two sets of retainer agreements with the clients; is that correct?

I want to just clarify the point so we're focusing on the right questioning. Let me rephrase this.

Originally there were retainer agreements, documents, prepared by Speiser Krause that were given to all 65 families, that we know. Sometime after that there was a second round of written retainer agreements that you, Dr.

Renato Guimaraes

Guimaraes, had with 26 of the families; is that correct?

A. That's correct along with many, many other attorneys with the other families.

Q. So, now, I want to focus only on the first set of retainer agreements that Speiser Krause had created for these clients.

A. Okay.

Q. Do we agree that this retainer agreement, the first set, was a contract defining the fees that will be paid to the attorneys for their work on the TAM cases?

A. Yes.

Q. And your agreement that you claim with Speiser Krause to share in the legal fees, that depended upon this written agreement with these first clients, the first written agreement; is that correct?

MR. RIGUERA: Object to the form.

MR. APUZZO: I'm trying to be very clear so, therefore, my question was not properly in form.

Q. Did you understand that your agreement to share the legal fees with Speiser

Krause depended upon the agreement in the form of the first retainers with the clients?

A. Yes, worked both ways.

Q. Did Speiser Krause ever tell you they would pay you some legal fee for your work whether or not they received any money from the TAM air disaster?

A. They would pay only contingent on receiving.

Q. Did they tell you that?

A. Yes. It's written there, that's the only contract Speiser Krause and Renato had, if we, Speiser Krause and Renato, we are going to share, how much. Then come another letter just between us, clients don't have to pay, any rules here, just between Speiser Krause and Renato, we make the division, 75 to Speiser Krause, 25 per cent to Renato.

Q. You're referring to two documents, you said the first one was you agreed to share and then the second one was that it actually came up with the percentage, 75/25?

A. Yes.

Q. I know the document you're referring

Renato Guimaraes

to 75/25, but can you tell me a little bit more about the first document that Speiser Krause said we agree to share with Renato?

A. That was the second one. No, no, the first one was the sharing then came the formal retainer. First I demanded how much I will get, and they produced, Jerry Lear two paragraph letter. Then they come to Brazil, we have some first clients, and they produced the long retainer letter with our both names in and the families signed on the second page.

MR. APUZZO: I just want to be very clear on this.

MR. RIGUERA: I understand. He's saying there's one written agreement with Speiser Krause about the fee sharing, then came the retainer agreements.

Q. What your attorney just stated; is that correct?

A. Yes, because I wanted to make sure how much would be my share.

Q. In other words, the first one is the written letter saying 75/25 to the Brazilian attorneys, all right?

A. Yes.

Q. And the second one is when they came to Brazil and made a retainer agreement with the clients that had your name on it?

A. Yes.

Q. Did you know that some of the TAM clients discharged Speiser Krause by revoking their retainer agreements?

A. Yes. There are ten so far, ten, seven. Three are waiting in California.

Q. I'm sorry, tell me that again.

A. Seven fired Speiser Krause, they are in California, and three more are waiting for the outcome of California to join and fire Speiser Krause, too.

Q. Can you tell me the names of the seven in California?

A. By heart it would take long, may I read my own letter?

MR. RIGUERA: Didn't we cover that in the first one, Bill?

A. I can try. Menin.

Q. M-E-N-I-N?

MR. RIGUERA: Bill, I have a list

Renato Guimaraes

They don't understand. They say lost and, of course, it would not be forum nonconveniens, was the stay, should be on the merits. We lost, well, we heard rumors in the court, rumors in the court we are going to lose, so.

Q. Do you have an agreement to share fees with Walter Lack for the seven cases?

A. No.

Q. So, if Walter Lack is successful in enforcing the Jabaquara judgement in the United States, how is Walter Lack going to get paid?

A. He?

Q. Yes.

A. It's in the contract of Lack and the families, these families, these seven families.

Q. And you're not named in that retainer contract?

A. No, I'm not.

Q. So, if I understand you correctly, if Walter Lack gets an attorney's fee of one-third of the recovery, you are not going to receive any part of that one-third fee?

A. Not by contract, maybe voluntarily as a referee. But even as a referral, I have no

contract at all, but the families shall pay me because I have a contract on 26 of them.

Q. So, out of the 26 families these seven are included; is that correct?

A. No, Klepetar is not. Only Klepetar came afterwards, all of them are included in the 26 but Klepetar.

Q. That means your agreement with the families of 10 per cent for the attorney's fees that you have in Brazil?

A. Yes.

Q. And do you know how much Walter Lack is going to charge the families on his retainer agreement?

A. It's a contract between those clients and Lack. But it's standard, it's a little more sophisticated than the retainer letter with Speiser Krause, it's pretty much on the border of Kreindler & Kreindler, two million dollars, such the next, one million dollars, it varies.

Q. A sliding scale is what we call it.

A. Yes, I think that is the proper words.

Q. So, you have an understanding with

Walter Lack that if they're successful and they get a great deal of money for fees on these cases then that he will give you something?

A. Maybe. But it's different. When I start with Speiser Krause it was zero. Walter Lack, I can make no contribution at all. I am an office boy to bring papers back and forth. And the case is too complicated, it's not easy to find a guy who understand aviation case, you know, lift the stay. So, I am desperate to find a reliable attorney to take over. So, I don't worry about my fees, I have enough if I win. So, my main consideration, my duties, is with the families, I have to have an attorney for the families.

Q. And do you expect that because you referred the families to Walter Lack that he would give you some fee as a referral?

A. Well, only if it is voluntarily, Renato, you were a nice guy, this case, take a beer, here is your check. I will not knock on his door, though, that's not our understanding.

Q. What about your expenses you paid?

A. About the sucumbencia?

Q. No, your expenses, the airline

Renato Guimaraes

translation into English of my petition which is in part here. And I tried to exercise, as I say here, Article 22, paragraph Third of the Brazilian Bar Association to preserve my 10 per cent. Yes, the family Aquino should pay me.

Q. And if I can summarize the motion, you're applying to the court to we call freeze the tutela antecipada so you can protect your fees; correct?

A. Yes, correct, don't pay the family, keep in the court.

Q. Did you ever write to any of the defendants, Northrop Grumman, TAM, and so on not to pay any settlements to the families unless they paid your fee?

A. I guess I did, but I am not sure. That would be the first step. The second one is this one here, I try by myself.

Q. This one, you're indicating Exhibit 9.

A. And the third is have my attorney who is Clito doing the things.

Q. And is it correct that if you're successful in these claims here, you're not going

Renato Guimaraes

to share any of these fees with Speiser Krause; is that correct?

A. The 10 per cent, no, 10 per cent is only my exclusive as any other Brazilian attorney has, I don't know how much, each with their own clients for the central forum against TAM, nothing to do with California case.

Q. So, your suit against Speiser Krause for legal fees, is it related to the same work that you performed for your TAM clients in Brazil?

Maybe I can clarify.

A. Please do.

Q. Are you suing Speiser Krause for legal fees related to the same work that you performed which forms the basis of your litigation against the clients?

MR. RIGUERA: I'll object to the form. If you understand it, please answer it.

A. We started in California, just one year statute of limitation. After that we have another year, two year statute of limitation, in Brazil to start against them.

Meanwhile the California judge send

the Northrop case to Brazil. So, we have it somehow connected the same accident, the same defender but a different proceeding, one domestic, another one international, very complicated one.

In the very complicated one I have only my share with Speiser Krause.

In the domestic, 65 different cases against TAM in central forum, like any other what, 30, 20 attorneys, I have in my specific contract with those 26 families, one, two, three families, I have 26. I know mine is 10 per cent, some people say more, less, or free, they are relatives of the families, so it's two different sets.

Q. Did any of the TAM clients discharge you as their attorney?

A. Yes. Out of 26 I have only nine now.

Q. Would you like to maybe consider, we were referring to out of the 65, not out of the 26?

A. No, if you consider all 26, you have to see how many clients, all of them, fire Professor Strager.

Q. I'm not too sure I understood that.

Do we understand there were 65 clients of which you claim that you represented in

received, did they all say about the same reason as this letter here, the reason for the clients to revoke your authority, was it the same?

A. No, it was because of your opinion, period. I inject my observation, I don't know an attorney without an opinion.

Q. So, some letters say numberless obstacles --

A. Very few, I think only this family.

Q. -- and some of them said it was a difference of opinion?

A. No, they don't say difference of opinion. They say because of your opinion, most of them, by far, most of them because of my opinion.

Q. And your opinion was different from their opinion?

A. My opinion was different of Speiser Krause opinion. They agree with me but they say we need the money, so I agree, but we cannot change the world, they are Americans, I want the money, the way to do this is to fire you, I'm sorry I fire you, and they did. Some pay me back, some did not.

Q. Were any of the TAM settlements the ones that were settled with Speiser Krause as the

attorney, were they required to be approved by a Brazilian lawyer?

A. Brazilian court.

Q. Brazilian court?

A. Yes. All of them with minors. Without minors, the court don't care, as long as you are adult, you can throw your money away, but when kids, orphans, little kids, the curator of the minor has to give opinion.

Q. And the settlement agreements, in order to get the Brazilian court to consent to these settlements, did the clients have to be represented by a Brazilian attorney?

A. That's correct.

Q. Did any of the TAM clients ask you to serve as their attorney for the purposes of obtaining the Brazilian court's approval of a settlement agreement?

A. No. That would be the last step. The first step they knew I was pretty much against it. I went to the attorney general office, hey, we have a problem here, so I do not sign and made you, attorney general office, aware of what's going on here.

Renato Guimaraes

Q. But my question, did any of the TAM clients ever ask you to help them in the Brazilian courts to --

A. Probably one or two, probably, but I doubt, because they knew my position.

Q. And did you refuse these requests?

A. Yes. I could not sign alone, I don't want to be confused, I don't want to go along with Speiser Krause dirty game.

Q. Did you tell the TAM clients that they should reject the settlement proposed by Speiser Krause because you could get them more money?

A. No. Because, it was not legal what they are doing.

Q. No, hear my question, I didn't ask you if it was legal or not legal.

Did you ever tell the TAM clients that I can get more money for you than Speiser Krause, don't take this settlement?

A. No, that was not the main reason.

Q. Did you ever tell them that, though?

A. I would get more money?

Q. Yes.

question. If we have to get explanations on every question, we'll never get through the deposition, and this will be the basis for my request.

A. The answer is no.

Q. Thank you. Did you tell any of the clients that they should reject the settlement agreements because if they accepted the settlement agreements you would not get sucumbencia?

A. No. It has nothing to do with the sucumbencia, it's --

MR. RIGUERA: Just answer the question, the answer is no.

MR. APUZZO: Thank you.

MR. RIGUERA: We may be able to get through this today.

Q. When you refused to act as the attorney for the TAM clients to get the settlement agreements approved, were you acting contrary to these clients interests?

A. I'm sorry, depend what you mean for interests.

Q. If your client wanted to settle the case and you told them no, and I'm not going to

help you settle the case, would that be acting contrary to the client's interest?

A. Yes, in this sense short range, yes.

MR. RIGUERA: Hold on, because --

MR. APUZZO: No, there's no speaking objections here.

MR. RIGUERA: Then I'm going to say I understand the need to finish the deposition and to get short answers, but I don't want to get a record where he feels compelled to --

MR. APUZZO: I didn't prevent him from giving a reasonable explanation.

MR. RIGUERA: I think he's trying to explain something.

MR. APUZZO: Please, just note my objection to counsel's testimony and the request on the record for his client to give an explanation with his answer, and it's fueling the continuing request for this deposition.

Q. Do you have to explain your last answer?

A. The question is if I have to explain

to the clients?

Q. No, I'm going to go on to the next one.

When you refused to assist the TAM clients in affecting the settlement agreements in the Brazilian courts, when you did that, were you acting contrary to Speiser Krause's interest?

A. Obvious.

Q. Were your actions in refusing to assist the clients in accepting these settlements, were these actions contrary to the objectives that were made known to you by the TAM clients?

THE INTERPRETER: Repeat the question.

(The question referred to was read back by the Court Reporter.)

A. Yes, they want the money, I want the rule.

Q. And in the same sequence, were your actions also contrary to the objectives of Speiser Krause?

A. Yes.

Q. What action did you take to prevent the clients from accepting the settlements which

Speiser Krause proposed to them?

A. After I have no chance to convince them anymore, I went to the attorney general office. And by reading, I say something wrong has happened here, and I want to get out of my duties. It's a public interest, I go to my limit of my duties. So, the attorney general should take care of it, and many agree with me.

Q. Did you bring any law action in the Brazilian court to nullify the settlement agreements?

A. I don't think we call lawsuit, it's a kind of notification.

Q. Is the notification filed in any of the Brazilian courts?

A. It's not the court itself, it's a clerk, a department of the court, it's not in litigation yet, it's a preparation, say so.

Q. When you met with the attorney general, what did he say to you and what did you say to him?

A. Sir, on this issue, I never talk personally like us, we are doing now, with the attorney general, I just filed my complaint, say

so, to the offices so the clerk of the attorney general give a receipt and they made a decision. It's not a personal meeting, say so, it's a written motion to the attorney general.

MR. APUZZO: Mr. Guimaraes' counsel, if they will please get us copies of these documents that he sent to the attorney general.

(Production Request.)

MR. RIGUERA: Okay.

MR. APUZZO: And also copies of the documents which were filed with the clerk of the court to nullify the settlement agreement.

(Production Request.)

MR. RIGUERA: From my review, my recollection, some of that may have been produced already. We'll do a search to make sure we haven't missed anything, and if we did, we'll provide it.

Q. Exhibit 11 is a letter, the first two pages which are designated as Bates stamped SK000620 and 621 appear to be a translation of the document following which is SK000622 and 623. And

Renato Guimaraes

Q. Let me make it easier. Was there a printed signature line on any of these documents for your signature?

A. No, only accepted by Speiser Krause. What I request and they agreed is put my name in here.

Q. And did they ever do that?

A. Do the name?

Q. You requested and they agreed to put your name?

A. Yes. It is not because I was not confident of Speiser Krause, because it will be easy for the Brazilian to accept if a Brazilian guy was involved, that's the difference.

Q. And at the time that these were signed by the clients, did you have an understanding that there was an agreement between yourself and Speiser Krause concerning the legal fees?

A. Yes, the letter.

Q. You had an understanding?

A. Yes.

Q. Did you have any understanding of the legal work that you would be required to perform

for the clients pursuant to these retainer agreements?

A. Yes, I will be responsible for all Brazilian legal papers, actions, anything related with the Brazilian law will be under my duties.

Q. Did that include any action in Jabaquara?

A. No, that was not foreseen at that moment. That came later when they said Renato, we are going to sue Northrop here in California and be prepared for the next step because sure they will raise forum nonconveniens.

Q. Who prepared the retainer agreements?

A. Somebody in Speiser Krause offices.

Q. And when did you first see them?

A. The first time we start with the family decision, so all the time they have xerox copy this and gave the two pages. The family sign the second page, some sign or put the initial on the first page. And that's it.

Q. Before the families signed them, did you get an opportunity to read them?

A. No. I read one or two maybe, and I kept with me for record. Then it was so confusing,

Renato Guimaraes

glad to meet you, that's Speiser Krause, like this. Then I have a brief explanation over and over again.

Then the retired pilot, they took with them tried to explain, and I tried to translate into English, how much we should expect from America. And I translate what Arthur ask for, how much was the age, or how much was the salary. Normally around three or four million up to six, that was what he said. And they sign, some take a few days, next two or three days, hey, here, I agree. At the end we got 65.

Q. Were all the families represented by family lawyers when they came in to sign the documents?

A. Not really. Most of them, yes, but some very very quiet, afraid, you know, widows suffering, they are scared, you know, foreigners, so different approach. Yes, with attorneys, and good attorneys, very good attorneys, they're not poor people here, they are middle class.

Q. How many of the families, to the best that you can remember, did not have a family attorney come in with them to sign the agreement?

Renato Guimaraes

A. Very few, 10 maybe.

Q. 10?

A. Yes, but soon they bring the attorney, always have the attorney because of the estate.

Q. And at the time that they signed this agreement, the retainer agreement, was there an agreement between Speiser Krause and the family lawyer as to the compensation to be given to that lawyer?

A. No, the compensation for a referral came along with a collective huge meeting when I told Arthur, see, attorneys for the families are demanding some compensation. At the meeting I think I told you, he think about. I said take your time, call Washington.

He said no, I decide now, 10 per cent. Everyone agreed, he called Washington, gave me the letter, Renato you are authorized to give to everyone.

Q. So, the agreement to pay the lawyers 10 per cent came after the clients signed these documents?

A. In the process, not the beginning,

their letterhead dated February 5th of 1997 designated RG00006. Can you identify this letter?

(The witness examines document.)

A. Sure.

Q. And this is a letter that was sent to you by Gerard Lear?

A. Somebody in his office.

Q. Do you know when you received this letter?

A. When?

Q. Yes.

A. Half-an-hour after I discussed verbally with Arthur Ballen for the 25 per cent.

Q. And you were working in your office at the time you received this?

A. No, I was in town, Sao Paulo, so I gave a public fax number on the phone, I went.

Q. What was your understanding when you received this, what did this mean to you?

A. Just like today, it was a complimentary written evidence of our understanding which was left open in Key Largo, you know, well, depend, Renato, how many clients, let's see, we'll discuss this later, and then it's time to fix it.

Renato Guimaraes

Q. So, out of the 33 and one-third per cent, he's saying a total of 25 per cent will be paid to Brazilian counsel, you were one of the Brazilian counsel, I assume?

A. No, here, Renato Guimaraes, counsel.

Q. No, in other words, where he says Brazilian counsel, you took that to understand that he was saying Renato Guimaraes is going to get 25 per cent?

A. Yes, my name is there.

Q. The letter is addressed to you, dear Mr. Guimaraes?

A. Yes.

Q. Why didn't he say of this fee a total of 25 per cent will be paid to Renato Guimaraes for his services?

MR. RIGUERA: Objection. Calls for speculation as to what he meant.

Q. Do you understand that to be what was meant by their services?

MR. RIGUERA: Same objection.

A. I follow his rules.

MR. RIGUERA: His rules.

I'm not telling you not to

answer. If you know what Arthur or Gerard Lear were thinking when he wrote that, go ahead.

MR. APUZZO: Please.

A. In retrospect --

Q. No, at the time you received this.

A. I have no question, I talk to the guy, you take 25 five per cent or good luck, I go to Kreindler & Kreindler. He said okay, he accept. And I receive this, my fee. You know the trick they put in I recognize later on, but I was sure it was referred to me.

Q. And when he uses the words "their services," did you have any question of the English use of the words their services?

A. Much later, much later professor in America told me counsel is a word is used singular and plural. I was not aware of that, so I said they think I have other employees in my office, but I have a suspicion right from the beginning he was making a trap.

MR. CHASE: Can we go off the record.

(Off the record at 4:30 p.m.)

Renato Guimaraes

(Resuming at 4:35 p.m.)

EXAMINATION CONTINUING BY MR. APUZZO:

Q. Dr. Guimaraes, an answer to one of the questions, I think you referred to something to the effect that you thought that Speiser Krause assumed you had other employees in your office; is that correct?

A. That's the way to accommodate their service, their is plural. And I start reading all kinds of grammar books to discover why they say their. Their should be another attorney. Make no sense, should be counsel and employee of my office, so that's what I tried to explain to you.

Q. Did they know at the time that you didn't have other employees?

A. I think they should, Renato, where you work, it's a large firm or a solo practitioner. I'm sure I told them.

Q. You told them it was a solo practitioner?

A. Yes.

Q. And you did not have any other lawyers who were working for you at that time?

A. No, not on permanent basis, no, only

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DR. WANDERLEY MINITTI,
Plaintiff,
-against- No. 04 CV 07976 (DC)
SPEISER, KRAUSE, NOLAN &
GRANITO, PC,
Defendant.

------------------------------

RENATO GUIMARAES, JR.,
Plaintiff,

-against- No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN &
GRANITO, a professional
corporation f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a
professional corporation,

------------------------------

CONTINUED DEPOSITION OF RENATO GUIMARAES, JR.

New York, New York

Friday, November 17, 2005

Reported by:

Shanasia Ilgner

ce88f693-1406-495f-b956-3ceca5607f09

C E R T I F I C A T E

I, SHANASIA ILGNER, a Notary Public within and for the State of New York, do hereby certify:

That RENATO GUIMARAES, JR., the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

Shanasia Ilgner

SHANASIA ILGNER

ce88f693-1406-495f-b956-3ceca5607f09

Guimaraes

A. Yes. Sure. And I said similar as I mention here to FBI the deputy director Thomas Picard (phonetic) same issue have the evidence from Thomas -- in New York back to Brazil.

Q. At the time that you wrote this letter were you not already discharged by some of the 65 families?

A. Probably. But it was at that time, yes. Probably, yes. But not all.

Q. And if you take a look at Exhibit RG number 47 which is designated as production number RG 000362 and 364 entitled Speiser, Krause's scheme against Brazilian families dated October 19th of 2000.

Do you remember being the author of this document?

A. Yes. I have it. Yes, many proceedings in Brazil.

Q. And did you send this letter to all of the clients' attorneys?

A. No, I put in the, all proceedings I feel will be fit, will be appropriate.

Q. Who did you send this letter to?

A. It's not a letter, it's a kind of

ce88f693-1406-495f-b956-3ceca5607f09

                    summary of the Speiser, Krause behavior.

Q. Did you file this with the court?

A. The court?

Q. Yes.

A. Sure. Attorney general and so.

MR. RIGUERA: By my watch, I've given you three minutes beyond the two hours.

MR. CHASE: You're not even close, Jose, and I'll tell you why, the polycom that you're speaking through has a recorder on it, when you shot off last time it was flashing at 56 and a half minutes. It currently reads 56/54 and we're using seconds as we're speaking about this right now. We've got at a minimum 10 or more minutes. If you want to cut us off you can instruct your client not to answer anymore questions.

MR. RIGUERA: I should have followed my instinct and announced at the beginning exactly what time it was. Pursuant to Judge Chin's order which granted you two hours to continue his deposition I have confirmed with the court reporter that we

ce88f693-1406-495f-b956-3ceca5607f09

**EXHIBIT "I"**

COURT REPORTER'S CERTIFICATION

I, Catherine Armentano, Certified Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose deposition is hereinbefore set forth, was duly sworn by me and that the within transcript is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

CATHERINE ARMENTANO, C.S.R.

Arthur Ballen

Q. Was the forum non conveniens motion granted or denied?

A. Good question. To my knowledge, it's been granted but no order has been signed so as to permit the settlements to go forward. But the one who would have better knowledge than I would be Mr. Veth.

Q. Was the forum non conveniens motion granted but stayed?

A. Another way of putting it I guess.

Q. And did the court then suggest actions be filed in Brazil?

A. That could be the scenario but, as I said before, Mr. Veth would have better knowledge than I.

Q. Were indeed actions filed in Brazil?

A. Yes.

Q. And were the actions that were filed in Brazil signed in Brazil by Renato Guimaraes?

A. Obviously they were.

Q. And was Renato Guimaraes working with Speiser Krause in conjunction with filing those actions in Brazil after the forum non conveniens motion was granted and stayed.

A. No. The one we employed was Professor Strager. I don't know how Renato got in the case but he got in the case.

Q. Isn't Renato the one who was on the pleading with Dr. Strager and who signed the pleading?

A. Yes. Your question implied working with Speiser Krause.

Q. Isn't that the case that Speiser Krause wanted filed in Brazil?

A. It's my recollection they did not want Renato to have any part in handling it.

Q. Did Renato handle it?

A. I don't know if he handled it.

Q. Well, did Dr. Strager handle the case?

A. Dr. Strager wrote letters to me that Renato was not following instructions in the TAM case, asked me to help him remedy the problems. We wrote several letters to Renato asking him to back off Dr. Strager.

As I'm told --

Q. By whom?

A. By lawyers, by Pinheiro Neto, that

COURT REPORTER'S CERTIFICATION

I, Catherine Armentano, Certified Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose deposition is hereinbefore set forth, was duly sworn by me and that the within transcript is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

CATHERINE ARMENTANO, C.S.R.

Gerard Lear

Is that what you wrote?

A. A total of, a maximum of 25 per cent.

Q. Where does it say that?

A. It says a total, that's what I meant. I knew we were going to have more than one counsel in each case, that's generally the way it works in this part of the world. A lot of times you will have, not on wives, but mistresses, families split, brothers, sisters, with a lawyer, or a widower with a lawyer, so that's what I was making sure of, that everyone was clear on this.

I was not going to get caught in that type of runaround. We were going to make sure that we weren't going to be in a position and we didn't pay more than 25 per cent total to whatever Brazilian counsel were involved.

Q. So, you anticipated paying 25 per cent of your 33 1/3 per cent to Brazilian counsel?

A. No, I wasn't going to pay more than that. If I can pay 10 or 15 and that was all that was involved, that's fine.

Q. This says, "a total of 25 per cent will be paid to Brazilian counsel."

A. That was my intention as I just

# EXHIBIT "J"

ROM : Panasonic FAX SYSTEM PHONE NO. : 212 686 8196 May. 19 2001 11:39AM P3

LEGAL TRANSLATION SYSTEMS
421 Seventh Avenue - suite 901 New York, NY 10001 USA (212) 629-4541
academictranslations.com e-mail: depaula@nylc.com

RENATO GUIMARAES JR
JURIS DOCTOR, USP, UNICAMP PROFESSOR
MASTER OF COMPARATIVE LAW, GWU, iasp

Hon Judge
Second Civil Court of the Regional District of Jabaquara

(ACKNOWLEDGED BY THE JUDGE- PLEASE NOTIFY THE STATUS OF THE COMPLIANCE OF THE ROGATORY LETTER – s.l. 5/7/01)

Certified copy of Judgment 1509/98-E

The orphan Suzana Liberta Hoogerheide, her mother, the widow Meire Lucia Trujillo Geronimo, et al, hereby respectively submit, under Brazil's sovereign law.

The hearing held on the day before yesterday, in California, failed: Northrop's defense (I) in a affidavit by Pinheiro Neto, which constitutes perjury, as they did not disclose to the Judge William F. McDonald "the entire truth", for instance; regarding (a) the opinion of the Hon. Court Appointed Attorney, in whose opinion, a judgment should also be passed on merit against Teleflex; b) the exception to the removal of the Judge, rejected by the Court of Justice of the State of Sao Paulo, for 3 to zero, adopting the contrary opinion of the District Attorney's Office; (II) additionally the families have again been betrayed by Speiser Krause attorneys, who again sided with Northrop, against the Brazilians; and (III) the evidence submitted relative to Sandra Assali's complaint filed before the Brazilian Bar Association "obtained by illicit means", article 5, LVI of the Federal Constitution – under the guise of violation of secrecy – Northrop's defense, Hon. Judge, caused such turmoil to the petition submitted by the 10 (ten) families that their new American attorneys, Herman & Mermelstein, which substituted Speiser Krause, understood that until these matters are solved in Brazil, it will be more convenient to suspend the case in California, as Speiser Krause has abandoned it for over one year, when it began to force the families to accept a settlement, based on false allegations and coercions.

The only positive result of the hearing was that Speiser Krause accepted Herman & Mermelstein as its substitute in the proceedings, brought by the ten families, who fired their betrayers, thus ending Speiser Krause's opposition to the Brazilian attorney's position.

In light of this impasse and new developments, the undersigned formalizes to the Brazilian Bar Association a request – always constructively, and likely with the assistance of the Prosecutor's Office – to act as a creative mediator, according to the wishes of the Federal Board's President, Dr. Rubens Approbato Machado, in order to abbreviate the painful and unjustified suffering of so many families.

From Campinas to Sao Paulo, May 4, 2001
Signature

Translation Prepared by Carlos de Paula - 1 - 5/10/2001 - 1:23 PM
C:\tradcorp\RENATO GUIMARAES JR.doc

RG-00413

# EXHIBIT "K"

## AFFIDAVIT

Dr. Renato Guimarães Jr., being duly sworn, according to Brazilian law upon his oath, deposes and writes:

1. I am the only Brazilian attorney for the 64 families along, together with *Speiser Krause*.

2. Many or even most of these 64 families are very much against the last professional behaviors of *Speiser Krause* but nevertheless they authorized in April *Speiser Krause* merely deal with proposals for an eventual agreement that never, as far as I know, was celebrated.

3 – Several of these 64 families already terminated with *Speiser Krause* as their attorneys, effective in these last three weeks, and many of them shall fired *Speiser Krause* in near future. As a condition for the proposals be accepted, *Speiser Krause* asked the families to fire me, but only 11 did, and several of them already have return to me under the Brazilian Bar and Judges' overview.

4 – The Brazilian Bar already took proper steps so the **Federal Prosecutor can formally charge *Speiser Krause* in Federal Court with federal felony of illegal exercise of the legal professional in Brazil**, according to the Brazilian Penal Code.

5 - The Brazilian Bar also toke measures so that the **Brazilian State Department officially communicate the US State Department to take appropriate actions in view of the criminal activities committed by *Speiser Krause* in Brazil and against the legitimate interests of the families** of *TAM* tragedy.

6 – The Attorney-General of the State of São Paulo, the Public Prosecutors and Judges in those Courts in which I act in these lawsuits also are fully aware of these illegal activities practiced by *Speiser Krause* in Brazil.

7 – **IT IS NOT TRUE**, AS FAR AS I KNOW, THAT THE FAMILIES HAD SETTLED WITH *NORTHROP GRUMMAN*. MANY OF THEM ONLY AUTHORIZED *SPEISER KRAUSE* TO DEAL WITH THE APRIL PROPOSAL WHICH NEVER MATERILIZIDED. THE TWO VERSIONS OF THE PROPOSAL THAT I EXAMINED WERE DRATED IN CONFLICT WITH THE

LAWS IN BRAZIL, ACCORDING TO ALL JUDGES AND CURATORS OF MINORS WHOM I HAVE CONSULTED.

8 – I NOT ONLY DO ENDORSE the action of petitioner's in seeking monthly alimony duties owed by *Northrop Grumman*, according to the Jabaquara decision ruled in favor of the families, but indeed I STRONGLY URGE, if I may, THIS COURT TO DECIDE IN FAVOR OF THE FAMILIES because this is the only way available to the families to recover their rights, due the contempt of court grossly committed by *Northrop Grumman* in Brazil, by refusing to make any deposit of the bounds so ordered unanimously by the First Court of Appeal of Sao Paulo State, and being so punished – but in vain - by the Brazilian Judge.

9 – Item 4 of Mr. Gerard R. Lear's Affidavit is, at least to the Brazilian Ethical and Legal Standards of a Code of Responsibilities of the Attorneys, not only a plenty act of **malpractice** but, to be exact, an astonish case of high legal **treason in Court** because the nature and the scope of such a statement only could be reasonable conceived to be expected from a Northrop lawyer instead – and never from an attorney for the family, playing the opposite side.

10 – I have being told that it was Mr. Leigh Ballen, from *Speiser Krause*, who was in Sao Paulo, and who made arrangements to tell the families - in order to have them signing similar letters as Ms. Hoogerheide's - that the Rogatory Letter would not work out in New York because, believe or not, I had "stolen" it from the Court and had taken it to New York, thus without the authorization of the Brazilian Judge.

11 – At the time, I was in Miami, FL, working for two and half weeks with Mr. Jeffrey M. Herman, Esq., from *Herman & Mermelstein*, the law firm that is replacing *Speiser Krause* as attorneys for the families, and most of the families could not reach me easily. According to the Brazilian Law, foreigner attorneys can not talk with a common client without the presence of his or her Brazilian attorney when such attorneys have conflicting opinions. Yesterday, Mr. Lear called Mr. Herman for the first time and did admit that, since April, *Speiser Krause* did almost nothing to the families in the California Court.

12 – In Miami, FL, several prestigious law firms - after seeing some 120 pages of documents, including the manufacture of **documentation falsehood** - told me, in separate meetings, that ***Speiser Krause did make many things "very, very wrong in Brazil"***. These firms, among others, are *McDonald &*

*McDonald; Goldberg & Associates, P.A., Colson Hicks Edison, P.A.*, and *Podhurst Orseck Josefsberg Eaton Meadow Olin & Persin, P.A.*, and, by telephone, *Omrani & Taub, P.C.*, from New York.

13 – One of them even told me that **I should give those documents to New York Bar so that those attorneys from *Speiser Krause* should be disbarred.**

14 – In fact, I am prepare to go to the Brazilian Court against Northrop and *TAM* again, this time to seek a judicial preventive declaration that can say - due the lies of *Speiser Krause* to the families and Mr. Lear's item 4 of his Affidavit to this Court – that no proposal of agreement shall be approved by the Curator of Minors and by the Courts and, if it is somehow approved, then it shall be declared null because of its vicious fabrication of real will of the families.

15 – In the *Aviation Law/Insurance Symposium*, held in Daytona Beach, FL, last January, 15-16, Mr. Steven Marks, Esq., from *Podhurst Orseck Josefsberg Eaton Meadow Olin & Persin, P.A.*, in his speech on *Filing Foreign Aviation Claims in the U.S.*, give the Jabaquara decision as an example to alert those corporations that are always anxious to send a lawsuits presented in US Courts *(forum non convenies)* to a foreign country, without the due care on the real, updated legal situation of that particular country, due the globalization of the legal information in these days. An active participant of the *Symposium*, **Mr. Russel Mirabile, Esq., V.P. & Director of Claims, USAIG, NY, NY, made a brief remark to me about Mr. Marks' statement**.

I declare under penalty of perjury under the laws of Brazil that the foregoing is true and correct.

Executed this 6th day of February, 2001, at Campinas, SP, Brazil.

Renato Guimarães Jr.

Renato Guimarães Jr.

Brazilian Bar, 80.113-SP

# EXHIBIT "L"

fax (703) 522-7905, phone (703) 522-7500 - Campinas, Brazil, February 11, 1996. 7

To: Speinser, Krause, Madole & Lear, Washington, D.C.

Dear Mr[s] Gerald Lear, Arthur Ballen and Leigh Ballen:

In addition to the above *fax*, I would like to ask your understanding on my interpretation regarding the *"total of 25%... to Brazilian counsel for* their *service"*, in view of three possible situations: (1) it will under be my sole discretion all decisions regarding the eventual share division of the "total of 25%" among me and other fellows attorneys, Brazilian or of any other nationality, "for their service". In fact I have had made already some negotiations on this matter according to the above principle they accepted; (2) in the case that an attorney, Brazilian or of any other nationality, present any family as client directly to you, or even sign to you the retainer agreement of any family, for this accident, my share of the "total of 25%" will be nevertheless guaranteed to me by you directly, provided that, under some circumstances, I may accept a reasonable, fair division of this 25% portion between me and the other attorneys under your recommendation which may also include a portion of your 75% of the original 33% of the fee; and (3) in the event that you decide to low the original fee from 33, 1/3 % to, say, 30, 25 or even 20%, because of the aggressive competition from other attorneys, American or not, the "total of 25%" of the current arrangement will nevertheless remain the same: 25%.

Of course, the above understanding is also valid for the families and their attorneys of the two Americans who die in this crash. They are David Francis Tobolla, 40, financing director of Citibank in São Paulo, married to a Brazilian, and David Andrews, 49, vice-President of Behring, of the Hoechst group, who lived in San Jose, California, with wife and two sons, 17 and 22 years old. The whole family would be here now, for the Carnival. Please, if possible, try to reach them there, directly, as soon as possible saying that you are doing so at my request and also at the request of our potential clients.

The need for these clarifications in advance, as Arthur and Leigh Ballen know, is to prevent the same sort of the two misunderstandings developed between me and that other law firm from New York regarding my fair shares of the two fees due to me and to the attorneys from L.A. and from Colorado who managed to "by passed" me, either contacting the firm directly or only acting by signing the retainer agreement to them, after all my work to convince the clients to retain that law firm.

By the way, as you may recall, the two cases are the American Airlines 757 Cali, Colombia crash of December 20, 1995, in which a reasonable deal was made with the firm, but not with the Colorado attorney who "bypassed me", and the Mackline case, which my friend, the Of Counsel of the firm, during my visit in New York this January, just told me that the Mackline was taken away from his firm and is now with Robert Guilford, or some like that, if I heard correctly the name of this law firm from Chicago. My friend also told me that his firm did not receive anything yet and according to the deal they made they will have to wait too until the case is closed. He also informed me that only the claim of the second wife was closed for US$ 2,000,000.oo and that the sons claim for the US$ 22,000,000.oo recovery is still under way. He also reaffirmed me that

(page 2)

my share then will be fair. As I thrust him, I agreed to wait until both the Cali and the Mackline cases are closed. As I will keep an eye on these coming informations, any clue on the real situation of both cases are most welcome. Therefore, please, keep the copies of our letters I gave to you in this regard in a standby situation at least for the time being.

I look forward to have your answers as early as possible today on these matters too. Thank you also for sending me these answers in a separate *fax*, different, apart of the *fax* regarding the questions of my previous *fax* above, just as those two *fax* you sent to me in separate answers on February 5, 1997.

Very Sincerely Yours,

# EXHIBIT "M"

fax (703) 522-7905, phone (703) 522-7500 - Campinas, Brazil, February 19, 1997.

To: Speinser, Krause, Madole & Lear, Washington, D.C.

**most urgent, please, to be read before my call at 12 noon**

Dear Mr^s Gerald Lear, Arthur Ballen and Leigh Ballen:

Still shocking with your saying of yesterday that now there is chance to you to retreat from your definitive letter of as early as February 5, signed by SKML-Gerard R. Lear - *"to confirm the proposed arrangement... for handling of each such case..."* - on behalf of all families and their attorneys I respectfully urge you to consider the fact that in the last two and half weeks that latter, your retainer agreement *("... to prosecute or settle all claims for damages... will file and pursue such actions as are necessary by whatever form of action you deem appropriate"...)* and the *Appendix D (Checklist of Damage Information for Wrongful Death Actions)* have been all copied and circulated (distributed) along with their translations into Portuguese, among at least the families and their attorneys of about 25 (twenty five) victims, from seven States - plus a four-page letter from me explaining all the details of your commitment, fees, etc.; it is possible that some of these documents has been shown or given, by leaks, to the press.

Since then these matters have being object of hundreds of hours of conversation on long distance calls (several of them with me for over an hour and half of duration) and of meetings all over among these people themselves without me. The number Leigh gave to the widows of the pilot and of the co-pilot on the phone on the afternoon of February 10 - something around three million dollars and half million for the widow of the other TAM employees dead - have being used by all them as a reference to calculate accordingly their own cases.

Only to grasp the dimension of the problem, I repeat, one widow, Mrs. Solange Godoy (see next paragraph) confirmed to me on the phone last Friday that she did receive - and signed the "partial" receive - for seventeen thousand dollars. TAM has claimed that so far six families also did so.

The informations that Leigh authorized me to answer to reports at the demands from the press were confirmed by me last Friday - *after the challenging letter of the widow Godoy (above and bellow) was published that day* - to "our NYTimes and TIME Magazine" *(Folha de S. Paulo - and VEJA)"*, by far the largest and most influenced media in Brazil. Several families and at least one attorney gave, including by *fax*, my name and phone to them, so I had of course to make some comments. During my interview with *VEJA* Leigh was kind enough to clarify several questions the journalist posed to me beyond my knowledge, even sending us a *fax* of the *"Settlements, Judgments & Jury Awards"*, out of the brochure *SKM - Specialists in Complex Litigation*, and which I promptly passed to her.

The TAM President published today a full page (with the headline right in the first page of this Sunday edition of the second most important newspaper in the country, the *Estado de S. Paulo)*, with his interview - the very first one since the accident.

It appears that TAM, knowing that *Folha* and *VEJA* were about to publish my interview along with those with several families and their attorneys, antecipately took the lead to tell to the public the airline and insurance stories before ours.

The TAM story today in short confirms that the cause of the accident was indeed the malfunction of the locker, or *relê,* switch-throttle, but of course the President did not say which factory made that locker, neither even in which country is was made. He said that both TAM and the pilot were also victims without fault and that, among other things, six families already received their money.

I promptly updated today my interviews, with my proper reaction to the remarks of the TAM President, with *Folha,* which will published it by this Tuesday or Wednesday, and I will do the same tomorrow with *VEJA,* which will publish it next Sunday.

The families and their attorneys therefore are all very exciting waiting to see you starting March 3. A prominent industrialist, who lost his father, was even about to see you there in Washington, D.C., during his next trip to USA this coming March 12 but now he is waiting for you here on March 3. He also checked your firm in Internet along with the news about the strike of American Airlines and the intervention of President Clinton.

So, in the verge of a desperate public situation - if you cancel your confirmation signed on February 5 about our arrangement - let me offer your some insights which in this critical hour may help your legal researchers and specialists in legal strategy.

TAM is not an *indispensable part:* both US authorities and Fokker, soon after the accident ordered a review to fix the locker (this orders have being publicly confirmed by pilots at large here and today by TAM, by its Presidential interview). Being "this review to fix" the most eloquent confession of evidence of the wrongdoing of the maker of the fatal locker, nothing else is due to show in court the North Grumann/Fokker fault. TAM, indeed, looks like more as another victim of their fault - don't you agree ? Why TAM could conceivable be an indispensable part if it does not understand nothing of making, fabricating a locker ?

Now, even if TAM is considerable an *indispensable part,* there is, oh yes, a routine legal way to force TAM to know that, if it wants to, it shall respond (it may defend itself) to the charge in US court. Rogatory letters are a serious mechanism here, mostly when the demand comes form the American Judiciary, but normally a correspondent attorney in Brazil, like me, has only to present the US notice to our court to call the party there. In a national disaster like this each move will be highly noticed by the press. Of course, we can not force TAM to defend itself, to speak out: we only must have to give TAM an opportunity to defend itself. Then to collect the money from TAM will be still easier.

But - an additional factor - TAM is pretty much involved with US industry. Just one example, the pilot was licensed in USA only a few moths before the accident. More than that, TAM is eager to flight to US. TAM is a very fast growing regional airlines that is now already flying around South America, and is ready to ask permission to go to Europe, USA and Japan too. So, politically, TAM never will turn its back to a USA judge.

Finally, since the beginning of our negotiations, starting with your letter of November 19, and fully explained by Arthur to me in Largo Key, the first approach of SKML would always start with a conversation with the insurance companies trying to make a fair deal, a settlement, and only if impossible this preliminary part, then you would consider to go, or not to go, to the court.

Therefore, even (1) is TAM is considered an *indispensable part,* (2) beyond the reach of US Court either by the trivial legal process of Rogatory Letter or (3) for political reason - and (4) why would TAM would not answer a notice from US Court, if who would pay for TAM would be rather *Lloyd's,* of London - then (5) at least the sole conversation with the insurance company must take place - or we all here in Brazil, people who are studding your new position over the weekend, are all wrong ?

Because it is hard to me to give you, by this letter or on the phone, thousand of miles away and in a few minutes, in another culture, a realistic picture on how it is hot the situation here, the faces of those dead and the short stories of some of those 99 families involved in this legal drama, very much concentrated and consolidated in my own words - the following photos of *VEJA* may help me to illustrate you this real saga.

I even refuse to imagine the overwhelming, frightening problems I and other attorneys will have to face with our potential clients, the bar (ethical and disciplinary charge), the legal community (judges, prosecutors, Superior Courts, etc.), with TAM and UNIBANC insurance company (libel, "insulting" (*"give them a hell",* Leigh) remarks) and, of course, my own credibility - build along 35 years of professionalism, hard with the big guys who hate me (Mrs. Ballen knows one of two of these cases, including one against MasterCard on which the US Department of Justice (Attorney General Janet Reno) paid attention) - and preserved with the public (circulation: over 2.000.000 copies the issues of both publications together), by clearly confirming to them international, sophisticate, reliable legal services committed to this complex litigation and suddenly, after two and half weeks of big and deep, very deep activities toward this most essential goal for harmed, devastated people, giving them an unprecedented hope for Justice, both in wide public and in confidential meetings - I and other attorneys, who trusted me, may not offer your representation to these families anymore.

Forgive me if I am too candid and straight, or if I even may appear a little rude in my broken English, but I am just trying to be only sincere in expressing my perception of the facts at this point. The attorneys of the families and I are firm in repeating what Gerard R. Lear wrote to us on February 5: "we look forward to once again working actively with your office" - and also hearing so at 12 noon today.

Sincerely,

Renato Guimaraes, Jr.

# EXHIBIT "N"

July 17, 1998.

*To:* *Seiser Krause - Attention to:* Joseph Cook, Arthur Ballen and associates.
*Re:* Update of Northrop case in Brazil and coming *TAM* case in Brazil.

Now that the Northrop case in Brazil is under control, there is another pressing question to be solved together with *SK* and all the families. As I wrote to the families and their attorneys back in January, when I was in Irvine, *SK* would remain working with them in Brazil, against *TAM* in case the FNC motion were granted.

At that time T. Cook (or John Veth, I do not recall well whom exactly, because we discussed the issue several times) told me that it was at that point a little too premature to *SK* to propose its fee over the award to be recovered against *TAM* in Brazil for its job as a consultant specialist. In this past June, during the next to the last trip of Arthur to Brazil, I returned to the same issue before *SK*, but he just answered me that he had no idea either on how to handle it.

Now that we are with danger getting closer to the two-year statute of limitation in Brazil, and families and their attorneys are increasingly demanding me for a proposal, I must ask your decision on your coming contingency fee for *SK* job here in the lawsuit against *TAM*. Kindly ready a news from today about the *another* ex-wife of our family client Gasparian against *TAM*. Her attorney (Dr[a] Mansur, her name is on the newspaper bellow) also just called on the coming lawsuit against *TAM* here. We shall protect our clients against this kind of cheap competitors. Our client Elizabeth Janstein just asked me for a personal meeting tomorrow in São Paulo on this same issue. And President Sandra Assalli and the attorney for the people on the ground who lost their homes, Dr[a] Isabel, will both appear today in the most influential TV-Morning Show in the country saying that they, yes, are prepared to sue *TAM* here soon and together. Ms. Assalli just asked me how the families shall re-negotiate those old fee contracts they signed up with their attorneys well before knowing us. She too wants to hold soon a large meeting with the families first and latter with their attorneys to discuss this issue. They would love having some of you in one of this opportunity updating everyone about the news developments in LA and London.

Anyway, I must offer them very, very soon our conditions in order to keep the whole group together here too against *TAM* and with us, before other lawyer's approaches and attitudes.

Let me give you a brief picture on the attorneys' fees in our case here, against *TAM*. As you recall, it was, as always, a very hot issue present in two key opportunities with us: (1) when *SK* had to give to about half of all lawyers 10% of our fee, and now (2) when we had a hard time to put them all in the Strenger's action. Of course, the never expressed real fear of those lawyers who strongly resisted the Strenger action was, behind the so-called *ethic* excuses, their concern on the fees.

Thus, please consider the several situations: there are many lawyers, both entitled and *not* entitled to the 10% of our fee, whom already have been paid, or will be paid, by the families for the *TAM* case here, on different amounts and criteria, no matter what they will do or have been done. About half our clients do not have other lawyers, for recovery in Brazil, but me. Some of these fees cover also the work for the estate. And a few do have other American law firms, besides you and me. And so on. Each case is one case. As we say here it is a real "bag of cats" – by the way, don't you have such an expression for a real *confusion*, a caos situation?

I have told them that each family and its attorneys must solve their own problem, so we can continue with *SK*. I am also prepared to write them that my work for the coming lawsuit for recovery from *TAM* here will be included in my contract with *SK* – as it has already been included as far as my seven preparatory lawsuits for the final report, against *TAM*, Aeronautic, UNIBANCO, *Lloyd's*, etc, are related.

Please, be aware that the percentage fee in Brazil varies grandly. In a hard and unique case 33,3% or 25% are reasonable. But in a litigation of many parties together, the amount are much lower, say, 10% or even less, if there are lots of plaintiffs. In this specific case, I am aware of several contractd on 10%, but remember that many families are already commited to their own lawyers.

Also, as I have stressed before, you and I shall reach a new, fair, reasonable division for each other out of our fee from the *TAM* case here because, of course, this lawsuit will be on my shoulders for years to come around the courts in Brazil and since you may not even be called to help us with your aeronautics skills at all, since we all in Brazil do expect that the Brazilian Court we will not require from us the burden of proof of any wrongdoing, either on the part of *TAM*, Faker, Northrop or anybody else, since that in these four individual, previous cases here the court already found *TAM* guilt without fault, once the Courts have continuosly decided for the Consumer, strict, no-fault Liability.

To make the whole matter simpler, I am ask you, if I may, two numbers only: (1) how much to you want for your work as a consultant firm here against *TAM*; and (2) out of the above (1) percentage, how much to you deem would be a fair share for my work here as the attorney responsible for the said lawsuit against *TAM* in Brazil.

If you and I can agree on these two numbers then I will write to the families saying that my fee will be zero for them, since my fee will be, also in the *TAM* case in Brazil, out of *SK's* fee as a consultant. If this arrangement is *ok* with you, this delicate matter of fees in Brazil will be clear to help us to keep our clients together.

Today I will go to São Paulo. Yesterday D$^{a}$ Isabel presented her opposition on behalf of our potential clients from the ground and told me that Judge Russo will be the one who will render down the decision this Monday. She also confirmed that he looks nice but said something about a sovereignty issue. I do not know why he came up with such an idea, so I will have a short, routine hearing with him today and, with the excuse of showing him a few more retainer-letters, try to check and explore accordingly his views on the matter in a last-minute oral arguments. Kindly find bellow the news from our two leading newspapers on the opinion of the Curator.

T. Cook: did you receive my *fax* with the translation into English of the Curator's opinion, as you asked me ? Anything from London ? How about the hearing last Monday on Linda Andrews' case ?

Leigh and Julie: kindly find bellow the bills I paid last week when I had to stay in the same Hotel for logistic facilities (computers all night long, *fax*, phone numbers with Ana Beatriz, Prof. Strenger, other lawyers, families, and so on). I did not receive your remittances to my MN account since the expenses made on March 3.

I look forward to having your answers assp.

Very Sincerely Yours,

# EXHIBIT "O"

*TAM* **case in Brazil**

*August First, 1998.*

*To:* *Speiser Krause*, Attention to: Joseph Cook, Arthur Ballen and Frank Granito III.
*Re:* Again, *TAM* case in Brazil and, now, death in *Times Square.*

*TAM* **case in Brazil**

Next Saturday 8, there shall be a meeting with the families and their attorneys to discuss mostly the coming case in Brazil against *TAM*. A four pages long draft of a letter to be sent to all them is under review by Ana Beatriz, Sandra Assalli, Dr[a] Isabel, the attorney for the people from the ground, and a few lawyers of our close circle. The goal is to keep the whole group together and with *SK* as our consultant. As my long letter of July 17 urged, your decision - on our fee to be shared according (1) to the role *SK* may play in assisting us as our consultant and (2) to the role I must play as the leading attorney for such a case in Brazil - is deeply needed ASAP.

In order to keep as many families as possible as our clients here against *TAM* too it would be very good if at least one person from *SK* could come to the meeting.

In fact, last January T. Cook and I discussed the participation of *SK* here as a consultant only in the case we have had lost the FNC motion. Now that the FNC is only less than two months away (let's pray for it), I am not certain if you are still interested at all in playing a role as a consultant firm here as you will have to work there very hard at the same time against Northrop and Teleflex. The case here will last years and at the end you may not have even a role at all to be played here, if the Court says that we do not have to show any *TAM* fault at all, and that we shall rely only in the no fault, product liability theory, since there are already two decisions on two other families from the same *TAM* crash under this easier law. I would like to have this case in court here on the day after the 120 days period of the FNC, September 27.

Any way, if *SK* and I can not make a decision at all on our fee and shares until the time of the meeting, I will have to respond to the families that I will charge 10% contingency and let *SK* own decision to a latter opportunity. If I do not respond to them with some number, I may loose lots of them as clients here because their attorneys of course are eager to take each of their case apart and do it on their own.

According to Ana Beatriz, it is becoming harder and harder to keep the whole group as an only unity here against *TAM.* I predict that if *SK* and I act well and fast, we will retain some 40 families, maybe a little more. If I have to be alone, this number may drop down to 30. Both estimations are only a guess, of course. If I could say something to *SK*, I would suggest that, even if *SK* is not interested in eventually

assist us here as a consultant, *SK* should take this opportunity in order to keep the families there in Orange Country too: many are already exhausted, including Ana Beatriz, and if I am not luck here against *TAM* very soon, they may accept the $ 145,000.oo deal and may also give up in California too. So *SK* presence here will keep their moral up both in US and in Brazil.

T. Cook: Northrop/Teleflex case here is going as I have predicated. Today I will present the third petition after the original, the Prof. Irineu's one, trying to keep Judge Russo's order still idle. I guess it will not move out of the ground up to the clerk preparation of the rogatory letter before three weeks from now. When you or John Veth have a chance, kindly send me a copy of the affidavits of Irina and Sieta Cleveland, from San Diego, to Judge McDonald. These copies will help me in two of the appeals I am preparing against Judge Russo's order for the next few weeks.

Leigh: did somebody, during the time of your vacation, deposit my expenses since your last remittance to my MN account of March 3 ? The translation of the two letters from T. Cook to Judge Russo and of the transcript of the FNC hearing will cost some $ 500,oo and shall be ready this Friday. And as I told Arthur I have had sent good money to two families to prevent them to accept the $ 145,000.oo deal with *TAM* and to avoid more danger to the unity of our group there too. So, please.

**Death in *Times Square***

Frank Granito III – Hope you have received my *fax* last week. I have no answer from you yet. Now the family of victim wants know if the law in New York is the same as it is in Brazil. Here, the brother of Teresa Feliconio, who was window with no parents neither children, and the four nephews, who are the survives of the four other Teresa's brothers and sisters, would divide among themselves the recovery in five equal parts – one to the brother and the other four parts to each of the nephews. Any difference in the New York Law ?

Thank you very much for the attention of you all. I look forward to hearing from you soon.

Very Sincerely Yours,

# EXHIBIT "P"

CONFIDENTIALITY NOTICE

"WARNING: Unauthorized interception of the telecopy transmission could be a violation of Federal and State laws."

The document(s) accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the intended recipient or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone to arrange for return of the original document(s) to us.

nota abaixo

AUG-07-1998 19:20 SPEISER KRAUSE 703 522 7500 P.02/05

# SPEISER KRAUSE

A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 475
Irvine, California 92614
(714) 553-1421
Fax: (714) 553-1346

2300 Clarendon Boulevard
Suite 306
Arlington, Virginia 22201

(703) 522-7500
Fax: (703) 522-7905

5450 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

801 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

August 7, 1998

**VIA FACSIMILE 011 55 19 289 4315**

Renato Guimaraes
rua Francisco de Toledo, 501
Cidade Universitaria
13.083-470
Campinas, SP - Brazil

**RE: TAM Fokker disaster of October 31, 1996 in Sao Paulo, Brazil
Our file #729.000**

RG-00090

Dear Renato:

Aqui há um parágrafo condicional de advocacia (nota acima)

Gerard Lear has asked me to relate an area of particular concern regarding our firm's involvement in these cases. It is urgent that you not discuss with Brazilian attorneys Speiser Krause's potential "consulting" agreement. It is simply not the proper moment to begin discussions of our firm's role as consultants on the cause of the crash. This is not our primary focus at this point - we still intend on obtaining settlement offers on behalf of the family members.

We trust that you will do nothing further in terms of trying to solidify a consulting agreement and any sort of fee which our firm might charge for such service. Though we certainly could be interested in providing such a service, we believe that now is not the time for us to discuss such matters.

Additionally, attached please find a status letter which has been sent to Beatriz Kopacek, to be given to the widow's association at their non-lawyer meeting tomorrow. Please note that although the letter contemplates hiring a "experienced Brazilian lawyer" to file suit on behalf of all families who have not hired their own Brazilian counsel, this letter implies of course

AUG-07-1998 19:20 SPEISER KRAUSE 703 522 7500 P.03/05

Renato Guimaraes
August 7, 1998
Page 2

that should a family member wish for you to represent them, obviously you would be the person to do so, including filing the complaint and prosecuting the matter on their behalf. However, a certain amount of families may wish to hire an independent attorney, and I am sure you understand that at this point our greatest interest is in keeping the families together.

Thank you for your understanding and please do not hesitate to call.

Sincerely,

SPEISER KRAUSE

LEIGH J. BALLEN

/js

cc: Gerard R. Lear, Esq.
Joseph T. Cook, Esq.
Arthur E. Ballen, Esq.

# EXHIBIT "Q"

WALTER J. LACK, SBN 57550
STEVEN C. SHUMAN, SBN 82828
**ENGSTROM, LIPSCOMB & LACK**
10100 Santa Monica Blvd., 16th Fl.
Los Angeles, CA 90067
Tel: (310) 552-3800
Fax: (310) 552-9434

Attorneys for Plaintiff

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 12 2006

John A. Clarke, Executive Officer/Clerk
By [signature], Deputy
R. Arraiga

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

RENATO GUIMARAES, JR.,

Plaintiff,

vs.

NORTHROP GRUMMAN CORPORATION, a California corporation; UNITED STATES AIRCRAFT INSURANCE GROUP, a New York Association; and DOES 1-20, Inclusive,

Defendants.

CASE NO. BC 345356
[Assigned to Hon. Elizabeth A.Grimes - Dept. 30]

**FIRST AMENDED COMPLAINT FOR**

**1. RECOGNITION AND ENFORCEMENT OF FOREIGN COUNTRY MONEY JUDGMENT;**

**2. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

Complaint filed: 12/30/05

COMES NOW Plaintiff, RENATO GUIMARAES, JR., and brings this action against defendants NORTHROP GRUMMAN CORPORATION, UNITED STATES AVIATION UNDERWRITERS, INC., and DOES 1 through 20, and alleges as follows:

///

///

///

FIRST CAUSE OF ACTION

FOR RECOGNITION AND ENFORCEMENT OF FOREIGN MONEY JUDGMENT

(Code of Civ. Proc., §§1713, *et seq.*)

(Against Defendant Northrop Grumman Corporation and DOES 1-20)

1. The true names and capacities, whether individual, corporate, partnership, associate, trust or otherwise of defendants, DOES 1-20, and the full extent of the facts linking those defendants with the causes of action alleged herein, are unknown to plaintiff, who therefore sue those defendants by those fictitious names. Each defendant designated herein is in some manner legally responsible or liable for the causes of action, losses, damages, and judgment hereinafter alleged, or is the successor-in-interest to the person or entity responsible or liable and is responsible or liable on that basis for the causes of action, losses, damages, and judgment hereinafter alleged. Plaintiff will seek leave of court to amend this complaint to allege the true names and capacities of those fictitiously designated defendants when they are ascertained.

2. At all times mentioned herein, each defendant was the agent, servant, employee and joint venturer of each other defendant, and was acting within the scope of that agency, service, employment and joint venture in doing or omitting to do the acts hereinafter alleged.

3. At all times mentioned herein, defendant Northrop Grumman Corporation was and is a California corporation with its principal place of business in Los Angeles, California.

4. On October 31, 1996, Brazilian airliner Transportes Aereos Regionais S/A [TAM], Flight #402, took off from the Congonhas Airport in Sao Paulo, Brazil and crashed thirty-four seconds into the flight. This tragedy killed all ninety-eight people on board and one person on the ground.

5. During the calendar year 1997, sixty-three families of victims killed in the TAM Flight #402 crash filed lawsuits in the Orange County Superior Court against Northrop Grumman Corporation (hereinafter "Northrop" or "Defendant") and others. All of those lawsuits were consolidated with the lead case, *Andrews v. Northrop Grumman, et al.*, Case No. 783990.

6. On or about November 6, 1997, Northrop filed a motion to stay the actions of the families on the ground of forum non conveniens. Northrop urged the Orange County Superior Court that Brazil was a more appropriate forum for litigation of the claims of the families. In connection with that motion, Northrop agreed to submit to the jurisdiction of the courts of Brazil, impliedly agreeing to follow Brazilian law and abide by Brazilian court decisions in good faith.

7. On or about May 27, 1998, the Orange County Superior Court granted the motion of Northrop to stay the actions of the families on the ground of forum non conveniens in all the cases consolidated with *Andrews v. Northrop Grumman, et al.* The plaintiffs in the cases consolidated with *Andrews* had to pursue any claims they desired to assert arising out of the TAM Flight #402 crash in the Brazilian courts.

8. Plaintiff is an attorney in Brazil. Beginning in 1998, plaintiff prosecuted an action against Northrop and others in the 2nd Civil Court of Regional Court III of the Sao Paulo, Brazil State Supreme Court on behalf of many of the families of the victims of the TAM Flight #402 crash. This Court is located in Jabaquara, Sao Paulo, Brazil. The Case Number was 1,509/98.

9. On June 30, 2000, the Jabaquara Court rendered a judgment in favor of plaintiff's clients and against Northrop. The Court concluded that the initiating cause of the crash was a malfunction of the thrust reverser on the right engine. The thrust reverser is used only on the ground to help stop the airplane and cannot be commanded by the crew to deploy once the plane has left the runway. Ultimately, with the left engine at full power and the right engine in a reverse thrust condition, the aircraft yawed to the right, rolled inverted, and impacted the ground. The thrust reversers were made by defendant Northrop Grumman, and the Jabaquara Court found Northrop liable for the accident. Northrop placed this thrust reverser into the stream of commerce with the knowledge and intent that the product be purchased and used in Brazil. The malfunction of the thrust reverser was the direct and proximate cause of the deaths of all ninety-eight passengers on board plus one person on the ground. A copy of the Jabaquara Court's judgment in Case No. 1,509/98 is attached as Exhibit 1 and incorporated herein by this reference. A copy of a certified translation of that judgment is attached as Exhibit 2 and incorporated herein by this reference.

10. The Jabaquara Court judgment awarded damages against Northrop for each family that lost a family member in an amount equivalent to $1,111,111, plus 2/3 of the salary the decedent would have earned to age 65. In the aggregate, based on then-prevailing exchange rates, the award exceeded $100 million.

11. The Jabaquara Court also awarded attorneys fees in the amount of twenty per cent of the total amount of the rest of the award, as reflected on page 55 of Exhbit 2. Under Brazilian law, this award of attorney fees is a judgment in favor of plaintiff, as the attorney, and not the families. It vests immediately and is not subject to any appeal in Brazil with respect to any of the cases that have settled. The judgment in favor of plaintiff for fees thus exceeds $20,000,000.

12. The Jabaquara Court had personal jurisdiction over Northrop, in that Northrop agreed in its motion to stay the Orange County cases that it would submit to the jurisdiction of the Brazilian courts. The Jabaquara court also had subject matter jurisdiction over the complaint. Specifically, the courts of Brazil have subject matter jurisdiction over wrongful death claims brought by residents and citizens arising from common law and statutory liability, including, but not limited to, civil liability for manufacturing defective products, under Art. 12 of Brazil's Consumer Protection Code.

13. The tribunals of Brazil are impartial and provide procedures compatible with the requirements of due process of law.

14. The Judgment in favor of plaintiff for attorneys fees does not conflict with any other final and conclusive judgment, and it is a money judgment.

15. The foreign court was a convenient forum. In fact, Northrop successfully argued to the Orange County Superior Court in California that the United States was an improper forum and that the case arising out of the TAM Flight #402 crash should be tried in Brazil.

16. Therefore, pursuant to the Uniform Foreign Money-Judgments Recognition Act, CCP §1713, *et seq.*, plaintiff asks this Court to recognize and enforce the Judgment rendered by the Second Civil Court of Regional Court III, in Sao Paulo, identified as Case Number 1,509/98, to the extent that Judgment awards attorneys fees, by entering a domestic judgment in a dollar amount equivalent to the amount of the Brazilian Judgment, with post-judgment interest, costs,

and fees as appropriate.

**SECOND CAUSE OF ACTION**

**FOR INTENTIONAL INTERFERENCE**

**WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against Defendant United States Aircraft Insurance Group and DOES 1-20)**

17. Plaintiff refers to paragraphs 1-9 and incorporates each of those paragraphs as if set forth in full at this point.

18. Defendant United States Aircraft Insurance Group [USAIG] is an association consisting of a consortium of insurers organized and existing under the laws of the State of New York, with a principal place of business in the County of Los Angeles, State of California. USAIG is authorized to do business and is doing business in Los Angeles County, California, as an insurer, through its managing agent, United States Aviation Underwriters, Inc. [USAU]. USAIG bears responsibility and liability for all acts and omissions of its agent, USAU, as hereinafter alleged.

19. At all times mentioned herein, USAIG was the insurer of Northrop.

20. Shortly after the TAM Flight #402 crash [hereinafter also referred to as the TAM air disaster], on behalf of approximately 5 families of victims who died in that disaster, plaintiff contacted the law firm of Speiser Krause for the purpose of associating with that firm in pursuing litigation in the United States against parties besides TAM who could be legally liable for the TAM air disaster, including but not limited to Northrop.

21. Plaintiff and Speiser Krause entered into a written agreement concerning a sharing of the fee and a sharing of duties in connection with the representation of the 5 families in United States litigation arising out of the October 31, 1996 TAM air disaster. Plaintiff and defendant agreed in writing that they would share the overall 33-1/3% attorney fee on a 75% - 25% basis, with Speiser Krause receiving 75% and plaintiff receiving 25%. Plaintiff and Speiser Krause contemplated that additional families of victims would retain their services to pursue recovery in the United States once their initial efforts for the first five families were publicized. The services for which plaintiff would receive his 25% share would include acting

as a liaison with the families in Brazil, translating legal documents, explaining legal strategies to the families in Brazil, assisting in gathering any facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian press on legal matters relating to the crash, and handling any collateral legal proceedings in Brazil required to support the United States litigation on the merits that Speiser Krause would prosecute. The agreement was to be performed primarily in Orange County, California by Speiser Krause litigating the cases against Northrop and others in that jurisdiction.

22. Beginning in March, 1997 and continuing throughout 1997, plaintiff and Speiser Krause obtained Retainer Agreements from many more families of victims, bringing the total to 65 families to be represented jointly by plaintiff and Speiser Krause. These Retainer Agreements originally listed plaintiff and Speiser Krause as co-counsel for the litigation, and each of these Retainer Agreements authorized the attorneys to retain the amount of the fee out of any moneys that came into their hands by reason of settlement or otherwise, effectively granting an equitable lien in any settlement proceeds in favor of plaintiff and Speiser Krause. At Speiser Krause's insistence, in order to meet competition from other attorneys seeking to represent families of those killed in the crash, plaintiff and Speiser Krause began signing up clients at a 25% overall attorney fee. Ultimately, on August 11, 1997, plaintiff and Speiser Krause reduced the overall attorney fee from 33-1/3% to 25% for all clients. Plaintiff and defendant did not effect any change in their allocation of the fee between themselves. Inasmuch as the plaintiffs were families of innocent victims of a commercial air crash, the Retainer Agreements and plaintiff's agreement with Speiser Krause contained a high probability of future economic benefits for plaintiff.

23. As described above, Speiser Krause initiated litigation against Northrop and others in the Orange County Superior Court for all the families who had signed Retainer Agreements, except for one family, Berliner, which sued only in New York. Sixty-three cases were consolidated with the lead case, Andrews, et al. v. Northrop Grumman Corp., Case No. 783990. The Court stayed all of those cases except the Andrews case itself on grounds of forum non conveniens, and ordered the plaintiffs to file their actions in Brazil. The Court ruled that the

cases would only proceed in California if the Brazilian court declined jurisdiction.

24. Plaintiff filed suit against Northrop and others in the 2nd Civil Court of Regional Court III in Sao Paulo as Case No. 1,509/98 on behalf of the families who had signed Retainer Agreements with Speiser Krause and plaintiff. The Brazilian Court accepted jurisdiction and that case was litigated in that jurisdiction, with no involvement by Speiser Krause.

25. In April, 2000, approximately two months before judgment was rendered by the Brazilian court, Speiser Krause reached a global settlement with the underlying defendants, including Northrop, for all cases except Andrews and Berliner in the total amount of $40,402,777.88, subject to each family subscribing to the settlement documentation and obtaining the necessary approvals from the Brazilian courts. The Andrews case settled separately in 2001 for $6,500,000, and the Berliner case settled separately with the aircraft manufacturer only for approximately $3,000,000. The Jabaquara Court rendered its judgment before the settlement documentation was subscribed.

26. Plaintiff has performed all obligations on his part to be performed in connection with his agreement to be associated with Speiser Krause as counsel for the families. Specifically, plaintiff provided liaison services as necessary during the phase of procuring Retainer Agreements from the families and prosecution of the case in the United States, and plaintiff prosecuted the case in Brazil when Speiser Krause lost the forum non conveniens motion in California. Plaintiff was instrumental in the result, as plaintiff's prosecution of the case in Brazil enabled Speiser Krause to reach the global settlement.

27. Plaintiff disagreed with the global settlement, but many families elected to accept that settlement. Those families discharged plaintiff as their counsel.

28. On or about July 5, 2000, Richard Peskin, an attorney acting on plaintiff's behalf, notified the insurers who were funding the settlements, including USAU, that plaintiff asserted an attorney lien for work performed in connection with the cases originally filed in Orange County Superior Court, and that any settlement payments were to include Mr. Peskin's firm as a payee on behalf of plaintiff. Additionally, on October 9, 2000, plaintiff transmitted a letter to the attorneys retained by USAU on behalf of USAIG to defend Northrop in the litigation in

Brazil, notifying those attorneys of plaintiff's interest in the fee and instructing that no payment could be made to the families without simultaneous payment being made to plaintiff to satisfy his fee interest. Plaintiff also orally discussed his fee interest with a USAU representative in January, 2001. Defendants thus had knowledge of plaintiff's economically advantageous relationship with the families and with Speiser Krause.

29. The settlements began funding in approximately May, 2001, and have not yet completed funding.

30. At the time each settlement funded, USAIG, one of the funding insurers, through its managing agent, USAU, knew plaintiff had an equitable lien on the funds paid and that plaintiff would receive an economic advantage as a result of that lien. With that knowledge, USAIG intentionally failed to honor that lien and thereby interfered with plaintiff's prospective economic advantage by paying the settlement funds directly to Speiser Krause without including plaintiff's name on the payments. In failing to honor plaintiff's lien, USAIG either desired to interfere with plaintiff's economic advantage or knew that interference with plaintiff's economic advantage was certain or substantially certain to result from its failure to honor plaintiff's lien.

31. The acts of USAIG actually disrupted plaintiff's economically advantageous relationship, in that they enabled Speiser Krause to disburse settlement funds and take attorney fees without honoring plaintiff's entitlement to a portion of those fees.

32. As a direct and proximate result of the intentional interference with plaintiff's prospective economic advantage, plaintiff has suffered damages in an amount in excess of the jurisdiction of this Court and potentially as high as $2,764,452, representing 6.25% (25% of the 25% attorneys fee) of the $40,402,777 global settlement, plus the $6,500,000 Andrews settlement, all reduced by the amounts attributable to those pursuing enforcement of the Brazilian judgment. Plaintiff will amend this Complaint to insert the exact amount of damages when plaintiff learns exactly which families accepted and obtained the necessary approvals for their settlement, and the amount of fees paid in connection with those settlements.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against defendant as follows:

1. For an order declaring the Judgment for attorneys fees entitled to recognition under the Uniform Foreign Money-Judgments Recognition Act, CCP §1713, *et seq.*, and entitled to enforcement in the State of California;

2. For a domestic judgment against Northrop in favor of plaintiff for all attorney fees ordered by the Brazilian Court to be twenty percent (20%) of the total case award, in an amount in excess of $20,000,000;

3. For damages against USAIG in an amount to be proven at the time of trial, but in excess of this Court's minimum jurisdictional amount;

4. For prejudgment interest to the extent authorized by law;

5. For attorneys fees and costs;

6. For such other and further relief as the Court deems proper.

Dated: May 10, 2006

Respectfully submitted,

ENGSTROM, LIPSCOMB & LACK

By [signature]
Walter J. Lack
Steven C. Shuman
Attorneys for Plaintiff

@PFDesktop\::ODMA/PCDOCS/ELLHMDM/270844/1

9

FIRST AMENDED COMPLAINT FOR RECOGNITION OF CONCLUSIVENESS, ENFORCEABILITY, AND ACTION ON FOREIGN COUNTRY MONEY JUDGMENT

**EXHIBIT "R"**
Part 1 of 3



# SELENE CUBEROS PEREZ

TRADUTOR PÚBLICO

INGLÊS - PORTUGUÊS

TRADUÇÃO OFICIAL

**Alphaville:** Alameda Araguaia, 1293 - 7° andar - sala 706 - Barueri - SP - 06455-000
TEL.: 55 11 4191-6866 – Fax: 55 11 4191-2886 – E-mail: alphaville@fidelity.com.br
**São Paulo:** Rua Libero Badaró, 377 - 29° andar - São Paulo - SP 01009-906
TEL.: 55 11 3188-5555 – Fax: 55 11 3188-5566 – E-mail: sp@fidelity.com.br
**Rio de Janeiro:** TEL.: 55 21 2507-1988 – E-mail: rj@fidelity.com.br
**Belo Horizonte:** TEL.: 55 31 3274-4343 – E-mail: mg@fidelity.com.br
**Curitiba:** TEL.: 55 41 322-0077 - E-mail: pr@fidelity.com.br
**Porto alegre:** TEL.: 55 51 3346-1111 – E-mail: rs@fidelity.com.br
**Brasília:** TEL.: 55 61 327-8001 – E-mail: df@fidelity.com.br

Matr. JUCESP N° 1695, C.C.M. 9.382.440-0 — C.P.F. N° 701.395.718-68, R.G. 5.266.238

TRADUÇÃO N° I-29648/05 LIVRO N° 259 FOLHAS N° 1

I, SELENE CUBEROS PEREZ, a Sworn Translator and Commercial Interpreter for the English language, duly sworn by the Board of Trade of the State of São Paulo - Federative Republic of Brazil, DO HEREBY CERTIFY that a document issued in the PORTUGUESE language was submitted to me, which I faithfully translated into ENGLISH, as follows: -.-

São Paulo, October 3, 2000

To

Dr. Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária
Campinas

Dear Sir,

This is to revoke the powers that were conferred upon you for the filing of the claim for compensation arising from the air accident involving the TAM Fokker 100 aircraft, occurred on October 31, 1996 under Case No. 98.838.460-G before the 28th Civil Court of the city of São Paulo.

I do declare that such revocation is justified in view of several barriers by you, in order to execute the agreement proposed by the american lawyers hired for the filing of claim for compensation before American Courts.

Further, any attorney's fees due to you shall be discussed following such agreement has been executed.

Yours faithfully,

Signed: [illegible signature]
Name: Maria Adelaide Decat Manhães
Signed: [illegible signature]
Name: Maria Fabiana Decat Manhães
per Power of Attorney
Maria Adelaide Decat Manhães
Signed: [illegible signature]
Name: Marcella Maria Decat Manhães
Signed: [illegible signature]
Name: Walter Luiz Decat Manhães

NOTHING FURTHER WAS CONTAINED IN THE DOCUMENT SUBMITTED.

I verified it and certify to it.

The Sworn Public Translator.

São Paulo, September 27, 2005.

Nos termos do capítulo XIV, itens 67 e 67.1, das Normas de Serviço da Corregedoria Geral da Justiça do Estado de São Paulo - Brasil, sendo que o documento para produzir efeito no Brasil e para valer contra terceiros, deverá ser vertido em vernáculo, e registrada a tradução (CC, art 140; LPP, art. 148 - 2ª Parte).

TABELIÃO DE NOTAS DA CAPITAL

SELENE CUBEROS PEREZ
Tradutor Público

São Paulo, 03 de outubro de 2000

Ilmo. Doutor
Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária
Campinas

Prezado Senhor,

Sirvo-me da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 98.838.460-G, em curso perante a 28ª Vara Cível da Capital.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sa. serão discutidos após a concretização do referido acordo.

Atenciosamente.

**MARIA ADELAIDE DECAT MANHÃES**

**MARIA FABIANA DECAT MANHÃES**
**pp. Maria Adelaide Decat Manhães**

**MARCELLA MARIA DECAT MANHÃES**

**WALTER LUIZ DECAT MANHÃES**

São Paulo, 05 de agosto de 2002.

Ilmo. Dr.
Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária – Campinas

Prezado Senhor

Servimo-nos da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 838.286/98, em trâmite perante a 15ª Vara Cível da Capital.

Esclarecemos, por oportuno, que tal revogação justifica-se em razão dos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sa. serão discutidos após a concretização do referido acordo.
Atenciosamente,

NAIR DE CARVALHO JANSTEIN

MARIA CHRISTINA JANSTEIN

DESTINATÁRIO DO OBJETO / DESTINATAIRE

NOME OU RAZÃO SOCIAL DO DESTINATÁRIO DO OBJETO / NOM OU RAISON SOCIALE DU DESTINATAIRE

Renato Guimarães Júnior

ENDEREÇO / ADRESSE

Rua Francisca de Toledo, 504

CEP / CODE POSTAL: 13083-470

CIDADE / LOCALITÉ: Campinas

UF: SP

PAÍS / PAYS

DECLARAÇÃO DE CONTEÚDO (SUJEITO A VERIFICAÇÃO) / DISCRIMINACION

CARIMBO UNIDADE DE DESTINO / BUREAU DE DESTINATION

O OBJETO FOI DEVIDAMENTE ENTREGUE / L'ENVOI A ÉTÉ DÛMENT

ENTREGUE / REMIS

PAGO / PAYÉ

ASSINATURA DO RECEBEDOR / SIGNATURE DU DESTINATAIRE: Renato Guimarães Jr

DOCUMENTO DE IDENTIFICAÇÃO DO RECEBEDOR: 15.563.254

RUBRICA E MAT. DO EMPREGADO / SIGNATURE DE L'AGENT

VEJA, DO OUTRO LADO, O ENDEREÇO PARA DEVOLUÇÃO DESTE AR.

7 3 2 1 0 1 6 5 - 9

FCO403 / 16

AVISO DE RECEBIMENTO

SR 60224916 8 BR

SÃO PAULO / SP 15-08-2002

Naix de Carvalho Janstein

Rua Conselheiro Brotero

755, apto 121

São Paulo

SP

BRASIL

01232011

São Paulo, 11 de setembro de 2002.

Ilmo. Dr.
Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária – Campinas

Prezado Senhor

Sirvo-me da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 98.838460-9-C, em trâmite perante a 28ª Vara Cível da Capital.

Esclareço, por oportuno, que tal revogação justifica-se em razão dos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sa. serão discutidos após a concretização do referido acordo.
Atenciosamente,

Ines Lemos Luz Raddatz

**INÊS LEMOS DA LUZ - RADDATZ**

TELEGRAMA

CORREIOS

Correio Eletrônico

FRR07593 05102000 1649 SCM/DF(F60) F2B) 0
FONADO-RIODEJANEIRO/RJ 05102000 1814

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

PREZADO SENHOR.
TENDO TOMADO CONHECIMENTO DE SUA CARTA MANIFESTANDO SUA OPINIAO NO SENTIDO DE NAO SEREM ASSINADAS AS PROPOSTAS DE ACORDO ET MANIFESTANDO NOSSO INEQUIVOCO INTERESSE EM ASSINAR A PROPOSTA QUE NOS ESTAH SENDO FEITA POR TAM, FOKKER ET OUTROS, SIRVO-ME DA PRESENTE PARA REVOGAR OS PODERES QUE LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACAO DE INDENIZACAO, DECORRENTE DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996 PROCESSO NR. 98/838460-"B", EM CURSO PERANTE A 28/A VARA CIVIL DA CAPITAL ET PROCESSO NR. 1509/98 EM CURSO PERANTE O FORUM REGIONAL DO JABAQUARA.
ESCLARECEMOS POR OPORTUNO QUE TAL REVOGACAO JUSTIFICA-SE FACE AOS

REMETENTE

F02104916958 IVIANA ZIZZA ROMERO
AV. SERNAMBETIBA 3604 BL. 2 APT 1503
BARRA DA TIJUCA
22630-010 RIODEJANEIRO/RJ

TELEGRAMA

CORREIOS

Correio Eletrônico

FRR07593 05102000 1649 SCM/DF(F807) F28) 002
FONADO-RIODEJANEIRO/RJ 05102000 1814

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

INUMEROS OBSTACULOS OPOSTOS POR V. SA. PARA FORMALIZACAO DO ACORDO PROPOSTO PELOS ADVOGADOS AMERICANOS CONTRATADOS PARA PROPOSITURA DE ACAO DE INDENIZACAO PERANTE AS CORTES AMERICANAS. OUTROSSIM, EVENTUAIS HONORARIOS ADVOCATICIOS DEVIDOS A V.SA. SERAO DISCUTIDOS APOS A CONCRETIZACAO DO REFERIDO ACORDO.
ATENCIOSAMENTE,
IVIANA ZIZZA ROMERO
ROBERTA ZIZZA ROMERO
ADRIANO ZIZZA ROMERO
LEONARDO ZIZZA ROMERO

REMETENTE

F02104916958 IVIANA ZIZZA ROMERO
AV. SERNAMBETIBA 3604 BL. 2 APT 1503
BARRA DA TIJUCA
22630-010 RIODEJANEIRO/RJ

RA00 2000/10/10 16:22:25 00026

1010.1712
*
*252036ECTXA BR*
251965ECTX BR
QRX064/10 1712 10102000
CAMPINAS/SP.

CR.
IVIANA ZIZZA ROMERO
AV. SERNAMBETIBA 3604 - BLC.02 - APTO 1503
BARRA DA TIJUCA
22630-010 RIO DE JANEIRO - RJ.

REF. AO SEU TEL URG PC FRR07593 DE 06/10/00 P/ DR. RENATO G. JUNIOR
RUA FCO DE TOLEDO 511 - CD.UNIVERCITARIA - CAMPINAS/SP.
FOI ENTREGUE EM 06/10/00 AS 1110H. FIRMOU ERCIBO:
CLOVIS FERRANO.

ATTE
CDDSAOQUIRINO
13086-970 CAMPINAS/SP.

*
*252036ECTXA BR*
RxTempo=0003.2 (Min)

São Paulo, 21 de setembro de 2000.

ILMO. SR.
DR. RENATO GUIMARÃES JUNIOR
RUA FRANCISCO DE TOLEDO, 511
CIDADE UNIVERSITÁRIA – CAMPINAS – SÃO PAULO
CEP. 13.083-470

Por este documento, eu, **LÚCIA BORDA DE BELLO AQUINO**, brasileira, viúva, portadora do RG. 12.612.528-4, e inscrita no C.P.F. n. 075.087.138-50, **FELIPE BORDA AQUINO**, brasileiro, órfão menor e **GABRIEL BORDA AQUINO**, brasileiro, órfão menor, residentes e domiciliados à Av. Antonio de Souza Noschese, 729, Parque Continental, CEP. 05328-000, São Paulo – SP, vem rescindir o contrato de prestação de serviços profissionais firmado em 07 de outubro de 1998, nesta cidade, com o **DR. RENATO GUIMARAES JUNIOR**, OAB N. 80.113-SP, com escritório à Rua Francisco de Toledo, 511, Campinas – SP, revogando a partir do recebimento desta os poderes concedidos para representação de interesses judiciais em relação ao objeto do contrato: Mover indenizatória contra a TAM e qualquer outra pessoa física ou jurídica, inclusive governamental, por causa das mortes e danos sofridos com a tragédia do FOKKER 100 que caiu em 31 de outubro de 1996 no Jabaquara, Capital, e ainda toda ação ou medida judicial, criminal ou administrativa, necessária para a ressarcitória em harmonia com o processo já em curso, através da firma Speiser Krause, nos Estados Unidos, pelos prazos que tiver ciência seja por intimação pessoal seja pelos sistemas informativos de intimações fornecidas pelas Associações dos Advogados de Campinas e de São Paulo.

Tendo tomado conhecimento, nesta data, de sua opinião no sentido de não serem assinadas as propostas de acordo e manifestando nosso inequívoco interesse em assinar a proposta que nos está sendo feita por TAM, FOKKER e OUTROS, sirvo-me da presente para revogar os poderes que lhe foram conferidos para o ajuizamento de ação de indenização, decorrente do acidente aéreo, envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, Processo n. 2879/98, em curso perante a 22ª Vara Civil da Capital e Processo no. 1509/98 em curso na 2ª Vara Civel Foro Distrital do Jabaquara, Comarca de São Paulo.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por Vossa Senhoria para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenização perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a Vossa Senhoria serão discutidos após a concretização do referido acordo.

Atenciosamente,

LÚCIA BORDA DE BELLO AQUINO
RG. 12.612.528-4
C.P.F. 075.087.138-50



Curitiba, 24 de outubro de 2000

Ilmo. Dr. Renato Guimarães Junior
Rua Francisco de Toledo, 511
Cidade Universitária – Campinas

Prezado senhor

Tendo tomado conhecimento, nesta data, de sua opinião no sentido de não serem assinadas as propostas de acordo e manifestando nosso inequívoco interesse em assinar a proposta que nos está sendo feita por TAM, FOKKER e Outros, sirvo-me da presente para revogar os poderes que lhe foram conferidos para o ajuizamento de ação de indenização, decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996. Processo nº 03, em curso perante a 28ª Vara Cível da Capital (São Paulo).

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V. Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação de indenização perante as Cortes Americanas.

atenciosamente,

Leonardo Fischer

Catherine Fischer

Eliane Elena Donner



TELEGRAMA

CORREIOS

Correio Eletrônico

FCG40243 29112000 1754 SCM/DF(S11) COPIA 001/001
CURITIBA/PR 29112000 1801

DESTINATÁRIO

URGENTE PC
DR RENATO GUIMARAES JUNIOR
FRANCISCO DE TOLEDO,511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

SERVIMO-NOS DO PRESENTE PARA RATIFICAR A REVOGACAO DOS PODERES OUTORGADO A VOSSA SENHORIA.
ELIANE ELENA DONNER CATHERINE FISCHER E LEONARD FISCHER

REMETENTE

F0410336588? CATERINE FISCHER
BRUNO FILQUEIRA, 2045 APT 1104
80730-380CURITIBA/PR(ELIANE-001)

.1716

254108ectxa br
254131ECTXA BR

07-12-00

3SRE/GEREN
TO: CDD BIGORILHO
2000/12/07 16:07:09 00031

2000/12/07 17:14:48 00046

.1606

254108ectxa br
254131ECTXA BR
51965ECTX BR
46/12 0712 1606
INAS/SP.

ERINE FISCHER
RUA BRUNO FIGUEIRA 2045 - AP.1104
80730- 380 CURITIBA - PR.

REF. AO SEU TE URG PC FC040243 DE 29/11/00 P/ DR. RENATO GUIMARAES JUNIOR. RUA FCO TOLEDO 511 - CD.UNIVERCITARIA - CAMPINAS/SP. FOI ENTREGUE EM 11/ 01/12/2000 FIRMOU RECIBO MARCELO GUIMARAES.

ATE
QUIRINO
13086-970 CAMPINAS/SP.

254108ectxa br
254131ECTXA BR

É CÔMODO TELEFONE PARA A ECT HOJE E PAGUE DEPOIS

Pontes e Lacerda-MT, 03 de outubro 2000.

Ilmº. Dr. Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária – Campinas

Prezado Senhor,

Tendo tomado conhecimento nesta data, de sua opinião no sentido de não serem assinadas as propostas de acordo e manifestando nosso inequívoco interesse em assinar a proposta que nos está sendo feita por TAM, FOKKER e Outros, sirvo-me da presente para revogar os poderes que lhe foram conferidos para o ajuizamento de ação de indenização, decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, Processo nº 2820/98, em curso perante a 28ª Vara Cível da Capital de São Paulo e Processo nº 1509/98 em curso na 2ª Vara Cível Foro Distrital do Jabaquara, Comarca de São Paulo.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V. S.a. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação de indenização perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V. S.a. serão discutidos após a concretização do referido acordo.

Atenciosamente,

Luiz Carlos de Lima.

DESTINATÁRIO DO OBJETO / DESTINATAIRE

NOME OU RAZÃO SOCIAL DO DESTINATÁRIO DO OBJETO / NOM OU RAISON SOCIALE DU DESTINATAIRE

DR. RENATO GUY MAGALHÃES JUNIOR

ENDEREÇO / ADRESSE

AV. FRANCISCO A. DE TOLEDO 1500

CEP / CODE POSTAL: 13.083.470 | CIDADE / LOCALITÉ: CAMPINAS | UF: SP | PAÍS / PAYS:

DECLARAÇÃO DE CONTEÚDO (SUJEITO A VERIFICAÇÃO) / DISCRIMINACION

O OBJETO FOI DEVIDAMENTE / L'ENVOI A ÉTÉ DÛMENT

[ ] ENTREGUE / REMIS [ ] PAGO / PAYÉ

CARIMBO UNIDADE DE DESTINO / BUREAU DE DESTINATION

ASSINATURA DO RECEBEDOR / SIGNATURE DU DESTINATAIRE

Nº DOCUMENTO DE IDENTIFICAÇÃO DO RECEBEDOR

RUBRICA E MAT. DO EMPREGADO / SIGNATURE DE L'AGENT

VEJA, DO OUTRO LADO, O ENDEREÇO PARA DEVOLUÇÃO DESTE AR.

CDD BARÃO DE GERALDO - CAMPINAS - SP - 06 JUL 06

7 5 2 4 0 1 6 5 - 9

FC0463 / 16 114 x 162mm

AVISO DE RECEBIMENTO

AVIS DE RÉCEPTION

(CÓDIGO DE BARRAS)

TENTATIVAS DE ENTREGA: / / | / / | / /

REMETENTE - NOM OU RAISON SOCIALE DE L'EXPÉDITEUR

LUIZ CARLOS DE LIMA

AC IZABEL

CAIXA POSTAL 27

PONTES E LACERDA | UF: MT | BRASIL

78250000

## RECIBO DE ENTREGA DE DOCUMENTOS

Recebi nesta data, originais das cartas de revogação dos poderes que me foram outorgados por: **MEIRE LÚCIA TRUJILLO GERÔNIMO HOOGERHEIDE, ANDRÉA CRISTIANE HOOGERHEIDE, CARLA GABRIELLE HOOGERHEIDE, SUZANA LIBERTÁ HOOGERHEIDE** e **RAPHAEL CORNELIS HOORGERHEIDE**, para defesa de seus interesses nos processos de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em outubro de 1996, Processos nºs 98.838.015-9 e 1.509/98, em curso perante a 22ª Vara Cível da Capital, e 2ª Vara Cível do Foro Regional do Jabaquara, respectivamente.

São Paulo, 06 de agosto de 2002.

Marcela A. F. Guimarães



São Paulo, 18 de setembro de 2000

Ilmo. Dr. Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária - Campinas

Prezado Senhor:

Tendo tomado conhecimento, nesta data, de sua carta manifestando sua opinião no sentido de não serem assinadas as propostas de acordo e manifestando nosso inequívoco interesse em assinar a proposta que nos está sendo feita por TAM, FOKKER e Outros, sirvo-me da presente para revogar os poderes que lhe foram conferidos para o ajuizamento de ação de indenização, decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, Processo nº 2879/98, em curso perante a 22ª Vara Civel da Capital.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V. Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação de indenização perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V. Sa. serão discutidos após a concretização do referido acordo.

atenciosamente.

Benedita Aparecida Ferreira Britto

**BENEDITA APARECIDA FERREIRA BRITTO**

Adriano F. Britto

**ADRIANO FERREIRA BRITTO E**

Andrezza Ferreira Britto

**ANDREZZA FERREIRA BRITTO**

CORREIOS BRÉSIL

AVISO DE RECEBIMENTO - AR
OBJETO DE SERVIÇO
SERVICE DES POSTES

AVIS C5 (OBJETOS DESTINADOS AO EXTERIOR)
☐ DE RECEBIMENTO / DE RÉCEPCION
☐ DE PAGAMENTO / DE PAIEMENT

AGÊNCIA DE POSTAGEM / BUREAU DE DÉPÔT: AG Campinas

Nº DO OBJETO / Nº: SS 1 1 0 7 7 5 2 4 1 BR

DATA POSTAGEM / DATE DE DÉPÔT: 04-10-00

PREENCHIDO PELO REMETENTE

NOME OU RAZÃO SOCIAL DO DESTINATÁRIO / NOM OU RAISON SOCIALE DU DESTINATAIRE: Dr. Renato Guimarães Júnior

ENDEREÇO / ADRESSE: Rua Francisco de Toledo, 511 - Cidade Universitária

CEP / CODE POSTAL: 13.083-470

CIDADE E UF / LOCALITÉ ET PAYS: Campinas

NOME OU RAZÃO SOCIAL DO REMETENTE / NOM OU RAISON SOCIALE DE L'EXPÉDITEUR: Benedita Aparecida Ferreira Britto

ENDEREÇO PARA DEVOLUÇÃO / ADRESSE: Rua Tito, 570, apto. 42

CEP / CODE POSTAL: 05051-000

CIDADE / LOCALITÉ: São Paulo

UF

BRASIL

ASSINATURA DO RECEBEDOR / SIGNATURE DU DESTINATAIRE: [signature]

ASSINATURA DO FUNCIONÁRIO / SIGNATURE DE L'AGENT: [signature]

75170392-3

A6 = 105 x 148 mm

UNIDADE DE POSTAGEM / BUREAU DE DÉPÔT

[Stamp: ... MENDES ... SÃO PAULO ... 4 10 2000]

CARIMBO

NATUREZA
☑ CARTA / LETTRE
☐ IMPRESSO / IMPRIMÉ
☐ ENCOMENDA / COLIS POSTAL
☐ CECOGRAMA / CECOGRAMME
☐ ....................

SERVIÇO
☐ REEMBOLSO POSTAL
☐ VALE / MANDAT DE POSTE
☐ MÃO PRÓPRIA / MAIN PROPRE
☐ SEDEX / EMS
☐ ....................

VALOR DECLARADO / VALEUR DÉCLARÉE

VALOR DO VALE / MONTANT

DECLARAÇÃO DO CONTEÚDO (SUJEITO À VERIFICAÇÃO)

(OBJETOS DESTINADOS AO EXTERIOR) CET AVIS DOIT ÊTRE SIGNÉ PAR LE DESTINATAIRE ET, SI CELA N'EST PAS POSSIBLE, PAR UNE AUTRE PERSONNE Y AUTORISÉE EN VERTU DES RÈGLEMENTS DU PAYS DE DESTINATION OU, SI CES RÈGLEMENTS LE PRÉVOIENT, PAR L'AGENT DU BUREAU DE DESTINATION ET RENVOYÉ PAR LE PREMIER COURRIER DIRECTEMENT À L'EXPÉDITEUR.

O OBJETO FOI DEVIDAMENTE / L'ENVOI MENTIONNÉ CI-DESSUS A ÉTÉ DÛMENT
☐ ENTREGUE / REMIS ☐ PAGO / PAYÉ

DATA / DATE: 5/10/00

ASSINAR NO ANVERSO / SIGNER AU RECTO

DEVOLVER PELA VIA MAIS RÁPIDA (AÉREA OU DE SUPERFÍCIE), A DESCOBERTO E ISENTO DE PORTE / A RENVOYER PAR LA VOIE LA PLUS RAPIDE (AÉRIENNE OU DE SURFACE) À DÉCOUVERT ET EN FRANCHISE DE PORT.

UNIDADE DE DESTINO / BUREAU DE DESTINATION

[Stamp: ... BARÃO DE GERALDO ... 05 OUT 00]

CARIMBO

ECT - EMP.BRAS.DE CORREIOS E TELEGRAFOS
Ag.: 72992302 - ACF JOAO MENDES
PRACA JOAO MENDES, 52
Cep: 01501-990 Cidade: SAO PAULO UF:SP
CGC : 68.340.900/0001-11
Ins Est : ISENTO

---

COMPROVANTE DO CLIENTE
[illegible]/19/2009 17:08 SCX: 05 Func: EVERSON R [illegible]
LANCAMENTO: 000239

---

Remet: BENEDITA AP FERREIRA
R TITO 570 AP 42 05051-000

---

| DESCRICAO | QTDE | PRECO |
|---|---|---|
| OBJETO: 11072524-1 Cod: 40010 | | |
| Destinatario: XENSIO S JUNIOR | | |
| SEDEX CONV.DOCUMEN | 1 | 5,20 |
| AVISO DE RECEBIMENTO | 1 | 1,40 |
| CEP DESTINO: 13083-470 | | |
| PESO (Kg): 0,030 | | |
| VALOR DECLARADO: NAO SOLICITADO | | |

ANOTACOES:___________________________________

TOTAL 6,60

SERVICOS POSTAIS:DIREITOS E OBRIGACOES LEI 6538/78

SEDEX MANDOU, CHEGOU!

VALOR A PAGAR .......: 6.60
VALOR RECEBIDO.......: 6.60

---

TROCO................: 0.00

**EXHIBIT "R"**

Part 2 of 3

São Paulo, 18 de setembro de 2000

Ilmo. Dr. Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária - Campinas

Prezado Senhor:

Tendo tomado conhecimento, nesta data, de sua carta manifestando sua opinião no sentido de não serem assinadas as propostas de acordo e manifestando nosso inequívoco interesse em assinar a proposta que nos está sendo feita por TAM, FOKKER e Outros, sirvo-me da presente para revogar os poderes que lhe foram conferidos para o ajuizamento de ação de indenização, decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, Processo n° 2879/98, em curso perante a 22ª Vara Civel da Capital.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V. Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação de indenização perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V. Sa. serão discutidos após a concretização do referido acordo.

atenciosamente.

**BENEDITA APARECIDA FERREIRA BRITTO**

**ADRIANO FERREIRA BRITTO E**

**ANDREZZA FERREIRA BRITTO**

CORREIOS BRÉSIL

**AVISO DE RECEBIMENTO - AR**
OBJETO DE SERVIÇO
SERVICE DES POSTES

AVIS C5 (OBJETOS DESTINADOS AO EXTERIOR)
☐ DE RECEBIMENTO / DE RÉCEPCION
☐ DE PAGAMENTO / DE PAIEMENT

AGÊNCIA DE POSTAGEM / BUREAU DE DÉPÔT: [handwritten]
Nº DO OBJETO / Nº: SS 110775241 BR
DATA POSTAGEM / DATE DE DÉPÔT: 04-10-00

PREENCHIDO PELO REMETENTE

NOME OU RAZÃO SOCIAL DO DESTINATÁRIO / NOM OU RAISON SOCIALE DU DESTINATAIRE: Dr. Renato Guimarães Júnior
ENDEREÇO / ADRESSE: Rua Francisco de Toledo, 511 - Cidade Universitária
CEP / CODE POSTAL: 13.083-470
CIDADE E UF / LOCALITÉ ET PAYS: Campinas
NOME OU RAZÃO SOCIAL DO REMETENTE / NOM OU RAISON SOCIALE DE L'EXPÉDITEUR: Benedita Aparecida Ferreira Britto
ENDEREÇO PARA DEVOLUÇÃO / ADRESSE: Rua Tito, 570, apto. 42
CEP / CODE POSTAL: 05051-000
CIDADE / LOCALITÉ: São Paulo
UF:
BRASIL

ASSINATURA DO RECEBEDOR / SIGNATURE DU DESTINATAIRE: [signature]
ASSINATURA DO FUNCIONÁRIO / SIGNATURE DE L'AGENT: [signature]

75170392-3
A6 = 105 x 148 mm

UNIDADE DE POSTAGEM / BUREAU DE DÉPÔT
[stamp: JOÃO MENDES - SÃO PAULO - 4 10 2000]
CARIMBO

NATUREZA
☑ CARTA / LETTRE
☐ IMPRESSO / IMPRIMÉ
☐ ENCOMENDA / COLIS POSTAL
☐ CECOGRAMA / CECOGRAMME
☐ ...........

SERVIÇO
☐ REEMBOLSO POSTAL
☐ VALE / MANDAT DE POSTE
☐ MÃO PRÓPRIA / MAIN PROPRE
☐ SEDEX / EMS
☐ ...........

VALOR DECLARADO / VALEUR DÉCLARÉE
VALOR DO VALE / MONTANT

DECLARAÇÃO DO CONTEÚDO (SUJEITO À VERIFICAÇÃO)

(OBJETOS DESTINADOS AO EXTERIOR) CET AVIS DOIT ÊTRE SIGNÉ PAR LE DESTINATAIRE ET, SI CELA N'EST PAS POSSIBLE, PAR UNE AUTRE PERSONNE Y AUTORISÉE EN VERTU DES RÈGLEMENTS DU PAYS DE DESTINATION OU, SI CES RÈGLEMENTS LE PRÉVOIENT, PAR L'AGENT DU BUREAU DE DESTINATION ET RENVOYÉ PAR LE PREMIER COURRIER DIRECTEMENT À L'EXPÉDITEUR.

O OBJETO FOI DEVIDAMENTE / L'ENVOI MENTIONNÉ CI-DESSUS A ÉTÉ DÛMENT
☐ ENTREGUE / REMIS ☐ PAGO / PAYÉ
ASSINAR NO ANVERSO / SIGNER AU RECTO

DATA / DATE: 5/10/00

UNIDADE DE DESTINO / BUREAU DE DESTINATION
[stamp: BARÃO DE GERALDO - 05 OUT 00]
CARIMBO

DEVOLVER PELA VIA MAIS RÁPIDA (AÉREA OU DE SUPERFÍCIE), A DESCOBERTO E ISENTO DE PORTE / A RENVOYER PAR LA VOIE LA PLUS RAPIDE (AÉRIENNE OU DE SURFACE) À DÉCOUVERT ET EN FRANCHISE DE PORT.

ECT - EMP.BRAS.DE CORREIOS E TELEGRAFOS
Ag.: 72902302 - ACF JOAO MENDES
PRACA JOAO MENDES, 32
Cep: 01501-990 Cidade: SAO PAULO UF:SP
CGC : 68.340.900/0001-11
Ins Est : ISENTO

-----------------------------------------------

COMPROVANTE DO CLIENTE
06/10/2000 17:03 SEX: 05 Func: EVERSON E AR
LANCAMENTO: 000299

-----------------------------------------------

Remet: BENEDITA AP FERREIRA
R TITO 570 AP 42 05051-000

-----------------------------------------------

| DESCRICAO | QTDE | PRECO |
|---|---|---|
| OBJETO: 11077524-1 Cod: 40010 | | |
| Destinatario: RENATO G JUNIOR | | |
| SEDEX CONV.DOCUMEN | 1 | 5,20 |
| AVISO DE RECEBIMENTO | 1 | 1,40 |
| CEP DESTINO: 13083-470 | | |
| PESO (Kg): 0,030 | | |
| VALOR DECLARADO: NAO SOLICITADO | | |
| NOTACOES:______________________________ | | |
| | TOTAL | 6,60 |

SERVICOS POSTAIS:DIREITOS E OBRIGACOES LEI 6538/78

SEDEX MANDOU, CHEGOU!

VALOR A PAGAR ......: 6.60
VALOR RECEBIDO......: 6.60
---------------
TROCO...............: 0.00

CORREIOS

TELEGRAMA

ACEITAÇÃO

HORA | DATA

CATEGORIA/SERVIÇOS TAXADOS: Telegrama [illegible] NAC

PALAVRAS TARIFADAS

Nº COMPROVANTE: COM COPIA E CONFIRMACAO DE ENTREGA

TAXADOR-RUBRICA

PREFIXO / Nº TRANSMISSÃO

Nº GENTEX

HORA TRANSMISSÃO | SIGLA ORIGEM/DESTINO | PRIORIDADE / TARIFA | OPERADOR

DESTINATÁRIO

NOME OU ENDEREÇO TELEGRÁFICO: RENATO G [illegible]

FONE, TELEX ou CX POSTAL

ENDEREÇO (Rua, Av., Nº, Apto, Bairro): RUA FRANCISCO TOLEDO 511 CIDADE UNIVERSITARIA

CIDADE: CAMPINAS

ESTADO/PAÍS: SÃO PAULO - SP

CEP: 13 082-470

DATA DE ENTREGA (Só para Pré-datado)

TEXTO

SIRVO-ME DA PRESENTE PARA INFORMAR A V.SA., A REVOGAÇÃO DO PODERES ANTES LHE OUTORGADOS, REFERENTE AOS PROCESSOS DO ACIDENTE AEREO COM O [illegible].

QUERO AGRADECE-LO, FICANDO A DISPOSIÇÃO PARA QUALQUER ESCLARECIMENTO

REMETENTE

NOME: ELCIONI Augusta [illegible] DE QUEIROZ

FONE, TELEX ou CX. POSTAL: (21) 33262211

ENDEREÇO (Rua, Av., Nº, Apto., Bairro): AV. ~~[illegible]~~ Luis Carlos Prestes 410 s/122

CIDADE: Rio Janeiro

ESTADO: RJ

CEP: 22 775-055

OUTRAS INFORMAÇÕES SE SOLICITADAS

CORREIOS

RECIBO DE TELEGRAMA

AUTENTICAÇÃO

ECT - EMP. BRAS. DE CORREIOS E TELEGRAFOS
Ag: 505 SHOPPING
AV. DAS AMERICAS, 4666 - LJ. 201 A
BARRA DA TIJUCA - 22640-970
RIO DE JANEIRO - RJ
C.G.C...: 34.028.316/3428-45 Tel.: 9503-8145
Ins Est.: 81613524

COMPROVANTE DO CLIENTE

Movimento : 16/01/2002 Hora :12:02:39
Sub/Caixa. : 001 Mat. :83057072
Lancamento: 0004 - 0004

| DESCRICAO | QTD. | PRECO |
|---|---|---|
| TELEG NACIONAL SIMPLES | 1 | 7,78+ |
| CT COPIA DE TELE | 1.53 | |
| PCE PEDIDO CONFIR | 2.00 | |
| Cidade: PAULO | | |

Anotacoes: ---

| | |
|---|---|
| TOTAL ==========> | 7,78 |
| VALOR EM DINHEIRO: | 7,78 |
| VALOR RECEBIDO==> | 7,78 |

SERV. POSTAIS: DIREITOS E DEVERES-LEI 6538/78

OBS: INFORMAMOS QUE OS OBJETOS POSTADOS APÓS AS 16:00HS SÓ SEGUIRÃO, NO DIA SEGUINTE.

SCADA 2.4

CDV05893 23102000 1430 SCM/DF(C01) COPIA 001/002
BRASILIA/DF/DF 23102000 1438

TELEGRAMA PC
DR RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO, 511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

TENDO TOMADO CONHECIMENTO, NESTA DATA, DE SUA OPINIAO NO SENTIDO DE NAO SEREM ASSINADAS AS PROPOSTAS DE ACORDO E MANIFESTANDO NOSSO INEQUIVOCO INTERESSE EM ASSINAR A PROPOSTA QUE NOS ESTA SENDO FEITA POR TAM, FOKKER E OUTROS, SIRVO-ME DA PRESENTE PAR REVOGAR OS PODERES QUE LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACAO DE INDENIZACAO, DECORRENTE DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996, PROCESSO N.2079/98, EM CURSO PERANTE A 22 VARA CIVEL DA CAPITAL. ESCLARECO POR OPORTUNO, QUE TAL REVOGACAO JUSTIFICA-SE FACE AO INUMEROS OBSTACULOS OPOSTOS POR V.S. PARA FORMALIZACAO DO ACORDO PROPOSTO PELOS ADVOGADOS AMERICANOS CONTRATADOS PARA PROPOSITURA DE ACAO DE INDENIZACAO PERANTE AS CORTES AMERICANAS.

R ROSA BOIANOVSKY
SHIS QI 16 CONJ. 01 CASA 12
BRASILIA/DF 71640-210

CDV05893 23102000 1430 SCM/DF(C01) COPIA 002/002
BRASILIA/DF/DF 23102000 1438

TELEGRAMA PC
DR RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO, 511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

ROSA BOIANOVSKY

R ROSA BOIANOVSKY
SHIS QI 16 CONJ. 01 CASA 12
BRASILIA/DF 71640-210

TELEGRAMA

CORREIOS

Correio Eletrônico

FS537860 09102000 1358 SCM/DF(F34) COPIA 001/002
SAOPAULO/SP 09102000 1413

DESTINATÁRIO

URGENTE PC
ILMO. DR. RENATO GUIMARAES JUNIOR
RUA DR. FRANCISCO DE TOLEDO 511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

PREZADO SENHOR TENDO TOMADO CONHECIMENTO, NESTA DATA, DE SUA OPINIAO NO SENTIDO DE NAO SEREM ASSINADAS AS PROPOSTAS DE ACORDO E MANIFESTANDO NOSSO INEQUIVOCO INTERESSE EM ASSINAR A PROPOSTA QUE NOS ESTA SENDO FEITA POR TAM, FOKKER E OUTROS SIRVO-ME DA PRESENTE PARA REVOGAR OS PODERES QUE LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACAO DE INDENIZACAO DECORRENTE DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996, PROCESSO NR 000.96.838.460-9 EM CURSO PERANTE A 5/A VARA CIVEL DA CAPITAL E PROCESSO N. 1509/98 DA 2/A VARA CIVEL DO FORO REGIONAL DO JABAQUARA. ESCLARECO, POR OPORTUNO, QUE TAL REVOGACAO JUSTIFICA-SE FACE AOS INUMEROS OBSTACULOS OPOSTOS POR V.SA. PARA A FORMALIZACAO DO ACORDO PROPOSTO PELOS ADVOGADOS AMERICANOS

REMETENTE

F0110080447 NEUSA MARIA VICENTINI AMANDO DE BARROS
AL. FRANCA 732 APTO. 72 JD. PAULISTA
01422-000 SAOPAULO/SP MARIANA/KY

TELEGRAMA

CORREIOS

Correio Eletrônico

FS537860 09102000 1358 SCM/DF(F34) COPIA 002/002
SAOPAULO/SP 09102000 1413

DESTINATÁRIO

URGENTE PC
ILMO. DR. RENATO GUIMARAES JUNIOR
RUA DR. FRANCISCO DE TOLEDO 511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

CONTRATADOS PARA PROPOSITURA DE ACAO DE INDENIZACAO PERANTE AS CORTES AMERICANAS. CONSIGNO, POR FIM, QUE OS HONORARIOS DEVIDOS A V.SA. SERAO LIQUIDADOS QUANDO DO RECEBIMENTO DA INDENIZACAO. ATENCIOSAMENTE NEUSA MARIA VICENTINI AMANDO DE BARROS, JULIANA AMANDO DE BARROS, LUCIANA AMANDO DE BARROS E MARIANA AMANDO DE BARROS

REMETENTE

F0110080447 NEUSA MARIA VICENTINI AMANDO DE BARROS
AL. FRANCA 732 APTO. 72 JD. PAULISTA
01422-000 SAOPAULO/SP MARIANA/KY

TELEGRAMA

CORREIOS

Correio Eletrônico

FS889619 23052001 1305 SCM/DF(J76) COPIA 001/003
SAOPAULO/SP 23052001 1319

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

PREZADO SENHOR SERVIMO-NOS DA PRESENTE PARA REVOGAR OS PODERES QUE
LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACOES DE INDENIZACAO
DECORRENTES DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA
EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996, PROCESSO NUMERO
1509/98, EM CURSO PERANTE A 27A VARA CIVEL DO FORO REGIONAL DO
JABAQUARA, ORA EM FASE DE APELACAO PERANTE O EGREGIO PRIMEIRO
TRIBUNAL DE ALCADA CIVEL DO ESTADO DE SAO PAULO E PROCESSO NUMERO
838286/98, EM CURSO PERANTE A 15A VARA CIVEL DO FORUM JOAO MENDES
JUNIOR. ESCLARECEMOS, POR OPORTUNO, QUE A REVOGACAO JUSTIFICA-SE
EM FACE DA MOROSIDADE DA SOLUCAO DOS PROCESSOS, E AINDA LEVANDO-SE EM
CONTA A NECESSIDADE DE NUMERARIO PARA TRATAMENTO DA SAUDE DO
SR. HERMANN GNUDGE QUE [illegible] COM IDADE AVANCADA, FATOS ESSES QUE SAO

REMETENTE

F01143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCG

TELEGRAMA

CORREIOS

Correio Eletrônico

FS889619 23052001 1305 SCM/DF(J76) COPIA 002/003
SAOPAULO/SP 23052001 1319

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

DO CONHECIMENTO DE V. SA. CONSIDERANDO-SE AINDA QUE NOS AUTOS DO
PROCESSO NUMERO 1509/98, A CENTENCA PROFERIDA PELO MM. JUIZ DA 27A
VARA DO FORO REGIONAL DO JABAQUARA, NAO DECIDIU PELA INCLUSAO DOS
FAMILIARES DE CORNELIA, NO POLO PASSIVO DO OBJETO DAQUELA ACAO; E
AINDA, EM FACE DOS CONFLITOS QUE VIGORAM ENTRE A PESSOA DO ADVOGADO
DR. RENATO GUIMARAES JUNIOR E OS ADVOGADOS AMERICANOS, CONTRATADOS
PARA PROPOSITURA DE ACAO INDENIZATORIA PERANTE AS CORTES AMERICANAS,
DIVULGADOS INTENSAMENTE PELA IMPRENSA E DO CONHECIMENTO DE TODOS OS
FAMILIARES DE TODAS AS VITIMAS, RESOLVEM OS SUBSCRITORES DA PRESENTE
REVOGAR OS PODERES QUE FORAM CONFERIDOS A V. SA. OUTROSSIM, OS
HONORARIOS ADVOCATICIOS, PORVENTURA DEVIDOS A V. SA DEVERAO SER
COBRADOS JUNTO AO ESCRITORIO SPEISER KRAUSER, CONFORME COMBINADO

REMETENTE

F01143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCG

CONFIDENTIAL SK 3066



TELEGRAMA

CORREIOS

Correio Eletrônico

F5889619 23052001 1205 SCM/BD(U76) CÓPIA 003/003
SAOPAULO/SP 23052001 1319

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

QUANDO DA PROPOSITURA DAS MENCIONADAS ACOES.
HERMANN GNUGGE, HELLA GNUGGE E MICHAEL HEINRICH BAUER

CÓPIA

F01143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCS

CONFIDENTIAL SK 3067



TELEGRAMA FONADO
E COMODO. TELEFONE PARA A
ECT HOJE E PAGUE DEPOIS

0531.1647

2511155CTXB BR
251965ECTX BR
2RX095/05 31/05/2001 1647
CAMPINAS/SP

SR
MICHAEL HENRICH BAUER
V. CAMINHO DO MAR 1811 RUDGE RAMOS
9605-000 SAOBERNARDODOCAMPO/SP

REF. AO SEU TG. FS58961, 23/05/01 1319, DEST. AO DR. RENATO GUIMARAES JUNIOR RUA DR. FRANCISCO DE TOLEDO 511 CID. UNIVERSITARIA CAMPINAS/SP, FOI ENTREGUE EM 24/05/01 AS 14:00HS, FIRMOU RECIBO RENATO GUIMARAES JUNIOR.

ATTE
CDD/SAO QUIRINO
13086-970 CAMPINAS/SP

2511155ECTXB BR



TELEGRAMA

CORREIOS

Correio Eletrônico

FSS89619 23052001 1305 SCM/DF(J76) COPIA 001/003
SAOPAULO/SP 23052001 1319

DESTINATÁRIO

URGENTE PC
DR. RENATO GUINARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

PREZADO SENHOR SERVIMO-NOS DA PRESENTE PARA REVOGAR OS PODERES QUE
LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACOES DE INDENIZACAO
DECORRENTES DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA
EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996, PROCESSO NUMERO
1509/98, EM CURSO PERANTE A 2/A VARA CIVEL DO FORO REGIONAL DO
JABAQUARA, ORA EM FASE DE APELACAO PERANTE O EGREGIO PRIMEIRO
TRIBUNAL DE ALCADA CIVEL DO ESTADO DE SAO PAULO E PROCESSO NUMERO
838286/98, EM CURSO PERANTE A 15/A VARA CIVEL DO FORUM JOAO MENDES
JUNIOR. ESCLARECEMOS, POR OPORTUNO, QUE A REVOGACAO JUSTIFICA-SE
EM FACE DA MOROSIDADE DA SOLUCAO DOS PROCESSOS, E AINDA LEVANDO-SE EM
CONTA A NECESSIDADE DE NUMERARIO PARA TRATAMENTO DA SAUDE DO
SR. HERMANN GNUGGE QUE CONTA COM IDADE AVANCADA, FATOS ESSES QUE SAO

REMETENTE

FO 143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCG

TELEGRAMA

CORREIOS

Correio Eletrônico

FSS89619 23052001 1305 SCM/DF(J76) COPIA 002/003
SAOPAULO/SP 23052001 1319

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

DO CONHECIMENTO DE V. SA. CONSIDERANDO-SE AINDA QUE, NOS AUTOS DO
PROCESSO NUMERO 1509/98, A CENTENCA PROFERIDA PELO MM. JUIZ DA 2/A
VARA DO FORO REGIONAL DO JABAQUARA, NAO DECIDIU PELA INCLUSAO DOS
FAMILIARES DE CORNELIA, NO POLO PASSIVO DO OBJETO DAQUELA ACAO, E
AINDA, EM FACE DOS CONFLITOS QUE VIGORAM ENTRE A PESSOA DO ADVOGADO
DR. RENATO GUIMARAES JUNIOR E OS ADVOGADOS AMERICANOS, CONTRATADOS
PARA PROPOSITURA DE ACAO INDENIZATORIA PERANTE AS CORTES AMERICANAS,
DIVULGADOS INTENSAMENTE PELA IMPRENSA E DO CONHECIMENTO DE TODOS OS
FAMILIARES DE TODAS AS VITIMAS, RESOLVEM OS SUBSCRITORES DA PRESENTE
REVOGAR OS PODERES QUE FORAM CONFERIDOS A V. SA. OUTROSSIM, OS
HONORARIOS ADVOCATICIOS PORVENTURA DEVIDOS A V. SA DEVERAO SER
COBRADOS JUNTO AO ESCRITORIO SPEISER KRAUSER, CONFORME COMBINADO

REMETENTE

FO1143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCG

TELEGRAMA

CORREIOS

Correio Eletrônico

FS989619 23082001 1120 CM/DF(U76) FOLHA 003/003
SAOPAULO/SP 23082001 1317

DESTINATÁRIO
URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO
QUANDO DA PROPOSITURA DAS MENCIONADAS ACOES.
HERMANN GNUGGE, HELLA GNUGGE E MICHAEL HEINRICH BAUER

CÓPIA

REMETENTE
F01143679100 MICH... HEINRICH BAUER
... CAMINHO DO MAR ... RUDGE RAMOS
...609-000 SAOBE... CAMPO/SP CATIA/LCQ

TELEGRAMA FONADO
E COMODO. TELEFONE PARA A
ECT HOJE E PAGUE DEPOIS

CORREIOS

5531.1647

251115ECTXB BR
251965ECTX BR
TRX095/05 31/05/2001 1647
CAMPINAS/SP

SR
MICH.. L HENRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP

REF. AO SEU TE. FSS89619 23/05/01 1319, DEST. AO DR. RENATO GUIMARAES JUNIOR RUA DR. FRANCISCO DE TOLEDO 511 CID. UNIVERSITARIA CAMPINAS/SP, FOI ENTREGUE EM 24/05/01 AS 14:00HS, FIRMOU RECIBO RENATO GUIMARAES JUNIOR.

ATTE
CDD/SAO QUIRINO
13086-970 CAMPINAS/SP

251115ECTXB BR

DE :NPAS FAX :31051092 29 OUT. 2004 17:31 Pág.6

São Paulo, 10 de outubro de 2000.

Ilmo. Sr. Dr. Renato Guimarães Junior
Rua Francisco Toledo, 511
Cidade Universitária - Campinas - SP
CEP. 13.083-470

Prezado Senhor.

Em face da sua discordância em assinar as propostas de acordo que nos estão sendo feitas pela TAM, FOKKER e Outros, contrariando nossos interesses em por fim de vez a esta demanda, e manifestando nosso inequívoco interesse em solucionar esta questão, sirvo-me da presente para, por mim MARCIA GONÇALVES DIAS DE BARROS, e representando meus filhos EDUARDO GONÇALVES DIAS DE BARROS e GABRIEL GONÇALVES DIAS DE BARROS, **REVOGAR** os poderes que lhe foram conferidos, bem como os consequentes substabelecimentos, para o ajuizamento de Ação de indenização, decorrente do acidente aéreo envolvendo a aeronave FOKKER 100 da Empresa TAM, ocorrido em 31 de outubro de 1996, processos: Nº 1509/98 em trâmite perante a 2ª Vara Cível - Foro Reg. III-Jabaquara, e 2956 em trâmite perante a 15ª Vara Cível do Foro Central da Comarca de São Paulo.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para a propositura da ação de indenização perante as cortes americanas.

Atenciosamente

MARCIA GONÇALVES DIAS DE BARROS

Cartório do 1º Ofício de Justiça, Rua da Conceição 40, Niterói - RJ Tel: 371 0190. Tabelião José Mauro [illegible]
AUTENTICAÇÃO
Certifico e dou fé que a presente cópia é a reprodução fiel do original que me foi apresentado.
Niterói, 17 de [illegible] de 2001. Conf. com
[illegible]

200d7

# EXHIBIT "R"
Part 3 of 3

DE :MPAB FAX :31051892 29 OUT. 2004 17:30 Pág. 5

São Paulo, 17 de novembro 2000.

Ilmo. Sr. Dr. Renato Guimarães Junior
Rua Francisco Toledo, 511
Cidade Universitária – Campinas

Prezado Senhor

Em face de sua discordância em assinar as propostas de acordo que nos estão sendo feitas pela TAM, FOKKER e Outros, contrariando nossos interesses em por fim de vez a esta demanda, e manifestando nosso inequívoco interesse em solucionar esta questão, sirvo-me da presente para, por mim MARIA BIBIANA PINTO PIZARRO SÁ FORTES, e representando meus filhos CAMILLA PIZARRO SÁ FORTES e BRUNO PIZARRO SÁ FORTES, **REVOGAR** os poderes que lhe foram conferidos, bem como os conseqüentes substabelecimentos, para o ajuizamento de Ação de indenização, decorrente do acidente aéreo envolvendo a aeronave FOKKER 100 da Empresa TAM, ocorrido em 31 de outubro de 1996.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para a propositura de ação de indenização perante as cortes americanas.

Atenciosamente.

MARIA BIBIANA PINTO PIZARRO SÁ FORTES

São Paulo, 18 de janeiro de 2002

Ilmo.Sr.
**Dr. RENATO GUIMARÃES JR.**
Rua Francisco de Toledo, 511 – Cidade Universitária
**CAMPINAS-SP**
Cep 13.083-470Fax nº C-15-19 3289.8990

Prezado Dr. Renato.

**REF.: REVOGAÇÃO DE SUBSTABELECIMENTOS DE PROCURAÇÃO**

Reporto-me ao fax que enviei a V. Sa., datado de 11.05.2001, e sua resposta manuscrita, também via fax, da mesma data, versando, dentre outros assuntos, sobre o real interesse de D. Monika e de seus filhos Gisele, Paula e Rodrigo, agora maiores e capazes, em concretizar rapidamente um acordo com a TAM, nos autos do processo nº 838.286/98 e Incidente nº 838.286/98-04, que tramitam pela 15ª Vara Cível do Foro Central de São Paulo, já estando os citados membros da família Bleinat perfeitamente cientes dos termos da petição de acordo e de seus eventuais riscos, valendo notar que ainda não foi proferida sentença nessa ação.

V. Sa., como meu substabelecido nas procurações que me foram outorgadas pela família Bleinat, substabelecimentos esses datados de 25.08.98 e 01.10.98, condicionou, em seu fax de 11.05.2001, assinar com o signatário a petição de acordo, desde que a indenização fosse paga no Brasil à família e aos advogados, antes do trânsito em julgado da respectiva homologação, condicionantes essas consideradas inaceitáveis e impraticáveis pela TAM. Em razão disso a família Bleinat que, diga-se de passagem, vem sofrendo nestes últimos anos graves problemas financeiros, solicitou-me que revogasse aqueles substabelecimentos, objetivando não só viabilizar e agilizar a concretização do acordo, como também, tornar o signatário seu único advogado nos processos antes aludidos, inclusive assinando, juntamente com os membros da família, o acordo em questão.

Desta forma, atendendo a solicitação da família Bleinat, sirvo-me da presente para *notificar V. Sa. que ficam revogados, a partir desta data, os mencionados* substabelecimentos de procuração, ressaltando-se, *nesta oportunidade*, que a *revogação* ora declarada não significa, absolutamente, demérito à sua excelente atuação profissional no referido processo, que sempre considerei correta e eficiente.

Esclareço, outrossim, que a família Bleinat confirma e ratifica, neste ato, o Contrato de Prestação de Serviços Profissionais, celebrado com V. Sa. em 24.09.98, de sorte que os seus honorários advocatícios estão preservados e serão pagos de conformidade com o

4.704
5

pactuado nesse Contrato, ou seja, 10% (dez por cento) sobre o valor que, efetivamente, a família Bleinat vier a receber, a título de indenização.

Limitado ao exposto, valho-me do ensejo para apresentar a V. Sa. os protestos da minha elevada consideração.

Atenciosamente

RUY DE OLIVEIRA PEREIRA
OAB/SP Nº 11.952

Ciente e de acordo

MONIKA KAUTZ BLEINAT

GISELE BLEINAT

PAULA BLEINAT

RODRIGO BLEINAT

Av. Brigadeiro Luiz Antônio nº 2050 – Conjunto 82 – Ala "B" • Bela Vista • CEP 01318-002
Fone-3266.8380 – Fone fax 253.0221 São Paulo – SP

21 July, 2004

To Whom It May Concern:

Be advised that the family of the decedent, Carla Generali Nazareth retains Speiser Krause as their attorneys in reference to the aircrash of TAM Airlines, Flight 402 which occurred on October 31, 1996. That retainer was signed in mid-1997 and a settlement was recovered in April of 2000.

Therefore as the request of another attorney, the firm of Herman & Marmelstein of Miami, Florida, was retained in the part of 2002 and were thereafter DIMISSED as our attorneys on 4/9/03. The only persons who have been authorized to reach any settlement for us has been firm of Speiser Krause and we reiterate that Speiser Krause has been and is now, our only attorneys in this matter and we reaffirm the settlement they have obtained for us in April of 2002 in the sum of $295,000.

22° Subdistrito CONFERIDO

ANTONIO CHRISTOVAM NAZARETH

22° Subdistrito CONFERIDO

MARIA LUCIA GENERALI NAZARETH

Oficial de Registro Civil das Pessoas Naturais e Tabelião de Notas 22° Subdistrito

Este documento, para produzir efeito no Brasil e para valer contra terceiros, deverá ser vertido em vernáculo e registrada a tradução.

OFICIAL DE REG. CIVIL DAS PESSOAS NATURAIS E TABELIÃO DE NOTAS 22° SUBDISTRITO

Reconheço por semelhança a(s) firma(s) de: ANTONIO CHRISTOVAM NAZARETH(288640), MARIA LUCIA GENERALI NAZARETH(288647). São Paulo - SP, 21 de julho de 2004. Em testemunho da verdade.
MARINA DE CASSIA FARIA DA SILVA - ESCREVENTE AUTORIZADA
Valor Unitário: 2,25 Valor Total: R$ 4,50

21. Julho 2004

A quem possa interessar,

Fique esclarecido que a família da falecida , Carla Generali Nazareth contratou Speiser Krause como seus advogados com referência ao acidente aéreo da TAM, vôo 402 que ocorreu em 31 de outubro de 1996. A contratação foi assinada em meados de 1997 e um acordo foi estabelecido em abril de 2000.

Após isto, a pedido de outro advogado, a firma Herman & Marmelstein de Miami, Flórida, foi contratada no final de 2002 e, foram, posteriormente, demitidos, como nossos advogados em 9/4/2003. As únicas pessoas que foram autorizadas a obter um acordo para nós foi a firma Speiser Krause e nós reiteramos que a Speiser Krause foi e é, atualmente, nosso único advogado nesta questão e nós confirmamos o acordo que eles obtiveram para nós em abril de 2002 por uma soma total de US$295,000.

22° Subdistrito CONFERIDO

ANTONIO CHRISTOVAM NAZARETH

22° Subdistrito CONFERIDO

MARIA LUCIA GENERALI NAZARETH

OFICIAL DE REG. CIVIL DAS PESSOAS NATURAIS E TABELIÃO DE NOTAS 22.º SUBDISTRITO TUCURUVI - SP.
Bel. Maria Elena C. Costa Neves - Oficial / Tabeliã
Av. Nova Cantareira, 1418 - CEP: 02330-001 - Fone: (11) 6953-0125 - Tucuruvi - São Paulo

Reconheço por semelhança a(s) firma(s) de: ANTONIO CHRISTOVAM NAZARETH(2896461), MARIA LUCIA GENERALI NAZARETH(2896471). Dou fé.
São Paulo - SP, 21 de julho de 2004. Em testemunho da verdade.
MARINA DE CASSIA FARIA DA SILVA - ESCREVENTE AUTORIZADA
Seg.: 5849485558848852465749585234 Valor Unitário: 2,29 Valor Total: R$ 4,58

AA010078

VÁLIDO SOMENTE COM SELO DE AUTENTICIDADE

Marina de Cassia Faria da Silva - Escrevente - Oficial de Registro Civil das Pessoas Naturais e Tabelião de Notas do 22° Subdistrito

São Paulo, 04 de fevereiro de 2003

Ilmo. Dr.
Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária
Campinas

Prezado Senhor,

Servimo-nos da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 1.509/98, em curso perante a 2ª Vara Cível do Foro Regional do Jabaquara, ora em fase de apelação perante o Egrégio Primeiro Tribunal de Alçada Civil do Estado de São Paulo.

Esclarecemos, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sa. deverão ser discutidos com o escritório Speiser Krauser, conforme combinado quando da propositura da supra citada ação.

Atenciosamente,

**ANTONIO CHRISTOVAM NAZARETH**

**MARIA LUCIA GENERALI NAZARETH**



TELEGRAMA

CORREIOS

Correio Eletrônico

FSS89619 23052001 1305 SCM/DF(J76) COPIA 001/003
SAOPAULO/SP 23052001 1319

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

PREZADO SENHOR SERVIMO-NOS DA PRESENTE PARA REVOGAR OS PODERES QUE
LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACOES DE INDENIZACAO
DECORRENTES DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA
EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996, PROCESSO NUMERO
1509/98, EM CURSO PERANTE A 2/A VARA CIVEL DO FORO REGIONAL DO
JABAQUARA, ORA EM FASE DE APELACAO PERANTE O EGREGIO PRIMEIRO
TRIBUNAL DE ALCADA CIVEL DO ESTADO DE SAO PAULO E PROCESSO NUMERO
838286/98, EM CURSO PERANTE A 15/A VARA CIVEL DO FORUM JOAO MENDES
JUNIOR. ESCLARECEMOS, POR OPORTUNO, QUE A REVOGACAO JUSTIFICA-SE
EM FACE DA MOROSIDADE DA SOLUCAO DOS PROCESSOS, E AINDA LEVANDO-SE EM
CONTA A NECESSIDADE DE NUMERARIO PARA TRATAMENTO DA SAUDE DO
SR. HERMANN GNUEGE QUE CONTA COM IDADE AVANCADA, FATOS ESSES QUE SAO

REMETENTE

FO1143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCG

TELEGRAMA

CORREIOS

Correio Eletrônico

FSS89619 23052001 1305 SCM/DF(J76) COPIA 002/003
SAOPAULO/SP 23052001 1319

DESTINATÁRIO

URGENTE PC
DR. RENATO GUIMARAES JUNIOR
R. DR. FRANCISCO DE TOLEDO 511
CID. UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

DO CONHECIMENTO DE V. SA. CONSIDERANDO-SE AINDA QUE, NOS AUTOS DO
PROCESSO NUMERO 1509/98, A CENTENCA PROFERIDA PELO MM. JUIZ DA 2/A
VARA DO FORO REGIONAL DO JABAQUARA, NAO DECIDIU PELA INCLUSAO DOS
FAMILIARES DE CORNELIA, NO POLO PASSIVO DO OBJETO DAQUELA ACAO, E
AINDA, EM FACE DOS CONFLITOS QUE VIGORAM ENTRE A PESSOA DO ADVOGADO
DR. RENATO GUIMARAES JUNIOR E OS ADVOGADOS AMERICANOS CONTRATADOS
PARA PROPOSITURA DE ACAO INDENIZATORIA PERANTE AS CORTES AMERICANAS,
DIVULGADOS INTENSAMENTE PELA IMPRENSA E DO CONHECIMENTO DE TODOS OS
FAMILIARES DE TODAS AS VITIMAS, RESOLVEM OS SUBSCRITORES DA PRESENTE
REVOGAR OS PODERES QUE FORAM CONFERIDOS A V. SA. OUTROSSIM, OS
HONORARIOS ADVOCATICIOS, PORVENTURA DEVIDOS A V. SA DEVERAO SER
COBRADOS JUNTO AO ESCRITORIO SPEISER KRAUSER, CONFORME COMBINADO

REMETENTE

FO1143679100 MICHAEL HEINRICH BAUER
AV. CAMINHO DO MAR 1811 RUDGE RAMOS
09609-000 SAOBERNARDODOCAMPO/SP CATIA/LCG

São Paulo, 29 de setembro de 2000

Ilmo. Dr. Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária
CAMPINAS

Prezado Senhor,

Servimo-nos da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 1.509/98, em curso perante a 2ª Vara Cível do Foro Regional do Jabaquara.

Esclarecemos, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sas. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sas. deverão ser discutidos com o escritório Speiser Krauser, conforme combinado quando da propositura da supra citada ação.

Atenciosamente.

**BENEDITA APARECIDA FERREIRA BRITO**

**ADRIANO FERREIRA BRITO**

**ANDREZZA FERREIRA BRITO**

São Paulo, 04 de fevereiro de 2003

Ilmo. Dr.
Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária
Campinas

Prezado Senhor,

Servimo-nos da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 1.509/98, em curso perante a 2ª Vara Cível do Foro Regional do Jabaquara, ora em fase de apelação perante o Egrégio Primeiro Tribunal de Alçada Civil do Estado de São Paulo.

Esclarecemos, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sa. deverão ser discutidos com o escritório Speiser Krauser, conforme combinado quando da propositura da supra citada ação.

Atenciosamente,

**ANTONIO CHRISTOVAM NAZARETH**

**MARIA LUCIA GENERALI NAZARETH**

São Paulo, 04 de outubro de 2000

Ilmo. Doutor
Renato Guimarães Júnior
Rua Francisco de Toledo, 511
Cidade Universitária
Campinas

Prezado Senhor,

Sirvo-me da presente para **REVOGAR** os poderes que lhe foram conferidos para o ajuizamento de ação de indenização decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996, processo nº 1.509/98, em curso perante a 2ª Vara Cível do Foro Regional do Jabaquara.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados amerioanos, contratados para propositura de ação indenizatória perante as Cortes Americanas.

Outrossim, eventuais honorários advocatícios devidos a V.Sa. deverão ser discutidos com o escritório Speiser Krauser, conforme combinado quando da propositura da supra citada ação.

Atenciosamente.

**WALTER LUIZ DECAT MANHÃES**

São Paulo, 17 de novembro 2000.

Ilmo. Sr. Dr. Renato Guimarães Junior
Rua Francisco Toledo, 511
Cidade Universitária – Campinas

Prezado Senhor

Em face de sua discordância em assinar as propostas de acordo que nos estão sendo feitas pela TAM, FOKKER e Outros, contrariando nossos interesses em por fim de vez a esta demanda, e manifestando nosso inequívoco interesse em solucionar esta questão, sirvo-me da presente para, por mim MARIA BIBIANA PINTO PIZARRO SÁ FORTES, e representando meus filhos CAMILLA PIZARRO SÁ FORTES e BRUNO PIZARRO SÁ FORTES, **REVOGAR** os poderes que lhe foram conferidos, bem como os conseqüentes substabelecimentos, para o ajuizamento de Ação de indenização, decorrente do acidente aéreo envolvendo a aeronave FOKKER 100 da Empresa TAM, ocorrido em 31 de outubro de 1996.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para a propositura de ação de indenização perante as cortes americanas.

Atenciosamente.

MARIA BIBIANA PINTO PIZARRO SÁ FORTES

São Paulo, 16 de outubro de 2000.

Ilmo. Sr. Dr. Renato Guimarães Junior
Rua Francisco Toledo, 311
Cidade Universitária -- Campinas - SP
CEP. 13.083-470

Prezado Senhor.

Em face de sua discordância em assinar as propostas de acordo que nos estão sendo feitas pela TAM, FOKKER e Outros, contrariando nossos interesses em por fim de vez a esta demanda, e manifestando nosso inequívoco interesse em solucionar esta questão, sirvo-me da presente para, por mim MARCIA GONÇALVES DIAS DE BARROS, e representando meus filhos EDUARDO GONÇALVES DIAS DE BARROS e GABRIEL GONÇALVES DIAS DE BARROS, **REVOGAR** os poderes que lhe foram conferidos, bem como os conseqüentes substabelecimentos, para o ajuizamento de Ação de indenização, decorrente do acidente aéreo envolvendo a aeronave FOKKER 100 da Empresa TAM, ocorrido em 31 de outubro de 1996, processos: Nº 1509/98 em trâmite perante a 2ª Vara Cível - Foro Reg. III-Jabaquara, e 2936 em trâmite perante a 15ª Vara Cível do Foro Central da Comarca de São Paulo.

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V.Sa. para formalização do acordo proposto pelos advogados americanos, contratados para a propositura de ação de indenização perante as cortes americanas.

Atenciosamente

MARCIA GONÇALVES DIAS DE BARROS

Cartório do 1º Ofício de Justiça. Rua da Conceição ... Niterói - RJ Tel: ... 0190. Tabelião: José Mauro ...
AUTENTICAÇÃO
Certifico e dou fé que a presente cópia é a reprodução fiel do original que me foi apresentado.
Niterói, 22 de ... de 2001. Conf. por: ... 1,50
34211 ... Cavalcanti de Albuquerque - Substituta

20047 ...

Curitiba, 24 de outubro de 2000

Ilmo. Dr. Renato Guimarães Junior
Rua Francisco de Toledo, 511
Cidade Universitária – Campinas

Prezado senhor

Tendo tomado conhecimento, nesta data, de sua opinião no sentido de não serem assinadas as propostas de acordo e manifestando nosso inequívoco interesse em assinar a proposta que nos está sendo feita por TAM, FOKKER e Outros, sirvo-me da presente para revogar os poderes que lhe foram conferidos para o ajuizamento de ação de indenização, decorrente do acidente aéreo envolvendo a aeronave Fokker 100 da empresa TAM, ocorrido em 31 de outubro de 1996. Processo nº 03, em curso perante a 28ª Vara Cível da Capital (São Paulo).

Esclareço, por oportuno, que tal revogação justifica-se face aos inúmeros obstáculos opostos por V. Sa. para formalização do acordo proposto pelos advogados americanos, contratados para propositura de ação de indenização perante as Cortes Americanas.

atenciosamente,

Leonardo Fischer

Catherine Fischer

Eliane Elena Donner

CORREIOS

TELEGRAMA

ACEITAÇÃO

HORA | DATA

CATEGORIA / SERVIÇO TAXADO: Telegrama Fonados NAC

PALAVRAS TARIFADAS

Nº COMPROVANTE: COM CÓPIA E CONFIRMAÇÃO DE ENTREGA

TAXADOR - RUBRICA | PREFIXO / Nº TRANSMISSÃO | Nº CENTEX

HORA TRANSMISSÃO | SIGLA ORIGEM/DESTINO | PRIORIDADE / TARIFA | OPERADOR

DESTINATÁRIO

NOME OU ENDEREÇO TELEGRÁFICO: RENATO GUIMARÃES

FONE, TELEX ou CX POSTAL

ENDEREÇO (Rua, Av., Nº, Apto, Bairro): RUA FRANCISCO TOLEDO S/N CIDADE UNIVERSITÁRIA

CIDADE: CAMPINAS

ESTADO/PAÍS: SÃO PAULO - BR

CEP: 13 082-470

DATA DE ENTREGA (Só para Pré-datado)

TEXTO

SIRVO-ME DA PRESENTE PARA INFORMAR A V.SA. A REVOGAÇÃO DOS PODERES ANTES LHE OUTORGADOS, REFERENTE AOS PROCESSOS DO ACIDENTE AÉREO COM A TAM.

QUERO AGRADECÊ-LO, FICANDO A DISPOSIÇÃO PARA QUALQUER ESCLARECIMENTO

REMETENTE

NOME: ELCIONI Augusta Romano de QUEIROZ

FONE, TELEX ou CX. POSTAL: (21) 33262211

ENDEREÇO (Rua, Av., Nº, Apto, Bairro): AV. ~~[illegible]~~ Luis Carlos Prestes 410 s/122

CIDADE: Rio Janeiro

ESTADO: RJ

CEP: 22 775-055

OUTRAS INFORMAÇÕES SE SOLICITADAS

CORREIOS

RECIBO DE TELEGRAMA

AUTENTICAÇÃO

CONFIDENTIAL SK 000433



TELEGRAMA

CORREIOS

Correio Eletrônico

[illegible]RO7593 05102000 1649 SCM/DF(F60) F26: C
[illegible]ONADO-RIODEJANEIRO/RJ 05102000 1814

DESTINATÁRIO

[illegible]ENTE PC
DR. RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO 511
[illegible] UNIVERSITARIA
13083-470 CAMPINAS/SP

TEXTO

PREZADO SENHOR.
TENDO TOMADO CONHECIMENTO DE SUA CARTA MANIFESTANDO SUA OPINIAO NO
[illegible] DE NAO SEREM ASSINADAS AS PROPOSTAS DE ACORDO ET MANIFESTANDO
[illegible] INEQUIVOCO INTERESSE EM ASSINAR A PROPOSTA QUE NOS ESTAH SENDO
FEITA POR TAM, FOKKER ET OUTROS. SIRVO-ME DA PRESENTE PARA REVOGAR O[illegible]
PODERES QUE LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACAO DE
INDENIZACAO, DECORRENTE DO ACIDENTE AEREO ENVOLVENDO A AERONAVE
FOKKER 100 DA EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996
PROCESSO NR. 98/838460-''B'', EM CURSO PERANTE A 28/A VARA CIVEL D[illegible]
CAPITAL [illegible] PROCESSO NR. 1509/98 EM CURSO PERANTE O FORUM REGIONAL DO
JABAQUARA
ESCLARECEMOS POR OPORTUNO QUE TAL REVOGACAO JUSTIFICA-SE FACE [illegible]

REMETENTE

[illegible] IVIANA ZIZZA ROMERO
[illegible] SERNAMBETIBA 3604 BL. 2 APT 1003
BARRA DA TIJUCA
[illegible] RIODEJANEIRO/RJ

CONFIDENTIAL SK 000523

...5873 23102000 1430 SCM/DF(C01) COPIA 001/002
BRASILIA/DF/DF 23102000 1438

TELEGRAMA PC
DR. RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO, 511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

TENDO TOMADO CONHECIMENTO, NESTA DATA, DE SUA OPINIAO NO SENTIDO DE NAO SEREM ASSINADAS AS PROPOSTAS DE ACORDO E MANIFESTANDO NOSSO INEQUIVOCO INTERESSE EM ASSINAR A PROPOSTA QUE NOS ESTA SENDO FEITA POR TAM, FOKKER E OUTROS, SIRVO-ME DA PRESENTE PAR REVOGAR OS PODERES QUE LHE FORAM CONFERIDOS PARA O AJUIZAMENTO DE ACAO DE INDENIZACAO, DECORRENTE DO ACIDENTE AEREO ENVOLVENDO A AERONAVE FOKKER 100 DA EMPRESA TAM, OCORRIDO EM 31 DE OUTUBRO DE 1996, PROCESSO N.2879/98, EM CURSO PERANTE A 22 VARA CIVEL DA CAPITAL. ESCLARECO POR OPORTUNO, QUE TAL REVOGACAO JUSTIFICA-SE FACE AO INUMEROS OBSTACULOS OPOSTOS POR V.S. PARA FORMALIZACAO DO ACORDO PROPOSTO PELOS ADVOGADOS AMERICANOS CONTRATADOS PARA PROPOSITURA DE ACAO DE INDENIZACAO PERANTE AS CORTES AMERICANAS.

S ROSA BOIANOVSKY
SMIS QI 16 CONJ. 01 CASA 12
BRASILIA/DF 71640-210

DDV05893 23102000 1430 SCM/DF(C01) COPIA 002/002
BRASILIA/DF/DF 23102000 1438

TELEGRAMA PC
DR. RENATO GUIMARAES JUNIOR
RUA FRANCISCO DE TOLEDO, 511
CIDADE UNIVERSITARIA
13083-470 CAMPINAS/SP

ROSA BOIANOVSKY

S ROSA BOIANOVSKY
SMIS QI 16 CONJ. 01 CASA 12
BRASILIA/DF 71640-210

# EXHIBIT "S"

Part 1 of 2



METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

MOHAMAD SHAIKHZADEH
Decedent

Signature of Claimant

FOAD SHAIKHZADEH / SON
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 3/20/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]



METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

LÚCIO DE CASTRO PINTO
Decedent

[signature]
Signature of Claimant

SANDRA RIBEIRO.
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 3/20/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]



METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

DAVID LUIZ BOIANOVSKY
Decedent

Signature of Claimant
ANDRÉ BOIANOVSKY
Name of Claimant/Relationship to Decedent /SON

Signature of Claimant
Mauro Boianovsky (son)
Name of Claimant/Relationship to Decedent

Signature of Claimant
CELSO BOIANOVSKY (SON)
Name of Claimant/Relationship to Decedent

ROSA BOIANOVSKY / WIFE

p/p
DANIELA BOIANOVSKY /daughter

Dated: 22/03/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By:




METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

CARLOS MARIO FOURNIER VIEIRA
Decedent

[signature]
Signature of Claimant

MARIA GUIOMAR AMBRA FOURNIER VIEIRA
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 3/22/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

CELSO M. FACHADA ID: 011-8727900 MAY 07'97 11:24 NO.001 P.02

Retainer Agreement
Page Two

Marcelo do Amaral Ferrão
Decedent

[signature]
Signature of Claimant

Sibele Monteiro da Rocha Ferrão - esposa
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: ____________

AGREED TO:
SPEISER, KRAUSE, MADOLE & LEAR

By: ____________

MAY-07-1997 17:07 0192394315 94% P.02

CONFIDENTIAL SK 000060

Retainer Agreement
Page Two

WOLFGANG HANS JANSTEIN
Decedent

[signature]
Signature of Claimant

NAIR DE CARVALHO JANSTEIN
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 4/30/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

CORNELIA GNÜGGE BAUER
Decedent

Signature of Claimant

MICHAEL HEINRICH BAUER / HUSBAND
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: April 08, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

B. GROB DO BRASIL S.A.

GROB

Michael Bauer
Assistente de Diretoria Industrial

Av. Caminho do Mar, 1811
09731-210 - São Bernardo do Campo
São Paulo - Brasil

Tel : (011) 455-9100
Fax: (011) 455-9103

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

LAÉRCIO CREMASCO
Decedent

[signature]
Signature of Claimant

Eliana Antonia Mestrinelli Cremasco WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: April 08, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

JOSÉ RAHAL ABU ASSALI
Decedent

[signature]
Signature of Claimant

SANDRA LUIZA SIGNORELLI ASSALI – WIFE
Name of Claimant/Relationship to Decedent

______________________________
Signature of Claimant

______________________________
Name of Claimant/Relationship to Decedent

______________________________
Signature of Claimant

______________________________
Name of Claimant/Relationship to Decedent

Dated: APRIL 08, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

GEORGE KLEPETAR
Decedent

Suzana Greco de França Klepetar
Signature of Claimant

SUZANA GRECO DE FRANCA KLEPETAR – Wife
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 04/09/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature] Allen

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARAES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

RUBENS DE AZEVEDO BRITTO.
Decedent

Signature of Claimant

BENEDITA APARECIDA FERREIRA BRITTO
Name of Claimant/Relationship to Decedent
esposa.
WIFE

Signature of Claimant

SON
ADRIANO FERREIRA BRITTO - filho.
Name of Claimant/Relationship to Decedent

Signature of Claimant

DAUGHTER
ANDREZZA FERREIRA BRITTO - filha
Name of Claimant/Relationship to Decedent

Dated: 13.06.97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By:

SPEISER, KRAUSE, MADOLE & NOLAN

COUNSELLORS AT LAW

Two Grand Central Tower
140 East 45th Street
New York, N.Y. 10017

(212) 661-0011

FAX: (212) 953-6483

CABLE: SPEISATT NEWYORK

SPEISER, KRAUSE, MADOLE & LEAR
1300 NORTH SEVENTEENTH STREET
SUITE 310
ROSSLYN, VIRGINIA 22209
(703) 522-7500
FAX: (703) 522-7905

SPEISER, KRAUSE, MADOLE & COOK
2 PARK PLAZA
SUITE 1060
IRVINE, CA 92714
(714) 553-1421
FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE, P.C.
300 CONVENT STREET
SUITE 2600
SAN ANTONIO, TX 78205
(210) 230-8900
FAX: (210) 230-8913

SPEISER, KRAUSE & MADOLE, P.C.
MIAMI CENTER
10TH FLOOR
201 SOUTH BISCAYNE BLVD.
MIAMI, FLORIDA 33131
(305) 375-9400
FAX: (305) 375-0337

PLEASE REPLY TO NEW YORK OFFICE

**Retainer Agreement Aircraft Accident**
**Date of Accident: October 31st, 1996**

1. The undersigned claimant hereby retains the law firm of **Speiser, Krause, Madole , Richard H. Silver and SIEMENS attorney** _*__________ to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a **TAM AIRLINES Fokker Series Aircraft 100** in Sao Paulo, Brazil.
2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.
3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.
4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, **THIRTY-THREE and ONE THIRD percent ( 33 1/3 % )** of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.
5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to **THREE Percent (3%)** of the total recovery.
6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

**DECEDENT: IVO ROBERTO GUTJAHR**
**Name of Claimant : MIRIAN RAMOS GUTJAHR ( Wife )**

**Signature of Claimant:** [signature] **Date** 23.07.97

**ACCEPTED AND AGREED TO:**
**SPEISER, KRAUSE, MADOLE: By** [signature] **Date** 10/1 23 97

* LOTTENBERG ADVOGADOS ASSOCIADOS S/C
[signature]
FERNANDO KASINSKI LOTTENBERG

Jul. 014

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2638
(972) 404-1401 FAX: (972) 404-9787

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 373-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARAES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Post-it® Fax Note 7671

| To L. Ballen | Date | # of pages ▶ |
|---|---|---|
| Co./Dept. | From A. Ballen | |
| Phone # | Co. | |
| Fax # | Phone # 661-1000 | |
| | Fax # 661-1200 | |

Retainer Agreement
Page Two

CARLA GENERALI NAZARETH
Decedent

[signature]
Signature of Claimant

Antonio Christovam Nazareth
Name of Claimant/Relationship to Decedent

[signature]
Signature of Claimant

MARIA LUCIA GENERALI NAZARETH
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated:________________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

Ballen

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2639
(972) 404-1401 FAX (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX (305) 375-0337

129.015

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Post-it® Fax Note 7671

| To L. Ballen | Date | # of pages ▸ |
|---|---|---|
| Co./Dept. | From A. Ballen | |
| Phone # | Co. | |
| Fax # | Phone # 661-1000 | |
| | Fax # 661-1200 | |

AUG-06-1997 16:41 98% P.01

Retainer Agreement
Page Two

ALBERTO COIMBRA VIEIRA
Decedent

Signature of Claimant

[illegible] MORSILA VIEIRA
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated:________________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ________________

AUG-06-1997 16:41 98% P.02

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
DALLAS, TEXAS
(972) 404-1401 FAX: (972) 404-0707

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1050

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

P.P.

Signature of Claimant

cardo Alan Calonico Maciel
cedent

Pedro Ricardo Ramos Maciel - Filho
Name of Claimant/Relationship to Decedent

Signature of Claimant

icardo Alan Calonico Maciel
ecedent

Vanessa Pereira Ramos - Companheira
Name of Claimant/Relationship to Decedent

Signature of Claimant

Decedent

Name of Claimant/Relationship to Decedent

Dated: ____________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________

Baller

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2633
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

.017

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

| Post-it® Fax Note 7671 | Date | # of pages ▶ 2 |
|---|---|---|
| To L. Ballen | From Baller. Crestal | |
| Co./Dept. | Co. | |
| Phone # | Phone # 661-1000 | |
| Fax # | Fax # 661-1200 | |

AUG-06-1997 16:27 92% P.01

Retainer Agreement
Page Two

Paulo de Albuquerque Prado Filho
Decedent

Deisy D. O. Prado
Signature of Claimant

Deisy Dutra de Oliveira Prado - mother
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: May, 22 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

AUG-06-1997 16:27 92% P.02

Baller

8192594315 RENATO GUIMARAES 155 P01 MAY 05 '97 22:31

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

1800 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1846

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9787

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 378-8400 FAX: (305) 378-0397

129.012

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARAES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

| Post-it® Fax Note 7671 | Date / # of pages |
|---|---|
| To L. Ballen | From A. Ballen |
| Co./Dept. | Co. |
| Phone # | Phone # 661-1000 |
| Fax # | Fax # 661-1200 |

AUG-06-1997 16:36 92% P.01

Retainer Agreement
Page Two

Luiz Fernando Sampaio Gouvêa
Decedent

Signature of Claimant

Heloisa Vaz Guimarães Sampaio Gouvêa
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated:______________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ____________________

CARLOS AUGUSTO DE ALBUQUERQUE MARANHÃO JR.

NO. 115 P.1

Metropolitan Washington, D.C. Office

# Speiser, Krause, Madole & Lear

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

## RETAINER AGREEMENT
## TAM BRAZILIAN FOKKER 100
## October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

| Post-it® Fax Note 7671 | Date | # of pages ▸ 3 |
|---|---|---|
| To L. Breen | From Kallen + Bento | |
| Co./Dept. | Co. | |
| Phone # | Phone # 606-1000 | |
| Fax # | Fax # | |

AUG-06-1997 16:24 92% P.01

Retainer Agreement
Page Two

SERGIO APARECIDO BLEINAT
Decedent

Signature of Claimant

MONIKA KAUTZ BLEINAT
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated:________________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

.12,9,020

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, **THIRTY-THREE** and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

WILLIAN ARJONA CHONG
Decedent

Silvia Lucia Peixoto Arjona
Signature of Claimant

SILVIA LUCIA PEIXOTO ARJONA
Name of Claimant/Relationship to Decedent
ESPOSA

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 23/05/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

Metropolitan Washington, D.C. Office

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011, FAX (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7800
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX (305) 375-6337

1?97.021

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARAES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

| Post-it® Fax Note 7671 | Date 8-6-97 # of pages 2 |
|---|---|
| To L. Ballen | From A. Ballen |
| Co./Dept. Peloraes | Co. Ballen Gubel + Didata |
| Phone # | Phone # 661-1000 |
| Fax # | Fax # 661-1200 |

[signature] 21/05/97

Retainer Agreement
Page Two

HENRIQUE MENTONE FILHO
Decedent

x [signature]
Signature of Claimant

MARIA TERESA BERNARDO MENTONE
Name of Claimant/Relationship to Decedent
(WIFE).

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 26/05/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

ME[illegible]OLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
(703) 522-7800
FAX: (703) 522-7908

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8526
(714) 553-1421 FAX: (714) 553-1346

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

JOSE PEREIRA DUARTE
Decedent

x [signature]
Signature of Claimant

Terezinha de Jesus Fernandes Duarte - wife
Name of Claimant/Relationship to Decedent

Decedent

x [signature]
Signature of Claimant

Eric Fernandes Duarte son
Name of Claimant/Relationship to Decedent

Decedent

x [signature]
Signature of Claimant

Ellen Fernandes Duarte - daughter
Name of Claimant/Relationship to Decedent

Dated: ___________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________

AUG-26-1997 15:09 00112129577 92% P.03

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Luiz Antonio Amando DE BArros
Decedent

[signature]
Signature of Claimant

NEUSA MARIA VICENTINI AMANDO DE BARROS - WIFE
Name of Claimant/Relationship to Decedent

Decedent

[signature]
Signature of Claimant

JULIANA AMANDO DE BARROS PASSOS - DAUGHTER
Name of Claimant/Relationship to Decedent

Decedent

Luciana A. B. Rodrigues
Signature of Claimant

LUCIANA AMANDO DE BARROS RODRIGUES - DAUGHTER
Name of Claimant/Relationship to Decedent

Dated: ___________

Mariana Amando de Barros

MARIANA AMANDO DE BARROS - DAUGHTER

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-3797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

GILBERTO ALVES AQUINO JR
Decedent

[signature]
Signature of Claimant

LUCIA BORDA DE BELLO AQUINO – WIFE
Name of Claimant/Relationship to Decedent

______________________
Decedent

______________________
Signature of Claimant

______________________
Name of Claimant/Relationship to Decedent

______________________
Decedent

______________________
Signature of Claimant

______________________
Name of Claimant/Relationship to Decedent

Dated: ____________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

OLAVO RUY CAMARGO de SIQUEIRA FERREIRA
Decedent

[signature]
Signature of Claimant

OLAVO AUGUSTO S C. DE SIQUEIRA FERREIRA - FATHER
Name of Claimant/Relationship to Decedent

Cecília Maria Dias Camargo
Signature of Claimant

CECÍLIA MARIA DIAS CAMARGO - MOTHER
Name of Claimant/Relationship to Decedent

Vera Cecília C de Ferreira
Signature of Claimant

VERA CECÍLIA C. DE SIQUEIRA FERREIRA - SISTER
Name of Claimant/Relationship to Decedent

Dated: 12. 08. 97 (AUGUST)

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

PAULO MARCELLO CAIUBY de ARAÚJO
Decedent

Vera Lucia Neves
Signature of Claimant

VERA LÚCIA SANTOS NEVES - WIFE
Name of Claimant/Relationship to Decedent

______________________________
Signature of Claimant

______________________________
Name of Claimant/Relationship to Decedent

______________________________
Signature of Claimant

______________________________
Name of Claimant/Relationship to Decedent

Dated:________________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

Aluisio Camargo Fonseca
Decedent

[signature]
Signature of Claimant

NILCE MARIA VILLANI FONSECA - WIFE
Name of Claimant/Relationship to Decedent 10/23/42

[signature]
Signature of Claimant

MARCELO CAMARGO FONSECA - SON
Name of Claimant/Relationship to Decedent DOB 2/23/74

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: August 12, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

# EXHIBIT "S"
Part 2 of 2

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, ~~THIRTY-THREE~~ Twenty five and ~~ONE-THIRD~~ Percent 25% ~~(33-1/3%)~~ of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

André Estevão Marques Botelho
Decedent

Dirgia Oliveira D. Paoli Botelho
Signature of Claimant

Dirgia Oliveira D. Paoli Botelho
Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: August 11st, 1997.

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
(703) 522-7500
FAX: (703) 522-7905

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1080
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 562-1348

TEXAS OFFICE
SPEISER KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS TEXAS 75240-2636
(972) 404-1401 FAX: (972) 404-9787

FLORIDA OFFICE
SPEISER KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-8400 FAX: (305) 376-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

PROF. DR WALTER LUIZ MANHÃES
Decedent

Signature of Claimant

MARIA ADELAIDE DECAT MANHÃES (WIFE)
Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 29/9/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By:

# SPEISER KRAUSE

A PROFESSIONAL CORPORATION

140 East 48th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
Fax: (714) 863-1346

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209
(703) 522-7500
Fax: (703) 522-7905

8430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

601 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

ALEXANDRE MELLO
Decedent

Signature of Claimant

Fernando Lobo Vaz de Mello
Father Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Maria da Conceição Magalhães Vaz de M
Mother Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Luciana Magalhães Vaz de Mell
Sister Name of Claimant/Relationship to Decedent

Dated: ____________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

TOTAL P.06

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

MARIA SILVANETE DE LIMA
Decedent

[signature]
Signature of Claimant

LUIZ CARLOS DE LIMA (PAI)
Name of Claimant/Relationship to Decedent

[signature]
Signature of Claimant

ORNILDA MEDRADO DE LIMA (MÃE)
Name of Claimant/Relationship to Decedent

______________________
Signature of Claimant

______________________
Name of Claimant/Relationship to Decedent

Dated:______________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Eduardo Haydt
Decedent

Adriana Haydt
Signature of Claimant

Maria Adriana Francisco Haydt
Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: ___________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2625
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

Geraldo Luiz Arêde de Barros
Decedent

Signature of Claimant

Márcia Gonçalves Dias de Barros - Widow
Name of Claimant/Relationship to Decedent

Signature of Claimant

Eduardo Gonçalves Dias de Barros - Son
Name of Claimant/Relationship to Decedent

Signature of Claimant

Gabriel Gonçalves Dias de Barros - Son
Name of Claimant/Relationship to Decedent

Dated: 09/26/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Maurício Frateschi Sá Fortes
Decedent

Maria Bibiana P. Sá Fortes
Signature of Claimant

Maria Bibiana Pinto Pizarro Sá Fortes-Widow
Name of Claimant/Relationship to Decedent

Maria Bibiana P. Sá Fortes
Signature of Claimant

Camilla Pizarro Sá Fortes - Daugther
Name of Claimant/Relationship to Decedent

Maria Bibiana P. Sá Fortes
Signature of Claimant

Bruno Pizarro Sá Fortes - Son
Name of Claimant/Relationship to Decedent

Dated: 09/26/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

LUIZ CARLOS SIMÕES DE ALMEIDA
Decedent

[signature]
Signature of Claimant

VENERANDA APARECIDA SIMÕES DE ALMEID.
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 29/9/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

RILTON DE OLIVEIRA RODRIGUES
Decedent

Airton Francisco Rodrigues
Signature of Claimant

AIRTON FRANCISCO RODRIGUES - FATHER
Name of Claimant/Relationship to Decedent

Decedent

Maria das Graças de Oliveira Rodrigues
Signature of Claimant

MARIA DAS GRAÇAS DE OLIVEIRA RODRIGUES - MOTHER
Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 9/27/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

FELIX ELIAS BALASSIANO
Decedent

[signature]
Signature of Claimant

MARIA TERESA CAIADO BALASSIANO
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 27/09/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

LUIZ LAURO ROMERO
Decedent

[signature]
Signature of Claimant

IVIANA ZIZZA ROMERO
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 27/9/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

8. Speiser Krause shall advance all costs of travel to the United States. This includes all persons who travel from Brazil for the case.

9. Ten percent (10%) of the twenty-five percent attorney's fee, or 2.5 percent of the total recovery after costs are reimbursed, will be paid to Cecilia Elias Daher Montes.

JOSÉ WILSON NOGUEIRA
Decedent

[signature]
Signature of Claimant

FATIMA APARECIDA VARGAS NOGUEIRA
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 30/9/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

FRANCISCO JOSÉ RODRIGUES
Decedent

Signature of Claimant

ANDRÉ LUIZ BARCELLOS RODRIGUES -
Name of Claimant/Relationship to Decedent (SON)

(Son)
Signature of Claimant

ALEXANDRE AUGUSTO BARCELLOS RODRIGUES
Name of Claimant/Relationship to Decedent (son)
TERESA CRISTINA BARCELLOS RODRIGUES

Ana Cristina B. Rodrigues
Signature of Claimant

ANA CRISTINA B. RODRIGUES (daughter)
Name of Claimant/Relationship to Decedent
TERESA CRISTINA BARCELLOS RODRIGUES (

Dated: October 7, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-0797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Débora R G Taniello

OCT-14-1997 13:35 00112129577 92% P.02

Retainer Agreement
Page Two

LUIZ CLAUDIO TAMIELLO
Decedent

Signature of Claimant

DÉBORA REGINA GONÇALVES TAMIELLO - WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 06.10.1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By:

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

ARTHUR EDUARDO GASPARIAN
Decedent

Signature of Claimant

MARILDA VAZ GASPARIAN (WIFE)
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: Oct 16, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By:



METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400 FAX: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

Marizete A. S. Simioni
Decedent

Signature of Claimant

LISEMARY SIMIONI
Name of Claimant/Relationship to Decedent

Signature of Claimant

ALEXANDRO SIMIONI
Name of Claimant/Relationship to Decedent

Elisangela Simioni
Signature of Claimant

ELISANGELA SIMIONI
Name of Claimant/Relationship to Decedent

Dated: 15/10/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

METROPOLITAN WASHINGTON, D.C. OFFICE

SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421 FAX (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2693
(972) 404-1401 FAX (972) 404-9767

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 539-8400 FAX (305) 379-0527

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

From : J O PALMA RUA MARRECAS 40 RJ PHONE No. : 5424055 Oct. 08 1997 8:13AM P02

Retainer Agreement
Page Two

MARTA DE ALMEIDA PALMA
Decedent

Signature of Claimant

ZELIA DE ALMEIDA PALMA - (MÃE)
Name of Claimant/Relationship to Decedent

Signature of Claimant

JOSE ORVAL PALMA - (PAI)
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated:________________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________



METROPOLITAN WASHINGTON, D.C. OFF
SPEISER, KRAUSE, MADOLE & LEAR

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

TAM BRAZILIAN FOKKER 100
Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Louwerinus Hoogerheide
Decedent

Hoogerheide
Signature of Claimant

Meire Licia Trujillo Geronimo Hoogerheide - wife
Name of Claimant/Relationship to Decedent

Decedent

Andrea Christiane Hoogerheide
Signature of Claimant

Andrea Christiane Hoogerheide - daughter
Name of Claimant/Relationship to Decedent

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: Oct 16, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

SPEISER KRAUSE
A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
(714) 553-1421
Fax: (714) 553-1346

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209

(703) 522-7500
Fax: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

ELIAS ALVES ROCHA DE QUEIROZ
Decedent

Elcioni de Queiroz
Signature of Claimant (wife)

ELCIONI AUGUSTA FRANCO DE QUEIROZ
Name of Claimant/Relationship to Decedent

Signature of Claimant (SON) 20 YEARS

BRUNO FRANCO DE QUEIROZ
Name of Claimant/Relationship to Decedent

Signature of Claimant (SON) 15 YEARS

Otavio FRANCO DE QUEIROZ
Name of Claimant/Relationship to Decedent

Dated: October 19, 1999

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

OCT 20 '97 12:01

OCT-17-1997 13:02 S.K.M.&L. 703 522 7905 P.03/03

Retainer Agreement
Page Two

ROBERTO FISCHER
Decedent

Signature of Claimant

MARLENE EUNICE BECK - WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 10.17.97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

# SPEISER KRAUSE

A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
(714) 663-1421
Fax: (714) 663-1340

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209

(703) 522-7500
Fax: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3 Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

OCT-17-1997 13:07 S.K.M.&L. 703 522 7905 P.02/02

Retainer Agreement
Page Two

AMAURI PIMENTA DE ALMEIDA
Decedent

Ferreira
Signature of Claimant

Simone Pires Ferreira - WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: ____________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ____________________

OCT 20 '97 15:03 635 P01

CONFIDENTIAL SK 000141

# SPEISER KRAUSE

A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
[illegible]
Fax: (714) 553-1346

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209

(703) 522-7500
Fax: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

AGUINALDO BARBOSA DE FIGUEIREDO
Decedent

[signature]
Signature of Claimant

MARIA DO CARMO BRANDÃO FIGUEIREDO / WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: OCTOBER 23, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________

TOTAL P.03

SPEISER KRAUSE
A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
(714) 553-1421
Fax: (714) 553-1346

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209

(703) 522-7500
Fax: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1 The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

JULIO DUTRA DE TOLEDO
Decedent

Felicia B. D. de Toledo.
Signature of Claimant

FELICIA BARROS DUTRA DE TOLEDO/WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: OCTOBER 23, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________

TOTAL P.03

# SPEISER KRAUSE

A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
[illegible]
Fax: (714) 653-1346

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209

(703) 522-7500
Fax: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

CHRISTIANO DE GUSMÃO NETO
Decedent

[signature]
Signature of Claimant

RENATA OLIVEIRA DA SILVA CASTRO / WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: OCTOBER 25, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: [signature]

SPEISER KRAUSE
A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
(714) 553-1461
Fax: (714) 553-1346

1300 NORTH 17TH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209

(703) 522-7500
FAX: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

HENRIQUE MARQUES TRINDADE
Decedent

Signature of Claimant

KATIA DE ALBUQUERQUE ALECRIM TRINDADE – WIFE
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: Oct/24, 97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

TOTAL P.03

0192394315 RENATO GUIMARÃES 639 P01 OCT 24 '97 13:46
TEL: P:02

| NOME | PARENTESCO | DATA NASC. |
|---|---|---|
| ZELIA MENIN (VITIMA) | | 19.12.59 |
| JAIME MENIN | IRMÃO | 14.09.55 |
| DANIEL MENIN | PAI | 10.11.28 |
| ANA MOTTER MENIN | MÃE | 18.02.31 |

Jaime Menin

Julie: did you receive Eliane's letter? I sent it to you this morning!

The attorney-power document for Jaime Menin will be send to L.A a.s.a.p. Please, be allert that some letters may be sent to their old address: Two Park Plaza, suite 1060.

Three more cases may be under way today, all from the same family. Arthur will recall this very sad case of three relatives.

Look forward to hearing from you soon. Very sincerely yours, Renato Guimarães.

(019) 239-2921 – 239-4315 – fax

Retainer Agreement
Page Two

ZELIA MENIN
Decedent

P/P Signature of Claimant
DANIEL MENIN – FATHER
Name of Claimant/Relationship to Decedent

Signature of Claimant
ANA MOTTER MENIN – MOTHER
Name of Claimant/Relationship to Decedent

P/P

SPEISER KRAUSE
A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
[illegible]
Fax: (714) 553-1346

1300 North 17th Street, Suite 310
Rosslyn, Virginia 22209

(703) 522-7500
Fax: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-9797

601 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Retainer Agreement
Page Two

MARILENE GIMENES HADDAD
Decedent

[signature]
Signature of Claimant

WADIH ROBERTO HADDAD NETO / husband
Name of Claimant/Relationship to Decedent

[signature]
Signature of Claimant

LEANDRO GIMENES HADDAD : son
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 10/24/1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________

OCT-27-1997 08:32 00112129577 98% P.04

SPEISER KRAUSE
A PROFESSIONAL CORPORATION

140 East 45th Street, 34th Floor
New York, New York 10017
(212) 661-0011
Fax: (212) 953-6483

One Park Plaza, Suite 470
Irvine, California 92614
(714) [illegible]
Fax: (714) 653-1346

1300 NORTH 17TH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209

(703) 522-7500
FAX: (703) 522-7905

5430 LBJ Freeway, Suite 1575
Dallas, Texas 75240
(972) 404-1401
Fax: (972) 404-8797

201 South Biscayne Boulevard
Miami, Florida 33131
(305) 375-9400
Fax: (305) 375-0337

**RETAINER AGREEMENT**
**TAM BRAZILIAN FOKKER 100**
**October 31, 1996**

1. The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6. It is understood and agreed that if there is no recovery, settlement or the client decides to forego the lawsuit or negotiation, the undersigned client will not be responsible for any fees or expenses whatsoever.

7. It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

Ariovaldo Ricioli
Decedent

Signature of Claimant

Elaine Edlacy Soares Ricioli - wife
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: ________________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________________

Retainer Agreement
Page Two

Regina Lucia Lemos Valério
Decedent

Ines Lemos Luz
Signature of Claimant

Ines Lemos da Luz - Daughter
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: 26/10/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ____________________

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
(703) 522-7500
FAX: (703) 522-7905

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011 FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421 FAX: (714) 553-1346

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401 FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400 FAX: (305) 375-0337

# RETAINER AGREEMENT

## TAM BRAZILIAN FOKKER 100
## Date of Accident: October 31, 1996

1. The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2. It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3. Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4. In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5. It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6. It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

GUSTAVO DE ALMEIDA MAFFEI SERRANO
Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent
José Maria Serrano Belmonte-FATHER-

Signature of Claimant

Name of Claimant/Relationship to Decedent
Rosa Matilde de Almeida Maffei Serrano - MOTHER -

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: October 24, 1997

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

0192394315 RENATO GUIMARAES 707 P03 NOV 07 '97 12:40

Retainer Agreement
Page Two

Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated:______________

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: ______________________

FEB-27-1998 04:50 0192394315 76% P.02

CONFIDENTIAL SK 000158

LAW OFFICES
SPEISER, KRAUSE, MADOLE & COOK
One Park Plaza, Suite 470
Irvine, California 92614
(714) 553-1421
FAX (714) 553-[illegible]
[illegible] T. COOK
JUANITA M. MADOLE
JOHN J. VETH

RETAINER AGREEMENT

THIS AGREEMENT is made this 3rd of June, 1997 by and between Linda Andrews, hereafter called "Client" and John J. Veth, Esq. of the law firm, SPEISER, KRAUSE, & MADOLE, hereafter called "Attorney".

1. MATTER COVERED: Client, in consideration of services rendered and to be rendered by Attorney to Client, retains Attorney to represent her as Attorney at Law in a cause of action against whomever may be liable for the death of her husband, David Andrews, which occurred on October 31, 1996 in Sao Paulo, Brazil.

2. ATTORNEY DUTIES: Client empowers Attorney to take all steps in this matter deemed by Attorney to be advisable; namely, to effect a compromise, to institute appropriate legal proceedings, and to take all other appropriate steps deemed necessary.

3. CLIENT DUTIES: Client agrees to cooperate fully in all phases of litigation and immediately notify Attorney of any changes in address, phone number, or employment. Client acknowledges that Attorney may, at his discretion, associate other counsel to assist in representing client, but compensation of such other counsel will be the sole responsibility of Attorney.

4. ATTORNEY FEE: Client agrees to pay Attorney, for services herein described, a fee of twenty-five percent (25%) of the net amount recovered, as set forth in Paragraph 5, by way of settlement, judgment or otherwise. If there is NO RECOVERY, there is NO FEE charged and NO COSTS, as described in Paragraph 6, shall be payable by Client.

CLIENT

ATTORNEY

SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK [illegible]
[illegible]
FAX [illegible]

SPEISER, KRAUSE, MADOLE & LEAR
[illegible] NORTH SEVENTEENTH STREET, SUITE [illegible]
ROSSLYN, VIRGINIA [illegible]
[illegible]
FAX [illegible]

THREE LINCOLN CENTRE
[illegible] LBJ FREEWAY, SUITE [illegible]
DALLAS, TEXAS [illegible]
[illegible]
FAX [illegible]

LAW OFFICES
SPEISER, KRAUSE, MADOLE & COOK

5. DETERMINATION OF ATTORNEY FEE: The fee shall be taken from the amount recovered after costs have been deducted. The balance, following deduction for costs and attorney's fee, is Client's net recovery. Where the recovery includes future payments to Client, the fee will be based upon future payments and Attorney will accept future fee payments on a pro rata basis. The use of the term "future payments" in the preceding sentence is not intended to include a distribution from an annuity purchased by defendant after the settlement amount has been agreed to by the parties. The gross recovery, from which costs and the attorney's fee will be deducted, includes funds allocated to the purchase of an annuity.

6. COSTS: Attorney shall advance all costs on Client's behalf. Costs include, but are not limited to the following: filing fees, investigation, interpreters, experts, acquisition of records, beeper fees, photography, deposition fees and charges, costs of trial or arbitration, and travel, postage and photocopying. When Attorney travels outside the County of Orange, the chargeable mode of travel shall be coach class for domestic travel and business class for international travel. Attorney shall provide Client on a quarterly basis with a running accounting of Costs allocable to Client's case.

7. APPEAL: Client acknowledges that no Appeal will be taken without the agreement of Attorney and Client. The fee for an Appeal is separate and apart from this Agreement and negotiable between Client and Attorney.

8. SETTLEMENT: Client acknowledges that no settlement shall be made without the consent of both Client and Attorney.

9. NO GUARENTEE AS TO RESULT: Client acknowledges that Attorney has made no guarantee regarding the outcome or amounts recoverable in connection with Client's cause of action, and all expressions relative thereto are matters of opinion only.

10. COMMON EXPENSES: In cases where Attorney represents more than one client for the same accident or occurrence, common litigation expenses will be equally apportioned between all cases in which Attorney was retained.

CLIENT ATTORNEY

11. ERRORS AND OMISSIONS INSURANCE: In accordance with California Business and Professions Code, Section 6147 and 6148, Attorney informs Client that Attorney maintains errors and omissions insurance coverage applicable to the services to be rendered.

The undersigned understands and agrees to the terms and conditions of this Retainer Agreement, and acknowledges receipt of a duplicate copy of this Agreement.

DATE: 6-10-97

Linda Andrews
CLIENT: Linda Andrews
5210 Birkdale Way
San Jose, California 95138
(408) 238-7641
SSN: 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

DATE: 6-3-97

ATTORNEY: John T. Veth
Speiser, Krause, Madole & Cook
One Park Plaza, Suite 470
Irvine, California 92614
(714) 553-1421