**PLAINTIFF'S RESPONSE TO DEFENDANT-MOVANT'S STATEMENT
PURSUANT TO LOCAL CIVIL RULE 56.1**

**Plaintiff's Response to Defendant-Movant's Statements**

**Statement No. 1**: Plaintiff, Renato Guimaraes, Jr., is a Brazilian Attorney. First Amended Complaint at ¶1.

**Response**: Admitted.

**Statement No. 2**: At all times relevant to this litigation, plaintiff was a sole practitioner. Guimaraes 11/2/05 Dep., p. 164, 1. 14 - p. 165 1. 22.

**Response**: Admitted.

**Statement No. 3**: Defendant, Speiser Krause Nolan & Granito ("Speiser Krause") is a professional corporation engaged in the practice of law in the United States of America. First Amended Complaint at ¶2.

**Response**: Admitted.

**Statement No. 4**: Speiser Krause's practice consists primarily of aviation-related tort litigation. First Amended Complaint at ¶2.

**Response**: Admitted.

**Statement No. 5**: On October 31, 1996, a passenger jet operated by Transportes Aereos Regionais, SA airlines crashed killing 99 persons. The aircraft was manufactured by Fokker, BV, a European company, and components of the aircraft were manufactured by Northrop Grumman Corporation, a United States Corporation. First Amended Complaint at ¶¶6-7.

**Response**: Admitted.

**Statement No. 6**: Subsequent to the air crash, plaintiff contacted Speiser Krause on behalf of several families of the victims aboard the flight ("TAM clients") for the purpose of pursuing damage claims in the United States against parties liable. First Amended Complaint at ¶8.

**Response**: Admitted.

**Statement No. 7**: In December 1996, plaintiff met with Arthur Ballen, a Speiser Krause attorney, at his home in Florida. First Amended Complaint at ¶9.

**Response**: Admitted.

**Statement No. 8**: At the meeting in Florida in December 1996, plaintiff and Arthur Ballen discussed the possibility of legal representation of the families of the victims of the TAM air

|  |  |
|---|---|
| | crash. First Amended Complaint at ¶9. |
| Response: | Admitted. |
| Statement No. 9: | Plaintiff left the December 1996 meeting without an agreement with Speiser Krause regarding fee-division between himself and Speiser Krause in connection with the representation of any potential TAM clients. Guimaraes 11/17/05 Dep., p. 13. |
| Response: | Denied. During the December 1996 meeting, Guimaraes and Speiser Krause reached an understanding that they would jointly represent the families of the victims of the TAM air disaster and reached an understanding concerning their respective responsibilities as co-counsel. Guimaraes 11/17/05 Dep. p. 13-19; Guimaraes Dec. ¶ 10. |
| Statement No. 10: | Plaintiff left the December 1996 meeting without an agreement with Speiser Krause regarding relative responsibilities concerning cooperating in representing families of the victims of the TAM air crash. Guimaraes 11/17/05 Dep., p. 15. |
| Response: | Denied. During the December 1996 meeting, Guimaraes and Speiser Krause reached an understanding that they would jointly represent the families of the victims of the TAM air disaster and reached an understanding concerning their respective responsibilities as co-counsel. Guimaraes 11/17/05 Dep. p. 13-19; Guimaraes Dec. ¶ 10. |
| Statement No. 11: | On February 5, 1997, Gerard Lear, a Speiser Krause attorney, faxed a letter to plaintiff. A copy of this letter is attached as Exhibit 1 to plaintiff's Complaint herein, and is a true and accurate copy. First Amended Complaint at ¶10, Exh. 1. |
| Response: | Admitted. |
| Statement No. 12: | The text of Gerard Lear's February 5, 1997 fax refers to "Brazilian Counsel" and ir services." First Amended Complaint at Exh. 1. |
| Response: | Plaintiff admits that Lear's February 5, 1997 contains the words "Brazilian Counsel" and "their services," which Guimaraes understood to mean him. Guimaraes Dec. ¶ 15. |
| Statement No. 13: | The word "their" is a plural possessive pronoun. |
| Response: | Admitted in part and denied in part. While technically this is true, the proper use of "their" is a common grammatical mistake, and a "singular their" is widely used in spoken English, making it reasonable for Guimaraes to construe the term as referencing him. Guimaraes Dec. ¶ 15; *The Guide*, SUNY Geneseo's Online |

|  |  |
|---|---|
|  | Writing Guide; www.geneseo.edu/~writing. In fact, examples of such misuse of the plural possessive pronoun "their" may be found on pages 5, 14, and 25 of the Defendant's memorandum ("Among other things, plaintiff accused Speiser Krause of 'betraying' **their** clients ..."; "Of Course, Speiser Krause remained under retainer by **their** TAM clients ..."; "Indeed, very early on, Speiser Krause experienced difficulties coordinating **their** activities with Guimaraes."). |
| **Statement No. 14**: | Speiser Krause agreed to represent TAM clients in connection with the TAM air crash pursuant to written retainer agreements. Apuzzo Aff., Exh. S. |
| **Response**: | Guimaraes admits that he and Speiser Krause agreed to jointly represent the TAM clients, as co-counsel, and that such was reflected on the retainer agreements. Apuzzo Aff. Ex. S. |
| **Statement No. 15**: | On May 23, 1997, Speiser Krause delivered a document to plaintiff in Brazil. A true and accurate copy of this document is annexed as Exhibit to the Complaint. First Amended Complaint at ¶14, Exh. 2. |
| **Response**: | Admitted. |
| **Statement No. 16**: | Speiser Krause was retained by 65 Brazilian TAM clients to recover money damages on their behalf. First Amended Complaint at ¶16; Apuzzo Aff., Exh. S. |
| **Response**: | Guimaraes denies that only Speiser Krause was retained. A total of 64 clients signed retainer agreements. Guimaraes' name appears as co-counsel with Speiser Krause on 29 agreements, and does not appear on 22. Also, 5 retainer agreements are conspicuously missing the first page, making it impossible to know whether Guimaraes' name originally appeared. Furthermore, 8 retainer agreements have not been produced at all by Speiser Krause. Apuzzo Aff. Ex. S. |
| **Statement No. 17**: | On some of Speiser Krause's retainer agreements, plaintiff's name also appears. Apuzzo Aff. Exh. S; First Amended Complaint ¶16. |
| **Response**: | See Response to Statement No. 17. |
| **Statement No. 18**: | On August 11, 1997, Speiser Krause reduced its contingency fee under its retainers with its TAM clients from 33⅓% to 25%, by transmitting a letter to that effect. A copy of this letter is annexed to the Complaint as Exhibit 3, and is a true and accurate copy. First Amended Complaint at ¶16, 17, Exh. 3. |
| **Response**: | Admitted. |
| **Statement No. 19**: | Speiser Krause initiated lawsuits on behalf of its TAM clients in the State courts of |

|                    |                                                                                                                                                                                                                                                                                                                                                |
|--------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                    | New York and California. First Amended Complaint at ¶19.                                                                                                                                                                                                                                                                                       |
| **Response**:      | Admitted.                                                                                                                                                                                                                                                                                                                                      |
| **Statement No. 20**: | The California actions were consolidated. First Amended Complaint at ¶20.                                                                                                                                                                                                                                                                   |
| **Response**:      | Admitted.                                                                                                                                                                                                                                                                                                                                      |
| **Statement No. 21**: | The consolidated California case was dismissed on *forum non conveniens* grounds, but entry of the order dismissing the case was stayed pending settlement or the outcome of parallel litigation pending in Brazil. First Amended Complaint at ¶20.                                                                                          |
| **Response**:      | Admitted.                                                                                                                                                                                                                                                                                                                                      |
| **Statement No. 22**: | Following the issuance of the order of dismissal and simultaneous state in the consolidated California case, Speiser Krause hired Dr. Ireneu Strenger, a Brazilian attorney, to file an action on behalf of its TAM clients in Brazil. Arthur Ballen Dep. pp. 77-78.                                                                         |
| **Response**:      | Plaintiff admits that, upon his recommendation, Speiser Krause retained attorney Irineu Strenger who, together with Guimaraes, filed a lawsuit against Defendants Northrop and Teleflex in Brazil on June 30, 1998 (the "Jabaquara Action").Guimaraes Dep. 10/7/05, p. 62-66; Berman Aff. Ex. 7 (Doc. No. SK000685-695).                         |
| **Statement No. 23**: | Dr. Strenger and Mr. Guimaraes filed a complaint on behalf of the TAM clients in the 2d Civil Court of Regional Court III in Sao Paolo, Brazil. First Amended Complaint at ¶21.                                                                                                                                                              |
| **Response**:      | Admitted.                                                                                                                                                                                                                                                                                                                                      |
| **Statement No. 24**: | In the early part of the year 2000, Speiser Krause negotiated with and received offers of settlement from the TAM defendants for its Brazilian TAM clients. First Amended Complaint at ¶22.                                                                                                                                                    |
| **Response**:      | Plaintiff admits that in the early part of 2000, while the Jabaquara Action was still pending in Brazil, Speiser Krause negotiated a global settlement with the insurance carriers for the various defendants for the total sum of approximately $37,000,000.00, and that Speiser Krause unilaterally allocated the total amount of the settlement among the settling families, without any discussion with the clients. Guimaraes Dec. ¶ 43. |
| **Statement No. 25**: | These settlement offers were subject to each family signing formal settlement                                                                                                                                                                                                                                                                 |

4

|  |  |
|---|---|
|  | documents and obtaining necessary approvals from the Brazilian courts. First Amended Complaint at ¶22. |
| **Response**: | Admitted. |
| **Statement No. 26**: | On June 30, 2000, the Brazilian court rendered a judgment in the cases filed there. First Amended Complaint at ¶24. (The "Jabaquara judgment"). |
| **Response**: | Admitted. |
| **Statement No. 27**: | The total value of the Jabaquara judgment exceeded $100,000,000. First Amended Complaint at ¶24. |
| **Response**: | Admitted. |
| **Statement No. 28**: | Despite the superior amount of the dollar value of the Jabaquara judgment to the settlement offers Speiser Krause had negotiated, and contrary to plaintiff's advice, many of Speiser Krause's TAM clients elected to accept the negotiated offers of settlement. First Amended Complaint at ¶25. |
| **Response**: | Plaintiff admits that, after initially opposing the settlement offers presented by Speiser Krause, which the families considered too low, many of the clients eventually agreed to accept the offers of settlement. Guimaraes Dec. ¶ 48. |
| **Statement No. 29**: | Plaintiff attempted to nullify the accepted negotiated settlements, by reporting them to the Brazilian Attorney General as illegal. Guimaraes 11/2/05 Dep., p. 103-104. |
| **Response**: | Admitted in part and denied in part. Plaintiff admits that he filed a report with the Brazilian Attorney General, which speaks for itself, but denies that he did not wish for the plaintiffs to achieve any settlement; rather, he wanted closer scrutiny and reconsideration of the proposed settlement which he believed in his professional judgment to be unfair. Guimaraes Dec. ¶ 48. |
| **Statement No. 30**: | Plaintiff accused Speiser Krause of criminality, disloyalty, and betrayal as concerns the TAM clients. Guimaraes 11/17/05 Dep., p. 74-75; Apuzzo Aff. Exhs. J,K. |
| **Response**: | Admitted. |
| **Statement No. 31**: | Plaintiff refused to perform the legal services required in order for the TAM clients to get their settlements approved by the Brazilian court. Guimaraes 11/2/05 Dep., p. 101-103. |
| **Response**: | Denied. The reason court approval of the settlement was required was to evaluate |

|  |  |
|---|---|
|  | its fairness to the plaintiffs. Guimaraes' expression of his good faith, professional judgment that the settlement was unfair was consistent with his duties to his clients. Guimaraes Dec. ¶ 51. |
| **Statement No. 32**: | Plaintiff acted contrary to the objective made known to him by the TAM clients, by refusing to assist him in processing their settlements by having them approved by the Brazilian court. Guimaraes 11/2/05 Dep., p. 103. |
| **Response**: | See Response to Statement No. 31. |
| **Statement No. 33**: | Plaintiff acted contrary to the objectives Speiser Krause made known to him when he refused to finalize the settlements accepted by the TAM clients. Guimaraes 11/2/05 Dep., p. 103-105. |
| **Response**: | Denied. This statement is unclear because it does not identify whose objectives were allegedly made known. Guimaraes believed, based on numerous meetings and communications with the clients, that his actions were in their best interests and consistent with previous expressions of their wishes. Guimaraes Dec. ¶ 51. |
| **Statement No. 34**: | Plaintiff never hired Speiser Krause to act as his attorney. |
| **Response**: | Admitted. |
| **Statement No. 35**: | Speiser Krause never acted as Plaintiff's attorney. |
| **Response**: | Admitted. |

## Additional Material Facts as to Which Plaintiff Contends There Exists a Material Issue of Fact to Be Tried

1. Speiser Krause intended to be bound by the fee sharing agreement.

2. Guimaraes intended to be bound by the fee sharing agreement.

3. There were no open material terms in the fee sharing agreement.

4. The fee sharing agreement was not preliminary.

5. The fee sharing agreement was not an agreement to agree.

6. The fee sharing agreement did not contemplate future negotiations.

7. The fee sharing agreement did not contemplate a further writing between Speiser Krause and

Guimaraes. Guimaraes Dec. ¶ 12.

8. Guimaraes told A. Ballen that unless Speiser Krause was willing to pay him 25% of the contingency fee, he would find other United States counsel to represent the clients.

9. On February 5, 1997, Guimaraes and A. Ballen had a telephone conversation during which they finalized the fee sharing agreement between Guimaraes and Speiser Krause. Guimaraes Dec. ¶ 12.

10. Lear's letter memorialized and constituted the fee sharing agreement between the parties. Guimaraes Dec. ¶ 14.

11. Guimaraes never treated the fee sharing agreement memorialized in Lear's February 5, 1997 letter as preliminary or non-binding. Guimaraes Dec. ¶ 18.

12. Speiser Krause never treated the fee sharing agreement memorialized in Lear's February 5, 1997 letter as preliminary or non-binding. Guimaraes Dec. ¶ 18.

13. Guimaraes never repudiated the fee sharing agreement or gave any indication that the parties were not bound by it. Guimaraes Dec. ¶ 18.

14. Speiser Krause never repudiated the fee sharing agreement or gave any indication that the parties were not bound by it. Guimaraes Dec. ¶ 18.

15. Guimaraes performed services pursuant to the fee sharing agreement with the express knowledge and approval of Speiser Krause. Guimaraes Dec. ¶ 21-36.

16. Speiser Krause revised the first page of the retainer agreement to remove Guimaraes' name as co-counsel without his knowledge or consent. Guimaraes Dec. ¶ 24.

17. Guimaraes relied on Speiser Krause to collect and maintain the executed retainer agreements, and did not discover until years later that my name had been omitted from a number of the client retainer agreements. Guimaraes Dec. ¶ 25.

18. Guimares originated all of the Brazilian clients who executed retainer agreements, and rendered legal services on behalf of all of those clients in accordance with the fee sharing agreement and the client retainer agreements. Guimaraes Dec. ¶ 25.

19. Speiser Krause negotiated a global settlement with the insurance carriers for the various defendants for the total sum of approximately $37,000,000.00 and then unilaterally allocated the total amount of the settlement among the settling families, without any prior discussion or communication with Guimaraes or the clients. Guimaraes Dec. ¶ 43.

20. Speiser Krause informed the families during client meetings held in Brazil in April 2000 that the cases in the United States had been "lost," and that the offers being extended were "take it or leave it" offers. Guimaraes Dec. ¶ 44.

21. Speiser Krause failed to competently advise the clients regarding a fair and accurate assessment of the value of their claims, including intentionally to take into account the value of the claims asserted in the Jabaquara Action. Speiser Krause's Answer to the Amended Complaint, ¶ 25 ("Speiser Krause denies knowledge or information sufficient to form a belief as to the existence, status, enforceability, or validity of the 'Brazilian Judgment.'")

22. Many of the clients were surprised and angered by the settlement offers presented by Speiser Krause because they were far lower than what the families had anticipated. Guimaraes Dec. ¶ 45.

23. The clients were shocked to hear for the first time that the case in the United States had been "lost" and that they had no further opportunity to negotiate the amounts being offered. Guimaraes Dec. ¶ 45.

24. Many of the clients agreed with Guimaraes' opinion that the settlement offers were too low, but decided to accept the settlement offers because they needed the money. Guimaraes Dec. ¶ 46.

25. Guimaraes explained to the clients that he was not opposed to any settlement, but only to one he felt was unfair to them. Guimaraes Dec. ¶ 45.

26. Because he was opposed the settlement offers, Guimaraes refused Speiser Krause's request that he assist in processing the settlements. Guimaraes Dec. ¶ 49.

27. All of Guimaraes' efforts to oppose the settlement offers were made in good faith in attempting to fulfill his duty as an attorney to carry out his understanding of the client's wishes and best interests, and were not motivated by any malice or intent to harm the clients in any way. Guimaraes Dec. ¶ 51.

28. Guimaraes never abandoned the clients. Guimaraes Dec. ¶ 51.

29. Guimaraes was not justifiably terminated "for cause." Guimaraes Dec. ¶ 51.

30. Guimaraes opposition to the settlement agreements and his allegations against Speiser Krause did not damage the clients. Guimaraes Dec. ¶ 53.