UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RENATO GUIMARAES, JR.,

                        Plaintiff,

        -against-                             No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO a
professional corporation f/k/a SPEISER,         **Attorney's Affidavit**
KRAUSE, MADOLE & LEAR, a professional   **in Support of Motion to Amend**
corporation,

                        Defendant.
-------------------------------------------------------------X
State of New York    )
County of New York  )      ss.:

      William J. Apuzzo, being duly sworn, deposes and says:

1.     I am an attorney duly admitted to practice law before the United States District Court for

the Southern District of New York.  I am a partner at Apuzzo & Chase, attorneys for the

defendant Speiser, Krause, Nolan & Granito, PC ("Speiser Krause"), in this matter.  I

submit this affidavit in Support of Speiser Krause's motion pursuant to Federal Rules of

Civil Procedure 8(c) and 15(a) to amend its Answer to include an affirmative defense of

breach of contract and the covenant of good faith and fair dealing.

2.     Annexed hereto as Exhibit "A" is a true and accurate copy Plaintiff's First Amended

Complaint herein.

3.     Annexed hereto as Exhibit "B" are the proposed additional allegations which would be

added to Speiser Krause's Answer in event the Court grants this motion.

4.      Annexed hereto as Exhibit "C" is a true and accurate copy of Speiser Krause's First

Amended Answer herein (its current pleading).

5.      Annexed hereto as Exhibit "D" is a true and accurate copies of excerpts from the

transcript of the deposition of plaintiff Renato Guimaraes, Jr. taken April 25, 2007.

6.      Annexed hereto as Exhibit "E" is a true and accurate copy of plaintiff's first set of

Interrogatories to Speiser Krause.

7.      Annexed hereto as Exhibit "F" is a true and accurate copy of Speiser Krause's responses

to plaintiff's first set of Interrogatories.

8.      The undersigned has conferred with plaintiff's counsel in an attempt to obtain their

consent to the proposed amendment.  These efforts have been unsuccessful.

        WHEREFORE, your deponent respectfully prays that for an order permitting Speiser

Krause to amend its Answer, and for such other, further and different relief as to this Court may

seem just, proper or equitable.

Sworn to before me this 31st
day of May 2007

William J. Apuzzo

(WA 1312)

NICOLE APUZZO FILANNINO
Notary Public, State of New York
No. 02FI5021975
Qualified in Westchester County
Commission Expires 12/27/2009

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

RENATO GUIMARAES, JR., an individual,          CASE NO. 04-22927-CIV-KING

      Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO,
a professional corporation, f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a
professional corporation,

      Defendant.

_____/

### AMENDED COMPLAINT

Plaintiff, RENATO GUIMARAES, JR. ("Guimaraes"), an individual, by and through his

undersigned counsel, sues Defendant, SPEISER, KRAUSE, NOLAN & GRANITO, a

professional corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR ("Speiser Krause"),

and alleges as follows:

### Parties, Jurisdiction and Venue

1.     Plaintiff, Guimaraes, is an individual over the age of eighteen who is a citizen of Brazil.

Guimaraes is an attorney in Brazil.

2.     Defendant, Speiser Krause is a professional corporation which at all material times was

engaged in the practice of law in the State of Florida with an office in Miami, Florida. Speiser

Krause professes to have expertise and extensive experience in the litigation of aircraft crash

disasters, including but not limited to foreign aircraft crash disasters.

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

3.    This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen or subject of a foreign state.

4.    This Court has personal jurisdiction over Defendant, Speiser Krause pursuant to the Florida Long-Arm Statute, §48.193(1)(a), Florida Statutes because at all times material to this action Speiser Krause was operating, conducting, engaging in, or carrying on a business or business venture in this state or had an office or agency in this state. Specifically, Speiser Krause, conducted business in Florida through its licensed attorneys practicing from its Miami, Florida office.

5.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because jurisdiction of this action is founded only on diversity of citizenship and Defendant, Speiser Krause, resides in this judicial district.

### General Allegations

6.    On October 31, 1996, an aircraft operated by Transportes Aereos Regionais, S.A. Airlines ("TAM") departing from Sao Paulo, Brazil, and bound for Rio de Janeiro, Brazil, crashed approximately 24 seconds after take off, killing 99 people. This event is hereinafter referred to as the "TAM air disaster."

7.    The aircraft was manufactured by Fokker, B.V. ("Fokker"), and included as a component part a thrust reverser manufactured by Northrop Grumman Corporation ("Northrop") in the State of Florida. Investigating authorities determined that the crash resulted from the improper opening of the thrust reversor on take off, which in turn reduced the amount of thrust to a level

2

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

below that needed for a successful take off. TAM, Fokker, and Northrop are collectively

referred to herein as "the underlying defendants."

8.      Guimaraes, who is a distinguished attorney in Brazil, contacted Speiser Krause on behalf

of several families of victims who died in the TAM air disaster, for the purpose of associating

with Speiser Krause in pursuing litigation in the United States against TAM, Northrop, Fokker,

and any other parties that could be legally liable for the TAM air disaster.

9.      During December 1996, Guimaraes and his son attended a two-day meeting in Key

Largo, Florida, at the home of Arthur E. Ballen, Esq., a member of Speiser Krause. During said

meeting, Guimaraes and Mr. Ballen (on behalf of Speiser Krause) discussed in detail the

possibility of a fee-sharing arrangement between Guimaraes and Speiser Krause in connection

with the legal representation of the families of victims of the TAM air disaster. During this

extensive meeting, Guimaraes and Speiser Krause reached an understanding with regard to the

parties' respective responsibilities in representing the families under the fee-sharing

arrangement. Furthermore, the parties discussed the fees to be charged by Speiser Krause and

Guimaraes in connection with said representation.

10.      Pursuant to the foregoing understanding, Guimaraes returned to Brazil and immediately

commenced work on the case in Sao Paolo, Brazil and began signing up clients in accordance

with the fee-sharing agreement discussed by the parties.

11.      On February 5, 1997, Gerard R. Lear, Esq., another member of Speiser Krause, faxed a

letter to Guimaraes in Brazil ratifying the agreement reached between Guimaraes and Speiser

Krause during the Key Largo, Florida meeting and confirming that Speiser Krause and

3

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

Guimaraes would be entitled to a contingent fee of 33 1/3% for the handling of each such case, with any such fee to be divided 75% to Speiser Krause and 25% to Guimaraes. A copy of Speiser Krause's February 5, 1997 letter is attached hereto and incorporated herein by reference as Exhibit "1."

12.    Pursuant to the parties' agreement, Guimaraes' responsibilities were to include acting as a liaison with the families of the victims in Brazil, translating legal documents, explaining legal strategies to the families and their direct, individual and referral attorneys in Brazil, assisting in gathering any facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian press on legal matters relating to the crash, and handling any collateral legal proceedings in Brazil required to support the United States litigation that Speiser Krause would prosecute.

13.    The parties agreed that Speiser Krause would handle the primary litigation against Northrop and other responsible parties in an action to be filed by Speiser Krause in Orange County, California, and that Guimaraes would handle any ancillary litigation to be filed in Brazil to support the main case in the United States.

14.    On May 23, 1997, Guimaraes and Speiser Krause augmented their contract with a further written agreement stating that attorneys referring additional families of TAM air disaster victims to Speiser Krause would be compensated by payment of 10% of the net attorney fees. Guimaraes and Speiser Krause agreed that although said 10% referral fee was to be calculated on the overall attorney fee, it was to come out of Speiser Krause's share of the fees. A copy of Speiser Krause's May 23, 1997, letter confirming this additional agreement is attached hereto

4

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

and incorporated herein by reference as Exhibit "2."

15.    Pursuant to foregoing agreement, beginning in March, 1997, and continuing throughout 1997, Guimaraes and Speiser Krause obtained Retainer Agreements from a total of sixty-five (65) families of the victims of the TAM air disaster, said families to be represented jointly by Guimaraes and Speiser Krause in accordance with the fee-sharing agreement.

.16.    These Retainer Agreements originally listed Speiser Krause and Guimaraes as co-counsel for the litigation at the agreed rate of 33 1/3%. However, at Speiser Krause's insistence, and in order to meet competition from other attorneys seeking to represent families of the victims of the crash, Guimaraes and Speiser Krause subsequently agreed to represent the clients at a reduced fee of 25%.

17.    Thus, on August 11, 1997, Speiser Krause prepared a letter notifying all clients that the overall attorney's fee would be reduced from 33-1/3% to 25%. A copy of the Speiser Krause letter notifying all clients of this reduction is attached hereto and incorporated herein by reference as Exhibit "3."

18.    Despite this reduction in the overall attorney's fee, Guimaraes and Speiser Krause did not effect any change in the allocation of the fee between themselves. Therefore, Guimaraes was at all times entitled to receive 25% of any attorney's fee received by Speiser Krause in connection with the representation of families of the victims of the TAM air disaster.

19.    Speiser Krause eventually initiated litigation against Northrop and others in the Orange County Superior Court for all the families who had signed Retainer Agreements, except for one family, Berliner, which sued only in New York.

5

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

20.    Sixty-three cases were consolidated with the lead case, Andrews, et al. v. Northrop
Grumman Corp., Case No. 783990. However, the Court in the Orange County case stayed all of
those cases except the Andrews case itself on grounds of *forum non conveniens*, and ordered the
plaintiffs to file their actions in Brazil. The Court ruled that the cases would only proceed in
California if the Brazilian court declined jurisdiction or if Northrop did not litigate as a good
faith defender according to the Brazilian law and judicial decisions.

21.    Following the stay of the Orange County action, and with Guimaraes as lead counsel, the
families who had signed Retainer Agreements with Guimaraes and Speiser Krause filed suit
against Northrop and others in the 2nd Civil Court of Regional Court III in Sao Paulo as Case
No. 1,509/98. The Brazilian court accepted jurisdiction and that case was litigated in that
jurisdiction by Guimaraes, with no involvement by Speiser Krause.

22.    In or about January 2000, only a few months before judgment was rendered by the
Brazilian court, Speiser Krause reached a global settlement (the "Global Settlement") with the
underlying defendants for all cases except Andrews and Berliner in the total amount of
$40,402,778, subject to each family signing formal settlement documentation and obtaining the
necessary approvals from the Brazilian courts. Speiser Krause allocated the total amount of the
settlement among the settling families.

23.    In addition, the Andrews case settled separately in 2001 for $6,500,000, and the Berliner
case settled separately with Fokker, B.V. only for approximately $3,000,000.

24.    On June 30, 2000, the Brazilian court rendered a judgment in the case filed there (the
"Brazilian Judgment"). At then current exchange rates, the Brazilian court awarded each family

6

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

$1,111,111.11, plus 2/3 of the last annual salary earned by each decedent from the date of the

accident until that decedent would have been 65, plus a 20% contempt of court penalty against

Northrop for failing to post a bond that the Court had required, plus another 20% for attorneys

fees. The total value of the Brazilian Judgment at then current exchange rates was over

$100,000,000.

.25.    Despite the issuance of the Brazilian Judgment, and contrary to the advice of Guimaraes,

many of the families jointly represented by Guimaraes and Speiser Krause elected to accept the

Global Settlement and have been paid the share of the settlement that Speiser Krause allocated.

26.    All conditions precedent to the institution of this action have been performed, excused, or

waived.

27.    Guimaraes has retained the undersigned law firm and is obligated to pay said firm a

reasonable fee for its services.

### COUNT I
### Breach of Contract

28.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as

if fully set forth herein.

29.    Guimaraes performed all obligations on his part to be performed in connection with the

fee-sharing agreement with Speiser Krause.  Specifically, Guimaraes provided liaison services as

necessary during the process of procuring Retainer Agreements from the families and

prosecution of the case in the United States, and Guimaraes prosecuted the case in Brazil when

Speiser Krause lost the *forum non conveniens* motion in California.  Guimaraes was instrumental

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

in the result obtained, as the prosecution of the case in Brazil, in which he acted as lead counsel,
enabled Speiser Krause to reach the Global Settlement. Accordingly, Guimaraes has earned his
25% share of the overall 25% attorney fee paid to Speiser Krause as to all families who have
accepted the Global Settlement.

30.      Guimaraes has repeatedly demanded payment from Speiser Krause of his share of the
attorney's fee for the cases that have settled.

31.      Speiser Krause has breached its obligation under the fee-sharing agreement by failing and
refusing to pay Guimaraes his share of the attorneys fee.

32.      In further breach of the agreement, and as a means of justifying or supporting its
non-payment to Guimaraes, Speiser Krause unilaterally revised the first page of the Retainer
Agreement of several clients who executed the 25% fee Retainer Agreements by deleting any
reference to Guimaraes as co-counsel. Thus, some Retainer Agreements reflect Guimaraes and
Speiser Krause as co-counsel with a 33-1/3% fee, while others reflect only Speiser Krause as
counsel at a 25% fee. At least one Retainer Agreement reflects Guimaraes and Speiser Krause as
co-counsel with the fee changed by hand from 33-1/3% to 25%.

33.      Guimaraes has been damaged as a direct and proximate result of Speiser Krause's breach
of the agreement. The damages suffered by Guimaraes representing his 25% share of the
attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924,
representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement,
plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner
settlement.

8

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser

Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and

court costs, together with such other and further relief as to the Court may seem just and proper.

### COUNT II
#### Quantum Meruit

34.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 10 and 15

through 27 above as if fully set forth herein.

35.    In or about December 1996, Speiser Krause requested that Guimaraes assist it in

representing the families of victims of the TAM air disaster by acting as a liaison with the

families of the victims in Brazil, translating legal documents, explaining legal strategies to the

families and their direct, individual and referral attorneys in Brazil, assisting in gathering any

facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian press on

legal matters relating to the crash, and handling any collateral legal proceedings in Brazil

required to support the United States litigation that Speiser Krause would prosecute.

36.    Guimaraes has performed legal services on behalf of the families of the victims of the

TAM air disaster as requested by Speiser Krause and the clients.

37.    Speiser Krause and the clients jointly represented by Guimaraes and Speiser Krause

substantially and materially benefitted from the services which Guimaraes performed on their

behalf and at their request.

38.    Guimaraes' services as described herein were constantly rendered over an extended

period of time.

9

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

39.    Speiser Krause impliedly promised to pay Guimaraes the reasonable value of the services
rendered by Guimaraes in connection with the representation of the clients.

40.    Guimaraes has been damaged as a direct and proximate result of Speiser Krause's
actions. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are
in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing
.6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of
the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

41.    Speiser Krause will be unjustly enriched at Guimaraes' expense if Speiser Krause is not
required to pay Guimaraes the reasonable value of the services described herein.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser
Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and
court costs, together with such other and further relief as to the Court may seem just and proper.

## COUNT III
### Unjust Enrichment

42.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as
if fully set forth herein.

43.    Guimaraes conferred a benefit upon Speiser Krause by performing the legal services on
behalf of the families of the victims of the TAM air disaster as described herein.

44.    Speiser Krause appreciated the benefit conferred upon it by Guimaraes.

45.    Speiser Krause's acceptance of the services performed by Guimaraes without
compensating Guimaraes would be inequitable under the circumstances.

10

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

46. Guimaraes has been damaged as a direct and proximate result of Speiser Krause's
actions. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are
in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing
6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of
the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

47. Speiser Krause will be unjustly enriched at Guimaraes' expense if Speiser Krause is not
required to pay Guimaraes the reasonable value of the services described herein.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser
Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and
court costs, together with such other and further relief as to the Court may seem just and proper.

## COUNT IV
### Constructive Trust Based on Breach of Fiduciary Duties

48. Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as
if fully set forth herein.

49. In accepting the proceeds of the settlements into its trust account or into an escrow
account under its control, Speiser Krause undertook fiduciary duties in the handling of those
funds to all who were entitled to a share of those funds. Speiser Krause's fiduciary duties
included the duty to properly disburse those funds or instruct the escrow agent to disburse those
funds to the clients and to co-counsel in accordance with the contractual arrangements in place
pursuant to the original Retainer Agreements and the February 5, 1997, and May 23, 1997 letters
described above.

11

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

50.    Speiser Krause breached its fiduciary duty to disburse the funds in accordance with those

arrangements by failing and refusing to pay Guimaraes his share of the attorney fee for each

family's settlement, and instead keeping Guimaraes' share of the attorneys fee for itself.

51.    As a direct and proximate result of Speiser Krause's breach of its fiduciary duties as

described above, Speiser Krause holds Guimaraes' share of the fee for each settlement as a

constructive trustee, and is obligated to pay over those fees to Guimaraes. Guimaraes is entitled

to 25% of any fees collected by Speiser Krause on those settlements.

52.    The acts of Speiser Krause as described herein were done with malice, oppression, fraud

and ill will toward Guimaraes, with the intent to vex, injure and annoy Guimaraes, and with a

conscious disregard of Guimaraes's rights.

53.    Guimaraes has been damaged as a direct and proximate result of Speiser Krause's breach

of its fiduciary duties. The damages suffered by Guimaraes representing his 25% share of the

attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924,

representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement,

plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner

settlement.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser

Krause for compensatory damages in excess of $75,000, punitive damages, pre and post

judgment interest, and court costs, together with such other and further relief as to the Court may

seem just and proper.

12

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

COUNT V
Conversion

54.     Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as
if fully set forth herein.

55.     Pursuant to the contractual arrangements and the settlements described above, Speiser
Krause acted on behalf of Guimaraes in collecting Guimaraes' portion of the attorney fee due as
a result of the settlement funds paid by or on behalf of the underlying defendants.  Speiser
Krause's responsibilities included collecting the overall attorney fee out of the specific
settlement funds received and remitting Guimaraes' share of those specific funds to Guimaraes.

56.     Within the last four years, Speiser Krause collected attorney fees on all settlements
funded by or on behalf of the underlying defendants.

57.     Guimaraes has demanded payment of his 25% share of the attorney fee that Speiser
Krause has received on settlement funds collected for the TAM air disaster victims, but Speiser
Krause has failed and refused, and continues to fail and refuse, to pay Guimaraes his share of the
attorney fee derived from these settlement funds.

58.     Speiser Krause has intentionally concealed from Guimaraes the identities of the specific
families for whom Speiser Krause has collected settlement funds, the exact amounts collected,
and the dates on which those funds were collected and on which the fees paid on those collected
settlement amounts were disbursed, all with the intent of depriving Guimaraes of his fee and the
information on which to base collection of his fee.  Speiser Krause has repeatedly denied
Guimaraes' requests for information concerning the settlements.  To prevent Guimaraes from

13

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

learning that information, Speiser Krause has circumvented plaintiff by retaining separate counsel in Brazil to secure the necessary court approvals of the settlements. That attorney has gone as far as issuing a death threat to plaintiff to bar plaintiff from obtaining information concerning the specifics of which settlements funded and when.

59.     Speiser Krause has converted the funds belonging to Guimaraes for its own use and benefit.

60.     Guimaraes has been damaged as a direct and proximate result of Speiser Krause's conversion of Guimaraes' funds. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

61.     The acts of Speiser Krause as described herein were done with malice, oppression, fraud and ill will toward Guimaraes, with the intent to vex, injure and annoy Guimaraes, and with a conscious disregard of Guimaraes's rights.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, punitive damages, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

14

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

## COUNT VI
### Accounting

62.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

63.    At all times mentioned herein, by reason of its undertaking pursuant to the fee-sharing agreement and promises described above to collect the settlement funds and to receive the overall attorney fees and disburse plaintiff's share to Guimaraes, Speiser Krause was and is obligated as a fiduciary and otherwise to provide accountings to Guimaraes of the settlements that have been funded, the costs deducted before calculation of the fees, the amount of the fees, and the amount of Guimaraes' share of the fees, and to pay that share of the fees to Guimaraes.

64.    Within the last four years, settlements negotiated by Speiser Krause for families of the victims of the TAM air disaster have been approved and funded, and defendant has calculated and disbursed the costs and attorney fees that have come due as a result of those settlements. The calculation of the amount due is so complicated as to make an ordinary legal action demanding a fixed sum impracticable, in that the total settlement amount of $40,402,778 must be allocated to individual families or claimants, only those families or claimants who have obtained court approval in Brazil may receive settlement funds, litigation costs must be deducted from each recipient's share, the attorney fee must be calculated on that share, and then plaintiff's 25% of the attorney fee must be calculated. Guimaraes does not have access to much of the information necessary to perform these calculations, which is in the sole possession of Speiser Krause.

15

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

65. Because of the complicated calculation necessary to determine the amount owed to Guimaraes, Speiser Krause's sole possession of the information needed for that determination, and Speiser Krause's undertaking of the fiduciary obligation to disburse the funds to those entitled, including the attorneys, Guimaraes does not know the exact amount of money due to him from Speiser Krause, and that sum cannot be ascertained without an accounting by Speiser Krause of the settlements that have funded and the costs and attorney fees thereon. Guimaraes is informed and believes that the amount owed exceeds the jurisdictional limit of this Court and could be as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

66. Guimaraes has demanded that Speiser Krause account to Guimaraes for the settlements funded and for Guimaraes' share of attorney fees on those settlements. Speiser Krause has refused, and continues to refuse, to render the accounting and to pay Guimaraes his share of the attorney fees.

WHEREFORE, Plaintiff, Guimaraes demands judgment for an accounting of the attorney fees owed to him by Speiser Krause on the settlements by families of victims of the TAM air disaster which have funded, and for payment over to Guimaraes of the amount determined to be owed by that accounting, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

16

Renato Guimaraes v. Speiser Krause
Case No.: 04-22927-CIV-KING

## DEMAND FOR JURY TRIAL

Guimaraes demands a trial by jury on all issues triable by a jury. Dated this ____ day of

December, 2004.

BERMAN, KEAN & RIGUERA, P.A.
2101 W. Commercial Blvd.
Suite 4100
Fort Lauderdale, FL 33309
Telephone: (954) 735-0000
Facsimile (954) 735-3636

By: _____
Richard E. Berman
Florida Bar No.: 254908
Jose R. Riguera
Florida Bar No.: 860905

\\server-01\webdata\Guimaraes, Renato\1147-001\Style\3605.wpd

17

JAN-31-2002 14:50  FROM:                3052696737        TO:18564354562        P.8

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & KOLKIN
140 EAST 45TH STREET 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011  FAX (212) 983-0483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA SUITE 1050
IRVINE, CALIFORNIA 92714
(714) 883-1421  FAX (714) 883-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

703 522-7500
FAX 703 522-7900

February 5, 1997

SPEISER, KRAUSE & MADOLE
5420 LBJ FREEWAY SUITE
DALLAS TEXAS 75240-5438
(972) 404-1401  FAX (972) 404-8287

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 376-4400  FAX (305) 670-0327

<u>VIA FACSIMILE 011 55 19 239 4495</u> .

Renato Guimarães, Esq.
Campinas, Brazil

RE:    TAM Fokker 100 accident in Sao Paulo, Brazil on October 31, 1996

Dear Mr. Guimarães:

I would like to confirm the proposed arrangement between our firm and the families of the victims of the TAM Fokker disaster of October 31, 1996. Our firm will charge the sum of 33 1/3% for the handling of each such case. Of this fee, a total of 25% will be paid to Brazilian counsel for their services.

We look forward to once again working actively with your office.

Sincerely,

SPEISER, KRAUSE, MADOLE & LEAR

GERARD R. LEAR

/js


EXHIBIT
1

JAN-31-2022 14:50  FROM:                    3052696737        TO:18564354662        P.9

LAW OFFICES

## SPEISER, KRAUSE, MADOLE & NOLAN

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEW
1000 NORTH SEVENTEENTH STREET
SUITE 350
ROSSLYN, VIRGINIA 22209
(703) 522-7300
FAX: (703) 522-7309

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
2029 PARK PLAZA, SUITE 1000
IRVINE, CALIFORNIA 92714
(714) 251-1411
FAX: (714) 251-1549

TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET
34TH FLOOR
NEW YORK, NEW YORK 10017

(212) 661-0011
FAX: (212) 972-9432

TEXAS OFFICE
SPEISER, KRAUSE, MADOLE & VIDO P.C.
360 CONVENT STREET, SUITE 302
SAN ANTONIO, TEXAS 78205
(210) 226-9300
FAX: (210) 226-9313

May 23, 1997

6.ª Oficial de Registro de Títulos e Documentos e Civil de Pessoa Jurídica

 Cópia arquivada em Microfilme sob N.º 906285

Dr. Renato Guimaraes, Jr.
Campinas,
Sao Paulo, Brazil

RE:    T.A.M. Accident - Case against Northrop Grumman

Dear Dr. Guimaraes:

This is to confirm our agreement that all participating attorneys who refer cases to us shall receive 10% of the net attorney fee.

You are authorized to tell the referring attorneys of this arrangement and our firm stands behind this commitment.

Most cordially yours,

ARTHUR E. BALLEN

AEB/rp

VIA FAX (To Maksoud Hotel - 011-55-11-253-4544)


EXHIBIT
2

**NEW YORK OFFICE**
SPEISER, KRAUSE, MADDLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(312) 681-0011  FAX: (212) 683-8483

**CALIFORNIA OFFICE**
SPEISER, KRAUSE, MADDLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8530
(714) 653-1421  FAX: (714) 553-1348

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7800
FAX: (703) 522-7906

**TEXAS OFFICE**
SPEISER, KRAUSE & MADDLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2825
(972) 404-1401  FAX: (972) 404-9797

**FLORIDA OFFICE**
SPEISER, KRAUSE & MADDLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-8100  FAX: (305) 375-0337

August 11, 1997

TO:   All Clients - T.A M. Accident of 10/31/96

The following is hereby implemented as a change to our retainer agreement:

1.   The contingent legal fee has been lowered from **THIRTY-THREE AND ONE-THIRD PERCENT TO TWENTY-FIVE PERCENT.**

2.   There are no costs whatsoever to client if the case is not successful.

3.   The costs are limited to TWO PERCENT (2%) in the event the case is settled at the claims stage and there is a THREE PERCENT (3%) cap (maximum) if a trial has began.

4.   The deduction for costs comes off the gross settlement before attorney fees are paid.



EXHIBIT
3

**EXHIBIT "B"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
RENATO GUIMARAES, JR.,                                           Case No. 05-CV-2210(DC)

                              Plaintiff,

                                                                **DEFENDANT'S PROPOSED**
              -against-                                          **AFFIRMATIVE DEFENSE**

SPEISER, KRAUSE, NOLAN & GRANITO,
a professional corporation, f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,
                              Defendant.
-------------------------------------------------------------X

### Thirtieth Defense

30.    Speiser Krause repeats and realleges each and every allegation set forth in Answer

       Paragraphs 1-66 (inclusive) and Affirmative Defense Paragraphs 1-29 (inclusive) as if set

       forth at length hereat.


31.    Upon information and belief, Guimaraes alleges that in 1997 he entered into a contract

       with Speiser Krause whereby Speiser Krause promised to pay Guimaraes twenty five

       (25%) percent of any legal fees Speiser Krause earned by virtue of the TAM litigation.


32.    Upon information and belief, Guimaraes alleges that from 1997 a quasi-contract existed

       between himself and Speiser Krause whereby Speiser Krause is obligated to pay

       Guimaraes a share of the legal fees Speiser Krause earned in the TAM litigation.


33.    Upon information and belief, Guimaraes alleges that in consideration of the foregoing

contractual and/or quasi-contractual promises by Speiser Krause to pay Guimaraes a

portion of the TAM-related legal fees, Guimaraes was to perform services and otherwise

assist Speiser Krause in the TAM litigation.

34.    From 1997 Speiser Krause litigated against various TAM air crash defendants on behalf

of its TAM clients.

35.    Speiser Krause reasonably expected to be paid for its representation of each TAM client.

36.    In 2000, Speiser Krause negotiated settlement offers from the TAM litigation defendants

for each of its clients.

37.    In or about 2000, and continuing to date, Guimaraes advised the TAM clients not to

accept the settlement offers Speiser Krause had negotiated.

38.    Guimaraes contacted Speiser Krause's TAM clients in an attempt to thwart their

acceptance of the settlements negotiated by Speiser Krause.

39.    Guimaraes' conduct and/or inaction as aforestated impaired Speiser Krause's ability to

conclude the TAM litigation on behalf of a number of TAM clients, and impaired Speiser

Krause's ability to collect or earn fees related thereto.

40.    Guimaraes' conduct and/or inaction destroyed and/or impaired Speiser Krause's right to

collect fees from certain TAM clients.

41.    Guimaraes' conduct and/or inaction frustrated Speiser Krause's ability to be compensated
       for its representation of certain of its TAM clients.

42.    Should a contract be found to have existed between the parties, which existence Speiser
       Krause denies, Guimaraes by his conduct, actions and/or inactions failed to perform
       under the terms of the alleged contract.

43.    Guimaraes' failure to perform as aforestated resulted in a failure of his consideration for
       the alleged contract.

44.    Should a contract be found to have existed between Guimaraes and Speiser Krause,
       which existence Speiser Krause denies, Guimaraes' conduct, action and/or inaction as
       aforestated constitutes a breach of that contract.

45.    Should a contract be found to have existed between Guimaraes and Speiser Krause,
       which existence Speiser Krause denies, Guimaraes' conduct, action and/or inaction as
       aforestated constitutes a breach of the implied terms thereof, including without limitation
       the implied covenant of good faith and fair dealing.

46.    Upon information and belief, Guimaraes' own breach of the agreement he alleges to have
       existed between the parties relieved Speiser Krause from any further performance,

including, but not limited to the alleged obligation to pay plaintiff any part of the fees earned by Speiser Krause.

# EXHIBIT "C"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

RENATO GUIMARAES, JR.,                                    Case No. 05-CV-2210(DC)

                          Plaintiff,

          -against-                                       **AMENDED ANSWER**

SPEISER, KRAUSE, NOLAN & GRANITO,
a professional corporation, f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,

                          Defendant.

-----------------------------------------------------------X

   Defendant, Speiser Krause, A Professional Corporation, sued herein as Speiser, Krause,

Nolan & Granito a professional corporation f/k/a Speiser, Krause, Madole & Lear a professional

corporation ("Speiser Krause"), hereby responds to the Compliant of Renato Guimaraes, Jr.

("Guimaraes") as follows:


**I.  ANSWER**

1.  Speiser Krause admits that Guimaraes is an individual but denies knowledge or

   information sufficient to form a belief that Guimaraes is a citizen of Brazil, and denies

   knowledge or information sufficient to form a belief that Guimaraes is an attorney in

   Brazil.


2.  Speiser Krause admits that it is a professional corporation. Speiser Krause denies that at

   all material times it was engaged in the practice of law in the State of Florida. Speiser

   Krause denies that it maintained an office in the State of Florida during all material times.

   Speiser Krause admits that it professes to have expertise in the litigation of aircraft crash

disasters. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 2.

3.    Speiser Krause admits that the Complaint seeks damages in excess of $75,000, and that a controversy between a citizen of a Sate and a citizen or subject of a foreign state is alleged. Speiser Krause admits that the Court has subject matter jurisdiction over the case or controversy being alleged, should a case or controversy be found to exist. Except as expressly admitted, Speiser Krause denies the allegations contained in Complaint paragraph 3.

4.    Speiser Krause denies the allegations contained in Complaint paragraph 4.

5.    Speiser Krause denies the allegations contained in Complaint paragraph 5.

6.    Speiser Krause admits that an aircraft crash occurred on or about October 31, 1996 in Brazil. Except as expressly admitted, Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 6.

7.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Complaint paragraph 7, except for information from investigative authorities that this Court, in its discretion, may receive as evidence at trial by judicial notice and other means.

8.    Speiser Krause admits the Guimaraes contacted one of its attorneys.  Except as expressly
      admitted, Speiser Krause denies the allegations contained in Complaint paragraph 8.

9.    Speiser Krause admits that Arthur Ballen met Guimaraes in Florida in or about December
      1996.  Except as expressly admitted, Speiser Krause denies the allegations contained in
      Complaint paragraph 9.

10.   Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
      of the allegations contained in Complaint paragraph 10 as to the work performed by
      Guimaraes.  Except as expressly admitted, Speiser Krause denies the allegations
      contained in Complaint paragraph 10.

11.   Speiser Krause admits that annexed to the Complaint as Exhibit 1is a letter which was
      faxed to Guimaraes.  Except as expressly admitted, Speiser Krause denies the balance of
      the allegations set forth in Complaint paragraph 11.

12.   Speiser Krause denies the allegations contained in Complaint paragraph 12.

13.   Speiser Krause denies the allegations contained in Complaint paragraph 13.

14.   Speiser Krause admits that annexed to the Complaint as Exhibit 2 is a letter which
      Speiser Krause generated.  Except as expressly admitted, Speiser Krause denies the
      balance of the allegations contained in Complaint paragraph 14.

15.     Speiser Krause denies the allegations contained in Complaint paragraph 15.

16.     Speiser Krause denies the allegations contained in Complaint paragraph 16.

17.     Speiser Krause admits that annexed to the Complaint as Exhibit 3 is a letter which
        Speiser Krause prepared.  Except as expressly admitted, Speiser Krause denies the
        balance of the allegations contained in Complaint paragraph 17.

18.     Speiser Krause denies the allegations contained in Complaint paragraph 18.

19.     Speiser Krause admits it instituted litigation against Northrop.  Except as expressly
        admitted, Speiser Krause denies the allegations contained in Complaint paragraph 19.

20.     Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
        of the allegations contained in Complaint paragraph 20, except that this Court may take
        judicial notice of the process and orders of other courts and refers interpretation of those
        orders as matters of law for the trial Court to determine.  Except as expressly admitted,
        Speiser Krause denies the balance of the allegations contained in Complaint paragraph
        20.

21.     Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
        of the allegations contained in Complaint paragraph 21.

22.    Speiser Krause admits settling some causes of action against Northrup and others, but
       denies knowledge or information sufficient to form a belief as to the truth of the balance
       of the allegations contained in Complaint paragraph 22. Speiser Krause neither admits
       nor denies any allegation which would violate attorney-client privilege regarding the
       amount any client received or the documents signed by any client in any legal proceeding.

23.    Speiser Krause neither admits nor denies that the Andrews case settled in 2001 for any
       sum, absent waiver by the client of the attorney-client privilege.  Speiser Krause denies
       knowledge or information sufficient to form a belief as to the truth of the allegations
       concerning the Berliner case.  Except as expressly admitted, Speiser Krause denies the
       balance of the allegations contained in Complaint paragraph 23.

24.    Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
       of the allegations contained in Complaint paragraph 24.

25.    Speiser Krause denies knowledge or information sufficient to form a belief as to the
       existence, status, enforceability, or validity of the "Brazilian Judgment." Speiser Krause
       denies knowledge or information sufficient to form a belief as to any advice rendered by
       Guimaraes to any third party.  Speiser Krause denies the balance of the allegations
       contained in Complaint paragraph 25, except neither admits nor denies the allegations
       concerning payments to clients if the same violate or could violate the attorney-client
       privilege.

26.   Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
      of the allegations contained in Complaint paragraph 26.

27.   Speiser Krause denies knowledge or information sufficient to form a belief as to the truth
      of the allegations contained in Complaint paragraph 27.

28.   Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs
      1 through 27, inclusive as if set forth in full hereat.

29.   Speiser Krause denies the existence of a fee-sharing agreement, and Guimaraes's
      performance thereof.  Speiser Krause denies Guimaraes provided "liaison services as
      necessary."  Speiser Krause denies knowledge or information sufficient to form a belief
      as to the truth of the allegation concerning Guimaraes's prosecution of any case in Brazil.
      Speiser Krause denies Guimaraes's allegation of instrumentality.  Speiser Krause denies
      knowledge or information sufficient to form a belief as to Guimaraes's alleged "lead
      counsel" capacity in the Brazilian action.  Speiser Krause denies the Guimaraes's actions
      as set forth in Complaint paragraph 29 "enabled Speiser Krause to reach the Global
      Settlement."  Speiser Krause denies that Guimaraes has "earned his 25% share of the
      overall 25% attorney fee paid to Speiser Krause as to all families who have accepted the
      Global Settlement."  Speiser Krause denies the balance of the allegations set forth in
      Complaint paragraph 29.

30.   Speiser Krause denies the allegations contained in Complaint paragraph 30.

31.    Speiser Krause denies the allegations contained in Complaint paragraph 31.

32.    Speiser Krause denies the allegations contained in Complaint paragraph 32.

33.    Speiser Krause denies the allegations contained in Complaint paragraph 33.

34.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs
       1 through 33, inclusive as if set forth in full hereat.

35.    Speiser Krause denies the allegations contained in Complaint paragraph 35.

36.    Speiser Krause denies the allegations contained in Complaint paragraph 36.

37.    Speiser Krause denies the allegations contained in Complaint paragraph 37.

38.    Speiser Krause denies the allegations contained in Complaint paragraph 38.

39.    Speiser Krause denies the allegations contained in Complaint paragraph 39.

40.    Speiser Krause denies the allegations contained in Complaint paragraph 40.

41.    Speiser Krause denies the allegations contained in Complaint paragraph 41.

42.     Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 41, inclusive as if set forth in full hereat.

43.     Speiser Krause denies the allegations contained in Complaint paragraph 41.

44.     Speiser Krause denies the allegations contained in Complaint paragraph 43.

45.     Speiser Krause denies the allegations contained in Complaint paragraph 44.

46.     Speiser Krause denies the allegations contained in Complaint paragraph 46.

47.     Speiser Krause denies the allegations contained in Complaint paragraph 47.

48.     Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs 1 through 47, inclusive as if set forth in full hereat.

49.     Speiser Krause denies the allegations contained in Complaint paragraph 49, except it acted as fiduciary for all sums belonging and paid to its clients.

50.     Speiser Krause denies the allegations contained in Complaint paragraph 50.

51.     Speiser Krause denies the allegations contained in Complaint paragraph 51.

52.    Speiser Krause denies the allegations contained in Complaint paragraph 52.

53.    Speiser Krause denies the allegations contained in Complaint paragraph 53.

54.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs
       1 through 27, inclusive as if set forth in full hereat.

55.    Speiser Krause denies the allegations contained in Complaint paragraph 55.

56.    Speiser Krause denies the allegations contained in Complaint paragraph 56 except admits
       it earned attorneys' fees for legal services performed for clients.

57.    Speiser Krause denies the allegations contained in Complaint paragraph 57.

58.    Speiser Krause denies the allegations contained in Complaint paragraph 58.

59.    Speiser Krause denies the allegations contained in Complaint paragraph 59.

60.    Speiser Krause denies the allegations contained in Complaint paragraph 60.

61.    Speiser Krause denies the allegations contained in Complaint paragraph 61.

62.    Speiser Krause repeats and re-alleges each of the responses set forth above in paragraphs

1 through 27, inclusive as if set forth in full hereat.

63.    Speiser Krause denies the allegations contained in Complaint paragraph 63.

64.    Speiser Krause denies the allegations contained in Complaint paragraph 64.

65.    Speiser Krause denies the allegations contained in Complaint paragraph 65.

66.    Speiser Krause denies the allegations contained in Complaint paragraph 66.

## II.    DEFENSES

### First Defense

1.    Guimaraes has failed to state a claim upon which relief can be granted.

### Second Defense

2.    Guimaraes's claims are barred, in whole or in part, by the statute of limitations.

### Third Defense

3.    Guimaraes's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Defense

4.    Guimaraes's claims are barred, in whole or in part, by the doctrine of waiver.

## Fifth Defense

5.    Guimaraes's claims are barred, in whole or in part, by the doctrine of laches.

## Sixth Defense

6.    Guimaraes's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Seventh Defense

7.    Guimaraes's claims are bared, in whole or in part, because there was no privity of contract between Guimaraes and Speiser Krause.

## Eighth Defense

8.    Guimaraes's claims are barred, in whole or in part, because Guimaraes does not have standing to assert his claims.

## Ninth Defense

9.    Guimaraes's claims are barred, in whole or in part, because Guimaraes cannot demonstrate any legally cognizable damage.

## Tenth Defense

10.    Guimaraes's claims are barred, in whole or in part, because Guimaraes has not suffered any injury in fact.

## Eleventh Defense

11.    Guimaraes's claims are barred, in whole or in part, by his failure to mitigate damages.


## Twelfth Defense

12.    Guimaraes has failed to state an adequate basis for the imposition of a constructive trust.


## Thirteenth Defense

13.    Guimaraes has failed to state an adequate basis for an award of punitive damages.


## Fourteenth Defense

14.    Guimaraes has failed to state an adequate basis for an award of costs and disbursements.


## Fifteenth Defense

15.    Guimaraes has failed to state an adequate basis for an award of attorney fees.


## Sixteenth Defense

16.    Guimaraes's claims are barred, in whole or in part, by documentary evidence.


## Seventeenth Defense

17.    Guimaraes's claims are barred, in whole or in part, by the doctrine of agency.


## Eighteenth Defense

18.    Guimaraes's claims are barred, in whole or in part, by the doctrine of unconscionability.

## Nineteenth Defense

19.     Guimaraes's claims are barred, in whole or in part, because Guimaraes did not confer any benefit of Speiser Krause.

## Twentieth Defense

20.     Guimaraes's claims are barred, in whole or in part, because Speiser Krause did not accept any benefit from Guimaraes.

## Twenty First Defense

21.     Guimaraes's claims are barred, in whole or in part, because Guimaraes did not expect any payment from Speiser Krause.

## Twenty Second Defense

22.     Guimaraes's claims are barred, in whole or in part, because Guimaraes failed to identify any actionable wrong committed by Speiser Krause against Guimaraes.

## Twenty Third Defense

23.     Guimaraes's conversion cause of action is barred, in whole or in part, because Guimaraes has failed to allege ownership of, or entitlement to any funds.

## Twenty Fourth Defense

24.     Guimaraes's claims are barred, in whole or in part, because Guimaraes failed to identify any unauthorized dominion by Speiser Krause over any funds belonging to Guimaraes.

### Twenty Fifth Defense

25.    Guimaraes's constructive trust claim is barred, in whole or in part, because Guimaraes failed to identify any fiduciary duty owed by Speiser Krause to Guimaraes.

### Twenty Sixth Defense

26.    Guimaraes's claims are barred, in whole or in part, by Guimaraes's failure to join one or more indispensable parties, to wit: Dr. Wanderly Minitti, and the clients referred to in the Complaint, without whose joinder the actions and claims alleged in the Plaintiff's Complaint may not be judicially resolved.

### Twenty Seventh Defense

27.    Guimaraes's claims are barred, in whole or in part, because Guimaraes's damages, if any, were proximately caused by the negligence, wrongdoing and/or malfeasance of other third parties, served or unserved.

### Twenty Eighth Defense

28.    Guimaraes's claims are barred, in whole or in part, based on the doctrine of illegality.

### Twenty Ninth Defense

29.    Guimaraes's claims are barred, in whole or in part, by the statute of frauds.

## III.    COUNTERCLAIM

Defendant Speiser Krause counterclaims against the Plaintiff Guimaraes, as follows:

### As And For A First Counterclaim For Indemnity

1.    In or about November 2004 plaintiff Dr. Wanderly Minitti "Minitti," as plaintiff therein, commenced an action against Speiser Krause in the United States District Court for the Southern District of New York under Case No. 04 CV 07976 (DC)(RLE) (the "Minitti Case"). Thereafter Minitti amended his complaint in the Minitti Case on or about January 6, 2005. Copies of Minitti's First Amended Complaint and Speiser Krause's Answer are annexed as exhibits A and B.

2.    In his First Amended Complaint, Minitti claims to have been damaged by reason of Guimaraes' actions and inactions, seeks money damages and declaratory and other relief.

3.    Upon information and belief, third-party defendant Guimaraes's actions, inactions and conduct caused or contributed to any damages claimed by Minitti.

4.    By reason of the foregoing, if any judgment is recovered in the Minitti Action against Speiser Krause, third-party defendant Guimaraes will be obligated to contribute to or indemnify Speiser Krause from the same, in whole or in part, to the extent that Guimaraes's conduct, action or inaction caused plaintiff's damages.

**As And For A Second Counterclaim For**

**Tortious Interference With Prospective Business Advantage**

5.     Speiser Krause developed a business relationship with sixty-five claimants resulting from the TAM aircraft crash in Brazil in 1997.

6.     In 1998 these claimants ("the TAM clients") retained Speiser Krause to represent them in the legal action.

7.     The agreements between Speiser Krause and the TAM clients provided that Speiser Krause would earn a fee contingent upon a monetary recovery by the clients, plus expenses.

8.     The fee of Speiser Krause was computed as 25% of the gross amount recovered plus expenses which would be capped at 2%.

9.     Guimaraes was fully aware of the business relationship between Speiser Krause and their TAM clients.

10.    Speiser Krause initiated litigation on behalf of its clients over the ensuing years to date and expended and continues to expend great sums of money to obtain a favorable result for its clients.

11.    In 2000, Speiser Krause negotiated settlement offers for all of its clients.

12.   In 2000, Guimaraes advised the TAM clients not to accept the offers.

13.   Guimaraes dishonestly, unfairly, unlawfully and improperly contacted the TAM clients and misrepresented that the settlement offers negotiated by Speiser Krause were unlawful.

14.   Guimaraes knew, or should have with reasonable diligence known, that the offers were not unlawful.

15.   Guimaraes knew that the statements he made to the TAM clients were false and fraudulent.

16.   Guimaraes dishonestly, unfairly, unlawfully and improperly contacted the TAM clients and misrepresented that the Federal Bureau of Investigation was investigating Speiser Krause.

17.   Guimaraes dishonestly, unfairly, unlawfully and improperly attacked the character and credibility of Speiser Krause in the media and in documents published to the TAM clients.

18.   Guimaraes dishonestly, unfairly, unlawfully and improperly contacted the TAM clients and misrepresented that Speiser Krause was reprimanded in New York courts for not acting in their client's interests.

19.    Guimaraes dishonestly, unfairly, unlawfully and improperly libeled Speiser Krause.

20.    For his own economic self-interests and with the intent of injuring Speiser Krause, Guimaraes contacted the TAM clients for the purpose of interfering with the business relationship.

21.    Guimaraes's conduct as aforesaid was calculated with the intent and purpose of improperly interfering with Speiser Krause's prospective and advantageous business relations, inducing or otherwise causing claimants not to continue with prospective and advantageous business relations with Speiser Krause.

22.    Guimaraes solicited several law firms, including Podhurst, Herman & Mermelstein and Engstrom, Lipscomb & Lack for the purpose of convincing TAM clients to discharge Speiser Krause and substitute them with these new lawyers.

23.    As a direct and proximate result, at least eight of Speiser Krause's clients relied upon the deceptive acts, defamatory statements and material misrepresentations of fact made by Guimaraes and discharged Speiser Krause, and substituted them with new lawyers recommended by Guimaraes.

24.    The acts of Guimaraes continue to date causing TAM clients who have not yet settled their cases to suspect Speiser Krause of wrongdoing.

25.    That by virtue of the foregoing, Guimaraes has intentionally, unlawfully and maliciously

interfered with the Speiser Krause's existing and prospective advantageous relationships with the TAM clients, causing it to suffer damages in the nature of lost revenues, lost stature and lost credibility in an amount to be proven at trial but not less than Two Million ($2,000,000) Dollars.

WHEREFORE, Spesier Krause respectfully prays for a judgment dismissing the Complaint and on its first counterclaim that if any judgment is rendered against the Defendant as a result of the Minitti Complaint, that the plaintiff be required to indemnify Speiser Krause and on its second counterclaim that Speiser Krause be awarded damages due to Guimaraes's tortious interference with prospective business advantage with the TAM clients and for such other and further relief as to this Court seems just, plus the costs and disbursements of this action.

Dated: New York, New York
    August, 10, 2006

Yours, Etc.,
Apuzzo & Chase, LLC

By:                         _____

William J. Apuzzo (WA-1312)
Attorney for Defendant
800 Third Avenue - Suite 800
New York, NY 10022
(212) 297-0885

EXHIBIT "D"

1                          Renato Guimaraes

2      testimony, correct me if I'm wrong, you allege that

3      Speiser Krause caused the clients to send you

4      revogas to terminate your power of attorney; is

5      that correct?

6              A.      Yes, that was instruction, if you

7      want your money, you better have another attorney

8      because Renato is disturbing, he is out of your

9      case.   That was written by Sandra Assali out of

10     recommendation of Speiser Krause, you must contact

11     Sampaio.

12             Q.      And did you cause some of your TAM

13     clients to terminate Speiser Krause's power of

14     attorney?

15             A.      When the big confusion start, some

16     people look at me and say how about now, you know,

17     and one or two suggest that do you think you will

18     be able to find another reliable law firm there.

19     And it was not in writing, just guessing, and let's

20     see what I can do, yes.

21             Q.      So, yes?

22                     MR. BERMAN:   He answered the

23             question.

24                     MR. APUZZO:   I agree.

25             Q.      Did you assist some of your clients

1                       Renato Guimaraes

2    to retain Walter Lack's law firm?

3          A.      Yes.

4          Q.      And at the time that you did this,

5    did you know that Speiser Krause would lose the fee

6    for those TAM cases just like you lost your fee for

7    the Varig cases?

8                  MR. BERMAN:   Objection.   No

9              foundation and it misstates the law.

10                 You can answer it if you

11             understand the question.

12         Q.      You can answer it.

13         A.      No, I am not aware of this detail

14   under American law.   In the Brazilian way, I think

15   the attorney will be entitled to whatever he made

16   except if they made something wrong, then he, the

17   attorney, has to pay the client.

18                 I don't know about your law here,

19   that was not my preoccupation, I was not worried, I

20   was worried to do the best to our clients.

21         Q.      If Speiser Krause still represented

22   the eight clients that Walter Lack is representing,

23   if they still represented those clients, would they

24   not be entitled to their retainer amount of 25 per

25   cent from those clients?

1                      Renato Guimaraes

2               MR. BERMAN: · Object as to form.

3         Q.    Can you answer the question?

4         A.    Can you repeat?

5         Q.    I'll repeat it.

6               If Speiser Krause loses their fees on

7    those eight TAM clients that are now represented by

8    Walter Lack, would that be a fair punishment of

9    Speiser Krause?

10        A.    In Brazil it will be fair, at least

11   fair.

12        Q.    Did you report to anybody that

13   Speiser Krause committed crimes and treason?

14        A.    Yes, I did, a lot of times.  How,

15   because, again --

16               MR. BERMAN:  No, just answer his

17              question.  You don't have to elaborate,

18              unless he asks you a next question.

19               Is that all right if I tell him

20              that?

21               MR. APUZZO:  That's all right.

22        Q.    Did you know that those statements

23   would harm the reputation of Speiser Krause and the

24   world legal community?

25        A.    Yes.

1                              Renato Guimaraes

2            Q.        You testified on a prior occasion

3     that you considered that you and Speiser Krause

4     were supposed to be partners; is that correct?

5            A.        Partners.

6            Q.        In the United States there are

7     specific rules and laws which apply to partner-

8     ships, and my question is, in Brazil, do they also

9     have rules and laws that apply to partnerships?

10           A.        Partnerships in Brazil, I believe

11    here, also has a more commercial meaning.

12                    In this case, this is a kind of

13    layman meaning of the word, partner like a team,

14    soccer team, we are partners, we are together, in

15    this sense, yes.

16                    We have a more technical word to use

17    in Brazil when two attorneys work together on the

18    same case, we don't say partners, we say another

19    word, but the sense is the same, two attorneys with

20    more or less equal responsibility maybe with some

21    kind of division of tasks to do the same goal, yes.

22           Q.        What is the Brazilian word that you

23    use?

24           A.        In Portuguese we say, I would say

25    kind of fellow attorney, in Portuguese it would be,

1                    Renato Guimaraes

2   understand correctly --

3        A.      Yes.

4        Q.      And in the middle of the quotation it

5   says, "If the families wish to accept a settlement,

6   that's it, it's finished, the attorney must accept

7   it on the penalty of being removed from the case,

8   end of the story."

9                Do you see that?

10               (The witness examines document.)

11       A.      Yes, I understand it.

12       Q.      Now, do you agree with that

13  statement?

14       A.      Absolutely, yes, 100 per cent, the

15  family want it, the attorney is gone.

16       Q.      Turn to page RG-00821.  Now, there's

17  a reference here, as you can see, to the Veja

18  Magazine article.

19       A.      There are two.

20       Q.      I want to read just the section at

21  the top.

22       A.      The little one.

23       Q.      "The attached document which is an

24  exact copy of the Veja article, scandal, "mountains

25  of cash, $40 million," the lawyers (Americans hired

1                    Renato Guimaraes

2    undersigned's letter itself is illegible," page

3    164.

4           A.     Yes.

5           Q.     "Speiser Krause has been betraying

6    the families since April and does not defend them

7    in the United States court; since the hearing with

8    the New York Federal Judge who's about to agree

9    with the rogatory sentence" --

10          A.     You miss one line, the translation at

11   least miss one line.

12                 MR. BERMAN:  So, you're saying the

13                 translation is not accurate?

14                 THE WITNESS:  No, his reading is

15                 losing one line.

16                 MR. CHASE:  We can have the

17                 translator translate the missing line.

18                 MR. APUZZO:  It's not missing, I

19                 just misread it.

20          Q.     When you say in this sentence here,

21   you continue, "My 26 families," when you're

22   referring to my 26 families, what are you referring

23   to?

24          A.     I refer to the 26 original families

25   who retain me to sue TAM in Brazil only.

1              Renato Guimaraes

2           Q.      Continuing on the next paragraph, you

3    say, "The settlement offered by Speiser Krause is

4    more than a waste of time and danger including to

5    TAM, Unibanco and Northrop whose executive boards

6    received yesterday a writ of prevention.  There

7    will definitely be a settlement, but with a decent

8    American lawyer.

9              All of the judges and guardians of

10   the orphans are aware of these pieces of evidence

11   which are available for all to see.  Afterwards, we

12   will sue SK," meaning Speiser Krause, "in the USA:

13   The families - and myself - betrayed since April

14   suffer tremendously with this international

15   conspiracy - and this is a very serious matter in

16   the United States legal system."

17              THE INTERPRETER:  Excuse me, the

18         Portuguese version is missing, I think,

19         one or two sentences.

20              MR. BERMAN:  So, you're saying

21         this translation is not accurate?

22              THE INTERPRETER:  No, maybe I

23         missed it this time.

24         Q.      In any event, just based upon a quick

25   reading of this, did any of the families sue

59

```
 1                    Renato Guimaraes
 2    Speiser Krause in the United States?
 3          A.     Of my knowledge, no.
 4          Q.     And did you sue Speiser Krause in the
 5    United States for anything other than your legal
 6    fees?
 7          A.     No.
 8          Q.     And your lawsuit here in the United
 9    States against Speiser Krause does not allege a
10    conspiracy, does it?
11          A.     No.  In fact, I send letters to FBI
12    and to the judge, I have no money to explain all
13    this.
14                    MR. BERMAN:  I would like to mark
15             this confidential, the deposition,
16             because I think that this document is
17             supposed to be confidential.  Do you have
18             any objection to that?
19                    MR. APUZZO:  You have that right.
20                    MR. CHASE:  You have that right
21             under the confidentiality agreement.
22                    MR. BERMAN:  So, the entire
23             transcript will be marked confidential.
24                    Can we just take a quick break?
25                    MR. APUZZO:  Sure.
```

60

1                           Renato Guimaraes

2                    (Off the record at 11:50 a.m.)

3                    (Resuming at 11:55 a.m.)

4     EXAMINATION CONTINUING BY MR. APUZZO:

5           Q.      Mr. Guimaraes, can you turn to the

6     page RG-823.  I'm just going to read a couple of

7     sentences and I just want you to confirm that this

8     was, in fact, said.

9                    "The betrayal scandal is in full

10    force in Brazil."  And, then, following, it says,

11    "The new story comes as a surprise to millions in

12    the legal profession internationally."

13                   Was it your statement that the Veja

14    article would be read by millions in the legal

15    profession internationally?

16          A.      One sentence I try to say the new,

17    the breakthrough, new, is surprising millions

18    because Veja has over one million issues each week,

19    and the judiciary internationally, yes.

20          Q.      Did the Brazilian courts approve the

21    settlements for the families that did accept the

22    settlements?  It's not in the article, it's just a

23    question.

24          A.      I'm sorry, did the Brazilian --

25          Q.      Courts, did they approve the

                    ASA REPORTING SERVICE, INC.
                         (914) 588-3358

Renato Guimaraes

2      A.     I don't know in this particular five

3  or six case, but assuming as general they did

4  approve has nothing to do with my merits here which

5  cover all 65 families, and I said according to the

6  Brazilian law it's illegal, because of the lie and

7  their lying.  And that's my comments, I hope will

8  be my answer to your question.

9      Q.     That is fine.  Did you bring also an

10  action in the Brazilian courts to nullify the

11  settlements?

12      A.     No, I made it to prevent the

13  argument, the settlements, not before, after.

14      Q.     So, you brought an action to present

15  the settlements after they were made but before

16  they were accepted?

17      A.     Right.  It's not technically an

18  action, it's just a request to the curator of minor

19  to do something.

20      Q.     And your requests were not granted?

21      A.     Yes, was granted.  Took a long time

22  until they fix some clauses.  Not all of them, the

23  pressure for the families, very strong, they

24  started emancipated, the minors, somehow they went

25  through the delay.

1            Renato Guimaraes

2          Q.      So, the settlements were not illegal?

3          A.      It was illegal.  Why, because of the

4    lie, we lost the case, we did not tell the truth,

5    we omitted the truth of the California judge.  For

6    this aspect, yes.

7          Q.      And did you make an application to

8    prevent the settlements because of the lie?

9               (Whereupon the interpreter

10          translates.)

11          A.      Because of the damage.

12          Q.      And even with the application to

13    prevent the settlements, they still went through;

14    correct?

15          A.      Yes, most of them.  Some regret, give

16    us -- argue with us in California, but most of them

17    did agree and they accept, well, Renato, you are a

18    dreamer, and so forth, I want my money, who pay for

19    the kids.  And they did receive the money.

20          Q.      And the court accepted those

21    settlements?

22          A.      Yes.

23          Q.      So, would that make the settlements

24    legal?

25          A.      No.  I believe the family has a case

1                     Renato Guimaraes

2    yet to do, if they wish, but that's another case.

3          Q.      A little bit further down, the next

4    paragraph, you make a statement, "I even had to ask

5    the Honorable FBI Director Thomas J. Pickard to" --

6          A.      I lost you.

7          Q.      After the settlements, skip down two,

8    starts out "Because we were never told about Mr.

9    Frizzel's evidence."

10         A.      Go ahead, and because of Frank

11   Granito.

12         Q.      Yes.

13                (The witness examines document.)

14         Q.      "Because of Mr. Frank Granito the

15   third, another attorney from Speiser Krause tried

16   to put down Mr. Frizzel to saying that he is pretty

17   junior," you say, "I even had to ask the Honorable

18   FBI Director Thomas J. Pickard to help us by

19   sending to the Jabaquara judge in Brazil a copy of

20   this crucial evidence."

21                So, does this follow, were you

22   telling this New York judge that Speiser Krause,

23   Mr. Granito was, in fact, concealing evidence here?

24         A.      Not only him, but the whole group of

25   Speiser Krause except Frizzel.  In fact, I tried to

129

1                    Renato Guimaraes

2      that point with Speiser Krause, not good.

3           Q.      Did the OAB report Speiser Krause for

4      committing a crime?

5           A.      Yes, sir.  As I told you, Bar

6      Association Sao Paulo approved my duties and

7      approved the draft, three of them to the, again, to

8      the prosecutor, federal prosecutor in Sao Paulo,

9      U.S. Consulate and to airport police to take care

10     of Speiser Krause because of this crime according

11     to Bar Association there.

12          Q.      Just one final question here if I

13     can.  Walter Lack now represents eight clients,

14     correct, eight of your clients?

15          A.      In California?

16          Q.      Yes.

17          A.      I think nine.

18          Q.      Nine, there's a new one that's coming

19     in, yes, we don't have the name yet?

20          A.      I know the name.

21          Q.      What's the name of the new one, the

22     latest one?

23          A.      Vanessa, and her orphan Pedro, Pedro

24     the little boy.

25                  MR. APUZZO:  I thank you for that.

```
 1                   Renato Guimaraes
 2          A.      Me neither, I know.
 3          Q.      How do you know it's one of your 26?
 4          A.      Because it came with the number six
 5   here, and the six came to 26.  And the six is
 6   Renato tutela antecipada, and the amount is exactly
 7   the three million I receive to this family.
 8          Q.      What is the family, which family,
 9   there is no --
10          A.      26, Mohamad --
11          Q.      Just tell me number six.
12          A.      Number six, should be a guy from Rio
13   De Janeiro.  I don't recall the name of the widow.
14   She fired me and make the settlement.  I recall
15   he's an employee of Brito Corporation, it is
16   B-R-I-T-O, I believe, maybe Brito, but on the top
17   of my head, I don't recall.
18              MR. BERMAN:  Can we compare this
19          to the other list and make it easier?
20              MR. APUZZO:  I don't see how
21          there's a comparison because there are
22          names here of which they are basically
23          first names of people.
24              MR. BERMAN:  I understand, but
25          there are amounts that were recovered and
```

EXHIBIT "E"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)
THE HONORABLE DENNY CHIN

RENATO GUIMARAES, JR.,

      Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN &
GRANITO, a professional corporation f/k/a
SPEISER, KRAUSE, MADOLE & LEAR, a
professional corporation,

      Defendant.

_____/

## PLAINTIFF RENATO GUIMARAES, JR.'S
## NOTICE OF SERVING INTERROGATORIES TO SPEISER KRAUSE

Plaintiff, RENATO GUIMARAES, JR., by and through the undersigned counsel, and

pursuant to Rule 33, Federal Rules of Civil Procedure, hereby serves Defendant, SPEISER,

KRAUSE, NOLAN & GRANITO, with these Interrogatories to be answered under oath within thirty

(30) days from the date of service of this request.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via fax and U.S.

Regular Mail, this 29th day of March, 2006, to:

William J. Apuzzo, Esq.
Apuzzo & Chase, LLC
800 Third Avenue, Suite 800
New York, NY 10022

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

**BERMAN, KEAN & RIGUERA, P.A.**
2101 W. Commercial Blvd.
Suite 2800
Fort Lauderdale, FL 33309
Telephone: (954) 735-0000
Facsimile: (954) 735-3636

By: _____
Richard E. Berman
RB2715
Jose R. Riguera
Florida Bar No.: 860905

\\Server-01\REBData\Guimaraes, Renato\1147-001\Style\14238_2.wpd

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)
THE HONORABLE DENNY CHIN

RENATO GUIMARAES, JR.,

      Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO,
a professional corporation f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,

      Defendant.

_____/

## PLAINTIFF RENATO GUIMARAES, JR.'S
## INTERROGATORIES TO SPEISER KRAUSE

Pursuant to Rule 33, Federal Rules of Civil Procedure, Plaintiff, RENATO GUIMARAES,

JR. ("Guimaraes"), propounds the following Interrogatories to Defendant, SPEISER, KRAUSE,

NOLAN & GRANITO ("Speiser Krause"), and requests said party answer the Interrogatories in

writing, under oath, and within the time and manner prescribed by law.


## INTERROGATORIES

1.     Identify all actions taken by Guimaraes that you contend constituted a breach of the fee

sharing agreement between Guimaraes and Speiser Krause.

2.      State whether the spreadsheet or ledger that was identified as Exhibit 59 at the deposition of

Leigh Ballen taken on October 10, 2005 has been updated since the date of the deposition

and provide in detail all updated information.

3.      With regard to the settlement negotiated by Speiser Krause on behalf of Linda Andrews

concerning the TAM case:

a.      When was the case settled?

b.      When did Speiser Krause receive the settlement funds?

4.      Identify all witnesses that Speiser Krause deposed in Brazil in the early part of 2001 as

testified by John Veth during his deposition on March 23, 2006.

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

5.     For each deposition identified in the preceding interrogatory:

    a.     State whether the deposition was conducted only in connection with the Linda
           Andrews claim, or also in connection with the claims of any of the Brazilian
           plaintiffs represented by Speiser Krause in connection with the TAM case.

    b.     If the depositions were conducted in connection with the claims of any of the
           Brazilian plaintiffs represented by Speiser Krause in connection with the TAM case,
           identify which Brazilian plaintiffs.

6.     Identify all efforts undertaken by Speiser Krause to lift the stay entered by the California
       court concerning the TAM case or to persuade the California court to accept jurisdiction over
       the claims of the Brazilian plaintiffs whose cases were transferred to Brazil on *forum non
       conveniens* grounds.

3

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

7.    State whether Speiser Krause had an agreement or understanding with any of the insurance carriers for the TAM defendants that Speiser Krause would not further prosecute the claims of those Brazilian plaintiffs that did not accept the settlement offers presented to the Brazilian clients by Speiser Krause in or about April 2000. If the answer to this Interrogatory is "yes," identify the person(s) with whom the agreement or understanding was reached. If the answer is "no":

a.    Identify all efforts undertaken by Speiser Krause to continue to prosecute the litigation in the TAM lawsuit on behalf of those Brazilian clients who rejected the settlement offers presented to them by Speiser Krause in or about April 2000.

b.    Identify all efforts undertaken by Speiser Krause to continue to negotiate higher individual settlement offers for those Brazilian clients who rejected the settlement offers presented to them by Speiser Krause in or about April 2000.

4

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

8.     Identify all communications between Speiser Krause and any TAM client (including that

client's local attorney or other representative), whether oral or written, concerning settlement

authority or the progress of settlement discussions being conducted by Speiser Krause which

occurred prior to the announcement of the settlement offers by Speiser Krause to the

Brazilian plaintiffs in Brazil in or about April 2000.

9.     Identify all facts that support your contention that Guimaraes' claims are barred by the

doctrine of estoppel as asserted in Speiser Krause's 3rd defense to Guimaraes' Complaint.

10.    Identify all facts that support your contention that Guimaraes' claims are barred by the

doctrine of waiver as asserted in Speiser Krause's 4th defense to Guimaraes' Complaint.

5

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

11.  Identify all facts that support your contention that Guimaraes' claims are barred by the
     doctrine of unclean hands as asserted in Speiser Krause's 6th defense to Guimaraes'
     Complaint.

12.  Identify all facts that support your contention that Guimaraes' claims are barred because
     Guimaraes does not have standing to assert his claims as asserted in Speiser Krause's 8th
     defense to Guimaraes' Complaint.

13.  Identify all facts that support your contention that Guimaraes has failed to mitigate his
     damages as asserted in Speiser Krause's 11th defense to Guimaraes' Complaint.

6

Guimaracs v. Speiser Krause
Case No.: 05-CV-2210(DC)

14.     Identify all facts that support your contention that Guimaraes' claims are barred by documentary evidence as asserted in Speiser Krause's 16th defense to Guimaraes' Complaint, and identify all such documents that you contend bar Guimaraes' claims.

15.     Identify all facts that support your contention that Guimaraes' claims are barred by the doctrine of agency as asserted in Speiser Krause's 17th defense to Guimaraes' Complaint.

16.     Identify all facts that support your contention that Guimaraes' claims are barred by the doctrine of unconscionability as asserted in Speiser Krause's 18th defense to Guimaraes' Complaint.

17.     Identify all facts that support your contention that Guimaraes did not expect any payment from Speiser Krause as asserted in Speiser Krause's 21st defense to Guimaraes' Complaint.

7

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

18.   Identify all facts that support your contention that Guimaraes claims are barred by the

doctrine of illegality as asserted in Speiser Krause's 28th defense to Guimaraes' Complaint.

8

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

SPEISER, KRAUSE, NOLAN & GRANITO

By:_____  _____.

STATE OF NEW YORK        )
                                           )SS:
COUNTY OF _____   )

BEFORE ME, the undersigned authority, appeared _____, the
_____ of SPEISER, KRAUSE, NOLAN & GRANITO, who is
personally known to me or who produced _____ as identification, who,
being first duly sworn, deposes and says that the foregoing answers to interrogatories are true and
correct to the best of his/her knowledge.

Sworn to and subscribed before me this _____ day of _____, 2006.

_____
NOTARY PUBLIC
My Commission Expires:

\\Server-01\REBData\Guimaraes, Renato\1147-001\Style\14238_2.wpd

9

**EXHIBIT "F"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RENATO GUIMARAES, JR.,

                                 **ECF Case**

                     Plaintiff,

      -against-                        No. 05 CV 02210 (DC)

SPEISER, KRAUSE, NOLAN & GRANITO a
professional corporation f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,

                    Defendant.
-------------------------------------------------------------X

## DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1.     Defendant objects to this Interrogatory on the grounds that it contains a predicate

unestablished assumption. Particularly, that there was a "fee sharing agreement" between

plaintiff Guimaraes and Speiser Krause. Defendant denies that there was any such

agreement. Defendant further objects this Interrogatory on the grounds that it asks

Defendant to "[i]dentify all actions" and is, therefore, overly broad with language

requiring a search for information that far exceeds the scope of relevant information.

Defendant further objects to this Interrogatory to the extent that it seeks information

within the possession, custody, or control of Plaintiff. Without limiting defendant's

response, the actions by plaintiff were: Plaintiff's entry into separate agreements with any

TAM clients, Plaintiff's refusal to act on behalf of any TAM client(s), Plaintiff's failure to

comply with the request(s) and/or direction(s) of Speiser Krause and any TAM client(s);

Plaintiff's attempts to undermine the confidence of TAM clients in Speiser Krause as

their attorneys; tortious interference in the contracts/retainers between Speiser Krause and
TAM clients; publication of slanderous and/or libelous statements concerning Speiser
Krause and its activities; malicious prosecution and institution of separate fee actions
against Speiser Krause's clients; the maintenance of separate fee actions against the TAM
defendants, and their insurers; and Speiser Krause refers plaintiff to its responses to
interrogatory number 9 for further actions by plaintiff.   To the extent that discovery is
still pending, and Defendant has extant discovery demands of Plaintiff, including, but not
limited to, document demand(s) and Interrogatory responses defendant reserves the right
to supplement and/or modify its response to this Interrogatory.

2.      The document identified as Exhibit 59 at the deposition of Leigh Ballen, taken on
October 10, 2005, has not been updated since the date of the deposition.

3.      Defendant objects to this Interrogatory on the grounds that the information sought is not
relevant, nor is it likely that the Interrogatory will lead to the discovery of any relevant
evidence.  Subject to and without waiver of the foregoing, the Andrews action was settled
against all Defendants therein during a two-day mediation which concluded on or about
July 9, 2001.  The Andrews action was funded during December 2001 and January 2002.

4.      Defendant does not specifically recall each deposition conducted in Brazil in the early
part of 2001, however, Defendant has performed a diligent search of its files to find
documents responsive to this Interrogatory.  Annexed hereto is the amended notice of
taking of depositions identifying all witnesses to be deposed in Brazil beginning January

23, 2001 and concluding February 10, 2001. This notice identifies all witnesses to be deposed. To the best of Defendant's belief and understanding after diligent search, not all of the depositions referred to therein were taken as noticed. Defendant further states that it is in possession of the deposition transcripts of Mr. Ruy Amparto, taken January 25, 2001; Mr. Geraldo Medeiros, taken January 30, 2001; and Mr. Daniel Goncalves, taken February 2, 2001. To the best of Defendant's belief and understanding after diligent search, other depositions were taken, but Defendant does not have, nor have access to additional documentation to supply specific names and dates at this time. Defendant further states, upon its knowledge, information and belief that some of the depositions were required to be rescheduled for a later date.

5.    a.    The depositions were conducted on behalf of all the plaintiffs in the actions filed in California.

      b.    See response to Interrogatory 5(a), above.

6.    Defendant objects to this Interrogatory on the grounds that it is compound in form and is phrased in conjunctive or disjunctive form. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to identify "all efforts". Defendant further objects to this Interrogatory to the extent a response to the Interrogatory calls for questions fo pure law, and the work-product doctrine. Subject to and without waiver of the foregoing objections, please refer to the Unified Event List Production Nos. SK 001089-SK001122.

7.    Defendant objects to this Interrogatory on the grounds that it is compound in form and is phrased in conjunctive or disjunctive form. Subject to and without waiver of the foregoing objection, Speiser Krause did not have an agreement or understanding with any of the insurance carriers for the TAM defendants that Speiser Krause would not further prosecute the claims of Brazilian plaintiffs that did not accept the settlement offers presented to the Brazilian clients by the insurance carriers and conveyed by Speiser Krause.

    a.    Subject to and without waiver of the foregoing objection, those clients who rejected the settlement offers also discharged Speiser Krause and substituted Herman & Mermelstein and/or Walter Lack, and subsequent to Speiser Krause's discharge, Speiser Krause was without authority to prosecute any action on those clients' behalf.

    b.    See response and objection to 7(a) above.

8.    Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous and therefore, does not adequately inform Defendant as to the scope of the answer requested. Defendant further objects to this Interrogatory on the grounds that the information sought calls for a legal conclusion and/or legal opinion regarding "settlement authority" or "progress of settlement discussions being conducted." Defendant further objects to this Interrogatory on the grounds that it is compound in form and is phrased in conjunctive or disjunctive form. Defendant further objects to this Interrogatory on the grounds that the communications between Speiser Krause and its clients are privileged. Subject to and without waiver of the foregoing objections, see Production Nos. SK 03979, 03982, and

04215-04266.

9.    Defendant objects to this Interrogatory on the grounds that the information sought was

prepared in anticipation of litigation and consists of the mental impressions, conclusions,

and opinions or legal theories of Defendant's attorney; such information, therefore,

constitutes the opinion work product of the Defendant's attorney and is, therefore,

protected from disclosure. Defendant further objects to this Interrogatory on the grounds

that it is vague and ambiguous, and therefore, does not adequately inform the responding

party as to the scope of the answer requested to the extent that it asks Defendant to

identify "all facts that support your contention". Defendant further objects to this

Interrogatory on the grounds that it is overly broad with language requiring a burdensome

search in that it requires Defendant to identify "all facts that support your contention".

Subject to and without waiver of the foregoing objections, Defendant's contention that

Guimaraes' claims are barred by the doctrine of estoppel is supported by, *inter alia*, the

following facts and/or documents: Guimaraes declared proceeds of settlements to be

illegal by, *inter alia*, notifying the Federal Bureau of Investigation, the Brazilian

Prosecutor, and Brazilian media; Guimaraes sought to have clients substitute counsel for

Speiser Krause including, but not limited to, Herman & Mermelstein and/or Walter Lack;

Guimaraes refused to carry out certain actions including, but not limited to, the filing of

stipulations of discontinuance and the termination of Brazilian actions; Guimaraes elected

to seek the enforcement of the Jabaquara verdict; Guimaraes hired Wanderly Minitti

and/or "substablished" his powers to Minitti, resulting in the filing of suit; Guimaraes

brought proceedings against underlying clients in Brazil for recovery of attorneys fees;

Guimaraes brought proceedings in California against the TAM defendants for
"sucumbencia", or attorney's fees in connection with the Jabaquara verdict; Guimaraes
entered into individual retainers with TAM clients subsequent to, and with knowledge of
Speiser Krause's retention by victim's families in TAM matters; Guimaraes sought, and
continues to seek "sucumbencia" in connection with the TAM accident; Guimaraes was
terminated for cause by a number of the TAM victims' families; Guimaraes failed to
assert a claim at the time of discharge; all "revogas" issued by clients in connection with
the TAM litigation; all retainer agreements issued by clients in connection with the TAM
litigation; Arthur Ballen's letter of March 20, 2001; Guimaraes' application in various
forms to courts in the country of Brazil for attorney's fees in connection with the TAM
litigation, including, *inter alia*, the institution of litigation against TAM clients;
Guimaraes express and/or implied consent to settlements entered into by some and/or all
of the TAM clients.  See also Production Nos. RG-0026-28.

10.    Defendant objects to this Interrogatory on the grounds that the information sought was
prepared in anticipation of litigation and consists of the mental impressions, conclusions,
and opinions or legal theories of Defendant's attorney; such information, therefore,
constitutes the opinion work product of the Defendant's attorney and is, therefore,
protected from disclosure.  Defendant further objects to this Interrogatory on the grounds
that it is vague and ambiguous, and therefore, does not adequately inform the responding
party as to the scope of the answer requested to the extent that it asks Defendant to
identify "all facts that support your contention".  Defendant further objects to this
Interrogatory on the grounds that it is overly broad with language requiring a burdensome

search in that it requires Defendant to identify "all facts that support your contention". Subject to and without waiver of the foregoing objections, Defendant's contention that Guimaraes waived any claim to fees derived from Speiser Krause's work in the TAM matter is supported by, *inter alia*, the following facts: Guimaraes rejected proposed settlements and urged clients not to accept same; competent counsel was hired to carry out the express wishes of the clients; Guimaraes was terminated for cause by the clients; Guimaraes failed to assert a claim at the time of discharge; see responses and objections to Interrogatory 9, above.

11.     Defendant objects to this Interrogatory on the grounds that the information sought was prepared in anticipation of litigation and consists of the mental impressions, conclusions, and opinions or legal theories of Defendant's attorney; such information, therefore, constitutes the opinion work product of the Defendant's attorney and is, therefore, protected from disclosure. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to identify "all facts that support your contention". Defendant further objects to this Interrogatory on the grounds that it is overly broad with language requiring a burdensome search in that it requires Defendant to identify "all facts that support your contention". Subject to and without waiver of the foregoing objections, Defendant's contention that Guimaraes' claims are barred by the doctrine of unclean hands is supported by, *inter alia*, the following facts: see responses and objections to Interrogatories 9 and 10, above.

12.    Defendant objects to this Interrogatory on the grounds that the information sought was

prepared in anticipation of litigation and consists of the mental impressions, conclusions,

and opinions or legal theories of Defendant's attorney; such information, therefore,

constitutes the opinion work product of the Defendant's attorney and is, therefore,

protected from disclosure. Defendant further objects to this Interrogatory on the grounds

that it is vague and ambiguous, and therefore, does not adequately inform the responding

party as to the scope of the answer requested to the extent that it asks Defendant to

identify "all facts that support your contention". Defendant further objects to this

Interrogatory on the grounds that it is overly broad with language requiring a burdensome

search in that it requires Defendant to identify "all facts that support your contention".

Subject to and without waiver of the foregoing objections, Defendant's contention that

Guimaraes lacks standing to assert his claims is supported by, *inter alia*, the following

facts: the Complaint asserts causes of action for attorneys fees sounding in breach of

contract although there is no written agreement to provide same; Guimaraes instituted

actions against clients, other attorneys and the Defendant herein seeking the same relief;

other actions pending; Guimaraes was terminated for cause; Guimaraes "substablished"

his powers with regard to representation in the TAM case to Wanderly Minitti.

13.    Defendant objects to this Interrogatory on the grounds that the information sought was

prepared in anticipation of litigation and consists of the mental impressions, conclusions,

and opinions or legal theories of Defendant's attorney; such information, therefore,

constitutes the opinion work product of the Defendant's attorney and is, therefore,

protected from disclosure. Defendant further objects to this Interrogatory on the grounds

that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to identify "all facts that support your contention". Defendant further objects to this Interrogatory on the grounds that it is overly broad with language requiring a burdensome search in that it requires Defendant to identify "all facts that support your contention". Subject to and without waiver of the foregoing objections, Defendant's contention that Guimaraes failed to mitigate his damages is supported by, *inter alia*, the following facts: Guimaraes failed to keep time records; Guimaraes failed to listen/adhere to demands and/or direct instructions of the clients in regards to, *inter alia*, processing of settlements in Brazilian courts; Guimaraes provided clients with grounds for "for cause" termination; see responses and objections to Interrogatories 9 and 10, above.

14.    Defendant objects to this Interrogatory on the grounds that the information sought was prepared in anticipation of litigation and consists of the mental impressions, conclusions, and opinions or legal theories of Defendant's attorney; such information, therefore, constitutes the opinion work product of the Defendant's attorney and is, therefore, protected from disclosure. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to identify "all facts that support your contention". Defendant objects to this Interrogatory on the grounds that it is compound in form and is phrased in conjunctive or disjunctive form. Defendant further objects to this Interrogatory on the grounds that it is overly broad with language requiring a burdensome search in that it requires Defendant to

identify "all facts that support your contention". Subject to and without waiver of the foregoing objections, Defendant's contention that Guimaraes' claims are barred by documentary evidence is supported by, *inter alia*, the following facts and/or documents: the retainer agreements without Guimaraes; the "revogas"; the "substablishment" to Wanderly Minitti; see responses and objections to Interrogatories 9 and 10, above.

15. Defendant objects to this Interrogatory on the grounds that the information sought was prepared in anticipation of litigation and consists of the mental impressions, conclusions, and opinions or legal theories of Defendant's attorney; such information, therefore, constitutes the opinion work product of the Defendant's attorney and is, therefore, protected from disclosure. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to identify "all facts that support your contention". Defendant further objects to this Interrogatory on the grounds that it is overly broad with language requiring a burdensome search in that it requires Defendant to identify "all facts that support your contention". Subject to and without waiver of the foregoing objections, Defendant's contention that Guimaraes' claims are barred by the doctrine of agency is supported by, *inter alia*, the following facts: the "substablishment" to Wanderly Minitti; Guimaraes breached a duty of loyalty by failing to process settlements on behalf of clients; certain clients insisted that Guimaraes be terminated; Guimaraes failed to follow the instruction of Speiser Krause; see responses and objections to Interrogatories 9 and 10, above.

16.  Defendant objects to this Interrogatory on the grounds that the information sought was prepared in anticipation of litigation and consists of the mental impressions, conclusions, and opinions or legal theories of Defendant's attorney; such information, therefore, constitutes the opinion work product of the Defendant's attorney and is, therefore, protected from disclosure. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to identify "all facts that support your contention". Defendant further objects to this Interrogatory on the grounds that it is overly broad with language requiring a burdensome search in that it requires Defendant to identify "all facts that support your contention". Subject to and without waiver of the foregoing objections, Defendant's contention that Guimaraes' claims are barred by the doctrine of unconscionability is supported by, *inter alia*, the following facts: Guimaraes services as ineffective counsel lacked value; Guimaraes was terminated for cause; other attorneys were necessarily hired to replace Guimaraes; see responses and objections to Interrogatories 9 and 10, above.

17.  Defendant objects to this Interrogatory on the grounds that the information sought was prepared in anticipation of litigation and consists of the mental impressions, conclusions, and opinions or legal theories of Defendant's attorney; such information, therefore, constitutes the opinion work product of the Defendant's attorney and is, therefore, protected from disclosure. Defendant further objects to this Interrogatory on the grounds that it is vague and ambiguous, and therefore, does not adequately inform the responding party as to the scope of the answer requested to the extent that it asks Defendant to

identify "all facts that support your contention". Defendant further objects to this
Interrogatory on the grounds that it is overly broad with language requiring a burdensome
search in that it requires Defendant to identify "all facts that support your contention".
Subject to and without waiver of the foregoing objections, Defendant's contention that
Guimaraes did not expect any payment from Speiser Krause is supported by, *inter alia*,
the following facts: Payment in form of sucumbencia or otherwise, was to be due from
clients; Gumareas lacked any involvement with certain clients; see the retainer
agreements without Guimaraes; see responses and objections to Interrogatories 9 and 10,
above.

18.     Defendant objects to this Interrogatory on the grounds that the information sought was
        prepared in anticipation of litigation and consists of the mental impressions, conclusions,
        and opinions or legal theories of Defendant's attorney; such information, therefore,
        constitutes the opinion work product of the Defendant's attorney and is, therefore,
        protected from disclosure.  Defendant further objects to this Interrogatory on the grounds
        that it is vague and ambiguous, and therefore, does not adequately inform the responding
        party as to the scope of the answer requested to the extent that it asks Defendant to
        identify "all facts that support your contention".  Defendant further objects to this
        Interrogatory on the grounds that it is overly broad with language requiring a burdensome
        search in that it requires Defendant to identify "all facts that support your contention".
        Subject to and without waiver of the foregoing objections, Defendant's contention that
        Guimaraes' claims are barred by the doctrine of illegality is supported by, *inter alia*, the

following facts: Guimaraes himself declared proceeds of settlements to be illegal by, *inter*

*alia*, notifying the Federal Bureau of Investigation, the Brazilian Prosecutor, and

Brazilian media.

Speiser Krause Nolan & Granito, APLC

By:

Name: __GERARD K. LEAR__

Title: __MANAGING PARTNER__

State of __Virginia__ )
County of __Arlington__ )

The foregoing instrument was acknowledged before me this _12_ day of July, 2006

Notary Public    My Commission Expires May 31, 2009