UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05 CV 02210 (DC)

RENATO GUIMARAES, JR.,

Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO, a professional corporation f/k/a
SPEISER, KRAUSE, MADOLE & LEAR, a professional corporation

Defendant.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dated:      Fort Lauderdale, Florida
            July 13, 2007

*Prepared by:*
Richard E. Berman, Esq.
Jose R. Riguera, Esq.
Attorneys for Plaintiff
BERMAN, KEAN & RIGUERA, P.A.
2101 W. Commercial Blvd., Suite 2800
Fort Lauderdale, Florida 33309
Telephone:   (954) 735-0000
Facsimile:   (954) 735-3636

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ............................................................. i

ARGUMENT ...................................................................... 1

    I.     THE TORTIOUS INTERFERENCE CLAIM IS BARRED BY THE
          STATUTE OF LIMITATIONS ............................................ 1

    II.    SPEISER KRAUSE DID NOT HAVE A CONTRACT OR BUSINESS
          RELATIONSHIP THAT CAN SUPPORT A CLAIM FOR TORTIOUS
          INTERFERENCE ....................................................... 3

    III.   GUIMARAES DID NOT ACT WRONGFULLY OR MALICIOUSLY ............ 4

         A.    Mr. Guimaraes' Duties to the TAM Clients and His Efforts to
               Oppose the Settlement Offers and Speiser Krause's Conduct
               Were Governed by Brazilian Law ................................. 4

         B.    Mr. Guimaraes Had a Legal and Ethical Duty under Brazilian Law
               to Oppose the Settlements and to Denounce Behavior on the Part of
               Speiser Krause That He Considered Improper or Illegal ............. 5

         C.    Mr. Guimaraes' Actions in Opposing the Settlements Were Privileged ..... 6

         D.    Mr. Guimaraes Was Fully Exonerated by the OAB of Any Ethical
               Wrongdoing in Connection with His Opposition to the TAM Settlement
               Offers ........................................................ 8

         E.    Guimaraes Did Not Act Maliciously ................................ 9

CONCLUSION .................................................................. 10

CERTIFICATE OF SERVICE ...................................................... 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)
THE HONORABLE DENNY CHIN

RENATO GUIMARAES, JR.,

    Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO, a
professional corporation f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,

    Defendant.
_____/

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, RENATO GUIMARAES, JR., ("Mr. Guimaraes"), pursuant to Fed. R. Civ. P. 56, respectfully submits this Reply Memorandum of Law in Support of his Motion for Summary Judgment.

### ARGUMENT

**I.    THE TORTIOUS INTERFERENCE CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS**

New York has a three year statute of limitations for tortious interference. N.Y. C.P.L.R. 214[4]; *Spinap Corp. v. Cafagno,* 756 N.Y.S.2d 86, 87 (N.Y. App. Div. 2003); *American Fed. Group v. Edelman,* 722 N.Y.S.2d 870, 870 (N.Y. App. Div. 2001). The statute of limitations on a claim for tortious interference begins to run when the plaintiff is damaged, i.e., when the contract allegedly interfered with is breached or terminated. *Id.*, 756 N.Y.S.2d at 588; *Andrew Greenberg, Inc. V. Svane, Inc.,* 830 N.Y.S.2d 358 (N.Y. App. Div. 2007); *Runcie v. Interfaith Medical Center,* 732 N.Y.S.2d 827 (N.Y. App. Div. 2001).

Mr. Guimaraes filed his original complaint against Speiser Krause in the United States District Court for the Southern District of Florida on November 19, 2004. (Riguera Affd., Ex. "2") Even conceding that Speiser Krause's amended counterclaim adding the count for tortious interference relates back to Mr. Guimaraes' original pleading in this case, any claim that accrued prior to November 19, 2001 is time barred. Below is a table identifying (by the decedent's name) each TAM client that is the subject of the tortious

interference claim, and when that client terminated Speiser Krause:

| Client Name | Date of Termination | Source |
|---|---|---|
| George Klepetar | January 18, 2001 | Riguera Affd., Ex. "3" (Doc. No. SK2656) (termination letter) |
| Jose Pereira Duarte | January 30, 2001 | Riguera Affd., Ex. "3" (Doc. No. SK2660) (termination letter) |
| Alexandre M. Vaz de Mello | February 1, 2001 | Riguera Affd., Ex. "3" (Doc. No. SK2654) (termination letter) |
| Zelia Menin | sometime prior to September 19, 2001[1] | Riguera Affd., Ex. "3" (Doc. No. SK2677) (Speiser Krause lien) |
| Mauro Rodrigues de Matos | sometime prior to September 19, 2001 | Riguera Affd., Ex. "3" (Doc. No. SK2677) (Speiser Krause lien) |
| William Arjona Chong | January 11, 2001 | Riguera Affd., Ex. "3" (Doc. No. RG00787) (termination letter) |

Pursuant to the foregoing authorities, the claims with respect to these TAM clients are barred by the three year statute of limitations. Importantly, tortious interference with a contract is **not** a continuing tort, meaning that the cause of action accrues at a finite point in time (i.e., when the contract interfered with is breached or terminated), and plaintiff is not entitled to rely on any actions of the defendant after that point to extend or toll the running of the statute of limitations. *Spina*p, 756 N.Y.S.2d at 588; *Bloomfield Bldg. Wreckers v. City of Troy*, 41 N.Y.2d 1102, 1103, 396 N.Y.S.2d 359, 364 N.E.2d 1130; *Hanrihan v. Parker*, 19 Misc.2d 467, 469-470, 192 N.Y.S.2d 2; *Hagan Corp. V. Medical Society of County of N.Y.*, 198 Misc. 207, 209, 96 N.Y.S.2d 286, affd. 279 App.Div. 1058, 113 N.Y.S.2d 282. Thus, Speiser Krause's contention that the counterclaim is timely because Mr. Guimaraes "wrongful acts" have continued after the counterclaim was served is unsustainable. Similarly, the fact that Speiser Krause has not had the opportunity to review correspondence between Mr. Guimaraes and certain U.S. law firms that was withheld as privileged is irrelevant. Speiser Krause knows when it was terminated by the subject TAM clients. That is the date on which its cause of action for tortious interference accrued.

---

[1] Speiser Krause was aware that it had been terminated by this client since it filed a lien on this date.

2

Accordingly, Mr. Guimaraes is entitled to summary judgment on the tortious interference claim with respect to the TAM clients identified above.

## II. SPEISER KRAUSE DID NOT HAVE A CONTRACT OR BUSINESS RELATIONSHIP THAT CAN SUPPORT A CLAIM FOR TORTIOUS INTERFERENCE

Speiser Krause did not have a business relationship with which Mr. Guimaraes could interfere. Speiser Krause contends in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (the "Opposition Memorandum") that Mr. Guimaraes interfered with its contingent retainer agreements with "its" TAM clients. (Opposition Memorandum at p. 9) However, Gerald Lear, the Fed. R. Civ. P. 30(b)(6) representative of Speiser Krause, recently testified in deposition that it was not the retainer agreements with which Speiser Krause claims interference. (Riguera Affd. dated 5/31/07, Ex. "13" (G. Lear Dep. 4/23/07, p. 12))[2] Realizing that this admission is devastating to their claim, Speiser Krause now seeks to contradict its own corporate representative's sworn testimony without even a hint of explanation. However, it is well settled that a party cannot contradict its own prior deposition testimony in order to defeat summary judgment. *Hayes v. New York City Department of Corrections*, 84 F.3d 614 (2nd Cir. 1996); *Rosoff v. Mountain Laurel Center for the Performing Arts*, 317 F. Supp.2d 493 (S.D.N.Y. 2004).

Assuming *arguendo* that the retainer agreements could support a claim for tortious interference, this claim must nevertheless fail. Mr. Guimaraes was a party himself to the retainer agreements and cannot interfere with his own contract. *Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867, 869 (N.Y. App. Div. 1990)("It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract."); *Bradford v. Weber*, 525 N.Y.S.2d 968, 970 (N.Y. App. Div. 1988)(holding that "a party to a contract cannot be held liable for intentional interference with that contract."). Incredibly, Speiser Krause asserts that "Guimaraes was not a party the (sic) Speiser Krause's retainers." (Opposition Memorandum at p. 11). This is expressly contradicted by the written retainer agreements themselves, which identify both Speiser Krause and Mr. Guimaraes as the attorneys representing the TAM clients. Mr.

---

[2]To avoid needless re-attachment of documents, where appropriate, reference will be made to documents submitted under the Affidavit of Jose R. Riguera dated 5/31/07 previously filed in support of Plaintiff's Motion for Summary Judgment.

3

Guimaraes is named as counsel on the retainer agreement of seven of the nine TAM clients now that are the subject of Speiser Krause's tortious interference claim. (Riguera Affd. Ex. "3" (Doc. No. RG00505-506, RG507-508, RG512-513, RG464-465, RG486-487, RG555-556, RG532-533, and RG518-519))[3]

Speiser Krause next suggests that the Court should ignore the fact that Mr. Guimaraes' name appears on the retainer agreements because those agreements supposedly do not give him any rights or impose any obligations upon him. Again, this argument is baseless because it contradicts the plain language of the retainer agreements, which clearly and explicitly state that each client "retains the law firms of SPEISER KRAUSE **and RENATO GUIMARAES**." (Id.)(Emphasis added). The fact that Mr. Guimaraes had a separate fee sharing agreement with Speiser Krause that complemented his rights and duties with respect to the TAM representation does not diminish his rights under the client retainer agreements.

Because Speiser Krause has contradicted its own corporate representative's sworn testimony concerning the contractual relationship allegedly interfered with, and further because Mr. Guimaraes was a party to the very retainer agreements with which he is alleged to have interfered, the Court should grant summary judgment in favor of Mr. Guimaraes on the tortious interference claim.

### III. GUIMARAES DID NOT ACT WRONGFULLY OR MALICIOUSLY.

#### A. Mr. Guimaraes' Duties to the TAM Clients and His Efforts to Oppose the Settlement Offers and Speiser Krause's Conduct Were Governed by Brazilian Law

As this Court has previously recognized, Florida choice-of-law rules apply in this case since this lawsuit was transferred from Florida. *Ferens v. John Deere Co.*, 494 U.S. 516, 519, 110 S.Ct. 1274, 1277-78, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Hatfill v. Foster*, 415 F.Supp.2d 353 (S.D.N.Y. 2006).

Florida utilizes the "most significant relationship" test to determine which state's laws applies to tort claims. *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292 (11th Cir. 2003)(explaining

---

[3]The retainer for the Vaz de Mello family is the only one from which Mr. Guimaraes' name is absent. Neither party has been able to locate page 1 of the retainer agreement for the family of Mauro Rodrigues de Matos. Therefore, it is unclear whether Speiser Krause omitted Mr. Guimaraes' name from that particular agreement.

4

that Florida follows the approach set forth in the Restatement (Second) Conflict of Laws § 145 (1971)[4]); *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233 (11th Cir. 2007(applying the "most significant relationship" test to a claim for tortious interference).

Brazil clearly bears the "most significant relationship" to the tortious interference claim asserted by Speiser Krause.[5] Mr. Guimaraes is a Brazilian lawyer residing in Brazil. The relationship between Mr. Guimaraes and Speiser Krause is centered in Brazil, which is where Speiser Krause and the TAM families retained Mr. Guimaraes to perform legal services in connection with the TAM litigation. Virtually all of the actions allegedly constituting tortious interference occurred in Brazil, and the clients with whom Mr. Guimaraes allegedly interfered are also Brazilian nationals domiciled in Brazil. Thus, both in quantity and quality, there can be no doubt that Brazil has the most significant relationship to the tortious interference claim. Accordingly, the law of Brazil should be applied in determining whether Mr. Guimaraes' actions were indeed wrongful.

        B.        <u>Mr. Guimaraes Had a Legal and Ethical Duty under Brazilian Law to Oppose the Settlements and to Denounce Behavior on the Part of Speiser Krause That He Considered Improper or Illegal</u>

As a Brazilian lawyer, Mr. Guimaraes is bound by the federal Brazilian law that governs attorneys, which is found at LEI N°8.906 - 4 DE JULHO DE 1994 - DOU DE 5/7/94 (hereinafter "LEI N°8.906"), and also by the Brazilian Bar Ethical and Disciplinary Code, known in Brazil as the "Codigo de Etica e Disciplina

---

[4] Section 145 states that "[t]he rights and liability of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties" and that contacts to be taken into account include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."

[5] The Court has also determined that Brazilian law applies to Mr. Guimaraes performance of both the fee-sharing contract with Speiser Krause and the client retainer agreements since "Speiser Krause engaged Guimaraes for services he would perform in Brazil, and the Brazilian families retained him for the same purpose." (Memorandum Decision dated 12/19/06 at p. 17).

Da OAB" (hereinafter, "OAB Code").[6] (Riguera Affd., Ex. "1" (Guimaraes Dec. 7/12/07, ¶ 3)) The full Portuguese text of LEI N°8.906 and the OAB Code is attached to Riguera Affd., Exs. "4" and "6", respectively, along with a certified English translation of the relevant portions cited herein (Exs. "5" and "7", respectively).

> LEI N°8.906 states, in relevant part:
>
>> Article 2 – The attorney is indispensable for the administration of justice.
>> ...
>> § 3rd - In the exercise of his profession, the attorney is inviolable for his acts and manifestations within the limits of this law.
>> ...
>> Article 7th - The following are the rights of an attorney:
>> ...
>> XI - bring a complaint, either verbally or in writing, before any court, tribunal or authority against non-compliance with a precept of a law, regulation or rule;
>> ...
>> § 2nd - The attorney enjoys professional immunity, and any manifestation on his part shall not constitute punishable affront or slander, defamation, or disrespect insofar as the exercise of his activity is concerned, in or out of court, except for disciplinary sanctions that may be imposed by the OAB (Brazilian Bar Association) for any excesses made.

C.  Mr. Guimaraes' Actions in Opposing the Settlements Were Privileged

Under the above-cited Brazilian law, Mr. Guimaraes was legally and ethically obligated to exercise his independent judgment in advising the clients whether they should accept the settlement offers negotiated by Speiser Krause, to oppose the settlements if he considered them to not be in the clients' best interests, and to report any behavior that Mr. Guimaraes considered to be illegal or unethical.

The issues between Speiser Krause and Mr. Guimaraes arose when Speiser Krause presented the settlement offers to the clients in a manner that was objectionable and improper. Riguera Affd. dated 5/31/07, Ex. "13" (G. Lear Dep. 4/23/07, pp. 12, 174, 212) Mr. Guimaraes was present during several of the initial April 2000 client meetings when Speiser Krause told the clients that the case in the United States was lost (which was not accurate), that they had to take or leave the settlement offers (which was untrue since they always had the option of continuing the litigation either in Brazil or in the United States), that if they

---

[6] OAB is an acronym for the Ordem Dos Advogados Do Brasil, which is the Brazilian Bar Association.

did not take the offer they would never receive any money (which was unfounded speculation and also represented an opinion on the merits of the Brazilian proceeding, which Speiser Krause was unqualified to give). Riguera Affd., Ex. "14" (Guimaraes Dep. 11/2/05 p. 77-79; Riguera Affd., Ex. "15" Guimaraes 11/17/05 Dep. p. 61-62); Riguera Affd., Ex. "16" (Freitas Dep. p. 36-37) Both Mr. Guimaraes and the TAM clients were surprised and angered by these statements and by the settlement offers presented by Speiser Krause. Riguera Affd., Ex. "16" (Freitas Dep. p. 34, 38-40)[7]

From those meetings, Guimaraes formed the opinion that Speiser Krause was proceeding against the clients' best interests. Thus, Mr. Guimaraes attempted to persuade Speiser Krause not to continue to recommend the settlements. When those efforts failed, Mr. Guimaraes took further actions he deemed appropriate under Brazilian law to oppose the settlements. Riguera Affd. dated 5/31/07, Ex. "13" (G. Lear Dep. 4/23/07, pp. 5-6)) Approximately two months later, before the settlements had been consummated, the Jabaquara Judgment was entered in Brazil, which awarded the TAM clients sums far in excess of those contained in the settlement offers proposed by Speiser Krause. This result bolstered Mr. Guimaraes' conviction that the settlement offers negotiated by Speiser Krause were unacceptable and contrary to the clients' best interests.

In furtherance of his duties to the TAM clients, Mr. Guimaraes obtained the issuance of a Letter Rogatory by the court in Brazil, and hired counsel in the United States to serve the Letter Rogatory on defendant Northrop Grumman in an effort to obtain much-needed financial support payments to which the families became entitled under the Jabaquara Judgment. (Riguera Affd., Ex. "3" (Doc. No. RG00372-378)) On February 1, 2001, Gerald Lear filed a Declaration opposing Mr. Guimaraes' efforts to obtain financial support payments for the families through the Letters Rogatory procedure. (Riguera Affd., Ex. "3" )Doc. No. RG00379)) Because this was contrary to the interest of the TAM clients (particularly those who had rejected the settlement proposals), Mr. Guimaraes brought criminal charges against Speiser Krause for, *inter*

---

[7]Speiser Krause itself has acknowledged that the reception it received from the families was "very negative." Riguera Affd., Ex. "16" (L. Ballen Dep., p. 184). According to Mr. Ballen,"[t]hey had an obvious predisposition to news they were not yet supposed to have .... [a]rms crossed, looks of frustration." Riguera Affd., Ex. "16" (L. Ballen Dep., p. 184).

*alia*, disloyal legal representation in violation of Brazilian Penal Code Art. 355. (Riguera Affd., Exs. "8"-"9")[8]

In addition to the foregoing, Mr. Guimaraes lodged various complaints against Speiser Krause with civil and regulatory authorities in furtherance of what he considered to be his legal and ethical duty as a Brazilian lawyer. (Riguera Affd., Ex. "1" (Guimaraes Dec. 7/12/07, ¶ 4)) There is no dispute that all of the alleged wrongful actions on the part of Mr. Guimaraes were related to the TAM case and Speiser Krause's handling of the settlement of the case. Under LEI N°8.906 Art. 7 § 2, Mr. Guimaraes enjoyed professional immunity in the exercise of his duties as an attorney, and cannot be subjected to a claim for tortious interference as a result of those actions.[9]

### D.  Mr. Guimaraes Was Fully Exonerated by the OAB of Any Ethical Wrongdoing in Connection with His Opposition to the TAM Settlement Offers

As a result of his opposition to the settlement offers, Mr. Guimaraes was forced to defend a total of four disciplinary actions filed against him in Brazil, in which Mr. Guimaraes was accused of numerous violations, including violation of LEI N°8.906 Art. 34, VII, VIII, IX and XXV, and OAB Code Art. 2, § 2; Art. 7; Art. 44; and Art. 45. (Guimaraes Dec. 7/12/07, ¶ 6). These proceedings were commenced by Sandra Assali (one of Mr. Guimaraes former TAM clients), Luiz Roberto de Arruda Sampaio (a Brazilian lawyer hired by Speiser Krause to replace Mr. Guimaraes in connection with the TAM cases), and Lino Pereira da Silva (another Brazilian lawyer involved in the TAM cases). (Id., ¶ 7) Mr. Guimaraes successfully opposed

---

[8]The investigation into this charge is ongoing. On July 6, 2007, the criminal judge in Jabaquara approved the request of the prosecutor for the First Criminal District in Jabaquara to authorize the police department to further investigate the existence of a possible violation of Art. 355 of the Brazilian Penal Code. (Riguera Affd., Ex. "10"-"11")

[9]Mr. Guimaraes statements to regulatory and law enforcement authorities are similarly protected by a qualified privilege under New York law. *Toker v. Pollak*, 44 N.Y.2d at 222, 405 N.Y.S.2d at 6; *Baldwin v. Shell Oil Co.*, 71 A.D.2d 907, 419 N.Y.S.2d 752 (2d Dep't 1979). These statements are actionable only if plaintiff proves that they were false **and** that defendant was motivated by malice in the sense of ill-will. *Stukuls*, 42 N.Y.2d at 280, 397 N.Y.S.2d at 745. Actual malice requires personal spite or ill will, or culpable recklessness or negligence. *Hoeppner v. Dunkirk Printing Co.*, 254 N.Y. 95, 106 (1930). As explained in section "E" below, there is no proof that Mr. Guimaraes was motivated by ill-will against Speiser Krause. In fact, Speiser Krause has admitted that he was not. Mr. Guimaraes cannot be said to have acted wrongfully if his conduct was privileged, and accordingly summary judgment should be entered on the claim for tortious interference.

these unfounded accusations at both the trial and appellate level before the Sao Paolo State Bar Ethics and Disciplinary Court, which found **unanimously** that Mr. Guimaraes had committed no wrongdoing. (Id., ¶ 8) On March 12, 2007, the Federal Bar Ethics and Disciplinary Court upheld the prior rulings in favor of Mr. Guimaraes on appeal by Sandra Assali, and again fully absolved Mr. Guimaraes of any wrongdoing, this time by a **unanimous vote of 27-0**). (Id.); (Riguera Affd., Ex. "12"-"13") These decisions further establish that Mr. Guimaraes was carrying out his legal and ethical duty as a Brazilian lawyer (as opposed to engaging in some personal vendetta against Speiser Krause) and that he acted appropriately in accordance with Brazilian law.

     E.    <u>Guimaraes Did Not Act Maliciously</u>

Speiser Krause further contends that whether Mr. Guimaraes engaged in the alleged wrongful conduct with the "sole purpose" of harming it is a question of fact. However, all actions taken by Mr. Guimaraes were incident to a lawful purpose; namely, the fulfillment of his legal and ethical duties as a Brazilian lawyer representing the TAM clients. As demonstrated, the actions of which Speiser Krause complains occurred only after Mr. Guimaraes became aware of the insufficient settlement offers and the unacceptable methods employed by Speiser Krause to convince the clients to accepts those offers. Thus, there is ample evidence that Mr. Guimaraes' actions were not "solely" motivated by malice or for the purpose of harming Speiser Krause.

Indeed, Speiser Krause itself has admitted that Mr. Guimaraes was not acting solely out of malice. Leigh Ballen testified in deposition that he did not believe that Mr. Guimaraes intended to harm anyone, and that he believed he was acting in the best interests of the families. (Riguera Affd. dated 5/31/07, Ex. "17" (L. Ballen Dep. pp. 240-241)) This admission alone is dispositive on this issue. Speiser Krause asks the Court to disregard the sworn testimony of its own witness, suggesting that "subjective opinions" must be weighed against the "contrary evidence" of allegedly "malicious methods" employed by Mr. Guimaraes. (Opposition Memorandum at p. 19). However, as previously stated, Speiser Krause cannot contradict its own prior sworn testimony to create a feigned issue of fact in an effort to defeat a properly supported motion for summary judgment. *Hayes,* 84 F.3d at 619; *Rosoff,* 317 F. Supp.2d at 502. Thus, there is no "contrary

evidence" to weigh against Speiser Krause's admission concerning the absence of malice on the part of Mr. Guimaraes, and there is no triable issue of fact.

## CONCLUSION

For all of the foregoing reasons and citations of authority, Plaintiff's Motion for Summary Judgment should be granted.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document has been electronically filed and a true and correct copy of the foregoing was also sent via Federal Express, this 13th day of July, 2007, to:

William J. Apuzzo, Esq.
Apuzzo & Chase, LLC
800 Third Avenue, Suite 800
New York, NY 10022

>**BERMAN, KEAN & RIGUERA, P.A.**
>2101 W. Commercial Blvd.
>Suite 2800
>Fort Lauderdale, FL 33309
>Telephone: (954) 735-0000
>Facsimile: (954) 735-3636
>
>By: /s/ Jose R. Riguera
>    Richard E. Berman
>    RB2715
>    Jose R. Riguera
>    Florida Bar No.: 860905 (Admitted *pro hac vice*)

\\Server-MS\REBData\Guimaraes, Renato\1147-001\Style\27317_3.wpd

10