UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)
THE HONORABLE DENNY CHIN

RENATO GUIMARAES, JR.,

       Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN & GRANITO, a
professional corporation f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,

       Defendant.

_____/

## AFFIDAVIT OF JOSE R. RIGUERA

**STATE OF FLORIDA**         )
**COUNTY OF BROWARD**     )     **ss.:**

Jose R. Riguera, being duly sworn, deposes and says:

1.     I am an attorney duly admitted to practice law in the State of Florida, and authorized to appear *pro hac vice* in this action by Order of this Court. I am a partner at Berman, Kean & Riguera, P.A., attorneys for the Plaintiff, Renato Guimaraes ("Guimaraes"), in this matter. I submit this affidavit in support of the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment.

2.     Annexed hereto as Exhibit "1" is the sworn Declaration of Renato Guimaraes, Jr. dated July 12, 2007.

3.     Annexed hereto as Exhibit "2" is the Complaint (with Exhibits) filed by Renato Guimaraes on November 19, 2004, in a lawsuit styled Renato Guimaraes, Jr. v. Speiser, Krause, Nolan & Granito, Case No. 04-22927 in the United States District Court for the Southern District of Florida.

4.    Annexed hereto as Exhibit "3" are relevant documents produced by Renato Guimaraes and Speiser Krause in response to discovery requests in this action.

5.    Annexed hereto as Exhibit "4" is the full Portuguese text of "LEI N○8.906 - 4 DE JULHO DE 1994 - DOU DE 5/7/94" (LAW No. 8,906 OF JULY 4, 1994).

6.    Annexed hereto as Exhibit "5" is a certified English translation of the relevant portions of "LEI N○8.906 - 4 DE JULHO DE 1994 - DOU DE 5/7/94" (LAW No. 8,906 OF JULY 4, 1994) cited in the Reply Memorandum.

7.    Annexed hereto as Exhibit "6" is the full Portuguese text of  the "Codigo de Etica e Disciplina Da OAB" (the Brazilian Bar Ethical and Disciplinary Code).

8.    Annexed hereto as Exhibit "7" is a certified English translation of the relevant portions of the "Codigo de Etica e Disciplina Da OAB" (the Brazilian Bar Ethical and Disciplinary Code) cited in the Reply Memorandum.

9.    Annexed hereto as Exhibit "8" is the full Portuguese text of "Codigo Penal Brasil," Art. 355 (Brazilian Penal Code, Art. 355).

10.   Annexed hereto as Exhibit "9" is a certified English translation of "Codigo Penal Brasil," Art. 355 (Brazilian Penal Code, Art. 355).

11.   Annexed hereto as Exhibit "10" is the full Portuguese text of the "Certidao de Departamento de Policia Judiciaria da Capital" (Certificate from Department of Police) dated July 6, 2007.

12.   Annexed hereto as Exhibit "11" is a certified English translation of the "Certidao de Departamento de Policia Judiciaria da Capital" (Certificate from Department of Police) dated July 6, 2007.

13.   Annexed hereto as Exhibit "12" is the full Portuguese text of the "Relatorio de Ordem dos

Advogados do Brasil" (Report from Brazilian Bar Association") dated March 12, 2007.

14.    Annexed hereto as Exhibit "13" is a certified English translation of the "Relatorio de Ordem

dos Advogados do Brasil" (Report from Brazilian Bar Association") dated March 12, 2007.

15.    Annexed hereto as Exhibit "14" are relevant excerpts from the transcript of the deposition

of Renato Guimaraes taken on November 2, 2005.

16.    Annexed hereto as Exhibit "15" are relevant excerpts from the transcript of the deposition

of Renato Guimaraes taken on November 17, 2005.

17.    Annexed hereto as Exhibit "16" are relevant excerpts from the transcript of the deposition

of Dr. Elzoires Freitas taken on June 27, 2006.

18.    Submitted along with the Reply Memorandum of Law in Support of Plaintiff's Motion for

Summary Judgment is Plaintiff's Reply to Defendant's Statement Pursuant to Local Civil

Rule 56.1.

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

WHEREFORE, your deponent respectfully requests an order granting Plaintiff's

Motion for Summary Judgment, and for such other and further relief as this Court deems

just and proper.

***FURTHER AFFIANT SAYETH NOT.***

_____
Jose R. Riguera
(Fla. Bar No. 860905 - admitted *pro hac vice*)

SWORN TO BEFORE ME, this 13th day of July, 2007.

_____
Notary Public - State of Florida

_____
Print Name of Notary

DEANNE L. FERRESE
MY COMMISSION # DD 444265
EXPIRES: July 8, 2009
Bonded Thru Notary Public Underwriters

Seal:

Personally Known ____✓____ or Produced Identification _____
Type of Identification Produced _____

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-CV-2210(DC)
THE HONORABLE DENNY CHIN

RENATO GUIMARAES, JR.,

       Plaintiff,

vs.

SPEISER, KRAUSE, NOLAN &
GRANITO, a professional corporation f/k/a
SPEISER, KRAUSE, MADOLE & LEAR, a
professional corporation,

       Defendant.

_____/

### DECLARATION OF RENATO GUIMARAES, JR.

Pursuant to 28 U.S.C. 1746, Renato Guimaraes, Jr. attests:

1.     My name is Renato Guimaraes, Jr.  I am an attorney in Brazil and the Plaintiff in this

action.

2.     I am over the age of 18 and make this declaration based upon my personal knowledge.

3.     As a Brazilian lawyer, I am bound by the federal Brazilian law that governs attorneys,

which is found at LEI N°8.906 - 4 DE JULHO DE 1994 - DOU DE 5/7/94 (hereinafter

"LEI N°8.906"), and also by the Brazilian Bar Ethical and Disciplinary Code, known in

Brazil as the "Codigo de Etica e Disciplina Da OAB." (hereinafter, "OAB Code").  The

full Portuguese text of LEI N°8.906 and the OAB Code is attached to Riguera Affd., Exs.

"4" and "6", respectively, along with a certified English translation of the relevant

portions cited herein (Exs. "5" and "7," respectively).

4.     Under the above-cited Brazilian law, I was legally and ethically obligated to exercise my



Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

independent judgment in advising the clients whether they should accept the settlement

offers negotiated by Speiser Krause, to oppose the settlements if I considered them to not

be in the clients' best interests, and to report any behavior on the part of Speiser Krause

or anyone else that I considered to be illegal or unethical.

5.     In furtherance of my legal and ethical duties as described above, I filed various

complaints against Speiser Krause with the appropriate civil, criminal and regulatory

authorities in Brazil.

6.     As a result of my opposition to the settlement offers negotiated by Speiser Krause, I was

named as a respondent in a total of four disciplinary actions filed in Brazil, in which I was

accused of numerous violations, including violation of LEI N°8.906 Art. 34, VII, VIII, IX

and XXV, and OAB Code Art. 2, § 2; Art. 7; Art. 44; and Art. 45.

7.     These proceedings were commenced by Sandra Assali (one of my former TAM clients),

Luiz Roberto de Arruda Sampaio (a Brazilian lawyer hired by Speiser Krause to replace

me in connection with the TAM cases), and Lino Pereira da Silva (another Brazilian

lawyer involved in the TAM cases).

8.     I successfully opposed these unfounded accusations at both the trial and appellate level

before the Sao Paolo State Bar Ethics and Disciplinary Court, which found unanimously

that I Guimaraes had committed no wrongdoing.  On March 12, 2007, the Federal Bar

Ethics and Disciplinary Court upheld the prior rulings in favor of Mr. Guimaraes on

appeal by Sandra Assali, and again fully absolved me of any wrongdoing, this time by a

unanimous vote of 27-0).

Guimaraes v. Speiser Krause
Case No.: 05-CV-2210(DC)

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

*Renato Guimaraes Jr.*

Renato Guimaraes, Jr.

Date: *July 11, 2007.*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**04 - 22927**

MIAMI DIVISION

RENATO GUIMARAES, JR., an individual,          CASE NO.

      Plaintiff,                                                    **CIV-KING**

vs.

SPEISER, KRAUSE, NOLAN & GRANITO,
a professional corporation, f/k/a SPEISER,
KRAUSE, MADOLE & LEAR, a professional
corporation,

      Defendant.

MAGISTRATE JUDGE
O'SULLIVAN



_____/

### COMPLAINT

    Plaintiff, RENATO GUIMARAES, JR. ("Guimaraes"), an individual, by and through his

undersigned counsel, sues Defendant, SPEISER, KRAUSE, NOLAN & GRANITO, a professional

corporation, f/k/a SPEISER, KRAUSE, MADOLE & LEAR ("Speiser Krause"), and alleges as

follows:

### Parties, Jurisdiction and Venue

1.    Plaintiff, Guimaraes, is an individual over the age of eighteen who is a citizen of Brazil.

Guimaraes is an attorney in Brazil.

2.    Defendant, Speiser Krause is a professional corporation engaged in the practice of law in the

State of Florida with an office in Miami, Florida.  Speiser Krause professes to have expertise and

extensive experience in the litigation of aircraft crash disasters, including but not limited to foreign

aircraft crash disasters.



3.    This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332



EXHIBIT

**2**

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between a citizen of a State and a citizen or subject of a foreign state.

4.      This Court has personal jurisdiction over Defendant, Speiser Krause pursuant to the Florida

Long-Arm Statute, §48.193(1)(a), Florida Statutes because at all times material to this action Speiser

Krause was operating, conducting, engaging in, or carrying on a business or business venture in this

state or had an office or agency in this state.  Specifically, Speiser Krause conducted business in

Florida through its licensed attorneys practicing from its Miami, Florida office.

5.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because

jurisdiction of this action is founded only on diversity of citizenship and Defendant, Speiser Krause,

resides in this judicial district.

## General Allegations

6.      On October 31, 1996, an aircraft operated by Transportes Aereos Regionais, S.A. Airlines

("TAM")  departing from Sao Paulo, Brazil, and bound for Rio de Janeiro, Brazil, crashed

approximately 24 seconds after take-off, killing 99 people.  This event is hereinafter referred to as

the "TAM air disaster."

7.      The aircraft was manufactured by Fokker, B.V. ("Fokker"), and included as a component part

a thrust reverser manufactured by Northrop Grumman Corporation ("Northrop") in the State of

Florida.  Investigating authorities determined that the crash resulted from the improper opening of

the thrust reverser on take-off, which in turn reduced the amount of thrust to a level below that

needed for a successful take-off.  TAM, Fokker, and Northrop are collectively referred to herein as

2

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

"the underlying defendants."

8.      Guimaraes, who is a distinguished attorney in Brazil, contacted Speiser Krause on behalf of several families of victims who died in the TAM air disaster, for the purpose of associating with Speiser Krause in pursuing litigation in the United States against parties other than TAM who could be legally responsible for the TAM air disaster including, without limitation, Northrop and Fokker.

9.      During December 1996, Guimaraes and his son attended a two-day meeting in Key Largo, Florida, at the home of Arthur E. Ballen, Esq., an attorney employed by Speiser Krause. During said meeting, Guimaraes and Mr. Ballen (on behalf of Speiser Krause) discussed in detail the possibility of a fee-sharing arrangement between Guimaraes and Speiser Krause in connection with the legal representation of the families of victims of the TAM air disaster. During this extensive meeting, Guimaraes and Speiser Krause reached an understanding with regard to the parties' respective responsibilities in representing the families under the fee-sharing arrangement. Furthermore, the parties discussed the fees to be charged by Speiser Krause and Guimaraes in connection with said representation.

10.     Pursuant to the foregoing understanding, Guimaraes returned to Brazil and immediately began signing up clients in accordance with the fee-sharing agreement discussed by the parties.

11.     On February 5, 1997, Gerard R. Lear, Esq., another attorney with Speiser Krause, faxed a letter to Guimaraes in Brazil ratifying the agreement reached between Guimaraes and Speiser Krause during the Key Largo, Florida meeting and confirming that Speiser Krause would be entitled to a contingent fee of 33 1/3% for the handling of each such case, and further that Guimaraes would be

3

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

---

paid 25% of any such fee received by Speiser Krause. A copy of Speiser Krause's February 5, 1997

letter is attached hereto and incorporated herein by reference as Exhibit "1."

12.    Pursuant to the parties' agreement, Guimaraes' responsibilities were to include acting as a

liaison with the families of the victims in Brazil, translating legal documents, explaining legal

strategies to the families and their direct, individual and referral attorneys in Brazil, assisting in

gathering any facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian

press on legal matters relating to the crash, and handling any collateral legal proceedings in Brazil

required to support the United States litigation that Speiser Krause would prosecute.

13.    The parties agreed that Speiser Krause would handle the primary litigation against Northrop

and other responsible parties in an action to be filed by Speiser Krause in Orange County, California,

and that Guimaraes would handle any ancillary litigation to be filed in Brazil to support the main

case in the United States.

14.    On May 23, 1997, Guimaraes and Speiser Krause augmented their contract with a further

written agreement stating that attorneys referring additional families of TAM air disaster victims to

Speiser Krause would be compensated by payment of 10% of the net attorney fees. Guimaraes and

Speiser Krause agreed that although said 10% referral fee was to be calculated on the overall attorney

fee, it was to come out of Speiser Krause's share of the fees. A copy of Speiser Krause's May 23,

1997, letter confirming this additional agreement is attached hereto and incorporated herein by

reference as Exhibit "2."

15.    Pursuant to foregoing agreement, beginning in March, 1997, and continuing throughout 1997,

4

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

Guimaraes and Speiser Krause obtained Retainer Agreements from a total of sixty-five (65) families

of the victims of the TAM air disaster, said families to be represented jointly by Guimaraes and

Speiser Krause in accordance with the fee-sharing agreement.

16.    These Retainer Agreements originally listed Speiser Krause and Guimaraes as co-counsel

for the litigation at the agreed rate of 33 1/3%. However, at Speiser Krause's insistence, and in order

to meet competition from other attorneys seeking to represent families of the victims of the crash,

Guimaraes and Speiser Krause subsequently began signing up clients at a reduced fee of 25%.

17.    Ultimately, on August 11, 1997, Guimaraes and Speiser Krause reduced the overall attorney

fee from 33-1/3% to 25% for all clients. A copy of the Speiser Krause letter notifying the clients of

this reduction is attached hereto and incorporated herein by reference as Exhibit "3."

18.    Despite this reduction in the overall attorney's fee, Guimaraes and Speiser Krause did not

effect any change in the allocation of the fee between themselves. Therefore, Guimaraes was at all

times entitled to receive 25% of any attorney's fee received by Speiser Krause in connection with

the representation of families of the victims of the TAM air disaster.

19.    Speiser Krause eventually initiated litigation against Northrop and others in the Orange

County Superior Court for all the families who had signed Retainer Agreements, except for one

family, Berliner, which sued only in New York.

20.    Sixty-three cases were consolidated with the lead case, Andrews, et al. v. Northrop Grumman

Corp., Case No. 783990. However, the Court in the Orange County case stayed all of those cases

except the Andrews case itself on grounds of *forum non conveniens*, and ordered the plaintiffs to file

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

their actions in Brazil. The Court ruled that the cases would only proceed in California if the Brazilian court declined jurisdiction or if Northrop did not litigate as a good faith defender according to the Brazilian law and judicial decisions.

21.    Following the stay of the Orange County action, and with Guimaraes as lead counsel, the families who had signed Retainer Agreements with Guimaraes and Speiser Krause filed suit against Northrop and others in the 2nd Civil Court of Regional Court III in Sao Paulo as Case No. 1,509/98. The Brazilian court accepted jurisdiction and that case was litigated in that jurisdiction by Guimaraes, with no involvement by Speiser Krause.

22.    In April, 2000, approximately two months before judgment was rendered by the Brazilian court, Speiser Krause reached a global settlement (the "Global Settlement") with the underlying defendants for all cases except Andrews and Berliner in the total amount of $40,402,778, subject to each family signing formal settlement documentation and obtaining the necessary approvals from the Brazilian courts. Speiser Krause allocated the total amount of the settlement among the settling families.

23.    In addition, the Andrews case settled separately in 2001 for $6,500,000, and the Berliner case settled separately with Fokker, B.V. only for approximately $3,000,000.

24.    On June 30, 2000, the Brazilian court rendered a judgment in the case filed there (the "Brazilian Judgment"). At then current exchange rates, the Brazilian court awarded each family $1,111,111.11, plus 2/3 of the last annual salary earned by each decedent from the date of the accident until that decedent would have been 65, plus a 20% contempt of court penalty against

6

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

Northrop for failing to post a bond that the Court had required, plus another 20% for attorneys fees. The total value of the Brazilian Judgment at then current exchange rates was over $100,000,000.

25.    Despite the issuance of the Brazilian Judgment, and contrary to the advice of Guimaraes, many of the families jointly represented by Guimaraes and Speiser Krause elected to accept the Global Settlement and have been paid the share of the settlement that Speiser Krause allocated.

26.    All conditions to the institution of this action have been performed, excused, or waived.

27.    Guimaraes has retained the undersigned law firm and is obligated to pay said firm a reasonable fee for its services.

## COUNT I
## Breach of Contract

28.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

29.    Guimaraes performed all obligations on his part to be performed in connection with the fee-sharing agreement with Speiser Krause.  Specifically, Guimaraes provided liaison services as necessary during the process of procuring Retainer Agreements from the families and prosecution of the case in the United States, and Guimaraes prosecuted the case in Brazil when Speiser Krause lost the *forum non conveniens* motion in California.  Guimaraes was instrumental in the result obtained, as the prosecution of the case in Brazil, in which he acted as lead counsel, enabled Speiser Krause to reach the Global Settlement.  Accordingly, Guimaraes has earned his 25% share of the overall 25% attorney fee paid to Speiser Krause as to all families who have accepted the Global Settlement.

7

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

30.    Guimaraes has repeatedly demanded payment from Speiser Krause of his share of the attorney's fee for the cases that have settled.

31.    Speiser Krause has breached its obligation under the fee-sharing agreement by failing and refusing to pay Guimaraes his share of the attorneys fee.

32.    In further breach of the agreement, and as a means of justifying or supporting its non-payment to Guimaraes, Speiser Krause unilaterally revised the first page of the Retainer Agreement of several clients who executed the 25% fee Retainer Agreements by deleting any reference to Guimaraes as co-counsel. Thus, some Retainer Agreements reflect Guimaraes and Speiser Krause as co-counsel with a 33-1/3% fee, while others reflect only Speiser Krause as counsel at a 25% fee. At least one Retainer Agreement reflects Guimaraes and Speiser Krause as co-counsel with the fee changed by hand from 33-1/3% to 25%.

33.    Guimaraes has been damaged as a direct and proximate result of Speiser Krause's breach of the agreement. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

## COUNT II
## Quantum Meruit

8

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

---

34.      Guimaraes realleges herein the allegations set forth in paragraphs 1 through 10 and 15 through 27 above as if fully set forth herein.

35.      In or about December 1996, Speiser Krause requested that Guimaraes assist it in representing the families of victims of the TAM air disaster by acting as a liaison with the families of the victims in Brazil, translating legal documents, explaining legal strategies to the families and their direct, individual and referral attorneys in Brazil, assisting in gathering any facts or documents in Brazil necessary for the litigation, interfacing with the Brazilian press on legal matters relating to the crash, and handling any collateral legal proceedings in Brazil required to support the United States litigation that Speiser Krause would prosecute.

36.      Guimaraes has performed legal services on behalf of the families of the victims of the TAM air disaster as requested by Speiser Krause and the clients.

37.      Speiser Krause and the clients jointly represented by Guimaraes and Speiser Krause substantially and materially benefitted from the services which Guimaraes performed on their behalf and at their request.

38.      Guimaraes' services as described herein were constantly rendered over an extended period of time.

39.      Speiser Krause impliedly promised to pay Guimaraes the reasonable value of the services rendered by Guimaraes in connection with the representation of the clients.

40.      Guimaraes has been damaged as a direct and proximate result of Speiser Krause's actions. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25%

of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000

Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

41.    Speiser Krause will be unjustly enriched at Guimaraes' expense if Speiser Krause is not

required to pay Guimaraes the reasonable value of the services described herein.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause

for compensatory damages in excess of $75,000, pre and post judgment interest, and court costs,

together with such other and further relief as to the Court may seem just and proper.

## COUNT III
## Unjust Enrichment

42.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if

fully set forth herein.

43.    Guimaraes conferred a benefit upon Speiser Krause by performing the legal services on

behalf of the families of the victims of the TAM air disaster as described herein.

44.    Speiser Krause appreciated the benefit conferred upon it by Guimaraes.

45.    Speiser Krause's acceptance of the services performed by Guimaraes without compensating

Guimaraes would be inequitable under the circumstances.

46.    Guimaraes has been damaged as a direct and proximate result of Speiser Krause's actions.

The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess

of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25%

of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

47.    Speiser Krause will be unjustly enriched at Guimaraes' expense if Speiser Krause is not required to pay Guimaraes the reasonable value of the services described herein.

## COUNT IV
### Constructive Trust Based on Breach of Fiduciary Duties

48.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

49.    In accepting the proceeds of the settlements into its trust account or into an escrow account under its control, Speiser Krause undertook fiduciary duties in the handling of those funds to all who were entitled to a share of those funds.  Speiser Krause's fiduciary duties included the duty to properly disburse those funds or instruct the escrow agent to disburse those funds to the clients and to co-counsel in accordance with  the contractual arrangements in place pursuant to the original Retainer Agreements and the February 5, 1997, and May 23, 1997 letters described above.

50.    Speiser Krause breached its fiduciary duty to disburse the funds in accordance with those arrangements by failing and refusing to pay Guimaraes his share of the attorney fee for each family's settlement, and instead keeping Guimaraes' share of the attorneys fee for itself.

51.    As a direct and proximate result of Speiser Krause's breach of its fiduciary duties as described above, Speiser Krause holds Guimaraes' share of the fee for each settlement as a constructive trustee, and is obligated to pay over those fees to Guimaraes. Guimaraes is entitled to 25% of any fees collected by Speiser Krause on those settlements.

52.    The acts of Speiser Krause as described herein were done with malice, oppression, fraud and

11

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

ill will toward Guimaraes, with the intent to vex, injure and annoy Guimaraes, and with a conscious

disregard of Guimaraes's rights.

53.    Guimaraes has been damaged as a direct and proximate result of Speiser Krause's breach of

its fiduciary duties. The damages suffered by Guimaraes representing his 25% share of the attorneys

fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing

6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the

$6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause

for compensatory damages in excess of $75,000, punitive damages, pre and post judgment interest,

and court costs, together with such other and further relief as to the Court may seem just and proper.

### COUNT V
### Conversion

54.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if

fully set forth herein.

55.    Pursuant to the contractual arrangements and the settlements described above, Speiser Krause

acted on behalf of Guimaraes in collecting Guimaraes' portion of the attorney fee due as a result of

the settlement funds paid by or on behalf of the underlying defendants.    Speiser Krause's

responsibilities included collecting the overall attorney fee out of the specific settlement funds

received and remitting Guimaraes' share of those specific funds to Guimaraes.

56.    Within the last four years, Speiser Krause collected attorney fees on all settlements funded

by or on behalf of the underlying defendants.

12

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

57.    Guimaraes has demanded payment of his 25% share of the attorney fee that Speiser Krause has received on settlement funds collected for the TAM air disaster victims, but Speiser Krause has failed and refused, and continues to fail and refuse, to pay Guimaraes his share of the attorney fee derived from these settlement funds.

58.    Speiser Krause has intentionally concealed from Guimaraes the identities of the specific families for whom Speiser Krause has collected settlement funds, the exact amounts collected, and the dates on which those funds were collected and on which the fees paid on those collected settlement amounts were disbursed, all with the intent of depriving Guimaraes of his fee and the information on which to base collection of his fee. Speiser Krause has repeatedly denied Guimaraes' requests for information concerning the settlements. To prevent Guimaraes from learning that information, Speiser Krause has circumvented plaintiff by retaining separate counsel in Brazil to secure the necessary court approvals of the settlements. That attorney has gone as far as issuing a death threat to plaintiff to bar plaintiff from obtaining information concerning the specifics of which settlements funded and when.

59.    Speiser Krause has converted the funds belonging to Guimaraes for its own use and benefit.

60.    Guimaraes has been damaged as a direct and proximate result of Speiser Krause's conversion of Guimaraes' funds. The damages suffered by Guimaraes representing his 25% share of the attorneys fee are in excess of the jurisdiction of this Court, and potentially as high as $3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner settlement.

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

61.    The acts of Speiser Krause as described herein were done with malice, oppression, fraud and ill will toward Guimaraes, with the intent to vex, injure and annoy Guimaraes, and with a conscious disregard of Guimaraes's rights.

WHEREFORE, Plaintiff, Guimaraes demands judgment against Defendant, Speiser Krause for compensatory damages in excess of $75,000, punitive damages, pre and post judgment interest, and court costs, together with such other and further relief as to the Court may seem just and proper.

### COUNT VI
### Accounting

62.    Guimaraes realleges herein the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

63.    At all times mentioned herein, by reason of its undertaking pursuant to the fee-sharing agreement and promises described above to collect the settlement funds and to receive the overall attorney fees and disburse plaintiff's share to Guimaraes, Speiser Krause was and is obligated as a fiduciary and otherwise to provide accountings to Guimaraes of the settlements that have been funded, the costs deducted before calculation of the fees, the amount of the fees, and the amount of Guimaraes' share of the fees, and to pay that share of the fees to Guimaraes.

64.    Within the last four years, settlements negotiated by Speiser Krause for families of the victims of the TAM air disaster have been approved and funded, and defendant has calculated and disbursed the costs and attorney fees that have come due as a result of those settlements. The calculation of the amount due is so complicated as to make an ordinary legal action demanding a fixed sum impracticable, in that the total settlement amount of $40,402,778 must be allocated to

14

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

---

individual families or claimants, only those families or claimants who have obtained court approval

in Brazil may receive settlement funds, litigation costs must be deducted from each recipient's share,

the attorney fee must be calculated on that share, and then plaintiff's 25% of the attorney fee must

be calculated.  Guimaraes does not have access to much of the information necessary to perform

these calculations, which is in the sole possession of Speiser Krause.

65.     Because of the complicated calculation necessary to determine the amount owed to

Guimaraes, Speiser Krause's sole possession of the information needed for that determination, and

Speiser Krause's undertaking of the fiduciary obligation to disburse the funds to those entitled,

including the attorneys, Guimaraes does not know the exact amount of money due to him from

Speiser Krause, and that sum cannot be ascertained without an accounting by Speiser Krause of the

settlements that have funded and the costs and attorney fees thereon.  Guimaraes is informed and

believes that the amount owed exceeds the jurisdictional limit of this Court and could be as high as

$3,118,924, representing 6.25% (or 25% of the 25% attorneys fee) on the $40,402,778 Global

Settlement, plus 6.25% of the $6,500,000 Andrews settlement, and 6.25% of the $3,000,000 Berliner

settlement.

66.     Guimaraes has demanded that Speiser Krause account to Guimaraes for the settlements

funded and for Guimaraes' share of attorney fees on those settlements.  Speiser Krause has refused,

and continues to refuse, to render the accounting and to pay Guimaraes his share of the attorney fees.

WHEREFORE, Plaintiff, Guimaraes demands judgment for an accounting of the attorney

fees owed to him by Speiser Krause on the settlements by families of victims of the TAM air disaster

*Renato Guimaraes v. Speiser Krause*
*Case No.:*

which have funded, and for payment over to Guimaraes of the amount determined to be owed by that

accounting, pre and post judgment interest, and court costs, together with such other and further

relief as to the Court may seem just and proper.

## DEMAND FOR JURY TRIAL

Guimaraes demands a trial by jury on all issues triable by a jury.

DATED, this  17  day of November, 2004.

**BERMAN, KEAN & RIGUERA, P.A.**
2101 W. Commercial Blvd.
Suite 4100
Fort Lauderdale, FL 33309
Telephone: (954) 735-0000
Facsimile: (954) 735-3636

By:_____
Richard E. Berman
Florida Bar No.: 254908
Jose R. Riguera
Florida Bar No.: 860905

\\server-01\rebdata\Guimaraes, Renato\1147-001\Style\2879.wpd

16

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011   FAX (212) 983-0483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1380
IRVINE, CALIFORNIA 92714
(714) 553-1421   FAX (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2438
(972) 404-1401   FAX (972) 404-8797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-8400   FAX (305) 375-0337

February 5, 1997

**VIA FACSIMILE 011 55 19 239 4495** .

Renato Guimarães, Esq.
Campinas, Brazil

RE:   TAM Fokker 100 accident in Sao Paulo, Brazil on October 31, 1996

Dear Mr. Guimarães:

I would like to confirm the proposed arrangement between our firm and the families of the victims of the TAM Fokker disaster of October 31, 1996. Our firm will charge the sum of 33 1/3% for the handling of each such case. Of this fee, a total of 25% will be paid to Brazilian counsel for their services.

We look forward to once again working actively with your office.

Sincerely,

SPEISER, KRAUSE, MADOLE & LEAR

GERARD R. LEAR

/js



EXHIBIT
I

## SPEISER, KRAUSE, MADOLE & NOLAN

LAW OFFICES

METROPOLITAN WASHINGTON, D.C. OFFICE
SPEISER, KRAUSE, MADOLE & LEAR
300 NORTH SEVENTEENTH STREET
SUITE 3*0
ROSSLYN, VIRGINIA 22209
(703) 521-7300
FAX. (703) 521-7306

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1000
IRVINE, CALIFORNIA 92714
(714) 553-1441
FAX (714) 553-1340

TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET
34TH FLOOR
NEW YORK, NEW YORK 10017

(212) 661-0011
FAX: (212) 973-8463

TEXAS OFFICE
SPEISER, KRAUSE, MADOLE & VERO LESE
300 CONVENT STREET, SUITE 2090
SAN ANTONIO, TEXAS 78205-3796
(210) 230-8300
FAX. (210) 230-8313

May 23, 1997



6.ª Oficial de Registro de Títulos e Documentos
e Civil de Pessoa Jurídica

Cópia arquivada
em Microfilme
sob N.º 906285

Dr. Renato Guimaraes, Jr.
Campinas,
Sao Paulo, Brazil

RE:    T.A.M. Accident - Case against Northrop Grumman

Dear Dr. Guimaraes:

This is to confirm our agreement that all participating attorneys who refer cases to us shall receive 10% of the net attorney fee.

You are authorized to tell the referring attorneys of this arrangement and our firm stands behind this commitment.

Most cordially yours,

ARTHUR E. BALLEN

AEB/rp

VIA FAX (To Maksoud Hotel - 011-55-11-253-4544)



EXHIBIT
2

NEW YORK OFFICE
SPEISER, KRAUSE, MADDLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011  FAX: (212) 953-6483

CALIFORNIA OFFICE
SPEISER, KRAUSE, MADDLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714-8520
(714) 553-1421  FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7500
FAX: (703) 522-7905

TEXAS OFFICE
SPEISER, KRAUSE & MADDLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401  FAX: (972) 404-9797

FLORIDA OFFICE
SPEISER, KRAUSE & MADDLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400  FAX: (305) 375-0337

August 11, 1997

TO:    All Clients - T.A M Accident of 10/31/96

The following is hereby implemented as a change to our retainer agreement:

1.    The contingent legal fee has been lowered from **THIRTY-THREE AND ONE-THIRD PERCENT TO TWENTY-FIVE PERCENT.**

2.    There are no costs whatsoever to client if the case is not successful.

3.    The costs are limited to TWO PERCENT (2%) in the event the case is settled at the claims stage and there is a THREE PERCENT (3%) cap (maximum) if a trial has began.

4.    The deduction for costs comes off the gross settlement before attorney fees are paid.



EXHIBIT
3

JS 44
(Rev. 12/96)

**04-22927**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV-KING**

**I. (a) PLAINTIFFS**

RENATO GUIMARAES, JR., an individual

**DEFENDANTS**

SPEISER, KRAUSE. NOLAN & GRANITO, a professional corporation , f/k/a KRAUSE, MADOLE & LEAR, A professional corporation

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

(EXCEPT IN U.S. PLAINTIFF CASES)

04cv 22927 (KING) O'Sullivan

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES. USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME ADDRESS, AND TELEPHONE NUMBER) 954-735-0000

BERMAN, KEAN & RIGUERA, PA
2101 W. Commercial Blvd., #4100
Ft. Lauderdale Fl 33309

ATTORNEYS (IF KNOWN)

*MAGISTRATE JUDGE*
*O'SULLIVAN*

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:    DADE,    MONROE,    BROWARD,    PALM BEACH,    MARTIN,    ST. LUCIE,    INDIAN RIVER,    OKEECHOBEE    HIGHLANDS

| II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF (For Diversity Cases Only) AND ONE BOX FOR DEFENDANT |
|---|---|

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a ☐ 3 Foreign Country | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN**    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
Appeal to District Judge from ☐ 7 Magistrate Judgment

FILED by INTAKE    D.C.
NOV 19 2004

**V. NATURE OF SUIT**    (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 CLERK U S DIST CT S D OF FLA · MIAMI | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | **PERSONAL INJURY** ☐ 362 Personal Injury — Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability | | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers Liability ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability ☐ 371 Truth in Lending | **A LABOR** | **B SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| X☐ 190 Other Contract | ☐ 360 Other Personal Injury ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| B☐ 220 Foreclosure | ☐ 442 Employment **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations A☐ 530 General | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare A☐ 535 Death Penalty | ☐ 791 Empl. Ret Inc Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | A OR B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights B☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | A☐ 550 Civil Rights B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION**    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. §1332

LENGTH OF TRIAL
via _7_ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**    CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23    DEMAND $ 3,118,924    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES    ☐ NO

**VIII. RELATED CASE(S) IF ANY**    (See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE    11/17/2004    SIGNATURE OF ATTORNEY OF RECORD    *(signature)*    $150.00    911044

**FOR OFFICE USE ONLY**    11/19/04

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

1   Dennis J. Seider, Esq.
    State Bar No. 41787

2   11755 Wilshire Blvd., 15th Floor
    Los Angeles, California 90025-1506

3   (310) 477-9081

4   Jeffrey M. Herman, Esq. (Florida Bar No. 521647)
    Stuart S. Mermelstein, Esq. (Florida Bar No. 947245)

5   Herman & Mermelstein, P.A.
    100 Southeast 2nd Street, Suite 2600

6   Miami, Florida 33131
    (305) 377-2200

7

8   Attorneys for Certain Foreign Plaintiffs

9

10

11           SUPERIOR COURT FOR THE STATE OF CALIFORNIA

12                 FOR THE COUNTY OF ORANGE

13

14   LINDA ANDREWS, individually and)   Case No. 783990
    as Representative of the Estate)   AND CONSOLIDATED CASES

15   of David Andrews, deceased, JILL)
    ANDREWS, individually,        )   [The Honorable William F.

16                         )   McDonald]

17           Plaintiffs,     )
                        )   ORIGINAL DECLARATION OF

18      v.                   )   RENATO GUIMARAES IN SUPPORT
                        )   OF    CERTAIN    FOREIGN

19   NORTHROP GRUMMAN CORPORATION,)   PLAINTIFFS'   MOTION   FOR
    TELEFLEX   CONTROL   SYSTEMS,)   ENFORCEMENT   OF   FOREIGN

20   INCORPORATED, and DOES 1 through)   (BRAZILIAN) JUDGMENT
    10, inclusive,              )

21                        )   Date:    April 18, 2001
          Defendants.     )   Time:    1:30 p.m.

22   ————————————————————)   Dept:    C41

23   AND   CASES   CONSOLIDATED   FOR)   Complaint Filed:   9/9/97
    LIABILITY PURPOSES ONLY       )   Trial Date:      None

24   ————————————————————)

25

26   ///

27   ///

28   ///



EXHIBIT
3
ALL-STATE LEGAL®

SK   001927

1

## DECLARATION OF RENATO GUIMARAES

2      1.      I represent 65 families in all matters involving the crash of TAM Flight

3  402.

4      2.      As their lawyer, I assisted these families in hiring United States

5  attorneys to handle litigation of claims in the United States. In this regard, I

6  recommended the law firm of Speiser Krause, which was hired by the 65 families.

7      3.      More recently, the clients' families have been dissatisfied with the

8  performance of Speiser Krause and the settlement that Speiser Krause has advocated.

9  They directed me to go to the United States and interview lawyers for the purpose of

10  replacing Speiser Krause as United States litigation attorneys.

11      4.      In this regard, I came to the United States in January, 2001, and

12  interviewed multiple law firms. As a result, I decided to recommend Herman &

13  Mermelstein, P.A., to my clients as United States attorneys. I recommend Herman &

14  Mermelstein, P.A. as part of my duty and responsibility to the client families.

15      I am co-counsel with Herman & Mermelstein, P.A. for those clients who

16  choose to replace Speiser Krause with Herman & Mermelstein, P.A. I am not nor

17  have I ever been an agent or representative of Herman & Mermelstein, P.A., and have

18  no relationship or interest in their being retained in this matter, other than to serve the

19  interests of my clients.

20      I declare under the laws of the United States of America that the foregoing is

21  true and correct, dated February 26, 2001 in Sao Paulo, Brazil.

22

23

24                                 Renato Guimaraes, Jr.

25

26

27

28

Case No.: 00-CV-2873 MJT

Declaration of Graham Ross

1

<u>PROOF OF SERVICE</u>

2

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is 11755 Wilshire Boulevard, 15th Floor, Los Angeles, California 90025-1506.

3

4

On March 19, 2001, I caused a true and correct copy(ies) of the document entitled **ORIGINAL DECLARATION OF RENATO GUIMARAES IN SUPPORT OF CERTAIN FOREIGN PLAINTIFFS' MOTION FOR ENFORCEMENT OF FOREIGN (BRAZILIAN) JUDGMENT** to be placed in an envelope(s), sealed, and served on the following interested parties:

5

6

7

SEE ATTACHED SERVICE LIST

8

I caused such envelopes to be deposited in the mail at Los Angeles, California.  The envelopes were mailed with postage thereon fully prepaid.

9

10

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

11

12

13

14

15

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16

Executed at Los Angeles, California, on March 19, 2001.

17

18

19

Lori Ann Fields

20

21

22

23

24

25

26

27

28

Original Declaration of Renato Guimaraes in Support of Motion for Enforcement of Brazilian Judgment

2

P:\pjs\3120-081\OriginalDecRanGui.wpd

SK    001929

1  Linda Andrews v. Northrop Grumman, et al.,
2  OCSC Case No. 783990
   SERVICE LIST

3  Edwin W. Green, Esq.
   Allen, Matkins, Leck,
4  Gamble & Mallory LLP
   515 South Figueroa Street, 7th Floor
5  Los Angeles, CA 90071

6  Suzanne McNulty, Esq.
   Mendes & Mount
7  725 South Figueroa Street, 19th Floor
   Los Angeles, CA 90017
8
   John J. Veth, Esq.
9  Speiser Krause
   One Park Plaza, Suite 470
10 Irvine, CA 92614

11 Frank A. Silane, Esq.
   Condon & Forsyth
12 1801 Avenue of the Stars, Suite 1450
   Los Angeles, CA 90067-4486
13
   Patricia M. Barlow, Esq.
14 Law Offices of Patricia M. Barlow
   333 Market Street, Suite 3125
15 San Francisco, CA 94105

16

17

18

19

20

21

22

23

24

25

26

27

28

Original Declaration of Renato Guimaraes in Support of Motion for Enforcement of Brazilian Judgment
3
F:\DJS\13120-001\OriginalDecRenGui.wpd

SK   001930

02/06/01  TUE 17:10 FAX 305 577 4234        HERMAN & MERMESLTEIN.                                    ☑003

Saturday 1, 2001

**VIA FACSIMILE & MAIL**
Speiser, Krause, Madole & Lear
1300 North Seventeenth Street, Suite 310
Rosslyn, Virginia 22209-3800
USA

      RE:    **TAM Brazilian Fokker 100**
                **Date of Accident: October 31, 1996**
                **Decedent: Alexandre Magalhães Vaz de Mello**

Dear Sirs:

      We hereby terminate you as our lawyers in the above referenced matter, effective immediately. If you have any questions, please contact my new counsel:

Jeffrey M. Herman, Esq.
Herman & Mermelstein, P.A.
Bank of America Tower, Suite 2600
100 S.E. 2nd Street
Miami, Florida 33131
Telephone: 305-377-2000
Facsimile: 305-377-2511

      Please do not contact me directly. Further, I request that you provide a copy of my file to my new counsel. Thank you for your attention in this matter.

Very truly yours,

January 18, 2001

**VIA FACSIMILE & MAIL**
Speiser, Krause, Madole & Lear
1300 North Seventeenth Street, Suite 310
Rosslyn, Virginia 22209-3800
USA

RE:  TAM Brazilian Fokker 100
Date of Accident: October 31, 1996
Decedent: George Klepetar

Dear Sirs:

We hereby terminate you as our lawyers in the above referenced matter, effective
Immediately. If you have any questions, please contact my new counsel:

Jeffrey M. Herman, Esq.
Herman & Mermelstein, P.A.
Bank of America Tower, Suite 2600
100 S.E. 2nd Street
Miami, Florida 33131
Telephone:  305-377-2000
Facsimile: 305-377-2511

Please do not contact me directly. Further, I request that you provide a copy
of my file to my new counsel. Thank you for your attention in this matter.

Very truly yours,

*[signature]*

02/20/01  TUE 17:43 FAX 305 577 4234      HERMAN & MERMESLTEIN.                              ☑004

January 30, 2001

<u>VIA FACSIMILE & MAIL</u>
Speiser, Krause, Madole & Lear
1300 North Seventeenth Street, Suite 310
Rosslyn, Virginia 22209-3800
USA

                RE:   Decedent: JOSE PEREIRA DUARTE
                      TAM Brazilian Fokker 100
                      <u>Date of Accident: October 31, 1996</u>

Dear Sirs:

        We hereby terminate you as our lawyers in the above referenced matter, effective
immediately.  If you have any questions, please contact my new counsel:

                        Jeffrey M. Herman, Esq.
                        Herman & Mermelstein, P.A.
                        Bank of America Tower, Suite 2600
                        100 S.E. 2nd Street
                        Miami, Florida 33131
                        Telephone: 305-377-2000
                        Facsimile: 305-377-2511

        Please do not contact me directly.  Further, I request that you provide a copy of my file to
my new counsel.  Thank you for your attention in this matter.

                                Very truly yours,

                        Terezinha de Jesus Fernandes Duarte - widow

                        By: Eric Fernandes Duarte - son

                        By: Ellen Fernandes Duarte - daughter

# SPEISER KRAUSE

A PROFESSIONAL CORPORATION

140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011
FAX: (212) 953-6483

ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421
FAX: (714) 553-1346

2300 CLARENDON BOULEVARD
SUITE 306
ARLINGTON, VIRGINIA 22201

(703) 522-7500
FAX: (703) 522-7905

900 JACKSON STREET, SUITE 750
DALLAS, TEXAS 75202-4427
(214) 752-4664
FAX: (214) 752-4774

201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400
FAX: (305) 375-0337

September 19, 2001

VIA FACSIMILE  011-44-207-481-3353
And DHL

Neil R. McGilchrist, Esq.
Beaumont and Son
Lloyd Chambers
1 Portsoken Street
London  E18AW

VIA FACSIMILE  011 44 207 327 6080
And DHL

Stephen Matthews, Esq.
Manager and Adjuster
Lloyd's Claims Office
One Lime Street
London EC3M 7HA

VIA FACSIMILE 212-349-8226
And Federal Express

Anthony G. Bouscaren, Esq.
U.S. Aviation Underwriters, Inc.
199 Water Street
New York, NY 10038

VIA FACSIMILE 213-955-7725
And Federal Express

Suzanne McNulty, Esq.
Mendes & Mount
725 South Figueroa Street, 19th Floor
Los Angeles, CA 90017

RE:   TAM Disaster of October 31, 1996
      Decedent Zelia Menin
      Our File No: 729.053

Dear Counsel:

      We hereby assert a lien on any recovery in the above-referenced matter in the amount of 27% of the $150,000.00 settlement obtained by this firm on behalf of the survivors of the above-referenced decedent. This lien includes 25% of $150,000.00 (or $37,500.00) as payment of attorney fees, as well as 2% of $150,000.00 (or $3,000.00) as reimbursement of costs.

CONFIDENTIAL

SK   2677

Messrs. McGilchrist/Matthews/Bouscaren and
Suzanne McNulty, Esq.
September 19, 2001
Page 2


       Said lien precludes the payment of any funds in this matter prior to satisfaction
of the above.

Sincerely,

SPEISER KRAUSE

GERARD R. LEAR

/kmb

cc:    Menin Family (with Portuguese translation)
      Herman, Sloman, and Mermelstein, P.A.
      Luiz Eduardo Arena Alvarez

CONFIDENTIAL

JAN-12-2001  11:06      RICHARD PESKIN                    212 953 6022    P.04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X      M13-72

IN RE:

LETTER ROGATORY ISSUED BY               AFFIDAVIT OF ATTORNEY IN
SECOND PART OF THE III CIVIL             SUPPORT OF MOTION TO COMPEL
REGIONAL COURT OF
JABAQUARA/SAUDE, SAO PAULO,
BRAZIL
———————————————————————X

STATE OF NEW YORK   )
                    )   S.S.:
COUNTY OF NEW YORK  )

I, Richard S. Peskin, being duly sworn, depose and say:

1.  I am an attorney duly admitted to practice law before the courts of the United States District Court,

    Southern District of New York. All matters stated herein are so stated upon information and belief

    after reviewing English translations of Portuguese language documents, which are appended hereto as

    exhibits or as conveyed to me by Brazilian counsel whose affidavit is likewise appended hereto as

    Exhibit "A".

2.  I have been retained as local counsel, for the limited purpose of this proceeding, by Dr. Wanderley

    Minitti, a prominent member of the Brazilian Bar Association (O.A.B.), Section of Sao Paulo No.

    48.501, and of the attorneys of record for this proceeding in Brazil on behalf of the petitioners Suzana

    Liberta Hoogerheide, orphan and her mother Meire Lucia Trujillo Geronimo, widow as well as

    Twenty-Five (25) others similarly situated.

RG-00372

JAN-12-2001  11:06        RICHARD PESKIN                    212 953-6022    P.05

3.  Your deponent on behalf of Dr. Wanderley Minitti seeks this court's cooperation as requested by Letter Rogatory issued by Hon. Romolo Russo Junior, Judge of the Second Part of the III Civil Regional Court of Jabaquara/Saude, Sao Paulo, Brazil (See Letter Rogatory in English and certified Portuguese translation of the Letter Rogatory along with supporting documents attached thereto, filed with this court as M13-72 entitled In Re: Letter Rogatory Issued By The Second Part of The III Civil Regional Court of Jabaquara/Saude, Sao Paulo, Brazil). (Also See Order issuing Letter Rogatory signed by the Brazilian Judge and certified English translation appended as Exhibit "B").

4.  The underlying action arises from an air crash disaster on October 31, 1996 in which Ninety-Nine (99) passengers and crew were killed as TAM Fokker flight 402 crashed shortly after take off from Sao Paulo, Brazil to Rio de Janeiro.

5.  An action was commenced in Brazil against Northtrop Grumman Corporation among others, in a case filed by relatives, family and estates of victims  (including petitioner herein) in the Second Part of the III Civil Regional Court of Jabaquara/Saude, Sao Paulo, Brazil, Action # 1509/98-E.

6.  Said action sought damages for among other things, negligence due to a defect of the "thrust reverser" designed and manufactured by Northtrop Grumman Corporation.

7.  Defendant Northtrop Grumman Corporation appeared through counsel; to wit, the Law Firm of Pinheiro Neto and fully defended itself in said Brazilian proceeding.

8.  After trial on the merits, on June 30, 2000 a final judgment was rendered in Sao Paulo, Brazil (which judgment is appended as Exhibit "C" in Portuguese and as Exhibit "D" in English translation).

141

9.  The judgment above referenced was duly served on the defendant Northtrop Grumman Corporation's attorneys in Brazil and published in the "Brazilian Law Journal" as required under Brazilian law.

10. Said judgment called for the payment for pain and suffering against Northtrop Grumman Corporation of Two Million Reais (R$2,000,000.00) or approximately One Million One Hundred Eleven Thousand One Hundred Eleven Dollars and Eleven Cents, (US$1,111,111.11) per family. (See page 47 of judgment appended hereto as Exhibit "C" or page 39 of translated judgment appended as Exhibit "D") (See also page 52 attached as Exhibit "C" and page 44 of English translation attached as Exhibit "D").

11. The court also determined defendant Northtrop Grumman Corporation was deemed a bad faith litigant for its violation of the court's order in failing to deposit the required bond pending litigation. (See page 53 of the judgment attached as Exhibit "C" and page 45 of the English translation attached as Exhibit "D". For this contempt, the Brazilian court awarded Twenty (20%) percent over the judgment amount as well as Twenty (20%) percent attorneys fees on the entire award (See page 55 attached as Exhibit "C", page 46 and 47 of the English translation attached as Exhibit "D").

12. Finally, the Brazilian court also found against Northtrop Grumman Corporation, in the amount of Two Thirds (2/3) of the last salary earned by each victim, through their respective age of Sixty Five (65) (hereinafter "Financial Support Payments"). Said payments were to be deposited on a monthly basis (See page 48 of the judgment appended hereto as Exhibit "C" or page 40 of translated judgment appended as Exhibit "D" (Also See page 52 of Portuguese Judgment appended as Exhibit "C", page 44 of English Translation appended as Exhibit "D").

RG-00374

13. It is this aspect of the judgment upon which the Letter Rogatory was issued.

14. An arithmetical calculation of the Financial Support Payment was ordered to be prepared based on the income of each victim.

15. An arithmetical calculation relating to the Financial Support Payments was in fact prepared based on worksheets submitted wherein Ana Beatriz do Val Kopacek, a nuclear physicist holding a graduate degree in business administration calculated the total amount of said award as to the Twenty-Six (26) families to be Eight Million, Six Hundred and Forty Two Thousand, Eight Hundred and Two Dollars and Ninety Four Cents (US$8,642,802.94) (See Curriculum Vitae appended as Exhibit "E").

16. These numbers were verified by one Marcelo Augusto Figueiredo Guimaraes, a business administrator and accountant as well as reviewed by the forensic accountant Joao Mendez Jr., (See page 268 and certified English translation appended as Exhibit "F"). (See Total Financial Support Payment Explanation – Breakdown, page 269 through 295 and certified English translation appended as Exhibit "G").

17. According to Brazilian Law, as verified by the attached affidavit of Dr. Wanderley Minitti, the time within which to appeal from the order requiring defendant Northrop Grumman Corporation to deposit said Financial Support Payment with the court, has expired (See affidavit of Dr. Wanderley Minitti, Exhibit "A"). Also see the certification by the Brazilian Court Clerk's Office (Page 552 of the Portuguese Letter Rogatory and certified English Translation appended as Exhibit "H" showing no appeal has been filed). Further, the deposit of said sum is a condition precedent to a possible

RG-00375

JAN-12-2001  11:07    RICHARD PESKIN    212 953 6022    P.08

*143*

defendant's motion called in Portuguese "embargos" which would provide a Ten (10) day stay of said sum's actual distribution to the victims' families (See Article 737 of the Brazilian Procedure Code and certified translation appended as Exhibit "I").

18. To be clear, petitioner is not seeking via the means of Letters Rogatory to enforce a foreign court's judgment; rather to perform the procedural act as requested by the foreign jurisdiction, of citing Northrop Grumman Corporation.

19. enclosed Letter Rogatory was merely issued as a request by a foreign jurisdiction and sanctioned by the State General Attorney's Office in Brazil (See page 138 and certified English translation appended as Exhibit "J") in an effort to serve defendant Northrop Grumman Corporation with notice that it is required to deposit in escrow within Twenty-Four (24) hours after citation the amount of R$16,853,465.74 (US$8,642,802.94) with either the Brazilian or United States court in order to secure the Financial Support Payments of the Twenty-Six (26) families of victims of this tragic accident.

20. This Letter Rogatory was made necessary due to the United States domiciled defendant Northrop Grumman Corporation's failure to obey the orders issued by the Brazilian court (See page 115 and certified English translation appended as Exhibit "K") as well as their refusal of acceptance of service (See page 116, 118 and 119 of the Letter Rogatory in Portuguese and certified English translation appended as Exhibit "L") in this proceeding in Brazil (See pages 701, 703 and 704 of the Letter Rogatory in Portuguese and certified English translation appended as Exhibit "M") making the instant application necessary.

RG-00376

*144*

21. Due to its failure to abide by the Brazilian court's order, Northtrop Grumman Corporation has thus far avoided the deposit of this monthly amount of Financial Support Payments to the victims' families, which have been accumulating since the date of the accident, October 31, 1996 until November 30, 2000 (49 months). The Brazilian Judge issued Letters Rogatory to this Honorable Court as a last resort in an effort to serve Northtrop Grumman Corporation which has, upon information and belief, removed all assets from Brazil apparently in an effort to avoid compliance and which has refused to accept service in Brazil.

22. The Brazilian judge appointed Dr. Wanderley Minitti, attorney at law, (Brazilian Bar Association O.A.B. # 48501/SP) to personally follow the progress of the Letter Rogatory and to return it to the Brazilian judicial authorities (See page 260 and 268 of the Portuguese Letter Rogatory and certified English Translation appended as Exhibit "N").

23. On January 11, 2001 the attached Letters Rogatory were served upon Northtrop Grumman Corporation via United Parcel Service (UPS) after the same were filed with this court under Miscellaneous Index No. M13-72. (See Affidavit of Service and Proof of Delivery appended as Exhibit "O").

24. More than Twenty-Four (24) hours has elapsed since service and upon information and belief defendant Northtrop Grumman Corporation has thus far failed to make the required deposit.

25. Your deponent now seeks this court's order compelling defendant Northtrop Grumman Corporation to comply with the duly served Letter Rogatory.

RG-00377

145

26. No previous application for the relief herein prayed has been made.

WHEREFORE, it is respectfully requested that this Honorable court grant this order to show cause to compel.

Dated: New York, New York
     January 12, 2001

                                             Richard S. Peskin, Esq. (3524)

Sworn before me on this
12    of January 2001

Notary Public

ANSELMO DELLA MEA MARTINI
Notary Public, State of New York
No. 01DE5060998
Qualified in New York County
Commission Expires May 28, 2001

7

RG-00378

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

IN RE:                                          M13-72 (WK)

LETTER ROGATORY ISSUED BY
SECOND PART OF THE III CIVIL
REGIONAL COURT OF                               DECLARATION
JABAQUARA/SAUDE, SAL PAULO,
BRAZIL

## AFFIDAVIT

GERARD R. LEAR, being duly sworn, according to law upon his oath, depose and says.

1. I am managing partner of the law firm of Speiser Krause. My business address 2300 Clarendon Boulevard, Suite 306, Arlington, Virginia 22201.

2. Speiser Krause has been retained on behalf of 64 families whose decedents were killed in the TAM disaster on October 31, 1996, near Sao Paulo, Brazil.

3. During April 2000, Speiser Krause negotiated agreements to settle with Fokke TAM, Teleflex Control Systems, and Northrop Grumman. Since that time approximately 55 of the 64 families that we represent have agreed to the terms those agreements and considerable time and expense has been spent in draftin the settlement releases and other necessary documents in both English an Portuguese.

4. We in no way endorse the action of petitioner's attorney in seeking parti enforcement against Northrop Grumman of the judgment of the Brazilian court Jabaquara. That judgment came months after the April 2000 agreements, and t attempt to enforce the Jabaquara judgment has already delayed t implementation of those agreements. Any further delay will only serve jeopardize the recovery by the families of the compensation negotiated in t April 2000 agreements.

                                        ———————————————————————
                                        GERARD R. LEAR

Sworn and Subscribed to this the 1st day of February 2001

_Paula C. Stormick_

My commission expires: _Oct. 27, 2002_

RG-00379

HUG. b. 1997    4:38PM     BALLEN GERTEL DICINTIO                    NO.124    P.4/5

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011   FAX (212) 983-0493

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1491   FAX (714) 553-1366

1900 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
6430 LBJ FREEWAY #1875
DALLAS, TEXAS 75240-2888
(972) 404-1401   FAX (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400   FAX (305) 375-0257

### RETAINER AGREEMENT
### TAM BRAZILIAN FOKKER 100
### October 31, 1996

1.     The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2.     It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent.  It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3.     Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4.     In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5.     It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement.  Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6.     It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

Retainer Agreement
Page Two

<u>WILLIAN ARJONA CHONG</u>
Decedent

*Silvia Lucia Pixoto Arjona*
Signature of Claimant

_SILVIA LUCIA PEÑOTO ARJONA_
Name of Claimant/Relationship to Decedent
ESPOSA

_____
Signature of Claimant

_____
Name of Claimant/Relationship to Decedent

_____
Signature of Claimant

_____
Name of Claimant/Relationship to Decedent

Dated: _23/05/97_

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: _____

RG-00465

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

<table>
<tr><td>

NEW YORK OFFICE
SPEISER, KRAUSE, MADOLE & NOLAN
TWO GRAND CENTRAL TOWER
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011  FAX: (212) 953-8483


CALIFORNIA OFFICE
SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1080
IRVINE, CALIFORNIA 92714-8525
(714) 553-1421  FAX: (714) 553-1348

</td><td>

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

(703) 522-7800
FAX: (703) 522-7908

</td><td>

TEXAS OFFICE
SPEISER, KRAUSE & MADOLE
6430 LBJ FREEWAY #1576
DALLAS, TEXAS 76240-2825
(972) 404-1401  FAX: (972) 404-9787


FLORIDA OFFICE
SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
(305) 375-9400  FAX: (305) 375-0037

</td></tr>
</table>

# RETAINER AGREEMENT

## TAM BRAZILIAN FOKKER 100
## Date of Accident: October 31, 1996

1.    The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and **RENATO GUIMARES** to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2.    It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent.  It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3.    Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4.    In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5.    It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement.  Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6.    It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

RG-00486

JOSE PEREIRA DUARTE
Decedent

_____
Signature of Claimant

Terezinha de Jesus Fernandes Duarte — wife
Name of Claimant/Relationship to Decedent

_____
Decedent

_____
Signature of Claimant

Eric Fernandes Duarte    son
Name of Claimant/Relationship to Decedent

_____
Decedent

_____
Signature of Claimant

Ellen Fernandes Duarte - daughter
Name of Claimant/Relationship to Decedent

Dated: _____

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: _____

AUG-26-1997  15:09          00112129577          92%        P.03

RG-00487

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011  FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421  FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401  FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400  FAX: (305) 375-0337

## RETAINER AGREEMENT
## TAM BRAZILIAN FOKKER 100
## October 31, 1996

      1.    The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

      2.    It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent.  It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

      3.    Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

      4.    In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

      5.    It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proeeeds of recovery or settlement.  Such expenses shall be limited to THREE Percent (3%) of the total recovery.

      6.    It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

RG-00505

TEL NO.                    Apr 29.98  15:28 P.01

Retainer Agreement
Page Two

WOLFGANG HANS JANSTEIN                Nain de Carvalho Janstein
Decedent                              Signature of Claimant

                                      NAIR DE CARVALHO JANSTEIN
                                      Name of Claimant/Relationship to Decedent

                                      _____
                                      Signature of Claimant

                                      _____
                                      Name of Claimant/Relationship to Decedent

                                      _____
                                      Signature of Claimant

                                      _____
                                      Name of Claimant/Relationship to Decedent

Dated:  4/30/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By:

RG-00506

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011   FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
TWO PARK PLAZA, SUITE 1060
IRVINE, CALIFORNIA 92714
(714) 553-1421   FAX: (714) 553-1346

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800
703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401   FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400   FAX: (305) 375-0337

## RETAINER AGREEMENT
## TAM BRAZILIAN FOKKER 100
## October 31, 1996

1.    The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2.    It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent.  It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3.    Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4.    In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5.    It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement.  Such expenses shall be limited to THREE Percent (3%) of the total recovery.

6.    It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

RG-00507

Retainer Agreement
Page Two

_GEORGE KLEPETAR_                             _Suzana Greus de Franca Klepetar_
Decedent                                      Signature of Claimant

_SUZANA GREUS DE FRANCA KLEPETAR - wife_
Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Signature of Claimant

Name of Claimant/Relationship to Decedent

Dated: _04/09/97_

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: _A. Hurt B allen_

RG-00508

*Tradução do procur  'o-contrato (que Estados Unidos é um    cumento só, que os
advogados arquivam e não apresentam na Justiça, exceto se houver algum problema).*

"Escritório da Área Metropolitana de Washington, D.C.

## SPEISER, KRAUSE, MADOLE & LEAR

*(endereços em Nova York, Los Angeles, Dallas e Miami, fones e fax)*

### CONTRATO E PROCURAÇÃO
### FOKKER 100 BRASILEIRO DA TAM
### 31 de Outubro de 1996

1.    O requerente signatário, por este instrumento, contrata e outorga procuração para o Escritório de Advocacia SPEISER, KRAUSE, MADOLE & LEAR e RENATO GUIMARÃES JR. para processarem ou fazerem acordo sobre todos os pedidos por danos *(morais e materiais, claro)* que possam resultar da morte da vítima abaixo indicada que faleceu em 31 de outubro de 1996 na desastre do FOKKER 100 da TAM em São Paulo, Brasil.

2.    Fica entendido que vocês, como meus advogados, ajuizarão e acompanharão tais ações, como for necessário, por qualquer forma de processo que vocês entendam apropriada, e que vocês não farão acordo em quaisquer dessas ações sem meu prévio consentimento por escrito.

3.    Seu trabalho na fase da responsabilização, nesses processos, será supervisionado por advogados de seu Escritório que tenham experiência em aviação como pilotos.

4.    Em consideração a seus serviços feitos e para serem desempenhados por vocês, o signatário concorda em pagar a vocês - e vocês ficam autorizados a reter essa quantia de qualquer dinheiro que possa chegar em suas mãos em razão de acordo, veredicto, julgamento ou de qualquer outra forma, como seus honorários advocatícios de risco - TRINTA E TRÊS    porcento (33    %) da soma total do ressarcimento, e do valor atualizado nos futuros pagamentos na hipótese de acordo por prestações, seja a indenização através de processo, acordo ou de outra forma.

5.    Fica entendido que vocês, como meus advogados, deverão adiantar todas as despesas exigidas para o acompanhamento desses processos que serão pagas pelos resultados da ressarcitória ou do acordo. Tais despesas deverão ser limitadas a TRÊS porcento (3%) do total do ressarcimento.

6.    Fica entendido e acordado que, se não houver indenização ou acordo, o signatário não ficará devendo a vocês quaisquer honorários ou despesas.

RG-00512

6.    Fica entendido e acordado que, se não houver indenização ou acordo, o signatário não ficará devendo a vocês quaisquer honorários ou despesas.

Procuração e Contrato
Página Dois

RICARDO ALAN CATONICO MACIEL
Falecido

Assinatura do Requerente

PEDRO RICARDO RAMOS MACIEL    (FILHO)
Nome do Requerente e Parentesco com o Falecido

Assinatura do Requerente

Nome do Requerente e Parentesco com o Falecido

Assinatura do Requerente

Nome do Requerente e Parentesco com o Falecido

Data: _____

Aceito e Concordado por:

SPEISER, KRAUSE, MADOLE & LEAR

Assinado por: _____

RG-00513

639 P01    OCT 24 '97  13:46
TEL:
P:02

RENATO GUIMARAES

*Jaime Menin*

| NOME | PARENTESCO | |
|------|------------|---|
| ZELIA MENIN (VITINA) | | 19.12.59 |
| JAIME MENIN | IRMÃO | 14.09.55 |
| DANIEL MENIN | PAI | 10.11.28 |
| ANA MOTTER MENIN | MÃE | 18.02.31 |

Julie: did you receive Eliane's **letter?** I sent it to you this morning!

The attorney-power document for Jaime Menin will be send to L.A a.s.a.p. Please, be allert that some letters may be sent to their old address: Two Park Plaza, suite 1060.

Three more cases may be under way today, all the same family. Arthur will recall this very sad case of three relatives, from

look forward to hearing from you soon. Very sincerely yours,

(019) 239-2921 - 239-4315 - fax     Renato Guimaraes

Retainer Agreement
Page Two

ZELIA MENIN
Decedent

P/p Signature of Claimant

DANIEL MENIN - FATHER
Name of Claimant/Relationship to Decedent

Signature of Claimant

ANA MOTTER MENIN - MOTHER
Name of Claimant/Relationship to Decedent
P/p

CONTINUE FROM PREVIOUS PAGE     001

_____

Signature of Claimant

_____

Name of Claimant/Relationship to Decedent

Dated: _____

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: _____

OCT-24-97 12:18                                    TEL:                                 P:03

OCT-24-1997  11:37              0192394315                              P.01

RG-00519

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

| SPEISER, KRAUSE, MADOLE & NOLAN | 1300 NORTH SEVENTEENTH STREET, SUITE 310 | SPEISER, KRAUSE & MADOLE |
|---|---|---|
| 140 EAST 45TH STREET, 34TH FLOOR | ROSSLYN, VIRGINIA 22209-3800 | 5430 LBJ FREEWAY #1575 |
| NEW YORK, NEW YORK 10017 | | DALLAS, TEXAS 75240-2635 |
| (212) 661-0011   FAX: (212) 953-6483 | 703 522-7500 | (972) 404-1401   FAX: (972) 404-9797 |
| | FAX 703 522-7905 | |
| SPEISER, KRAUSE, MADOLE & COOK | | SPEISER, KRAUSE & MADOLE |
| TWO PARK PLAZA, SUITE 1060 | | 201 SOUTH BISCAYNE BOULEVARD |
| IRVINE, CALIFORNIA 92714 | | MIAMI, FLORIDA 33131 |
| (714) 553-1421   FAX: (714) 553-1346 | | (305) 375-9400   FAX: (305) 375-0337 |

### RETAINER AGREEMENT
### TAM BRAZILIAN FOKKER 100
### October 31, 1996

     1.    The undersigned claimant hereby retains the law firms of SPEISER KRAUSE and RENATO GUIMARÃES to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

     2.    It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

     3.    Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

     4.    In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal-fee, THIRTY-THREE and ONE THIRD Percent (33 1/3%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

     5.    It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to THREE Percent (3%) of the total recovery.

     6.    It is understood and agreed that if there is no recovery or settlement, the undersigned will not be responsible for any fees or expenses whatsoever.

RG-00532

RG-00533

RILTON DE OLIVEIRA RODRIGUES _____
Decedent

_____
*Airton Francisco Rodrigues*
                                        Signature of Claimant

AIRTON FRANCISCO RODRIGUES - FATHER
                                        Name of Claimant/Relationship to Decedent

_____
*Maria das Graças de Oliveira Rodrigues*
                                        Signature of Claimant

_____
Decedent

MARIA DAS GRAÇAS DE OLIVEIRA RODRIGUES - MOTHER
                                        Name of Claimant/Relationship to Decedent

_____
Decedent

_____
                                        Signature of Claimant

_____
                                        Name of Claimant/Relationship to Decedent

Dated: 9/27/97

ACCEPTED AND AGREED TO:

SPEISER, KRAUSE, MADOLE & LEAR

By: _____

METROPOLITAN WASHINGTON, D.C. OFFICE

# SPEISER, KRAUSE, MADOLE & LEAR

SPEISER, KRAUSE, MADOLE & NOLAN
140 EAST 45TH STREET, 34TH FLOOR
NEW YORK, NEW YORK 10017
(212) 661-0011  FAX: (212) 953-6483

SPEISER, KRAUSE, MADOLE & COOK
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(714) 553-1421  FAX: (714) 553-1348

1300 NORTH SEVENTEENTH STREET, SUITE 310
ROSSLYN, VIRGINIA 22209-3800

703 522-7500
FAX 703 522-7905

SPEISER, KRAUSE & MADOLE
5430 LBJ FREEWAY #1575
DALLAS, TEXAS 75240-2635
(972) 404-1401  FAX: (972) 404-9797

SPEISER, KRAUSE & MADOLE
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400  FAX: (305) 375-0337

## RETAINER AGREEMENT
## TAM BRAZILIAN FOKKER 100
## October 31, 1996

1.    The undersigned claimant hereby retains the law firm of SPEISER KRAUSE to negotiate or settle all claims for damages which may arise from the death of the decedent named below which occurred on October 31, 1996 in the crash of a TAM Airlines Fokker Series Aircraft 100 in Sao Paulo, Brazil.

2.    It is understood that you as my attorneys will pursue such actions as are necessary by whatever form of action you deem appropriate, and that you will not settle any such action without my written consent. It is further understood that the filing of a lawsuit in this matter shall be commenced only upon the consent and approval of the attorneys named herein.

3.    Your work on the liability phase of these claims is to be supervised by attorneys in your firm having experience in aviation as pilots.

4.    In consideration of the services rendered and to be rendered by you, the undersigned agrees to pay you, and you are authorized to retain out of any moneys that may come into your hands by reason of settlement or otherwise, as your contingent legal fee, TWENTY FIVE Percent (25%) of the lump sum recovered, and of the present value of future payments in the event of structured settlement, whether recovered by suit, settlement, or otherwise.

5.    It is understood that you as my attorneys shall advance all expenses required for the prosecution of these claims subject to reimbursement out of the proceeds of recovery or settlement. Such expenses shall be limited to TWO Percent (2%) if the case is settled at the claims stage and THREE Percent (3%) cap (maximum) of the total recovery if a trial has begun.

6.    It is understood and agreed that if there is no recovery or settlement, the undersigned client will not be responsible for any fees or expenses whatsoever.

7.    It is understood that the deduction for costs comes off the gross settlement before attorney fees are paid.

RG-00555

703 522 7905    P.06/06

ALEXANDRE MELLO
_____
Decedent

_____
Signature of Claimant

_Fernando Lobo Vaz de Mello_
Father   Name of Claimant/Relationship to Decedent

_____
Decedent

_____
Signature of Claimant

_Maria da Conceição Magalhães Vaz de Mell_
Mother   Name of Claimant/Relationship to Decedent

_____
Decedent

_____
Signature of Claimant

_Luciana Magalhães Vaz de Mello_
Sister   Name of Claimant/Relationship to Decedent

ed: _____

EPTED AND AGREED TO:

SER. KRAUSE, MADOLE & LEAR

_____

RG-00556

January 11, 2001

VIA FACSIMILE & MAIL
Speiser, Krause, Madole & Lear
1300 North Seventeenth Street, Suite 310
Rosslyn, Virginia 22209-3800
USA

    RE:   TAM Brazilian Fokker 100
            Date of Accident: October 31, 1996
            Decedent:

Dear Sirs:

    We hereby terminate you as our lawyers in the above referenced matter, effective immediately. If you have any questions, please contact my new counsel:

            Herman & Mermelstein, P.A.
            Bank of America Tower, Suite 2600
            100 S.E. 2nd Street
            Miami, Florida 33131
            Telephone: 305-377-2000
            Facsimile: 305-377-2511

    Please do not contact me directly. Further, I request that you provide a copy of my file to my new counsel. Thank you for your attention in this matter.

            Very truly yours,

            SILVIA LUCIA PEIXOTO ARJONA

RG-00787

## LEI Nº 8.906 - DE 4 DE JULHO DE 1994 - DOU DE 5/7/94

*Dispõe sobre o Estatuto da Advocacia e a Ordem dos Advogados do Brasil (OAB).*

*O PRESIDENTE DA REPÚBLICA, faço saber que o Congresso Nacional decreta e eu sanciono a seguinte lei:*

### TÍTULO I -
### DA ADVOCACIA

### CAPÍTULO I -
### DA ATIVIDADE DE ADVOCACIA

Art. 1º - São atividades privativas de advocacia:

I - a postulação a qualquer órgão do Poder Judiciário e aos juizados especiais;
II - as atividades de consultoria, assessoria e direção jurídicas.

§ 1º - Não se inclui na atividade privativa de advocacia a impetração de habeas corpus em qualquer instância ou tribunal.
§ 2º - Os atos e contratos constitutivos de pessoas jurídicas, sob pena de nulidade, só podem ser admitidos a registro, nos órgãos competentes, quando visados por advogados.
§ 3º - É vedada a divulgação de advocacia em conjunto com outra atividade.

Art. 2º - O advogado é indispensável à administração da justiça.

§ 1º - No seu ministério privado, o advogado presta serviço público e exerce função social.
§ 2º - No processo judicial, o advogado contribui, na postulação de decisão favorável ao seu constituinte, ao convencimento do julgador, e seus atos constituem múnus público.
§ 3º - No exercício da profissão, o advogado é inviolável por seus atos e manifestações, nos limites desta Lei.

Art. 3º - O exercício da atividade de advocacia no território brasileiro e a denominação de advogado são privativos dos inscritos na Ordem dos Advogados do Brasil - OAB.

§ 1º - Exercem atividade de advocacia, sujeitando-se ao regime desta Lei, além do regime próprio a que se subordinem, os integrantes da Advocacia-Geral da União, da Procuradoria da Fazenda Nacional, da Defensoria Pública e das Procuradorias e Consultorias Jurídicas dos Estados, do Distrito Federal, dos Municípios e das respectivas entidades de administração indireta e fundacional.
§ 2º - O estagiário de advocacia, regularmente inscrito, pode praticar os atos previstos no art. 1º, na forma do Regulamento Geral, em conjunto com advogado e sob responsabilidade deste.

Art. 4º - São Nulos os atos privativos de advogado praticados por pessoa não inscrita na OAB, sem prejuízo das sanções civis, penais e administrativas.

Parágrafo Único - São também nulos os atos praticados por advogado impedido - no âmbito do impedimento - suspenso, licenciado ou que passa a exercer atividade incompatível com a advocacia.

Art. 5º - O advogado postula, em juízo ou fora dele, fazendo prova do mandato.

§ 1º - O advogado, afirmando urgência, pode atuar sem procuração, obrigando-se a apresentá-la no prazo de quinze dias, prorrogável por igual período.
§ 2º - A procuração para o foro em geral habilita o advogado a praticar todos os atos judiciais, em qualquer juízo ou instância, salvo os que exijam poderes especiais.
§ 3º - O advogado que renunciar ao mandato continuará, durante os dez dias seguintes à notificação da renúncia, a representar o mandante, salvo se for substituído antes do término desse prazo.

### CAPÍTULO II -
### DOS DIREITOS DO ADVOGADO

Art. 6º - Não há hierarquia nem subordinação entre advogados, magistrados e membros do



Ministério Público, devendo todos tratar-se com consideração e respeito recíprocos.

Parágrafo Único - As autoridades, os servidores públicos e os serventuários da justiça devem dispensar ao advogado, no exercício da profissão, tratamento compatível com a dignidade da advocacia e condições adequadas a seu desempenho.

Art. 7º - São direitos do advogado:

I - exercer, com liberdade, a profissão em todo o território nacional;

II - ter respeitada, em nome da liberdade de defesa e do sigilo profissional, a inviolabilidade de seu escritório ou local de trabalho, de seus arquivos e dados, de sua correspondência e de suas comunicações, inclusive telefônicas ou afins, salvo caso de busca ou apreensão determinada por magistrado e acompanhada de representante da OAB;

III - comunicar-se com seus clientes, pessoal e reservadamente, mesmo sem procuração, quando estes se acharem presos, detidos ou recolhidos em estabelecimentos civis ou militares, ainda que considerados incomunicáveis;

IV - ter a presença de representante da OAB, quando preso em flagrante, por motivo ligado ao exercício da advocacia, para lavratura de auto respectivo, sob pena de nulidade e, nos demais casos, a comunicação expressa à seccional da OAB;

V - não ser recolhido preso, antes de sentença transitada em julgado, senão em sala de Estado Maior, com instalações e comodidades condignas, assim reconhecidas pela OAB, e, na sua falta, em prisão domiciliar;

VI - ingressar livremente:

a) nas salas de sessões dos tribunais, mesmo além dos cancelos que separam a parte reservada aos magistrados;

b) nas salas e dependências de audiências, secretarias, cartórios, ofícios de justiça, serviços notariais e de registro, e, no caso de delegacias e prisões, mesmo fora da hora de expediente e independentemente da presença de seus titulares;

c) em qualquer edifício ou recinto em que funcione repartição judicial ou outro serviço público onde o advogado deva praticar ato ou colher prova ou informação útil ao exercício da atividade profissional, dentro do expediente ou fora dele, e ser atendido, desde que se ache presente qualquer servidor ou empregado;

d) em qualquer assembléia ou reunião de que participe ou possa participar o seu cliente, ou perante a qual este deva comparecer, desde que munido de poderes especiais;

VII - permanecer sentado ou em pé e retirar-se de quaisquer locais indicados no inciso anterior, independentemente de licença;

VIII - dirigir-se diretamente aos magistrados nas salas e gabinetes de trabalho, independentemente de horário previamente marcado ou outra condição, observando-se a ordem de chegada;

IX - sustentar oralmente as razões de qualquer recurso ou processo, nas sessões de julgamento, após o voto do relator, em instância judicial ou administrativa, pelo prazo de quinze minutos, salvo se prazo maior for concedido;

X - usar da palavra, pela ordem, em qualquer juízo ou tribunal, mediante intervenção sumária, para esclarecer equívoco ou dúvida surgida em relação a fatos, documentos ou afirmações que influam no julgamento, bem como para replicar acusação ou censura que lhe forem feitas;

XI - reclamar, verbalmente ou por escrito, perante qualquer juízo, tribunal ou autoridade, contra a inobservância de preceito de lei, regulamento ou regimento;

XII - falar, sentado ou em pé, em juízo, tribunal ou órgão de deliberação coletiva da Administração Pública ou do Poder Legislativo;

XIII - examinar, em qualquer órgão dos Poderes Judiciários e Legislativo, ou da Administração Pública em geral, autos de processos findos ou em andamento, mesmo sem procuração, quando não estejam sujeitos a sigilo, assegurada a obtenção de cópias, podendo tomar apontamentos;

XIV - examinar em qualquer repartição policial, mesmo sem procuração, autos de flagrante e de inquérito, findos ou em andamento, ainda que conclusos à autoridade, podendo copiar peças e tomar apontamentos;

XV - ter vista dos processos judiciais ou administrativos de qualquer natureza, em cartório ou na repartição competente, ou retirá-los pelos prazos legais;

XVI - retirar autos de processos findos, mesmo sem procuração, pelo prazo de dez dias;

XVII - ser publicamente desagravado, quando ofendido no exercício da profissão ou em razão dela;

XVIII - usar os símbolos privativos da profissão de advogado;

XIX - recusar-se a depor como testemunha em processo no qual funcionou ou deva funcionar,

ou sobre fato relacionado com pessoa de quem seja ou foi advogado, mesmo quando autorizado ou solicitado pelo constituinte, bem como sobre fato que constitua sigilo profissional;

XX - retirar-se do recinto onde se encontre aguardando pregão para ato judicial, após trinta minutos do horário designado e ao qual ainda não tenha comparecido a autoridade que deva presidir a ele, mediante comunicação protocolizada em juízo.

§ 1º - Não se aplica o disposto nos incisos XV e XVI:

1) aos processos sob regime de segredo de justiça;
2) quando existirem nos autos documentos originais de difícil restauração ou ocorrer circunstância relevante que justifique a permanência dos autos do cartório, secretaria ou repartição, reconhecida pela autoridade em despacho motivado, proferido de ofício, mediante representação ou a requerimento da parte interessada;
3) até o encerramento do processo, ao advogado que houver deixado de devolver os respectivos autos no prazo legal, e só o fizer depois de intimado.

§ 2º - O advogado tem imunidade profissional, não constituindo injúria, difamação ou desacato puníveis qualquer manifestação de sua parte, no exercício de sua atividade, em juízo ou fora dele, sem prejuízo das sansões disciplinares perante a OAB, pelos excessos que cometer.

§ 3º - O advogado somente poderá ser preso em flagrante, por motivo de exercício da profissão em caso de crime inafiançável, observado o disposto no inciso IV deste artigo.

§ 4º - O Poder Judiciário e o Poder Executivo devem instalar, em todos os juizados, fóruns, tribunais, delegacias de polícia e presídios, salas especiais permanentes para os advogados, com uso e controle assegurados à OAB.

§ 5º - No caso de ofensa a inscrito na OAB, no exercício da profissão ou de cargo ou função de órgão da OAB, o conselho competente deve promover o desagravo público do ofendido, sem prejuízo da responsabilidade criminal em que incorrer o infrator.

## CAPÍTULO III -
## DA INSCRIÇÃO

**Art. 8º** - Para inscrição como advogado é necessário:

I - capacidade civil;
II - diploma ou certidão de graduação em direito, obtido em instituição de ensino oficialmente autorizada e credenciada;
III - título de eleitor e quitação do serviço militar, se brasileiro;
IV - aprovação em Exame de Ordem;
V - não exercer atividade incompatível com a advocacia;
VI - idoneidade moral;
VII - prestar compromisso perante o conselho.

§ 1º - O Exame da Ordem e regulamentado em provimento do Conselho Federal da OAB.
§ 2º - O estrangeiro ou brasileiro, quando não graduado em direito no Brasil, deve fazer prova do título de graduação, obtido em instituição estrangeira, devidamente revalidado, além de atender os demais requisitos previstos neste artigo.
§ 3º - A idoneidade moral, suscitada por qualquer pessoa, deve ser declarada mediante decisão que obtenha no mínimo dois terços dos votos de todos os membros do conselho competente, em procedimento que observe os termos do processo disciplinar.
§ 4º - Não atende ao requisito de idoneidade moral aquele que tiver sido condenado por crime infamante, salvo reabilitação judicial.

**Art. 9º** - Para inscrição como estagiário é necessário:

I - preencher os requisitos mencionados nos incisos I, III, V, VI e VII do art.8º;
II - ter sido admitido em estágio profissional de advocacia.

§ 1º - O estágio profissional de advocacia, com duração de dois anos, realizados nos últimos anos do curso jurídico, pode ser mantido pelas respectivas instituições de ensino superior pelos Conselhos da OAB, ou por setores, órgãos jurídicos e escritórios de advocacia credenciados pela OAB, sendo obrigatório o estudo deste Estatuto e do Código de Ética e Disciplina.
§ 2º - A inscrição do estagiário é feita no Conselho Seccional em cujo território se localize seu curso jurídico.

§ 3° - O aluno de curso jurídico que exerça atividade incompatível com a advocacia pode freqüentar o estágio ministrado pela respectiva instituição de ensino superior, para fins de aprendizagem, vedada a inscrição na OAB.

§ 4° - O estágio profissional poderá ser cumprido por bacharel em Direito que queira se inscrever na Ordem.

**Art. 10** - A inscrição principal do advogado deve ser feita no Conselho Seccional em cujo território pretende estabelecer o seu domicílio profissional, na forma do regulamento geral.

§ 1° - Considera-se domicílio profissional a sede principal da atividade de advocacia, prevalecendo, na dúvida, o domicílio de pessoa física do advogado.

§ 2° - Além da principal, o advogado deve promover a inscrição suplementar nos Conselhos Seccionais em cujos territórios passar a exercer habitualmente a profissão considerando-se habitualidade a intervenção judicial que exceder de cinco causas por ano.

§ 3° - No caso de mudança efetiva de domicílio profissional para outra unidade federativa, deve o advogado requerer a transferência de sua inscrição para o Conselho Seccional correspondente.

§ 4° - O Conselho Seccional deve suspender o pedido de transferência ou de inscrição suplementar, ao verificar a existência de vício ou ilegalidade na inscrição principal, contra ela representando ao Conselho Federal.

**Art. 11** - Cancela-se a inscrição do profissional que:

I - assim o requerer;
II - sofrer penalidade de exclusão;
III - falecer;
IV - passar a exercer, em caráter definitivo, atividade incompatível com a advocacia;
V - perder qualquer um dos requisitos necessários para a inscrição.

§ 1° - Ocorrendo uma das hipóteses dos incisos II, III e IV, o cancelamento deve ser promovido, de ofício, pelo conselho competente ou em virtude de comunicação por qualquer pessoa.

§ 2° - Na hipótese de novo pedido de inscrição - que não restaura o número de inscrição anterior - deve o interessado fazer prova dos requisitos dos incisos I, V, VI e VII do art.8°.

§ 3° - Na hipótese do inciso II deste artigo, o novo pedido de inscrição também deve ser acompanhado de provas de reabilitação.

**Art. 12** - Licencia-se o profissional que:

I - assim o requerer, por motivo justificado;
II - passar a exercer, em caráter temporário, atividade incompatível com o exercício da advocacia;
III - sofrer doença mental considerada curável.

**Art. 13** - O documento de identidade profissional, na forma prevista no regulamento geral, é de uso obrigatório no exercício da atividade de advogado ou de estagiário e constitui prova de identidade civil para todos os fins legais.

**Art. 14** - É obrigatória a indicação do nome e do número de inscrição em todos os documentos assinados pelo advogado, no exercício de sua atividade.

Parágrafo Único - É vedado anunciar ou divulgar qualquer atividade relacionada com o exercício da advocacia ou o uso da expressão escritório de advocacia, sem indicação expressa do nome e do número de inscrição dos advogados que o integrem ou o número de registro da sociedade de advogados na OAB.

## CAPÍTULO IV -
## DA SOCIEDADE DOS ADVOGADOS

**Art. 15** - Os advogados podem reunir-se em sociedade civil de prestação de serviço de advocacia, na forma disciplinada nesta lei e no regulamento geral.

§ 1° - A sociedade de advogados adquire personalidade jurídica com o registro aprovado dos

seus atos constitutivos no Conselho Seccional da OAB em cuja base territorial tiver sede.

§ 2º - Aplica-se à sociedade de advogados o Código de Ética e Disciplina, no que couber.

§ 3º - As procurações devem ser outorgadas individualmente aos advogados e indicar a sociedade de que façam parte.

§ 4º - Nenhum advogado pode integrar mais de uma sociedade de advogados, com sede ou filial na mesma área territorial do respectivo Conselho Seccional.

§ 5º - O ato de constituição de filial deve ser averbado no registro da sociedade e arquivado junto ao Conselho Seccional onde se instalar, ficando os sócios obrigados à inscrição suplementar.

§ 6º - Os advogados sócios de uma mesma sociedade profissional não podem representar em juízo clientes de interesses opostos.

**Art. 16** - Não são admitidas a registro, nem podem funcionar, as sociedades de advogados que apresentem forma ou características mercantis, que adotem denominação de fantasia, que realizem atividades estranhas à advocacia, que incluam sócio não inscrito como advogado ou totalmente proibido de advogar.

§ 1º - A razão social deve ter, obrigatoriamente, o nome de, pelo menos, um advogado responsável pela sociedade, podendo permanecer o de sócio falecido, desde que prevista tal possibilidade no ato constitutivo.

§ 2º - O licenciamento do sócio para exercer atividade incompatível com a advocacia em caráter temporário deve ser averbado no registro da sociedade, não alterando sua constituição.

§ 3º - É proibido registro, nos cartórios de registro civil de pessoas jurídicas e nas juntas comerciais, de sociedade que inclua, entre outras finalidades, a atividade de advocacia.

**Art. 17** - Além da sociedade, o sócio responde subsidiária e ilimitadamente pelos danos causados aos clientes por ação ou omissão no exercício da advocacia, sem prejuízo da responsabilidade disciplinar em que possa incorrer.

## CAPÍTULO V -
## DO ADVOGADO EMPREGADO

**Art. 18** - A relação de emprego, na qualidade de advogado, não retira a isenção técnica nem reduz a independência profissional inerentes à advocacia.

Parágrafo Único - O advogado empregado não está obrigado à prestação de serviços profissionais de interesse pessoal dos empregadores, fora da relação de emprego.

**Art. 19** - O salário mínimo profissional do advogado será fixado em sentença normativa, salvo se ajustado em acordo ou convenção coletiva de trabalho.

**Art. 20** - A jornada de trabalho do advogado empregado, no exercício da profissão, não poderá exceder a duração diária de quatro horas contínuas e a de vinte horas semanais, salvo acordo ou convenção coletiva ou em caso de dedicação exclusiva.

§ 1º - Para efeitos deste artigo, considera-se como período de trabalho o tempo em que o advogado estiver à disposição do empregador, aguardando ou executando ordens, no seu escritório ou em atividades externas, sendo-lhe reembolsadas as despesas feitas com transporte, hospedagem e alimentação.

§ 2º - As horas trabalhadas que excederem a jornada normal são remuneradas por um adicional não inferior a cem por cento sobre o valor da hora normal, mesmo havendo contrato escrito.

§ 3º - As horas trabalhadas no período das vinte horas de um dia até as cinco horas do dia seguinte são remuneradas como noturnas, acrescidas do adicional de vinte e cinco por cento.

**Art. 21** - Nas causas em que for parte o empregador, ou pessoa por este representada, os honorários de sucumbência são devidos aos advogados empregados.

Parágrafo Único - Os honorários de sucumbência, percebidos por advogado empregado de sociedade de advogados são partilhados entre ele e a empregadora, na forma estabelecida em acordo.

## CAPÍTULO VI -
## DOS HONORÁRIOS ADVOCATÍCIOS

**Art. 22** - A prestação de serviço profissional assegura aos inscritos na OAB o direito aos honorários convencionais, aos fixados por arbitramento judicial e aos de sucumbência.

§ 1° - O advogado, quando indicado para patrocinar causa de juridicamente necessitado, no caso de impossibilidade da Defensoria Pública no local da prestação de serviço, tem direito aos honorários fixados pelo juiz, segundo tabela organizada pelo Conselho Seccional da OAB, e pagos pelo Estado.

§ 2° - Na falta de estipulação ou de acordo, os honorários são fixados por arbitramento judicial, em remuneração compatível com o trabalho e o valor econômico da questão, não podendo ser inferiores aos estabelecidos na tabela organizada pelo Conselho Seccional da OAB.

§ 3° - Salvo estipulação em contrário, um terço dos honorários é devido no início do serviço, outro terço até a decisão de primeira instância e o restante no final.

§ 4° - Se o advogado fizer juntar aos autos o seu contrato de honorários antes de expedir-se o mandado de levantamento ou precatório, o juiz deve determinar que lhe sejam pagos diretamente, por dedução da quantia a ser recebida pelo constituinte, salvo se este provar que já os pagou.

§ 5° - O disposto neste artigo não se aplica quando se tratar de mandato outorgado por advogado para defesa em processo oriundo de ato ou omissão praticada no exercício da profissão.

**Art. 23** - Os honorários incluídos na condenação, por arbitramento ou sucumbência, pertencem ao advogado, tendo este direito autônomo para executar a sentença nesta parte, podendo requerer que o precatório, quando necessário, seja expedido em seu favor.

**Art. 24** - A decisão judicial que fixar ou arbitrar honorários e o contrato escrito que os estipular são títulos executivos e constituem crédito privilegiado na falência, concordata, concurso de credores, insolvência civil e liquidação extrajudicial.

§ 1° - A execução dos honorários pode ser promovida nos mesmos autos da ação em que tenha atuado o advogado, se assim lhe convier.

§ 2° - Na hipótese de falecimento ou incapacidade civil do advogado, os honorários de sucumbência, proporcionais ao trabalho realizado, são recebidos por seus sucessores ou representantes legais.

§ 3° - É nula qualquer disposição, cláusula, regulamento ou convenção individual ou coletiva que retire do advogado o direito ao recebimento de honorários de sucumbência.

§ 4° - O acordo feito pelo cliente do advogado e a parte contrária, salvo aquiescência do profissional, não lhe prejudica os honorários, quer os convencionados, quer os concedidos por sentença.

**Art. 25** - Prescreve em cinco anos a ação de cobrança de honorários de advogado, contado o prazo:

I - do vencimento do contrato, se houver;
II - do trânsito em julgado da decisão que os fixar;
III - da ultimação do serviço extrajudicial;
IV - da desistência ou transação;
V - da renúncia ou revogação do mandato.

**Art. 26** - O advogado substabelecido, com reserva de poderes, não pode cobrar honorários sem a intervenção daquele que lhe conferiu o substabelecimento.

## CAPÍTULO VII -
## DAS INCOMPATIBILIDADES E IMPEDIMENTOS

**Art. 27** - A incompatibilidade determina a proibição total, e o impedimento, a proibição parcial do exercício da advocacia.

**Art. 28** - A advocacia é incompatível, mesmo em causa própria, com as seguintes atividades:

I - chefe do Poder Executivo e membros da Mesa do Poder Legislativo e seus substitutos legais;

II - membros de órgãos do Poder Judiciário, do Ministério Público, dos tribunais e conselhos de contas, dos juizados especiais, da justiça de paz, juízes classistas, bem como de todos que exerçam função de julgamento em órgãos de deliberação coletiva da administração pública direta e

indireta;

III - ocupantes de cargos ou funções de direção em Órgãos de Administração Pública direta ou indireta, em suas fundações e em suas empresas controladas ou concessionárias de serviço público;

IV - ocupantes de cargos ou funções vinculados direta ou indiretamente a qualquer órgão do Poder Judiciário e os que exercem serviços notoriais e de registro;

V - ocupantes de cargos ou funções vinculados direta ou indiretamente a atividade policial de qualquer natureza;

VI - militares de qualquer natureza, na ativa;

VII - ocupantes de cargos ou funções que tenham competência de lançamento, arrecadação ou fiscalização de tributos e contribuições parafiscais;

VIII - ocupantes de funções de direção e gerência em instituições financeiras, inclusive privadas.

§ 1º - A incompatibilidade permanece mesmo que o ocupante do cargo ou função deixe de exercê-lo temporariamente.

§ 2º - Não se incluem nas hipóteses do inciso III os que não detenham poder de decisão relevante sobre interesses de terceiro, a juízo do conselho competente da OAB, bem como a administração acadêmica diretamente relacionada ao magistério jurídico.

Art. 29 - Os Procuradores Gerais, Advogados Gerais, Defensores Gerais e dirigentes de órgãos jurídicos da Administração Pública direta, indireta e fundacional são exclusivamente legitimados para o exercício da advocacia vinculada à função que exerçam, durante o período da investidura.

Art. 30 - São impedidos de exercer a advocacia:

I - os servidores da administração direta, indireta e fundacional, contra a Fazenda Pública que os remunere ou à qual seja vinculada a entidade empregadora;

II - os membros do Poder Legislativo, em seus diferentes níveis, contra ou a favor das pessoas jurídicas de direito público, empresas públicas, sociedades de economia mista, fundações públicas, entidades para estatais ou empresas concessionárias ou permissionárias de serviço público.

Parágrafo Único - Não se incluem nas hipóteses do inciso I os docentes dos cursos jurídicos.

## CAPÍTULO VIII -
## DA ÉTICA DO ADVOGADO

Art. 31 - O advogado deve proceder de forma que o torne merecedor de respeito e que contribua para o prestígio da classe e da advocacia.

§ 1º - O advogado, no exercício da profissão, deve manter independência em qualquer circunstância.

§ 2º - Nenhum receio de desagradar a magistrado ou a qualquer autoridade, nem de incorrer em impopularidade, deve deter o advogado no exercício da profissão.

Art. 32 - O advogado é responsável pelos atos que, no exercício profissional, praticar com dolo ou culpa.

Parágrafo Único - em caso de lide temerária, o advogado será solidariamente responsável com seu cliente, desde que coligado com este para lesar a parte contrária, o que será apurado em ação própria.

Art. 33 - O advogado obriga-se a cumprir rigorosamente os deveres consignados no Código de Ética e Disciplina.

Parágrafo Único - O Código de Ética e Disciplina regula os deveres do advogado para com a comunidade, o cliente, o outro profissional e, ainda, a publicidade, a recusa do patrocínio, o dever de assistência jurídica, o dever geral de urbanidade e os respectivos procedimentos disciplinares.

## CAPÍTULO IX -
## DAS INFRAÇÕES E SANÇÕES DISCIPLINARES

Art. 34 - Constitui a infração disciplinar:

I - exercer a profissão, quando impedido de fazê-lo, ou facilitar, por qualquer meio, o seu exercício aos não-inscritos, proibidos ou impedidos;

II - manter sociedade profissional fora das normas e preceitos estabelecidos nesta lei;

III - valer-se de agenciador de causas, mediante participação nos honorários a receber;

IV - angariar ou captar causas, com ou sem a intervenção de terceiros;

V - assinar qualquer escrito destinado a processo judicial ou para fim extrajudicial que não tenha feito, ou em que não tenha colaborado;

VI - advogar contra literal disposição da lei, presumindo-se a boa-fé quando fundamentar na inconstitucionalidade, na injustiça da lei ou pronunciamento judicial anterior;

VII - violar, sem justa causa, sigilo profissional;

VIII - estabelecer entendimento com a parte adversa sem autorização do cliente ou ciência do advogado contrário;

IX - prejudicar, por culpa grave, interesse confiado a seu patrocínio;

X - acarretar, conscientemente, por ato próprio, a anulação ou a nulidade do processo em que funcione;

XI - abandonar a causa sem justo motivo ou antes de decorridos dez dias da comunicação da renúncia;

XII - recusar-se a prestar, em justo motivo, assistência jurídica, quando nomeado em virtude de impossibilidade da Defensoria Pública;

XIII - fazer publicar na imprensa, desnecessária e habitualmente, alegações forenses ou relativas a causas pendentes;

XIV - deturpar o teor de dispositivo de lei, de citação doutrinária ou de julgado, bem como de depoimentos, documentos e alegações da parte contrária, para confundir o adversário ou iludir o juiz da causa;

XV - fazer, em nome do constituinte, sem autorização escrita deste, imputação a terceiro de fato definido como crime;

XVI - deixar de cumprir, no prazo estabelecido, determinação emanada do órgão ou de autoridade da Ordem, em matéria da competência desta, depois de regularmente notificado;

XVII - prestar concurso a clientes ou a terceiros para reallização de ato contrário à lei destinado a fraudá-la;

XVIII - solicitar ou receber de constituinte qualquer importância para aplicação ilícita ou desonesta;

XIX - receber valores, da parte contrária ou de terceiro, relacionados com o objeto mandado, sem expressa autorização do constituinte;

XX - locupletar-se, por qualquer forma, à custa do cliente ou da parte adversa, por si ou interposta pessoa;

XXI - recusar-se, injustificadamente, a prestar contas ao cliente de quantias recebidas dele ou de terceiros por conta dele;

XXII - reter, abusivamente, ou extraviar autos recebidos com vista ou em confiança;

XXIII - deixar de pagar as contribuições, multas e preços de serviços devidos à OAB, depois de regularmente notificado a fazê-lo;

XXIV - incidir em erros reiterados que evidenciem inépcia profissional;

XXV - manter conduta incompatível com a advocacia;

XXVI - fazer falsa prova de qualquer dos requisitos para inscrição na OAB;

XXVII - tornar-se moralmente inidôneo para o exercício da advocacia;

XXVIII - praticar crime infamante;

XXIX - praticar, o estagiário, ato excedente de sua habilitação.

Parágrafo Único - Inclui-se na conduta incompatível:

a) prática reiterada de jogo de azar, não autorizado por lei;
b) incontinência pública e escandalosa;
c) embriaguez ou toxicomania habituais.

Art. 35 - As sanções disciplinares consistem em:

I - censura;
II - suspensão;
III - exclusão;
IV - multa.

Parágrafo Único - As sanções devem constar dos assentamentos do inscrito, após o trânsito em julgado da decisão, não podendo ser objeto de publicidade a de censura.

Art. 36 - A censura é aplicável nos casos de:

I - infrações definidas nos incisos I a XVI e XXIX do art. 34;
II - violação a preceito do Código de Ética e Disciplina;
III - violação a preceito desta lei, quando para a infração não se tenha estabelecido sanção mais grave.

Parágrafo Único - A censura pode ser convertida em advertência, em ofício reservado, sem registro nos assentamentos do inscrito, quando presente circunstância atenuante.

Art. 37 - A suspensão é aplicável nos casos de:

I - infrações definidas nos incisos XVII a XXV do art. 34;
II - reincidência em infração disciplinar.

§ 1º - A suspensão acarreta ao infrator a interdição do exercício profissional, em todo o território nacional, pelo prazo de trinta dias a doze meses, de acordo com os critérios de individualização, previstos neste capítulo.

§ 2º - Nas hipóteses dos incisos XXI e XXIII do art. 34, a suspensão perdura até que satisfaça integralmente a dívida, inclusive com correção monetária.

§ 3º - Na hipótese do inciso XXIV do art. 34, a suspensão perdura até que preste novas provas de habilitação.

Art. 38 - A exclusão é aplicável nos casos de:

I - aplicação, por três vezes, de suspensão;
II - infrações definidas nos incisos XXVI a XXVIII do art. 34.

Parágrafo Único - Para a aplicação da sanção disciplinar de exclusão, é necessária a manifestação favorável de dois terços dos membros do Conselho Seccional competente.

Art. 39 - A multa, variável entre o mínimo correspondente ao valor de uma unidade e o máximo de seu décuplo, é aplicável cumulativamente com a censura ou suspensão, em havendo circunstâncias agravantes.

Art. 40 - Na aplicação das sanções disciplinares, são consideradas, para fins de atenuação, as seguintes circunstâncias, entre outras:

I - falta cometida na defesa de prerrogativa profissional;
II - ausência de punição disciplinar anterior;
III - exercício assíduo e proficiente de mandato ou cargo em qualquer órgão da OAB;
IV - prestação de relevantes serviços à advocacia ou à causa pública.

Parágrafo Único - Os antecedentes profissionais do inscrito, as atenuantes, o grau de culpa por ele revelada, as circunstâncias e as consequências da infração são considerados para o fim de decidir:

a) sobre conveniência da aplicação cumulativa da multa e de outra sanção disciplinar;
b) sobre o tempo de suspensão e o valor da multa aplicáveis.

Art. 41 - É permitido ao que tenha sofrido qualquer sanção disciplinar requerer, um ano após seu cumprimento, a reabilitação, em face de provas efetivas de bom comportamento.

Parágrafo Único - Quando a sanção disciplinar resultar da prática de crime, o pedido de reabilitação depende também da correspondente reabilitação criminal.

Art. 42 - Fica impedido de exercer o mandato o profissional a quem forem aplicadas as sanções disciplinares de suspensão ou exclusão.

Art. 43 - A pretensão à punibilidade das infrações disciplinares prescreve em cinco anos, contados da data da constatação oficial do fato.

§ 1º - Aplica-se a prescrição a todo processo disciplinar paralisado por mais de três anos, pendente de despacho ou julgamento, devendo ser arquivado de ofício, ou a requerimento da parte interessada, sem prejuízo de serem apuradas as responsabilidades pela paralisação.

§ 2º - A prescrição interrompe-se:

I - pela instauração de precesso disciplinar ou pela notificação válida feita diretamente ao representado;

II - pela decisão condenatória recorrível de qualquer órgão julgador da OAB.

### TÍTULO II -
### DA ORDEM DOS ADVOGADOS DO BRASIL

### CAPÍTULO I -
### DOS FINS E DA ORGANIZAÇÃO

**Art. 44** - A Ordem dos Advogados do Brasil (OAB), serviço público, dotada de personalidade jurídica e forma federativa, tem por finalidade:

I - defender a Constituição, a ordem jurídica do Estado democrático de direito, os direitos humanos, a justiça social, e o pugnar pela boa aplicação das leis, pela rápida administração da justiça e pelo aperfeiçoamento da cultura e das instituições jurídicas;

II - promover, com exclusividade, a representação, a defesa, a seleção e a disciplina dos advogados em toda a República Federativa do Brasil.

§ 1º - A OAB não mantém com órgãos da Administração Pública qualquer vínculo funcional ou hierárquico.

§ 2º - O uso da sigla OAB é privativo da Ordem dos Advogados do Brasil.

**Art. 45** - São órgãos da OAB:

I - o Conselho Federal;
II - os Conselhos Seccionais;
III - as Subseções;
IV - as Caixas de Assistência dos Advogados.

§ 1º - O Conselho Federal, dotado de personalidade jurídica própria, com sede na capital da República, é o órgão supremo da OAB.

§ 2º - Os Conselhos Seccionais, dotados de personalidade jurídica própria, têm jurisdição sobre os respectivos territórios dos Estados-membros, do Distrito Federal e dos Territórios.

§ 3º - As Subseções são partes autônomas do Conselho Seccional, na forma desta lei e de seu ato constitutivo.

§ 4º - As Caixas de Assistência dos Advogados, dotadas de personalidade jurídica própria, são criadas pelos Conselhos Seccionais, quando estes contarem com mais de mil e quinhentos inscritos.

§ 5º - A OAB, por constituir serviço público, goza de imunidade tributária total em relação a seus bens, rendas e serviços.

§ 6º - Os atos conclusivos dos órgãos da OAB, salvo quando reservados ou de administração interna, devem ser publicados na imprensa oficial ou afixados no fórum, na íntegra ou em resumo.

**Art. 46** - Compete à OAB fixar e cobrar, de seus inscritos, contribuições, preços de serviços e multas.

Parágrafo Único - Constitui título executivo extrajudicial a certidão passada pela diretoria do Conselho competente, relativa a crédito previsto neste artigo.

**Art. 47** - O pagamento da contribuição anual à OAB isenta os inscritos nos seus quadros do pagamento obrigatório da contribuição sindical.

**Art. 48** - O cargo de conselheiro ou de membro de diretoria de órgão da OAB é de exercício gratuito e obrigatório considerado serviço público relevante, inclusive para fins de disponibilidade e aposentadoria.

Art. 49 - Os Presidentes dos Conselhos e das Subseções da OAB têm legitimidade para agir, judicial e extrajudicialmente, contra qualquer pessoa que infringir as disposições ou os fins desta lei.

Parágrafo Único - As autoridades mencionadas no caput deste artigo têm, ainda, legitimidade para intervir, inclusive como assistentes, nos inquéritos e processos em que sejam indiciados, acusados ou ofendidos os inscritos na OAB.

Art. 50 - Para os fins desta lei, os Presidentes dos Conselhos da OAB e das Subseções podem requisitar cópias de peças de autos e documentos a qualquer tribunal, magistrado, cartório e órgão da Administração Pública direta, indireta e fundacional.

## CAPÍTULO II -
## DO CONSELHO FEDERAL

**Art. 51** - O Conselho Federal compõe-se:

I - dos conselheiros federais, integrantes das delegações de cada unidade federativa;
II - dos seus ex-presidentes, na qualidade de membros honorários vitalícios.

§ 1º - Cada delegação é formada por três conselheiros federais.
§ 2º - Os ex-presidentes têm direito apenas a voz nas sessões.

**Art. 52** - Os presidentes dos Conselhos Seccionais, nas sessões do Conselho Federal, têm lugar reservado junto à delegação respectiva e direito somente a voz.

**Art. 53** - O Conselho Federal tem sua estrutura e funcionamento definidos no Regulamento Geral da OAB.

§ 1º - O Presidente, nas deliberações do Conselho, tem apenas o voto de qualidade.
§ 2º - O voto é tomado por delegação, e não pode ser exercido nas matérias de interesse da unidade que represente.

**Art. 54** - Compete ao Conselho Federal:

I - dar cumprimento efetivo às finalidades da OAB;
II - representar, em juízo ou fora dele, os interesses coletivos ou individuais dos advogados;
III - velar pela dignidade, independência, prerrogativas e valorização da advocacia;
IV - representar, com exclusividade, os advogados brasileiros nos órgãos e eventos internacionais da advocacia;
V - editar e alterar o Regulamento Geral, o Código de Ética e Disciplina, e os Provimentos que julgar necessários;
VI - adotar medidas para assegurar o regular funcionamento dos Conselhos Seccionais;
VII - intervir nos Conselhos Seccionais, onde e quando constatar grave violação desta lei ou do regulamento geral;
VIII - cassar ou modificar, de ofício ou mediante representação, qualquer ato, de órgão ou autoridade da OAB, contrário a esta lei, ao regulamento geral, ao Código de Ética e Disciplina, e aos Provimentos, ouvida a autoridade ou o órgão em causa;

IX - julgar, em grau de recursos, as questões decididas pelos Conselhos Seccionais, nos casos previstos neste estatuto e no regulamento geral;

X - dispor sobre a identificação dos inscritos na OAB e sobre os respectivos símbolos privativos;

XI - apreciar o relatório anual e deliberar sobre o balanço e as contas de sua diretoria;
XII - homologar ou mandar suprir relatório anual, o balanço e as contas dos Conselhos Seccionais;
XIII - elaborar as listas constitucionalmente previstas, para o preenchimento dos cargos nos tribunais judiciários de âmbito nacional ou interestadual, com advogados que estejam em pleno exercício da profissão, vedada a inclusão de nome de membro do próprio Conselho ou de outro órgão da OAB;
XIV - ajuizar ação direta de inconstitucionalidade de normas legais e atos normativos, ação

civil pública, mandado de segurança coletivo, mandado de injunção e demais ações cuja legitimação lhe seja outorgada por lei;

XV - colaborar com o aperfeiçoamento dos cursos jurídicos, e opinar, previamente, nos pedidos apresentados aos órgãos competentes para criação, reconhecimento ou credenciamento desses cursos;

XVI - autorizar, pela maioria absoluta das delegações, a oneração ou alienação de seus bens imóveis;

XVII - participar de concursos públicos, nos casos previstos na Constituição e na lei, em todas as suas fases, quando tiverem abrangência nacional ou interestadual;

XVIII - resolver os casos omissos neste estatuto.

Parágrafo Único - A intervenção referida no inciso VII deste artigo depende de prévia aprovação por dois terços das delegações, garantido o amplo direito de defesa do Conselho Seccional respectivo, nomeando-se diretoria provisória para o prazo que se fixar.

**Art. 55** - A diretoria do Conselho Federal é composta de um Presidente, de um Vice-Presidente, de um Secretário-Geral, de um Secretário-Geral Adjunto e de um Tesoureiro.

§ 1º - O Presidente exerce a representação nacional e internacional da OAB, compentindo-lhe convocar o Conselho Federal, presidi-lo, representá-lo ativa e passivamente, em juízo ou fora dele, promover-lhe a administração patrimonial e dar execução às suas decisões.

§ 2º - O regulamento geral define as atribuições dos membros da diretoria e a ordem de substituição em caso de vacância, licença, falta ou impedimento.

§ 3º - Nas deliberações do Conselho Federal, os membros da diretoria votam como membros de suas delegações, cabendo ao Presidente, apenas, o voto de qualidade e o direito de embargar a decisão, se esta não for unânime.

## CAPÍTULO III -
## DO CONSELHO SECCIONAL

**Art. 56** - O Conselho Seccional compõe-se de conselheiros em número prorporcional ao de seus inscritos, segundo critérios estabelecidos no regulamento geral.

§ 1º - São membros honorários vitalícios os seus ex-presidentes, somente com direito a voz em suas sessões.

§ 2º - O Presidente do Instituto dos Advogados local é membro honorário, somente com direito a voz nas sessões do Conselho.

§ 3º - Quando presentes às sessões do Conselho Seccional, o Presidente do Conselho Federal, os Conselheiros Federais integrantes da respectiva delegação, o Presidente da Caixa de Assistência dos Advogados e os Presidentes das Subseções têm direito a voz.

**Art. 57** - O Conselho Seccional exerce e observa, no respectivo território, as competências, vedações e funções atribuídas ao Conselho Federal, no que couber e no âmbito de sua competência material e territorial, e as normas gerais estabelecidas nesta lei, no regulamento geral, no Código de Ética e Disciplina, e nos Provimentos.

Art. 58 - Compete privativamente ao Conselho Seccional:

I - editar seu regimento interno e resoluções;

II - criar as Subseções e a Caixa de Assistência dos Advogados;

III - julgar, em grau de recurso, as questões decididas por seu Presidente, por sua diretoria, pelo Tribunal de Ética e Disciplina, pelas diretorias das Subseções e da Caixa de Assistência dos Advogados;

IV - fiscalizar a aplicação da receita, apreciar o relatório anual e deliberar sobre o balanço e as contas de sua diretoria, das diretorias das Subseções e da Caixa de Assistência dos Advogados;

V - fixar a tabela de honorários, válida para todo o território estadual;

VI - realizar o Exame de Ordem;

VII - decidir os pedidos de inscrição nos quadros de advogados e estagiários;

VIII - manter cadastro de seus inscritos;

IX - fixar, alterar e receber contribuições obrigatórias, preços de serviços e multas;

X - participar da elaboração dos concursos públicos, em todas as suas fases, nos casos previstos na Constituição e nas leis, no âmbito do seu território;

XI - determinar, com exclusividade, critérios para o traje dos advogados, no exercício

profissional;

XII - aprovar e modificar seu orçamento anual;

XIII - definir a composição e o funcionamento do Tribunal de Ética e Disciplina, e escolher seus membros;

XIV - eleger as listas, constitucionalmente previstas, para preenchimento dos cargos nos tribunais judiciários, no âmbito de sua competência e na forma do Provimento do Conselho Federal, vedada a inclusão de membros do próprio Conselho e de qualquer órgão da OAB;

XV - intervir nas Subseções e na Caixa de Assistência dos Advogados;

XVI - desempenhar outras atribuições previstas no regulamento geral.

Art. 59 - A diretoria do Conselho Seccional tem composição idêntica e atribuições equivalentes às do Conselho Federal, na forma do regimento interno daquele.

## CAPÍTULO IV -
## DA SUBSEÇÃO

Art. 60 - A Subseção pode ser criada pelo Conselho Seccional, que fixa sua área territorial e seus limites de competência e autonomia.

§ 1º - A área territorial da Subseção pode abranger um ou mais municípios, ou parte de municípios, inclusive da capital do Estado, contando com um mínimo de quinze advogados, nela profissionalmente domiciliados.

§ 2º - A Subseção é administrada por uma diretoria, com atribuições e composição equivalente às da diretoria do Conselho Seccional.

§ 3º - Havendo mais de cem advogados, a Subseção pode ser integrada, também, por um conselho em número de membros fixado pelo Conselho Seccional.

§ 4º - Os quantitativos referidos nos §§ 1º e 3º deste artigo podem ser ampliados, na forma do regimento interno do Conselho Seccional.

§ 5º - Cabe ao Conselho Seccional fixar, em seu orçamento, dotações específicas destinadas à manutenção das Subseções.

§ 6º - O Conselho Seccional, mediante o voto de dois terços de seus membros, pode intervir nas Subseções, onde constatar grave violação desta lei ou do regimento interno daquele.

Art. 61 - Compete à Subseção, no âmbito de seu território:

I - dar cumprimento efetivo às finalidades da OAB;

II - velar pela dignidade, independência e valorização da advocacia, e fazer valer as prerrogativas do advogado;

III - representar a OAB perante os poderes constituídos;

IV - desempenhar as atribuições previstas no regulamento geral ou por delegação de competência do Conselho Seccional.

Parágrafo Único - Ao Conselho da Subseção, quando houver, compete exercer as funções e atribuições do Conselho Seccional, na forma do regimento interno deste, e ainda:

a) editar seu regimento interno, a ser referendado pelo Conselho Seccional;

b) editar resoluções, no âmbito de sua competência;

c) instaurar e instruir processos disciplinares, para julgamento pelo Tribunal de Ética e Disciplina;

d) receber pedido de inscrição nos quadros de advogado e estagiário, instruindo e emitindo parecer prévio, para decisão do Conselho Seccional.

## CAPÍTULO V -
## DA CAIXA DE ASSITÊNCIA DOS ADVOGADOS

Art. 62 - A Caixa de Assistência dos Advogados, com personalidade jurídica própria, destina-se a prestar assistência aos inscritos no Conselho Seccional a que se vincule.

§ 1º - A Caixa é criada e adquire personalidade jurídica com a aprovação e registro de seu estatuto pelo respectivo Conselho Seccional da OAB, na forma do regulamento geral.

§ 2º - A Caixa pode, em benefício dos advogados, promover a seguridade complementar.

§ 3º - Compete ao Conselho Seccional fixar contribuição obrigatória devida por seus inscritos, destinada à manutenção do disposto no parágrafo anterior, incidente sobre atos decorrentes do efetivo exercício da advocacia.

§ 4º - A diretoria da Caixa é composta de cinco membros, com atribuições definidas no regimento interno.

§ 5º - Cabe à Caixa a metade da receita das anuidades recebidas pelo Conselho Seccional, considerado o valor resultante após as deduções regulamentares obrigatórias.

§ 6º - Em caso de extinção ou desativação da Caixa, seu patrimônio se incorpora ao do Conselho Seccional respectivo.

§ 7º - O Conselho Seccional, mediante voto de dois terços de seus membros, pode intervir na Caixa de Assistência dos Advogados, no caso de descumprimento de suas finalidades, designando diretoria provisória, enquanto durar a intervenção.

## CAPÍTULO VI -
### DAS ELEIÇÕES E DOS MANDATOS

**Art. 63** - A eleição dos membros de todos os órgãos da OAB será realizada na segunda quinzena do mês de novembro, do último ano do mandato, mediante cédula única e votação direta dos advogados regularmente inscritos.

§ 1º - A eleição, na forma e segundo os critérios e procedimentos estabelecidos no regulamento geral, é de comparecimento obrigatório para todos os advogados inscritos na OAB.

§ 2º - O candidato deve comprovar situação regular junto à OAB, não ocupar cargo exonerável ad nutum, não ter sido condenado por infração disciplinar, salvo reabilitação, e exercer efetivamente a profissão há mais de cinco anos.

**Art. 64** - Consideram-se eleitos os candidatos integrantes da chapa que obtiver a maioria dos votos válidos.

§ 1º - A chapa para o Conselho Seccional deve ser composta dos candidatos ao conselho e à sua diretoria e, ainda, à delegação ao Conselho Federal e à Diretoria da Caixa de Assistência dos Advogados para eleição conjunta.

§ 2º - A chapa para a Subseção deve ser composta com os candidatos à diretoria, e de seu conselho quando houver.

**Art. 65** - O mandato em qualquer órgão da OAB é de três anos, iniciando-se em primeiro de janeiro de ano seguinte ao da eleição, salvo o Conselho Federal.

Parágrafo Único - Os conselheiros federais eleitos iniciam seus mandatos em primeiro de fevereiro do ano seguinte ao da eleição.

**Art. 66** - Extingue-se o mandato automaticamente, antes do seu término, quando:

I - ocorrer qualquer hipótese de cancelamento de inscrição ou de licenciamento do profissional;
II - o titular sofrer condenação disciplinar;
III - o titular faltar, sem motivo justificado, a três reuniões ordinárias consecutivas de cada órgão deliberativo do conselho ou da diretoria da Subseção ou da Caixa de Assistência dos Advogados, não podendo ser reconduzido no mesmo período de mandato.

Parágrafo Único - Extinto qualquer mandato, nas hipóteses deste artigo, cabe ao Conselho Seccional escolher o substituto, caso não haja suplente.

**Art. 67** - A eleição da Diretoria do Conselho Federal, que tomará posse no dia 1º de fevereiro, obedecerá às seguintes regras:

I - será admitido registro, junto ao Conselho Federal, de candidaturas à presidência, desde seis meses até um mês antes da eleição;
II - o requerimento de registro deverá vir acompanhado do apoiamento de, no mínimo, seis Conselhos Seccionais;
III - até um mês antes das eleições deverá ser requerido o registro da chapa completa, sob pena de cancelamento da candidatura respectiva;
IV - no dia 25 de janeiro, proceder-se-á, em todos os Conselhos Seccionais, à eleição da Diretoria do Conselho Federal, devendo o Presidente do Conselho Seccional comunicar, em três dias, à Diretoria do Conselho Federal, o resultado do pleito;
V - de posse dos resultados das Seccionais, a Diretoria do Conselho Federal procederá à

contagem dos votos, correspondendo a cada Conselho Seccional um voto, e proclamará o resultado.

Parágrafo Único - Com exceção do candidato a Presidente, os demais integrantes da chapa deverão ser conselheiros federais eleitos.

## TÍTULO III -
## DO PROCESSO NA OAB

### CAPÍTULO I -
### DISPOSIÇÕES GERAIS

**Art. 8** - Salvo disposição em contrário, aplicam-se subsidiariamente ao processo disciplinar as regras da legislação processual penal comum e, aos demais processos, as regras gerais do procedimento administrativo comum e da legislação processual civil, nessa ordem.

**Art. 69** - Todos os prazos necessários à manifestação de advogados, estagiários e terceiros, nos processos em geral da OAB, são de quinze dias, inclusive para interposição de recursos.

§ 1º - Nos casos de comunicação por ofício reservado, ou de notificação pessal, o prazo se conta a partir do dia útil imediato ao da notificação do recebimento.

§ 2º - Nos casos de publicação na imprensa oficial do ato ou da decisão, o prazo inicia-se no primeiro dia útil seguinte.

### CAPÍTULO II -
### DO PROCESSO DISCIPLINAR

**Art. 70** - O poder de punir disciplinarmente os inscritos na OAB compete exclusivamente ao Conselho Seccional em cuja base territorial tenha ocorrido a infração, salvo se a falta for cometida perante o Conselho Federal.

§ 1º - Cabe ao Tribunal de Ética e Disciplina, do Conselho Seccional competente, julgar os processos disciplinares, instruídos pelas Subseções ou por relatores do próprio conselho.

§ 2º - A decisão condenatória irrecorrível deve ser imediatamente comunicada ao Conselho Seccional onde o representado tenha inscrição principal, para constar dos respectivos assentamentos.

§ 3º - O Tribunal de Ética e Disciplina do Conselho onde o acusado tenha inscrição principal pode suspendê-lo preventivamente, em caso de repercussão prejudicial à dignidade da advocacia, depois de ouvi-lo em sessão especial para a qual deve ser notificado a comparecer, salvo se não atender à notificação. Neste caso, o processo disciplinar deve ser concluído no prazo máximo de noventa dias.

**Art. 71** - A jurisdição disciplinar não exclui a comum e, quando o fato constituir crime e ou contravenção, deve ser comunicado às autoridades competentes.

**Art. 72** - O processo disciplinar instaura-se de ofício ou mediante representação de qualquer autoridade ou pessoa interessada.

§ 1º - O Código de Ética e Disciplina estabelece os critérios de admissibilidade da representação e os procedimentos disciplinares.

§ 2º - O processo disciplinar tramita em sigilo, até o seu término, só tendo acesso às suas informações as partes, seus defensores e a autoridade judiciária competente.

**Art. 73** - Recebidas a representação, o Presidente deve designar relator, a quem compete a instrução do processo e o oferecimento de parecer preliminar a ser submetido ao Tribunal de Ética e Disciplina.

§ 1º - Ao representado deve ser assegurado amplo direito de defesa, podendo acompanhar o processo em todos os termos, pessoalmente ou por intermédio de procurador, oferecendo defesa

prévia após ser notificado, razões finais após a instrução e defesa oral perante o Tribunal de Ética e Disciplina, por ocasião do julgamento.

§ 2° - Se, após a defesa prévia, o relator se manifestar pelo indeferimento liminar da representação, este deve ser decidido pelo Presidente do Conselho Seccional, para determinar seu arquivamento.

§ 3° - O prazo para defesa prévia pode ser prorrogado por motivo relevante, a juízo do relator.

§ 4° - Se o representado não for encontrado, ou for revel, o Presidente do Conselho ou da Subseção deve designar-lhe defensor dativo;

§ 5° - É também premitida a revisão do processo disciplinar, por erro de julgamento ou por condenação baseada em falsa prova.

**Art. 74** - O Conselho Seccional pode adotar as medidas administrativas e judiciais pertinentes, objetivando a que o profissional suspenso ou excluído devolva os documentos de identificação.

## CAPÍTULO III -
## DOS RECURSOS

**Art. 75** - Cabe recurso ao Conselho Federal de todas as decisões definidas proferidas pelo Conselho Seccional, quando não tenham sido unânimes ou, sendo unânimes, contrariem esta lei, decisão do Conselho Federal ou de outro Conselho Seccional e, ainda, o regulamento geral, o Código de Ética e Disciplina e os Provimentos.

Parágrafo Único - Além dos interessados, o Presidente do Conselho Seccional é legitimado a interpor o recurso referido neste artigo.

**Art. 76** - Cabe recurso ao Conselho Seccional de todas as decisões proferidas por seu Presidente, pelo Tribunal de Ética e Disciplina, ou pela diretoria da Subseção ou da Caixa de Assistência dos Advogados.

**Art.7 7** - Todos os recursos têm efeito suspensivo, exceto quando tratarem de eleições (arts. 63 e seguintes), de suspensão preventiva decidida pelo Tribunal de Ética e Disciplina, e de cancelamento da inscrição obtida com falsa prova.

Parágrafo Único - O regulamento geral disciplina o cabimento de recursos específicos, no âmbito de cada órgão julgador.

## TÍTULO IV -
## DAS DISPOSIÇÕES GERIAS E TRANSITÓRIAS

**Art. 78** - Cabe ao Conselho Federal da OAB, por deliberação de dois terços, pelo menos, das delegações, editar o regulamento geral deste estatuto, no prazo de seis meses, contados da publicação desta lei.

**Art. 79** - Aos servidores da OAB, aplica-se o regime trabalhista.

§ 1° - Aos servidores da OAB, sujeitos ao regime da Lei n° 8.112, de 11 de dezembro de 1990, é concedido o direito de opção pelo regime trabalhista, no prazo de noventa dias a partir da vigência desta lei, sendo assegurado aos optantes o pagamento de indenização, quando da aposentadoria, correspondente a cinco vezes o valor da última remuneração.

§ 2° - Os servidores que não optarem pelo regime trabalhista serão posicionados no quadro em extinção, assegurado o direito adquirido ao regime legal anterior.

**Art. 80** - Os Conselhos Federal e Seccionais devem promover trienalmente as respectivas Conferências, em data não coincidente com o ano eleitoral, e, periodicamente, reunião do colégio de presidentes a eles vinculados, com finalidade consultiva.

**Art. 81** - Não se aplicam aos que tenham assumido originariamente o cargo de Presidente do Conselho Federal ou dos Conselhos Seccionais, até a data da publicação desta lei, as normas contidas no Título II, acerca da composição desses Conselhos, ficando assegurado o pleno direito de voz e voto em suas sessões.

Art. 82 - Aplicam-se as alterações previstas nesta lei, quanto a mandatos, eleições, composição e atribuições dos órgãos da OAB, a partir do término do mandato do atuais membros, devendo os Conselhos Federal e Seccionais disciplinarem os respectivos procedimentos de adaptação.

Parágrafo Único - Os mandatos dos membros dos órgãos da OAB, eleitos na primeira eleição sob a vigência desta lei, e na forma do Capítulo VI do Título II, terão início no dia seguinte ao término dos atuais mandatos, encerrando-se em 31 de dezembro do terceiro ano do mandato e em 31 de janeiro do terceiro ano do mandato, neste caso com relação ao Conselho Federal.

Art. 83 - Não se aplica o disposto no art. 28, inciso II, desta lei, aos membros do Ministério Público que, na data de promulgação da Constituição, se incluam na previsão do art. 29, § 3º, do seu Ato das Disposições Constitucionais Transitórias.

Art. 84 - O estagiário, inscrito no respectivo quadro, fica dispensado do Exame de Ordem, desde que comprove, em até dois anos da promulgação desta lei, o exercício e resultado do estágio profissional ou a conclusão, com aproveitamento do estágio de Prática Forense e Organização Judiciária, realizado junto à respectiva faculdade, na forma da legislação em vigor.

Art. 85 - O Instituto dos Advogados Brasileiros e as instituições a ele filiadas têm qualidade para promover perante a OAB o que julgarem do interesse dos advogados em geral ou de qualquer dos seus membros.

Art. 86 - Esta lei entra em vigor na data de sua publicação.

Art. 87 - Revogam-se as disposições em contrário, especialmente a Lei nº 4.215, de 27 de abril de 1963, a Lei nº 5.390, de 23 de fevereiro de 1968, o Decreto-Lei nº 505, de 18 de março de 1969, a Lei nº 5.681, de 20 de julho de 1971, a Lei nº 5.842, de 6 de dezembro de 1972, a Lei nº 5.960, de 10 de dezembro de 1973, a Lei nº 6.743, de 5 de dezembro de 1979, a Lei nº 6.884, de 9 de dezembro de 1980, a Lei nº 6.994, de 26 de maio de 1982, mantidos os efeitos da Lei nº 7.346, de 22 de julho de 1985.

Brasília, 4 de julho de 1994; 173º da Independência e 106º da República.

*ITAMAR FRANCO*
*Alexandre de Paula Dupeyrat Martins*

# CODIGO PENAL BRASIL

**Decreto-Lei nº 2.848 de 07.12.1940**
**alterado pela Lei nº 9.777 em 26/12/98 (+)**

PARTE GERAL

Título I

Da Aplicação da Lei Penal
Anterioridade da Lei

Art. 1º.  - Não há crime sem lei anterior que o defina. Não há pena sem prévia cominação legal.

Lei penal no tempo

Art. 2º.  - Ninguém pode ser punido por fato que lei posterior deixa de considerar crime, cessando em virtude dela a execução e os efeitos penais da sentença condenatória.

Parágrafo único. A lei posterior, que de qualquer modo favorecer o agente, aplica-se aos fatos anteriores, ainda que decididos por sentença condenatória transitada em julgado.

Lei excepcional ou temporária

Art. 3º. - A lei excepcional ou temporária, embora decorrido o período de sua duração ou cessadas as circunstâncias que a determinaram, aplica-se ao fato praticado durante sua vigência.

Tempo do crime

Art. 4º.  - Considera-se praticado o crime no momento da ação ou omissão, ainda que outro seja o momento do resultado.

Territorialidade

Art. 5º.  - Aplica-se a lei brasileira, sem prejuízo de convenções, tratados e regras de direito internacional, ao crime cometido no território nacional.

1º  - Para os efeitos penais, consideram-se como extensão do território nacional as embarcações e aeronaves brasileiras, de natureza pública ou a serviço do governo brasileiro onde quer que se encontrem, bem como as aeronaves e as embarcações brasileiras, mercantes ou de propriedade privada, que se achem, respectivamente, no espaço aéreo correspondente ou em alto-mar.

2º  - É também aplicável a lei brasileira aos crimes praticados a bordo de aeronaves ou embarcações estrangeiras de propriedade privada, achando-se aquelas em pouso no território nacional ou em vôo no espaço aéreo correspondente, e estas em porto ou mar territorial do Brasil.

Lugar do crime

III - submete pessoa que está sob sua guarda ou custódia a vexame ou a constrangimento não autorizado em lei;

IV - efetua, com abuso de poder, qualquer diligência.

Fuga de pessoa presa ou submetida a medida de segurança

Art. 351. - Promover ou facilitar a fuga de pessoa legalmente presa ou submetida a medida de segurança detentiva:

Pena - detenção, de 6 (seis) meses a 2 (dois) anos.

1º - Se o crime é praticado a mão armada, ou por mais de uma pessoa, ou mediante arrombamento, a pena é de reclusão, de 2 (dois) a 6 (seis) anos.

2º - Se há emprego de violência contra pessoa, aplica-se também a pena correspondente à violência.

3º - A pena é de reclusão, de 1 (um) a 4 (quatro) anos, se o crime é praticado por pessoa sob cuja custódia ou guarda está o preso ou o internado.

4º - No caso de culpa do funcionário incumbido da custódia ou guarda, aplica-se a pena de detenção, de 3 (três) meses a 1 (um) ano, ou multa.

Evasão mediante violência contra a pessoa

Art. 352. - Evadir-se ou tentar evadir-se o preso ou o indivíduo submetido a medida de segurança detentiva, usando de violência contra a pessoa:

Pena - detenção, de 3 (três) meses a 1 (um) ano, além da pena correspondente à violência.

Arrebatamento de preso

Art. 353. - Arrebatar preso, a fim de maltratá-lo, do poder de quem o tenha sob custódia ou guarda:

Pena - reclusão, de 1 (um) a 4 (quatro) anos, além da pena correspondente à violência.

Motim de presos

Art. 354. - Amotinarem-se presos, perturbando a ordem ou disciplina da prisão:

Pena - detenção, de 6 (seis) meses a 2 (dois) anos, além da pena correspondente à violência.

Patrocínio infiel

Art. 355. - Trair, na qualidade de advogado ou procurador, o dever profissional, prejudicando interesse, cujo patrocínio, em juízo, lhe é confiado:

Pena - detenção, de 6 (seis) meses a 3 (três) anos, e multa.

Patrocínio simultâneo ou tergiversação

Parágrafo único. Incorre na pena deste artigo o advogado ou procurador judicial que defende na mesma causa, simultânea ou sucessivamente, partes contrárias.

Sonegação de papel ou objeto de valor probatório

Art. 356. - Inutilizar, total ou parcialmente, ou deixar de restituir autos, documento ou objeto de valor probatório, que recebeu na qualidade de advogado ou procurador:

Pena - detenção, de 6 (seis) meses a 3 (três) anos, e multa.

Exploração de prestígio

Art. 357. - Solicitar ou receber dinheiro ou qualquer outra utilidade, a pretexto de influir em juiz, jurado, órgão do Ministério Público, funcionário de justiça, perito, tradutor, intérprete ou testemunha:

Pena - reclusão, de 1 (um) a 5 (cinco) anos, e multa.

Parágrafo único. As penas aumentam-se de um terço, se o agente alega ou insinua que o dinheiro ou utilidade também se destina a qualquer das pessoas, referidas, neste artigo.

Violência ou fraude em arrematação judicial

Art. 358. - Impedir, perturbar ou fraudar arrematação judicial; afastar ou procurar afastar concorrente ou licitante, por meio de violência, grave ameaça, fraude ou oferecimento de vantagem:

Pena - detenção, de 2 (dois) meses a 1 (um) ano, ou multa, além da pena correspondente à violência.

Desobediência a decisão judicial sobre perda ou suspensão de direito

Art. 359. - Exercer função, atividade, direito, autoridade ou múnus, de que foi suspenso ou privado por decisão judicial:

Pena - detenção, de 3 (três) meses a 2 (dois) anos, ou multa.

DISPOSIÇÕES FINAIS

Art. 360. - Ressalvada a legislação especial sobre os crimes contra a existência, a segurança e a integridade do Estado e contra a guarda e o emprego da economia popular, os crimes de imprensa e os de falência, os de responsabilidade do Presidente da República e dos Governadores ou Interventores, e os crimes militares, revogam-se as disposições em contrário.

Art. 361. - Este Código entrará em vigor no dia 1° de janeiro de 1942.

**LAW No. 8,906 OF JULY 4, 1994 –**
**DOU [Published in the Federal Register Newspaper] on 7/5/94**

> Regulating the <u>Attorneyship Act or</u>
> <u>Statute and the O.A.B. [*Ordem dos*</u>
> <u>*Advogados do Brasil* – Brazilian Bar</u>
> <u>Association</u>]

As **PRESIDENT OF THE REPUBLIC**, *I hereby make known that the*
*National Congress and I sanction the following law:*

**TITLE I –**
**ON ATTORNEYSHIP**

**CHAPTER I –**
**ON THE ACTIVITY OF ATTORNEYS**

.../...

**Article 2** – The attorney is indispensable for the administration of
justice.

§ 1st - In his private ministry, the attorney renders public service and
exercises a social role.

§ 2nd - In the judicial process, the attorney contributes, through the
postulation of a favorable decision for its client, to the convincing of
the judicial authority, and his acts constitute the public *múnus* [all that
emanates from public authority or the law and which obliges
individuals to certain duties for the benefit of the community or the
social order.]

§ 3rd - In the exercise of his profession, the attorney is inviolable for
his acts and manifestations within the limits of this law.

.../...

**Article 7th -** The following are the rights of an attorney:

.../...



EXHIBIT
5

**XI -** bring a complaint, either verbally or in writing, before any court, tribunal or authority against non-compliance with a precept of a law, regulation or rule;

.../...

§ 2nd - The attorney enjoys professional immunity, and any manifestation on his part shall not constitute punishable affront or slander, defamation, or disrespect insofar as the exercise of his activity is concerned, in or out of court, except for disciplinary sanctions that may be imposed by the OAB (Brazilian Bar Association) for any excesses made.

.../...

## CHAPTER VIII
## ON ATTORNEY'S ETHICS

**Article 31 -** The attorney must behave in such a manner as to merit respect and to contribute to the prestige of the profession and to the community of attorneys.

§ 1st - The attorney, in the exercise of its profession, must maintain his independence under any circumstance.

§ 2nd - No fear of displeasing a judge or any other authority, or of becoming unpopular, can detain the attorney in the exercise of his profession.

**Article 32 -** The attorney is responsible for all actions he might perform with malice or blame in the exercise of his professional duties.

**Sole Paragraph –** In case of reckless proceedings, the attorney shall be considered liable, along with its client, as long as he has joined with the client for the purpose of harming the other party, which will be determined in a specific suit.

**Article 33 -** The attorney is obliged to comply strictly with the duties specified in the Code of Ethics and Discipline.

**Sole Paragraph -** The Code of Ethics and Discipline regulates the obligations of an attorney towards the community, the client, and other colleagues, and, moreover, advertising, refusal to make legal representation, his duty to render legal assistance, his obligation to general courtesy, and respective disciplinary procedures.

**Article 34 –** The following constitute disciplinary infractions:

.../...

**VII –** Violating, without just cause, professional confidentiality;

**VIII –** Coming to an understanding with the opposing party without authorization of the client or knowledge of the opposing attorney;

**IX –** Harming, through grave culpable act, a matter entrusted to his representation;

.../...

**XXV –** Maintaining conduct incompatible with the practice of law

**ALELUIA SULA SIMÕES GODFREY-JENSEN**
**Translator and Interpreter**
**7081 N.W. 107 Court**
**Miami, FL 33178**
**Telephone: (305) 437-9989**
**Fax: (305) 437-9808**
**SS #: 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**

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA        )
                        )    S.S.
COUNTY OF BROWARD        )

Before me, the undersigned notary public in and for the State of Florida at large, there personally appears **ALELUIA SULA SIMÕES GODFREY-JENSEN,** a fully qualified professional translator and interpreter, who, after being duly sworn, deposes and states that she is fully versed in the Portuguese and English languages, and that the foregoing is a true and correct translation of the selected parts of the attached document, and that this page immediately follows the three-page translation.

Aleluia Sula Simões Godfrey-Jensen

Sworn and subscribed before me on this twelfth day of the month of July, 2007 AD.

Notary Public
State of Florida at Large

My commission expires:

DEANNE L. FERRESE
MY COMMISSION # DD 444265
EXPIRES: July 8, 2009
Bonded Thru Notary Public Underwriters

Personally known to me        ( ) or
Produced identification        (X )
Type of ID produced:  Florida State Driver License Number G316-017-56-648-1

The utmost care has been taken to ensure accuracy in all translations.

# CÓDIGO DE ÉTICA E DISCIPLINA DA OAB*

O CONSELHO FEDERAL DA ORDEM DOS ADVOGADOS DO BRASIL, ao instituir o Código de Ética e Disciplina, norteou-se por princípios que formam a consciência profissional do advogado e representam imperativos de sua conduta, tais como: os de lutar sem receio pelo primado da Justiça; pugnar pelo cumprimento da Constituição e pelo respeito à Lei, fazendo com que esta seja interpretada com retidão, em perfeita sintonia com os fins sociais a que se dirige e as exigências do bem comum; ser fiel à verdade para poder servir à Justiça como um de seus elementos essenciais; proceder com lealdade e boa-fé em suas relações profissionais e em todos os atos do seu ofício; empenhar-se na defesa das causas confiadas ao seu patrocínio, dando ao constituinte o amparo do Direito, e proporcionando-lhe a realização prática de seus legítimos interesses; comportar-se, nesse mister, com independência e altivez, defendendo com o mesmo denodo humildes e poderosos; exercer a advocacia com o indispensável senso profissional, mas também com desprendimento, jamais permitindo que o anseio de ganho material sobreleve à finalidade social do seu trabalho; aprimorar-se no culto dos princípios éticos e no domínio da ciência jurídica, de modo a tornar-se merecedor da confiança do cliente e da sociedade como um todo, pelos atributos intelectuais e pela probidade pessoal; agir, em suma, com a dignidade das pessoas de bem e a correção dos profissionais que honram e engrandecem a sua classe.

Inspirado nesses postulados é que o Conselho Federal da Ordem dos Advogados do Brasil, no uso das atribuições que lhe são conferidas pelos arts. 33 e 54, V, da Lei nº 8.906, de 04 de julho de 1994, aprova e edita este Código, exortando os advogados brasileiros à sua fiel observância.

## TÍTULO I
## DA ÉTICA DO ADVOGADO

### CAPÍTULO I
### DAS REGRAS DEONTOLÓGICAS FUNDAMENTAIS

**Art. 1º** O exercício da advocacia exige conduta compatível com os preceitos deste Código, do Estatuto, do Regulamento Geral, dos Provimentos e com os demais princípios da moral individual, social e profissional.

**Art. 2º** O advogado, indispensável à administração da Justiça, é defensor do estado democrático de direito, da cidadania, da moralidade pública, da Justiça e da paz social, subordinando a atividade do seu Ministério Privado à elevada função pública que exerce.

**Parágrafo único.** São deveres do advogado:

I - preservar, em sua conduta, a honra, a nobreza e a dignidade da profissão, zelando pelo seu caráter de essencialidade e indispensabilidade;

II - atuar com destemor, independência, honestidade, decoro, veracidade, lealdade, dignidade e boa-fé;

---

* Publicado no Diário da Justiça, Seção I, do dia 01.03.95, págs. 4.000 a 4.004



III - velar por sua reputação pessoal e profissional;

IV - empenhar-se, permanentemente, em seu aperfeiçoamento pessoal e profissional;

V - contribuir para o aprimoramento das instituições, do Direito e das leis;

VI - estimular a conciliação entre os litigantes, prevenindo, sempre que possível, a instauração de litígios;

VII - aconselhar o cliente a não ingressar em aventura judicial;

VIII - abster-se de:

a) utilizar de influência indevida, em seu benefício ou do cliente;

b) patrocinar interesses ligados a outras atividades estranhas à advocacia, em que também atue;

c) vincular o seu nome a empreendimentos de cunho manifestamente duvidoso;

d) emprestar concurso aos que atentem contra a ética, a moral, a honestidade e a dignidade da pessoa humana;

e) entender-se diretamente com a parte adversa que tenha patrono constituído, sem o assentimento deste.

IX - pugnar pela solução dos problemas da cidadania e pela efetivação dos seus direitos individuais, coletivos e difusos, no âmbito da comunidade.

**Art. 3º** O advogado deve ter consciência de que o Direito é um meio de mitigar as desigualdades para o encontro de soluções justas e que a lei é um instrumento para garantir a igualdade de todos.

**Art. 4º** O advogado vinculado ao cliente ou constituinte, mediante relação empregatícia ou por contrato de prestação permanente de serviços, integrante de departamento jurídico, ou órgão de assessoria jurídica, público ou privado, deve zelar pela sua liberdade e independência.

**Parágrafo único.** É legítima a recusa, pelo advogado, do patrocínio de pretensão concernente a lei ou direito que também lhe seja aplicável, ou contrarie expressa orientação sua, manifestada anteriormente.

**Art. 5º** O exercício da advocacia é incompatível com qualquer procedimento de mercantilização.

**Art. 6º** É defeso ao advogado expor os fatos em Juízo falseando deliberadamente a verdade ou estribando-se na má-fé.

**Art. 7º** É vedado o oferecimento de serviços profissionais que impliquem, direta ou indiretamente, inculcação ou captação de clientela.

## CAPÍTULO II
## DAS RELAÇÕES COM O CLIENTE

**Art. 8º** O advogado deve informar o cliente, de forma clara e inequívoca, quanto a eventuais riscos da sua pretensão, e das consequências que poderão advir da demanda.

**Art. 9º** A conclusão ou desistência da causa, com ou sem a extinção do mandato, obriga o advogado à devolução de bens, valores e documentos recebidos no exercício do

mandato, e à pormenorizada prestação de contas, não excluindo outras prestações solicitadas, pelo cliente, a qualquer momento.

**Art. 10**. Concluída a causa ou arquivado o processo, presumem-se o cumprimento e a cessação do mandato.

**Art. 11.** O advogado não deve aceitar procuração de quem já tenha patrono constituído, sem prévio conhecimento deste, salvo por motivo justo ou para adoção de medidas judiciais urgentes e inadiáveis.

**Art. 12.** O advogado não deve deixar ao abandono ou ao desamparo os feitos, sem motivo justo e comprovada ciência do constituinte.

**Art. 13.** A renúncia ao patrocínio implica omissão do motivo e a continuidade da responsabilidade profissional do advogado ou escritório de advocacia, durante o prazo estabelecido em lei; não exclui, todavia, a responsabilidade pelos danos causados dolosa ou culposamente aos clientes ou a terceiros.

**Art. 14.** A revogação do mandato judicial por vontade do cliente não o desobriga do pagamento das verbas honorárias contratadas, bem como não retira o direito do advogado de receber o quanto lhe seja devido em eventual verba honorária de sucumbência, calculada proporcionalmente, em face do serviço efetivamente prestado.

**Art. 15.** O mandato judicial ou extrajudicial deve ser outorgado individualmente aos advogados que integrem sociedade de que façam parte, e será exercido no interesse do cliente, respeitada a liberdade de defesa.

**Art. 16.** O mandato judicial ou extrajudicial não se extingue pelo decurso de tempo, desde que permaneça a confiança recíproca entre o outorgante e o seu patrono no interesse da causa.

**Art. 17.** Os advogados integrantes da mesma sociedade profissional, ou reunidos em caráter permanente para cooperação recíproca, não podem representar em juízo clientes com interesses opostos.

**Art. 18.** Sobrevindo conflitos de interesse entre seus constituintes, e não estando acordes os interessados, com a devida prudência e discernimento, optará o advogado por um dos mandatos, renunciando aos demais, resguardado o sigilo profissional.

**Art. 19.** O advogado, ao postular em nome de terceiros, contra ex-cliente ou ex-empregador, judicial e extrajudicialmente, deve resguardar o segredo profissional e as informações reservadas ou privilegiadas que lhe tenham sido confiadas.

**Art. 20.** O advogado deve abster-se de patrocinar causa contrária à ética, à moral ou à validade de ato jurídico em que tenha colaborado, orientado ou conhecido em consulta; da mesma forma, deve declinar seu impedimento ético quando tenha sido convidado pela outra parte, se esta lhe houver revelado segredos ou obtido seu parecer.

**Art. 21.** É direito e dever do advogado assumir a defesa criminal, sem considerar sua própria opinião sobre a culpa do acusado.

**Art. 22.** O advogado não é obrigado a aceitar a imposição de seu cliente que pretenda ver com ele atuando outros advogados, nem aceitar a indicação de outro profissional para com ele trabalhar no processo.

**Art. 23.** É defeso ao advogado funcionar no mesmo processo, simultaneamente, como patrono e preposto do empregador ou cliente.

**Art. 24.** O substabelecimento do mandato, com reserva de poderes, é ato pessoal do advogado da causa.
**§1°.** O substabelecimento do mandato sem reservas de poderes exige o prévio e inequívoco conhecimento do cliente.
**§2°** O substabelecido com reserva de poderes deve ajustar antecipadamente seus honorários com o substabelecente.

## CAPÍTULO III
## DO SIGILO PROFISSIONAL

**Art. 25.** O sigilo profissional é inerente à profissão, impondo-se o seu respeito, salvo grave ameaça ao direito à vida, à honra, ou quando o advogado se veja afrontado pelo próprio cliente e, em defesa própria, tenha que revelar segredo, porém sempre restrito ao interesse da causa.

**Art. 26.** O advogado deve guardar sigilo, mesmo em depoimento judicial, sobre o que saiba em razão de seu ofício, cabendo-lhe recusar-se a depor como testemunha em processo no qual funcionou ou deva funcionar, ou sobre fato relacionado com pessoa de quem seja ou tenha sido advogado, mesmo que autorizado ou solicitado pelo constituinte.

**Art. 27.** As confidências feitas ao advogado pelo cliente podem ser utilizadas nos limites da necessidade da defesa, desde que autorizado aquele pelo constituinte.
**Parágrafo único.** Presumem-se confidenciais as comunicações epistolares entre advogado e cliente, as quais não podem ser reveladas a terceiros.

## CAPÍTULO IV
## DA PUBLICIDADE

**Art. 28.** O advogado pode anunciar os seus serviços profissionais, individual ou coletivamente, com discrição e moderação, para finalidade exclusivamente informativa, vedada a divulgação em conjunto com outra atividade.

**Art. 29.** O anúncio deve mencionar o nome completo do advogado e o número da inscrição na OAB, podendo fazer referência a títulos ou qualificações profissionais, especialização técnico-científica e associações culturais e científicas, endereços, horário do

expediente e meios de comunicação, vedadas a sua veiculação pelo rádio e televisão e a denominação de fantasia.

§1º Títulos ou qualificações profissionais são os relativos à profissão de advogado, conferidos por universidades ou instituições de ensino superior, reconhecidas.

§2º Especialidades são os ramos do Direito, assim entendidos pelos doutrinadores ou legalmente reconhecidos.

§3º Correspondências, comunicados e publicações, versando sobre constituição, colaboração, composição e qualificação de componentes do escritório e especificação de especialidades profissionais, bem como boletins informativos e comentários sobre legislação, somente podem ser fornecidos a colegas, clientes, ou pessoas que os solicitem ou os autorizem previamente.

§4º O anúncio de advogado não deve mencionar, direta ou indiretamente, qualquer cargo, função pública ou relação de emprego e patrocínio que tenha exercido, passível de captar clientela.

§5º O uso das expressões "escritório de advocacia" ou "sociedade de advogados" deve estar acompanhado da indicação de número de registro na OAB ou do nome e do número de inscrição dos advogados que o integrem.

§6º O anúncio, no Brasil, deve adotar o idioma português, e, quando em idioma estrangeiro, deve estar acompanhado da respectiva tradução.

**Art. 30.** O anúncio sob a forma de placas, na sede profissional ou na residência do advogado, deve observar discrição quanto ao conteúdo, forma e dimensões, sem qualquer aspecto mercantilista, vedada a utilização de "outdoor" ou equivalente.

**Art. 31.** O anúncio não deve conter fotografias, ilustrações, cores, figuras, desenhos, logotipos, marcas ou símbolos incompatíveis com a sobriedade da advocacia, sendo proibido o uso dos símbolos oficiais e dos que sejam utilizados pela Ordem dos Advogados do Brasil.

§1º São vedadas referências a valores dos serviços, tabelas, gratuidade ou forma de pagamento, termos ou expressões que possam iludir ou confundir o público, informações de serviços jurídicos suscetíveis de implicar, direta ou indiretamente, captação de causa ou clientes, bem como menção ao tamanho, qualidade e estrutura da sede profissional.

§2º Considera-se imoderado o anúncio profissional mediante remessa de correspondência a uma coletividade, salvo para comunicar a clientes e colegas a instalação ou mudança de endereço, a indicação expressa do seu nome e escritório em partes externas de veículo, ou a inserção de seu nome em anúncio relativo a outras atividades não advocatícias, faça delas parte ou não.

**Art. 32.** O advogado que eventualmente participar de programa de televisão ou de rádio, de entrevista na imprensa, de reportagem televisionada ou de qualquer outro meio, para manifestação profissional, deve visar a objetivos exclusivamente ilustrativos, educacionais e instrutivos, sem propósito de promoção pessoal ou profissional, vedados pronunciamentos sobre métodos de trabalho usados por seus colegas de profissão.

**Parágrafo único.** Quando convidado para manifestação pública, por qualquer modo e forma, visando ao esclarecimento de tema jurídico de interesse geral, deve o advogado evitar insinuações a promoção pessoal ou profissional, bem como o debate de caráter sensacionalista.

**Art. 33.** O advogado deve abster-se de:

I - responder com habitualidade consulta sobre matéria jurídica, nos meios de comunicação social, com intuito de promover-se profissionalmente;

II - debater, em qualquer veículo de divulgação, causa sob seu patrocínio ou patrocínio de colega;

III - abordar tema de modo a comprometer a dignidade da profissão e da instituição que o congrega;

IV - divulgar ou deixar que seja divulgada a lista de clientes e demandas;

V - insinuar-se para reportagens e declarações públicas.

**Art. 34.** A divulgação pública, pelo advogado, de assuntos técnicos ou jurídicos de que tenha ciência em razão do exercício profissional como advogado constituído, assessor jurídico ou parecerista, deve limitar-se a aspectos que não quebrem ou violem o segredo ou o sigilo profissional.

## CAPÍTULO V
## DOS HONORÁRIOS PROFISSIONAIS

**Art. 35.** Os honorários advocatícios e sua eventual correção, bem como sua majoração decorrente do aumento dos atos judiciais que advierem como necessários, devem ser previstos em contrato escrito, qualquer que seja o objeto e o meio da prestação do serviço profissional, contendo todas as especificações e forma de pagamento, inclusive no caso de acordo.

§1º Os honorários da sucumbência não excluem os contratados, porém devem ser levados em conta no acerto final com o cliente ou constituinte, tendo sempre presente o que foi ajustado na aceitação da causa.

§2º A compensação ou o desconto dos honorários contratados e de valores que devam ser entregues ao constituinte ou cliente só podem ocorrer se houver prévia autorização ou previsão contratual.

§3º A forma e as condições de resgate dos encargos gerais, judiciais e extrajudiciais, inclusive eventual remuneração de outro profissional, advogado ou não, para desempenho de serviço auxiliar ou complementar técnico e especializado, ou com incumbência pertinente fora da Comarca, devem integrar as condições gerais do contrato.

**Art. 36** - Os honorários profissionais devem ser fixados com moderação, atendidos os elementos seguintes:

I - a relevância, o vulto, a complexidade e a dificuldade das questões versadas;

II - o trabalho e o tempo necessários;

III - a possibilidade de ficar o advogado impedido de intervir em outros casos, ou de se desavir com outros clientes ou terceiros;

IV - o valor da causa, a condição econômica do cliente e o proveito para ele resultante do serviço profissional;

V - o caráter da intervenção, conforme se trate de serviço a cliente avulso, habitual ou permanente;

VI - o lugar da prestação dos serviços, fora ou não do domicílio do advogado;

VII - a competência e o renome do profissional;

VIII - a praxe do foro sobre trabalhos análogos.

**Art. 37.** Em face da imprevisibilidade do prazo de tramitação da demanda, devem ser delimitados os serviços profissionais a se prestarem nos procedimentos preliminares, judiciais ou conciliatórios, a fim de que outras medidas, solicitadas ou necessárias, incidentais ou não, diretas ou indiretas, decorrentes da causa, possam ter novos honorários estimados, e da mesma forma receber do constituinte ou cliente a concordância hábil.

**Art. 38.** Na hipótese da adoção de cláusula quota litis, os honorários devem ser necessariamente representados por pecúnia e, quando acrescidos dos de honorários da sucumbência, não podem ser superiores às vantagens advindas em favor do constituinte ou do cliente.

**Parágrafo único.** A participação do advogado em bens particulares de cliente, comprovadamente sem condições pecuniárias, só é tolerada em caráter excepcional, e desde que contratada por escrito.

**Art. 39.** A celebração de convênios para prestação de serviços jurídicos com redução dos valores estabelecidos na Tabela de Honorários implica captação de clientes ou causa, salvo se as condições peculiares da necessidade e dos carentes puderem ser demonstradas com a devida antecedência ao respectivo Tribunal de Ética e Disciplina, que deve analisar a sua oportunidade.

**Art. 40.** Os honorários advocatícios devidos ou fixados em tabelas no regime da assistência judiciária não podem ser alterados no quantum estabelecido; mas a verba honorária decorrente da sucumbência pertence ao advogado.

**Art. 41.** O advogado deve evitar o aviltamento de valores dos serviços profissionais, não os fixando de forma irrisória ou inferior ao mínimo fixado pela Tabela de Honorários, salvo motivo plenamente justificável.

**Art. 42.** O crédito por honorários advocatícios, seja do advogado autônomo, seja de sociedade de advogados, não autoriza o saque de duplicatas ou qualquer outro título de crédito de natureza mercantil, exceto a emissão de fatura, desde que constitua exigência do constituinte ou assistido, decorrente de contrato escrito, vedada a tiragem de protesto.

**Art. 43.** Havendo necessidade de arbitramento e cobrança judicial dos honorários advocatícios, deve o advogado renunciar ao patrocínio da causa, fazendo-se representar por um colega.

## CAPÍTULO VI
## DO DEVER DE URBANIDADE

**Art. 44.** Deve o advogado tratar o público, os colegas, as autoridades e os funcionários do Juízo com respeito, discrição e independência, exigindo igual tratamento e zelando pelas prerrogativas a que tem direito.

**Art. 45.** Impõe-se ao advogado lhaneza, emprego de linguagem escorreita e polida, esmero e disciplina na execução dos serviços.

**Art. 46.** O advogado, na condição de defensor nomeado, conveniado ou dativo, deve comportar-se com zelo, empenhando-se para que o cliente se sinta amparado e tenha a expectativa de regular desenvolvimento da demanda.

## CAPÍTULO VII
## DAS DISPOSIÇÕES GERAIS

**Art. 47.** A falta ou inexistência, neste Código, de definição ou orientação sobre questão de ética profissional, que seja relevante para o exercício da advocacia ou dele advenha, enseja consulta e manifestação do Tribunal de Ética e Disciplina ou do Conselho Federal.

**Art. 48.** Sempre que tenha conhecimento de transgressão das normas deste Código, do Estatuto, do Regulamento Geral e dos Provimentos, o Presidente do Conselho Seccional, da Subseção, ou do Tribunal de Ética e Disciplina deve chamar a atenção do responsável para o dispositivo violado, sem prejuízo da instauração do competente procedimento para apuração das infrações e aplicação das penalidades cominadas.

## TÍTULO II
## DO PROCESSO DISCIPLINAR

## CAPÍTULO I
## DA COMPETÊNCIA DO TRIBUNAL DE ÉTICA E DISCIPLINA

**Art. 49.** O Tribunal de Ética e Disciplina é competente para orientar e aconselhar sobre ética profissional, respondendo às consultas em tese, e julgar os processos disciplinares.
**Parágrafo único.** O Tribunal reunir-se-á mensalmente ou em menor período, se necessário, e todas as sessões serão plenárias.

**Art. 50.** Compete também ao Tribunal de Ética e Disciplina:
I - instaurar, de ofício, processo competente sobre ato ou matéria que considere passível de configurar, em tese, infração a princípio ou norma de ética profissional;
II - organizar, promover e desenvolver cursos, palestras, seminários e discussões a respeito de ética profissional, inclusive junto aos Cursos Jurídicos, visando à formação da consciência dos futuros profissionais para os problemas fundamentais da Ética;
III - expedir provisões ou resoluções sobre o modo de proceder em casos previstos nos regulamentos e costumes do foro;
IV - mediar e conciliar nas questões que envolvam:
a) dúvidas e pendências entre advogados;
b) partilha de honorários contratados em conjunto ou mediante substabelecimento, ou decorrente de sucumbência;
c) controvérsias surgidas quando da dissolução de sociedade de advogados.

## CAPÍTULO II
## DOS PROCEDIMENTOS

**Art. 51**. O processo disciplinar instaura-se de ofício ou mediante representação dos interessados, que não pode ser anônima.

§1º Recebida a representação, o Presidente do Conselho Seccional ou da Subseção, quando esta dispuser de Conselho, designa relator um de seus integrantes, para presidir a instrução processual.

§2º O relator pode propor ao Presidente do Conselho Seccional ou da Subseção o arquivamento da representação, quando estiver desconstituída dos pressupostos de admissibilidade.

§3º A representação contra membros do Conselho Federal e Presidentes dos Conselhos Seccionais é processada e julgada pelo Conselho Federal.

**Art. 52**. Compete ao relator do processo disciplinar determinar a notificação dos interessados para esclarecimentos, ou do representado para a defesa prévia, em qualquer caso no prazo de 15 (quinze) dias.

§1º Se o representado não for encontrado ou for revel, o Presidente do Conselho ou da Subseção deve designar-lhe defensor dativo.

§2º Oferecida a defesa prévia, que deve estar acompanhada de todos os documentos e o rol de testemunhas, até o máximo de cinco, é proferido o despacho saneador e, ressalvada a hipótese do § 2º do artigo 73 do Estatuto, designada, se reputada necessária, a audiência para oitiva do interessado, do representado e das testemunhas. O interessado e o representado deverão incumbir-se do comparecimento de suas testemunhas, a não ser que prefiram suas intimações pessoais, o que deverá ser requerido na representação e na defesa prévia. As intimações pessoais não serão renovadas em caso de não-comparecimento, facultada a substituição de testemunhas, se presente a substituta na audiência.* (NR)

§3º O relator pode determinar a realização de diligências que julgar convenientes.

§4º Concluída a instrução, será aberto o prazo sucessivo de 15 (quinze) dias para a apresentação de razões finais pelo interessado e pelo representado, após a juntada da última intimação.

§5º Extinto o prazo das razões finais, o relator profere parecer preliminar, a ser submetido ao Tribunal.

**Art. 53**. O Presidente do Tribunal, após o recebimento do processo devidamente instruído, designa relator para proferir o voto.

§1º O processo é inserido automaticamente na pauta da primeira sessão de julgamento, após o prazo de 20 (vinte) dias de seu recebimento pelo Tribunal, salvo se o relator determinar diligências.

§2º O representado é intimado pela Secretaria do Tribunal para a defesa oral na sessão, com 15 (quinze) dias de antecedência.

§3º A defesa oral é produzida na sessão de julgamento perante o Tribunal, após o voto do relator, no prazo de 15 (quinze) minutos, pelo representado ou por seu advogado.

---

* Modificação aprovada nos termos da Proposição 0042/2002/COP, julgada pelo Conselho Pleno do Conselho Federal da OAB, na Sessão Ordinária do dia 09 de dezembro de 2002, publicada no Diário da Justiça do dia 03.02.2003, página 574, Seção 1.

**Art. 54.** Ocorrendo a hipótese do art. 70, 3, do Estatuto, na sessão especial designada pelo Presidente do Tribunal, são facultadas ao representado ou ao seu defensor a apresentação de defesa, a produção de prova e a sustentação oral, restritas, entretanto, à questão do cabimento, ou não, da suspensão preventiva.

**Art. 55.** O expediente submetido à apreciação do Tribunal é autuado pela Secretaria, registrado em livro próprio e distribuído às Seções ou Turmas julgadoras, quando houver.

**Art. 56.** As consultas formuladas recebem autuação em apartado, e a esse processo são designados relator e revisor, pelo Presidente.

§1º O relator e o revisor têm prazo de dez (10) dias, cada um, para elaboração de seus pareceres, apresentando-os na primeira sessão seguinte, para julgamento.

§2º Qualquer dos membros pode pedir vista do processo pelo prazo de uma sessão e desde que a matéria não seja urgente, caso em que o exame deve ser procedido durante a mesma sessão. Sendo vários os pedidos, a Secretaria providencia a distribuição do prazo, proporcionalmente, entre os interessados.

§3º Durante o julgamento e para dirimir dúvidas, o relator e o revisor, nessa ordem, têm preferência na manifestação.

§4º O relator permitirá aos interessados produzir provas, alegações e arrazoados, respeitado o rito sumário atribuído por este Código.

§5º Após o julgamento, os autos vão ao relator designado ou ao membro que tiver parecer vencedor para lavratura de acórdão, contendo ementa a ser publicada no órgão oficial do Conselho Seccional.

**Art. 57.** Aplica-se ao funcionamento das sessões do Tribunal o procedimento adotado no Regimento Interno do Conselho Seccional.

**Art. 58.** Comprovado que os interessados no processo nele tenham intervindo de modo temerário, com sentido de emulação ou procrastinação, tal fato caracteriza falta de ética passível de punição.

**Art. 59.** Considerada a natureza da infração ética cometida, o Tribunal pode suspender temporariamente a aplicação das penas de advertência e censura impostas, desde que o infrator primário, dentro do prazo de 120 dias, passe a frequentar e conclua, comprovadamente, curso, simpósio, seminário ou atividade equivalente, sobre Ética Profissional do Advogado, realizado por entidade de notória idoneidade.

**Art. 60.** Os recursos contra decisões do Tribunal de Ética e Disciplina, ao Conselho Seccional, regem-se pelas disposições do Estatuto, do Regulamento Geral e do Regimento Interno do Conselho Seccional.

**Parágrafo único.** O Tribunal dará conhecimento de todas as suas decisões ao Conselho Seccional, para que determine periodicamente a publicação de seus julgados.

**Art. 61.** Cabe revisão do processo disciplinar, na forma prescrita no art. 73, inciso 5º, do Estatuto.

## CAPÍTULO III

## DAS DISPOSIÇÕES GERAIS E TRANSITÓRIAS

**Art. 62.** O Conselho Seccional deve oferecer os meios e suporte imprescindíveis para o desenvolvimento das atividades do Tribunal.

**Art. 63.** O Tribunal de Ética e Disciplina deve organizar seu Regimento Interno, a ser submetido ao Conselho Seccional e, após, ao Conselho Federal.

**Art. 64.** A pauta de julgamentos do Tribunal é publicada em órgão oficial e no quadro de avisos gerais, na sede do Conselho Seccional, com antecedência de 07 (sete) dias, devendo ser dada prioridade nos julgamentos para os interessados que estiverem presentes.

**Art. 65.** As regras deste Código obrigam igualmente as sociedades de advogados e os estagiários, no que lhes forem aplicáveis.

**Art. 66.** Este Código entra em vigor, em todo o território nacional, na data de sua publicação, cabendo aos Conselhos Federal e Seccionais e às Subseções da OAB promover a sua ampla divulgação, revogadas as disposições em contrário.

Brasília - DF, 13 de fevereiro de 1995.

**José Roberto Batochio**
*Presidente*
**Modesto Carvalhosa**
*Relator*

(Comissão Revisora: Licínio Leal Barbosa, Presidente; Robison Baroni, Secretário e Sub-relator; Nilzardo Carneiro Leão, José Cid Campelo e Sérgio Ferraz, Membros)

## CODE OF ETHICS AND DISCIPLINE OF THE
### *"ORDEM DOS ADVOGADOS DO BRASIL"*
### (THE BRAZILIAN BAR ASSOCIATION)

THE FEDEERAL COUNCIL OF THE BRAZILIAN BAR ASSOCIATION, upon instituting its Code of Ethics and Discipline, has observed the principles that constitute the professional conscience of an attorney and which represent the imperatives of his conduct, such as:  fighting fearlessly for the primacy of justice; defending the Constitution and respect for law, seeing that it is interpreted correctly, in perfect harmony with the social ends to which it is directed and the demands of common sense; being faithful to the truth in order to serve justice as one of its essential elements; proceeding with loyalty and good faith in his professional relations and in all acts of his profession; dedicating himself to the causes entrusted to his representation, providing to the citizen the full support of law, and offering him with the practical realization of his legitimate interests; acting, in this regard, with independence and strength, defending him with humble yet powerful impetus; exercising his craft with an indispensable sense of professionalism, but also unselfishly, never permitting the expectation of material gain to override the social purposes of his work; improving himself in the cultivation of ethical principles and in his understanding of legal science, in order to merit the confidence of his client and of society as a whole, through his intellectual attributes and personal honesty;  acting, in sum, with the dignity of a person of good will and the correctness of a professional who honors and exalts his calling.

Inspired in these postulates, the Federal Council of the Brazilian Bar Association, in use of the attributes granted to it by articles 33 and 54, V, of Law no. 8,906 of July 4, 1994, hereby approves and publishes this Code, exhorting Brazilian attorneys to its faithful fulfillment.

### TITLE I
### ON THE ETHICS OF AN ATTORNEY

### CHAPTER I
### ON FUNDAMENTAL MORAL PRINCIPLES

**Art. 1.**  The exercise of the profession of law demands conduct compatible with the precepts of this Code, of the Statues, of General Regulations, and Provisions and with other principles of individual, social, and professional morals.

**Art 2.**  The attorney, who is indispensable to the administration of justice, is a defender of the democratic rule of law, of citizenship, of public morality, of justice, and social peace, subordinating the activities of his private work to the elevated public function that he exercises.



**Sole Paragraph**. The duties of an attorney are the following:

I – Preserving, by his conduct, the honor, nobility, and dignity of his profession, fostering its essential and indispensable nature.

II – Acting with fearlessness, independence, honesty, decorum, veracity, loyalty, dignity, and good faith;

III – Safeguarding his personal and professional reputation;

IV – Dedicating himself permanently to his personal and professional development;

V – Contributing to the improvement of institutions, of legal principles, and the laws;

VI – Encouraging conciliation among parties, preventing, wherever possible, formal litigation;

VII – Counseling his client not to carry out judicial adventurism;

VIII – Abstaining from:

a) using undue influence, in his own benefit or that of his client;

b) representing interests linked to other activities beyond advocacy, in which he may be involved;

c) tying his name and activities to clearly questionable undertakings;

d) supporting those who work against the ethics, morals, honesty, and dignity of a human being;

e) coming to agreement directly with an opposing party who has legal representation, without the consent of the latter.

IX – Fighting for the resolution of problems of the citizenry and the exercise of their individual, collective, and diffuse rights within the community.

**Art. 3.**  The attorney must be aware that the law is a means of mitigating inequalities to find just solutions, and that the law is an instrument to guarantee equality to all.

**Art. 4.** An attorney representing his client or constituent through employment or a permanent contract of representation, or as member of a legal department, or an agency of legal assistance, public or private, must safeguard his independence freedom of action.

**Sole Paragraph.**  It is legitimate for an attorney to refuse to take on cases in which the law may also be applicable to him, or which run contrary to his previously manifested advice.

**Art. 5.**  The exercise of advocacy is incompatible with any marketing activities.

**Art. 6.** It is indefensible for an attorney to state facts in court through deliberate misrepresentation of the truth or based on bad faith.

**Art. 7.**  It is prohibited to offer professional services in a manner that would, directly or indirectly, pressure or incite clientele.

## CHAPTER II
## ON RELATIONS WITH THE CLIENT

**Art. 8.** The attorney must inform his client, in a clear and unequivocal manner, of any possible risks of his cause and of consequences that could stem from a lawsuit.

**Art. 9.** The conclusion of, or withdrawal from, a case, with or without the termination of his mandate, obliges the attorney to return goods, valuables, and documents received in carrying out his mandate, as well as to provide a detailed accounting, without exclusion any other services that may be solicited by the client at any time.

**Art. 10.** When a case is concluded or dismissed, the mandate is considered to have been completed or ceased.

**Art. 11.** An attorney must not accept representation of any client who already has counsel, without the prior knowledge of the latter, except for just cause or through adoption of urgent and unavoidable judicial measures.

**Art. 12.** An attorney must not abandon or leave unattended any case, without just and proven knowledge of the constituent.

**Art. 13.** Withdrawal of representation implies lack of motive and continuity of the attorney's or law firm's professional responsibility, during the term specified by law; moreover, it does not exclude, liability for damages caused culpably or wrongly to the client or to third parties.

**Art. 14.** Revocation of legal mandate on the part of the client does not free him from payment of legal fees agreed to, nor does it deprive the attorney of the right to receive whatever may be owed him in eventual costs of turning over the case, calculated proportionally, in view of services actually rendered.

**Art. 15.** A judicial or extra-judicial mandate must be granted individually to attorneys who make up a partnership, and it must be done in the interest of the client, respecting the freedom of defense.

**Art. 16.** A judicial or extra-judicial mandate does not expire with the passage of time, so long at reciprocal confidence remains between the grantor and his representative in the interest of the cause.

**Art. 17.** Attorneys who belong to the same firm or brought together in a permanent manner for mutual cooperation may not represent in court clients with opposing interests.

**Art. 18.**  Should conflicts of interest arise among his clients, and the parties are unable to come to agreement, with due prudence and discernment, the attorney will choose to represent one of the parties, renouncing all others and maintaining client-attorney privilege.

**Art. 19.**  An attorney, in representing a third party against a former client or employer, either judicially or extra-judicially, must protect professional confidentiality and any reserved or privileged information that may have been confided to him.

**Art. 20.**  An attorney must abstain from representing any cause contrary to the ethics, morals, or validity of a legal action which he may have collaborated with, advised upon, or known of through consultation; in the same way, he must decline his ethical support when he has been approached by the opposing party, if the latter has revealed secrets or obtained his opinion.

**Art. 21.**  It is the right and duty of an attorney to accept a criminal defense, without consideration of his own opinion in regard to the guilt of the accused party.

**Art. 22.**  An attorney is not obliged to accept imposition by his client of other attorneys with whom he is to work, nor to accept the indication of another professional to collaborate with him on a case.

**Art. 23.**  It is prohibited for an attorney to work on the same case simultaneously as both counsel and employee of the employer or client.

**Art. 24.**  Delegation of mandate, with reservation of powers, is a personal act of the attorney in a case.
**§1.**  Delegation of a mandate without reservation of powers demands the prior and unequivocal knowledge of the client.
**§2.**  Delegation of a mandate with reservation of powers requires prior adjustment of fees with the attorney to whom the case has been delegated.

.../...

**Art. 44.** An attorney must deal with the public, his colleagues, authorities, and the court staff with respect, discretion, and independence, demanding equal treatment from them and safeguarding the prerogatives to which he has a right.

**Art. 45.** An attorney is required to maintain a polite manner, use of correct and polished language, diligence, and discipline in rendering his services.

**ALELUIA SULA SIMÕES GODFREY-JENSEN**
**Translator and Interpreter**
**7081 N.W. 107 Court**
**Miami, FL 33178**
**Telephone: (305) 437-9989**
**Fax: (305) 437-9808**
**SS #: 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**

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA              )
                              )      S.S.
COUNTY OF BROWARD             )

Before me, the undersigned notary public in and for the State of Florida at large, there personally appears **ALELUIA SULA SIMÕES GODFREY-JENSEN,** a fully qualified professional translator and interpreter, who, after being duly sworn, deposes and states that she is fully versed in the Portuguese and English languages, and that the foregoing is a true and correct translation of the first four pages of the attached document, and that this page immediately follows the translation.

_____
Aleluia Sula Simões Godfrey-Jensen

Sworn and subscribed before me on this twelfth day of the month of July, 2007 AD.

_____
Notary Public
State of Florida at Large

My commission expires:

DEANNE L. FERRESE
MY COMMISSION # DD 444265
EXPIRES: July 8, 2009
Bonded Thru Notary Public Underwriters

Personally known to me        (  ) or
Produced identification        (X )
Type of ID produced:  Florida State Driver License Number G316-017-56-648-1

The utmost care has been taken to ensure accuracy in all translations.

# CODIGO PENAL BRASIL

### Decreto-Lei nº 2.848 de 07.12.1940
### alterado pela Lei nº 9.777 em 26/12/98 (+)

PARTE GERAL

Título I

Da Aplicação da Lei Penal
Anterioridade da Lei

Art. 1º. - Não há crime sem lei anterior que o defina. Não há pena sem prévia cominação legal.

Lei penal no tempo

Art. 2º. - Ninguém pode ser punido por fato que lei posterior deixa de considerar crime, cessando em virtude dela a execução e os efeitos penais da sentença condenatória.

Parágrafo único. A lei posterior, que de qualquer modo favorecer o agente, aplica-se aos fatos anteriores, ainda que decididos por sentença condenatória transitada em julgado.

Lei excepcional ou temporária

Art. 3º. - A lei excepcional ou temporária, embora decorrido o período de sua duração ou cessadas as circunstâncias que a determinaram, aplica-se ao fato praticado durante sua vigência.

Tempo do crime

Art. 4º. - Considera-se praticado o crime no momento da ação ou omissão, ainda que outro seja o momento do resultado.

Territorialidade

Art. 5º. - Aplica-se a lei brasileira, sem prejuízo de convenções, tratados e regras de direito internacional, ao crime cometido no território nacional.

1º - Para os efeitos penais, consideram-se como extensão do território nacional as embarcações e aeronaves brasileiras, de natureza pública ou a serviço do governo brasileiro onde quer que se encontrem, bem como as aeronaves e as embarcações brasileiras, mercantes ou de propriedade privada, que se achem, respectivamente, no espaço aéreo correspondente ou em alto-mar.

2º - É também aplicável a lei brasileira aos crimes praticados a bordo de aeronaves ou embarcações estrangeiras de propriedade privada, achando-se aquelas em pouso no território nacional ou em vôo no espaço aéreo correspondente, e estas em porto ou mar territorial do Brasil.

Lugar do crime



EXHIBIT
8
ALL-STATE LEGAL®

## BRAZILIAN PENAL CODE

### Decree-Law No. 2,848 of 12/7/1940
### Modified by Law No. 9,777 on 12/26/1998 (+)

.../...

## Disloyal Legal Representation

**Article 355 –** Betray, in the role of lawyer or attorney, his professional duties, thereby harming the interests of those whom he represents legally by court appointment:

Punishment: detention of from six (6) months to three (3) years;
                        plus fine.

## Simultaneous Legal Representation or Tergiversation

Sole Paragraph:   An attorney or legal representative falls under the sanctions of this article by defending opposing parties in the same suit, either simultaneously or successively.

## Unlawful Concealment of a document or object of evidentiary value

.../...



EXHIBIT

9

III - submete pessoa que está sob sua guarda ou custódia a vexame ou a constrangimento não autorizado em lei;

IV - efetua, com abuso de poder, qualquer diligência.

Fuga de pessoa presa ou submetida a medida de segurança

Art. 351. - Promover ou facilitar a fuga de pessoa legalmente presa ou submetida a medida de segurança detentiva:

Pena - detenção, de 6 (seis) meses a 2 (dois) anos.

1º - Se o crime é praticado a mão armada, ou por mais de uma pessoa, ou mediante arrombamento, a pena é de reclusão, de 2 (dois) a 6 (seis) anos.

2º - Se há emprego de violência contra pessoa, aplica-se também a pena correspondente à violência.

3º - A pena é de reclusão, de 1 (um) a 4 (quatro) anos, se o crime é praticado por pessoa sob cuja custódia ou guarda está o preso ou o internado.

4º - No caso de culpa do funcionário incumbido da custódia ou guarda, aplica-se a pena de detenção, de 3 (três) meses a 1 (um) ano, ou multa.

Evasão mediante violência contra a pessoa

Art. 352. - Evadir-se ou tentar evadir-se o preso ou o indivíduo submetido a medida de segurança detentiva, usando de violência contra a pessoa:

Pena - detenção, de 3 (três) meses a 1 (um) ano, além da pena correspondente à violência.

Arrebatamento de preso

Art. 353. - Arrebatar preso, a fim de maltratá-lo, do poder de quem o tenha sob custódia ou guarda:

Pena - reclusão, de 1 (um) a 4 (quatro) anos, além da pena correspondente à violência.

Motim de presos

Art. 354. - Amotinarem-se presos, perturbando a ordem ou disciplina da prisão:

Pena - detenção, de 6 (seis) meses a 2 (dois) anos, além da pena correspondente à violência.

Patrocínio infiel

Art. 355. - Trair, na qualidade de advogado ou procurador, o dever profissional, prejudicando interesse, cujo patrocínio, em juízo, lhe é confiado:

Pena - detenção, de 6 (seis) meses a 3 (três) anos, e multa.

Patrocínio simultâneo ou tergiversação

Parágrafo único. Incorre na pena deste artigo o advogado ou procurador judicial que defende na mesma causa, simultânea ou sucessivamente, partes contrárias.

Sonegação de papel ou objeto de valor probatório

Art. 356. - Inutilizar, total ou parcialmente, ou deixar de restituir autos, documento ou objeto de valor probatório, que recebeu na qualidade de advogado ou procurador:

Pena - detenção, de 6 (seis) meses a 3 (três) anos, e multa.

Exploração de prestígio

Art. 357. - Solicitar ou receber dinheiro ou qualquer outra utilidade, a pretexto de influir em juiz, jurado, órgão do Ministério Público, funcionário de justiça, perito, tradutor, intérprete ou testemunha:

Pena - reclusão, de 1 (um) a 5 (cinco) anos, e multa.

Parágrafo único. As penas aumentam-se de um terço, se o agente alega ou insinua que o dinheiro ou utilidade também se destina a qualquer das pessoas, referidas, neste artigo.

Violência ou fraude em arrematação judicial

Art. 358. - Impedir, perturbar ou fraudar arrematação judicial; afastar ou procurar afastar concorrente ou licitante, por meio de violência, grave ameaça, fraude ou oferecimento de vantagem:

Pena - detenção, de 2 (dois) meses a 1 (um) ano, ou multa, além da pena correspondente à violência.

Desobediência a decisão judicial sobre perda ou suspensão de direito

Art. 359. - Exercer função, atividade, direito, autoridade ou múnus, de que foi suspenso ou privado por decisão judicial:

Pena - detenção, de 3 (três) meses a 2 (dois) anos, ou multa.


DISPOSIÇÕES FINAIS

Art. 360. - Ressalvada a legislação especial sobre os crimes contra a existência, a segurança e a integridade do Estado e contra a guarda e o emprego da economia popular, os crimes de imprensa e os de falência, os de responsabilidade do Presidente da República e dos Governadores ou Interventores, e os crimes militares, revogam-se as disposições em contrário.

Art. 361. - Este Código entrará em vigor no dia 1° de janeiro de 1942.

**ALELUIA SULA SIMÕES GODFREY-JENSEN**
**Translator and Interpreter**
**7081 N.W. 107 Court**
**Miami, FL 33178**
**Telephone: (305) 437-9989**
**Fax: (305) 437-9808**
**SS #: 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**

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA )
) S.S.
COUNTY OF BROWARD )

Before me, the undersigned notary public in and for the State of Florida at large, there personally appears **ALELUIA SULA SIMÕES GODFREY-JENSEN,** a fully qualified professional translator and interpreter, who, after being duly sworn, deposes and states that she is fully versed in the Portuguese and English languages, and that the foregoing is a true and correct translation of the attached document, and that this page immediately follows the one-page translation.

_Aleluia Sula Simões Godfrey-Jensen_

Sworn and subscribed before me on this twelfth day of the month of July, 2007 AD.

Notary Public
State of Florida at Large

DEANNE L. FERRESE
MY COMMISSION # DD 444265
EXPIRES: July 8, 2009
Bonded Thru Notary Public Underwriters

My commission expires:

Personally known to me        ( ) or
Produced identification        (X )
Type of ID produced:  Florida State Driver License Number G316-017-56-648-1

The utmost care has been taken to ensure accuracy in all translations.

SECRETARIA DE ESTADO DOS NEGOCIOS DA SEGURANÇA PÚBLICA

# POLÍCIA CIVIL DO ESTADO DE SÃO PAULO
"UM SÉCULO A SERVIÇO DA LEI"
1905 - 2005

UM SÉCULO A SERVIÇO
DA LEI

*DEPARTAMENTO DA POLÍCIA JUDICIÁRIA DA CAPITAL — DECAP*
*2ª DELEGACIA SECCIONAL DE POLÍCIA — SUL*
## SETOR DE INVESTIGAÇÕES GERAIS — SIG/SUL
Avenida Engenheiro Luis Carlos Berrini 900 CEP 04571000
Tel: 11 — 55067444

## CERTIDÃO

*Eu,* **SANDRO BATISTA**, *RG. 20.510.161, Escrivão
de Polícia 4° Classe, lotado na Delegacia Geral e Polícia, classificado no DECAP junto a
2ª. Delegacia Seccional de Polícia, em exercício de minhas funções junto ao SIG — Setor
de Investigações Gerias ...........................*

C E R T I F I C O :

Que acerca da Cota Ministerial exarada pelo DD
Dr. João Honório de Souza Franco, promotor de justiça da 1ª Vara
Criminal do Jabaquara/SP acerca do Inquérito Policial nº. 74/02,
tendo seu despacho encartado às fls.504/506, consta a existência
de eventual "crime de "patrocínio infiel ou tergiversação", cometido
em Nova Yorque, onde solicita que deverá ser objeto de carta
rogatório àquela cidade, para que prestem suas declarações acerca
dos fatos investigados por determinação do Procurador Geral da
Justiça os advogados Arthur Ballen e Leigh Ballen ambos da
empresa "Speiser Krause", para dar atendimento a cota ministerial.

***O referido é verdade e dou fé.***

São Paulo, 06 de julho de 2007

**Sandro Batista**
ESCRIVÃO DE POLÍCIA


EXHIBIT
10

[Coat-of-Arms of the State of São Paulo, Brazil
100 Years – one century in the service of the Law]

**STATE SECRETARIAT FOR PUBLIC SECURITY AFFAIRS**
## STATE OF SÃO PAULO CIVIL POLICE
"ONE CENTURY IN THE SERVICE OF THE LAW"
1905 – 2005

*DECAP – DEPARTMENT OF JUDICIARY POLICE FOR THE CAPITAL
SECOND SECTIONAL DISTRICT OF POLICE – SOUTH
SECTOR OF GENERAL INVESTIGATIONS – SIG/SOUTH*
Avenida Engenheiro Luis Carlos Berrini, 900 – CEP [ZIP] 04571000
Telephone: 11 – 55067444

## CERTIFICATE

I. SANDRO BATISTA, ID No. RG 20.510.161,
Clerk of Police – 4th Class. assigned to the
General District and Police, registered in the
DECAP at the Second Sectional District of Police,
by virtue of my duties at SIG – Sector of General
Investigations, hereby...............

## C E R T I F Y:

That on the Ministerial Quota issued by Dr. João Honório de Souza Franco, the honorable judicial prosecutor of the First Criminal District of Jabaquara/SP in regard to Police Investigation No. 74/02, the decision of whom is included on pages 504/506 of said investigation, there appears the existence of a possible "crime of disloyal legal representation or tergiversation" committed in New York, where he requests that a Letter Rogatory be sent to compel attorneys Arthur Ballen and Leigh Ballen, both of the firm of Speiser Krause, to provide their statements on the facts under investigation, following a determination by the General Attorney of Justice to serve the ministerial quota.

**The above information is true and correct and I hereby attest to its veracity.**

São Paulo, July 6, 2007

[Illegible signature]
Sandro Batista
Clerk of Police



**ALELUIA SULA SIMÕES GODFREY-JENSEN**
**Translator and Interpreter**
**7081 N.W. 107 Court**
**Miami, FL 33178**
**Telephone: (305) 437-9989**
**Fax: (305) 437-9808**
**SS #: 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**

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA          )
                          )      S.S.
COUNTY OF BROWARD          )

     Before me, the undersigned notary public in and for the State of Florida at large, there personally appears **ALELUIA SULA SIMÕES GODFREY-JENSEN,** a fully qualified professional translator and interpreter, who, after being duly sworn, deposes and states that she is fully versed in the Portuguese and English languages, and that the foregoing is a true and correct translation of the selected parts of the attached document, and that this page immediately follows the one-page translation.

Aleluia Sula Simões Godfrey-Jensen

Sworn and subscribed before me on this twelfth day of the month of July, 2007 AD.

Notary Public
State of Florida at Large

My commission expires:

DEANNE L. FERRESE
MY COMMISSION # DD 444265
EXPIRES: July 8, 2009
Bonded Thru Notary Public Underwriters

Personally known to me          (  ) or
Produced identification          (X )
Type of ID produced:  Florida State Driver License Number G316-017-56-648-1

The utmost care has been taken to ensure accuracy in all translations.




*Ordem dos Advogados do Brasil*

*Conselho Federal*

*Brasília - D.F.*

Recurso n°.: REC – 0767/2006
Recorrente: Sandra Luiza Signorelli Assali - Presidente da ABRAPAVAA (Associação
Brasileira de Parentes e Amigos das Vítimas de Acidentes Aéreos)
Advogado: Antônio José Ribas Paiva OAB/SP 35.799
Recorrido: Conselho Seccional da OAB/ São Paulo
Relator: Conselheiro Técio Lins e Silva

## RELATÓRIO

Trata-se de Representação (P.D n.° 1525/01) iniciada pela Presidente da
ABRAPAVAA (Associação Brasileira de Parentes e Amigos das Vítimas de Acidentes
Aéreos), relatando diversas condutas do **Representado** que, em tese, configurariam
infrações disciplinares.

Em razão da similaridade de conteúdo, foram apensadas ao referido
procedimento Representações feitas pelo Advogado Lino Pereira da Silva (P.D n.°
4113/01) e pelo Advogado Luiz Roberto de Arruda Sampaio (P.D n.° 2881/02) contra o
**Representado**.

Em acórdão de 17/02/2005, a Terceira Turma Disciplinar – TED III, da Seccional
de São Paulo, decidiu, por unanimidade, não acolher a Representação e determinar o
arquivamento dos autos. (fls. 1682)

Diante desta decisão, o **Representante** Lino Pereira da Silva interpôs Embargos
Declaratórios que foram rejeitados, unanimemente, pelo mesmo órgão. (fls.1666)

Posteriormente, a **Representante** presidente da ABRAPAVAA interpôs recurso
que, **por unanimidade**, foi desprovido pela Terceira Câmara do Conselho Seccional de
São Paulo, tendo sido mantida integralmente a decisão que absolveu o **Representado**.
(fls. 1817)

Daí o presente recurso interposto perante o Conselho Federal, no qual a
**Representante** presidente da ABRAPAVAA pretende que seja reconhecida a procedência
da Representação baseada, somente, na matéria fática constante dos autos. (fls.
1846/1848).

Necessário mencionar que, após todas as decisões acima referidas, foi apensado
aos presentes autos outra Representação (P.D n.° 5888/03), que não foi julgada por
nenhum órgão do Conselho Seccional de São Paulo.

## VOTO

A decisão atacada encontra-se plenamente fundamentada, estando em
conformidade com a legislação vigente e com o entendimento deste Conselho Federal.

RDEM DOS ADVOGADOS DO BRASIL
SECÇÃO DE SÃO PAULO

A presente cópia foi por
mim extraída da original







*Ordem dos Advogados do Brasil*

*Conselho Federal*

*Brasília - D.F.*

Sendo assim, dado que se trata de decisão unânime, sobre a qual não é possível, nesta via recursal, o reexame da matéria probatória, voto no sentido de não conhecer o recurso interposto, conforme determina o art. 75 do EAOAB.

Quanto ao P.D n.º 5888/03, em apenso, deve ser desentranhado e remetido para a instância originária, para os devidos fins.

Brasília, 12 de março de 2007.

**TÉCIO LINS E SILVA**
Conselheiro Federal

ORDEM DOS ADVOGADOS DO BRASIL
SECÇÃO DE SÃO PAULO

A presente cópia foi por
mim extraída da original

[Coat-of-Arms of the Federal Republic of Brazil –
Stamp: OAB's Federal Council – Page 1934 – Second Chamber]

## *Ordem dos Advogados do Brasil*
## [Brazilian Bar Association]

### *Federal Council*

### *Brasília, DF*
### [Federal District]

| | |
|---|---|
| Appeal No.: | REC – 0767/2006 |
| Appellant: | Sandra Luiza Signorelli Assali – President of ABRAPAVAA (Brazilian Association of Relatives and Friends of Air Traffic Accident Victims) |
| Attorney: | Antônio José Ribas Paiva |
| | OAB/SP Registration No. 35,799 |
| Appellee: | Sectional Council of OAB/São Paulo |
| Rapporteur: | Councilman Técio Lins e Silva |

## REPORT

This is a Petition (P.D. No. 1525/01) initiated by the President of ABRAPAVAA (Brazilian Association of Relatives and Friends of Air Traffic Accident Victims), reporting several instances of conduct of the **Respondent**, which would theoretically constitute disciplinary infractions.

Due to similarity of contents, attached to this procedure are the petitions brought by Attorney Lino Pereira da Silva (P.D. No. 4113/01) and Attorney Luiz Roberto de Arruda Sampaio (P.D. No. 2881/02) against the **Respondent**.

In a decision dated 2/17/2005, the Third Disciplinary Group ("TED III") of the São Paulo Sectional Office decided unanimously not to accept the case, and ordered archiving of the records (page 1682).

Because of such decision, **Petitioner** Lino Pereira da Silva solicited amendments of judgment, which were unanimously rejected by the same body (page 1666).

Later, the **Petitioner**, President of ABRAPAVAA, filed an appeal, which was unanimously rejected by the Third Chamber of the Sectional Council of São Paulo, and the decision that acquitted the **Respondent** was allowed to stand in full (page 1817).



EXHIBIT
18

In consequence, this appeal is being filed before the Federal Council, where the Petitioner, President of ABRAPAVAA, intends to have the merits of the Petition recognized, based solely on the facts included in the records (pages 1846/1848).

It must be mentioned that after all of the above-mentioned decisions, an additional petition was attached to these records (P.D. No. 5888/03), which has not been heard by any office of the Sectional Council of São Paulo.

### VOTE

The decision being challenged is fully grounded and is in compliance with current legislation and with the understanding of this Federal Council.

## *Ordem dos Advogados do Brasil*
## [Brazilian Bar Association]

*Federal Council*

*Brasília, DF*
## [Federal District]

Thus, given that it was a unanimous decision, in which a reexamination of the evidentiary material is not possible at this level of appeal, I vote against recognition of the filed appeal, in accordance with article 75 of the EAOAB.

In regard to P.D. No. 5888/03, attached, it must be separated and sent to the original level for due purposes.

Brasilia, March 12, 2007

[Illegible Signature]
TECIO LINS E SILVA
Federal Councilman

[Stamp]:
I have extracted the present copy from the original.

**ALELUIA SULA SIMÕES GODFREY-JENSEN**
**Translator and Interpreter**
**7081 N.W. 107 Court**
**Miami, FL 33178**
**Telephone: (305) 437-9989**
**Fax: (305) 437-9808**
**SS #: 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**

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA            )
                            )        S.S.
COUNTY OF BROWARD           )

   Before me, the undersigned notary public in and for the State of Florida at large, there personally appears **ALELUIA SULA SIMÕES GODFREY-JENSEN,** a fully qualified professional translator and interpreter, who, after being duly sworn, deposes and states that she is fully versed in the Portuguese and English languages, and that the foregoing is a true and correct translation of the attached document, and that this page immediately follows the two-page translation.

_____
Aleluia Sula Simões Godfrey-Jensen

Sworn and subscribed before me on this twelfth day of the month of July, 2007 AD.

_____
Notary Public
State of Florida at Large

DEANNE L. FERRESE
MY COMMISSION # DD 444265
EXPIRES: July 8, 2009
Bonded Thru Notary Public Underwriters

My commission expires:

Personally known to me        (  ) or
Produced identification        (X )
Type of ID produced:  Florida State Driver License Number G316-017-56-648-1

The utmost care has been taken to ensure accuracy in all translations.

                           Renato Guimaraes

1
2        A.      In Brazil, if attorney change the

3    sides, it's a crime.  If you have a conflict with

4    your client, you should stay away, you should not

5    help as Jerry Lear did Northrop Grumman.  It's a

6    crime in Brazil.

7                And I put this in all papers in

8    Brazil, look at this, the guy gave affidavit, and

9    so forth.  So, it's beyond ethical, the guy go to

10   jail in Brazil, never say something like that.  So,

11   that's the seriousness of the issue I told Lack.

12       Q.      So, the crime, if I understood you

13   correctly, was there was a conflict of the interest

14   of --

15       A.      We call in Brazil, the penal code in

16   Brazil called treason.

17       Q.      So, he committed a treason against

18   his client?

19       A.      Yes.

20       Q.      And this is what you described to

21   Walter Lack?

22       A.      That's correct.

23       Q.      Was the conduct of Speiser Krause

24   also a crime when they tried to obtain settlement

25   agreements for the clients?


EXHIBIT
14
ALL-STATE LEGAL®

78

1                           Renato Guimaraes

2              A.        In the way they lied to the clients,

3      yes.

4              Q.        And you refer also in this letter to

5      case handling errors, that's right after ethical

6      claims.  Which errors did you tell Walter Lack that

7      Speiser Krause committed?

8              A.        If I understand, error is an

9      unconscious mistake, everyone can do it.  I never

10     complain about errors.  He went well beyond that,

11     as I said, lied to the people, we lose the case in

12     America.  That's not true, it's false.  It's not an

13     error, it's consciously misleading the clients.

14             Q.        So, in other words, by telling the

15     client that the case was lost in the United States,

16     that was a lie, you're saying that?

17             A.        Yes.  My understanding, we lost the

18     case, not forum nonconveniens, on the merits, we

19     lost.  Last week I was there, it was on.

20             Q.        On what do you base your understand-

21     ing that Speiser Krause was referring to the merits

22     of the United States case and not the forum

23     nonconveniens dismissal?

24             A.        To the level of communication to the

25     clients we never specified forum nonconveniens.

1                      Renato Guimaraes

2    They don't understand.  They say lost and, of

3    course, it would not be forum nonconveniens, was

4    the stay, should be on the merits.  We lost, well,

5    we heard rumors in the court, rumors in the court

6    ·we are going to lose, so.

7              Q.     Do you have an agreement to share

8    fees with Walter Lack for the seven cases?

9              A.     No.

10             Q.     So, if Walter Lack is successful in

11   enforcing the Jabaquara judgement in the United

12   States, how is Walter Lack going to get paid?

13             A.     He?

14             Q.     Yes.

15             A.     It's in the contract of Lack and the

16   families, these families, these seven families.

17             Q.     And you're not named in that retainer

18   contract?

19             A.     No, I'm not.

20             Q.     So, if I understand you correctly, if

21   Walter Lack gets an attorney's fee of one-third of

22   the recovery, you are not going to receive any part

23   of that one-third fee?

24             A.     Not by contract, maybe voluntarily as

25   a referee.  But even as a referral, I have no

Page 61

1                     Guimaraes

2              Were you also confused about how they

3    were going to distribute the fees?

4         A.    It was not my main concern.  That was

5    family concern.  My concern was about the

6    legality of the offer.

7         Q.    Did you feel that the offer was not

8    legal?

9         A.    Oh, yes.  For sure it's not.  It was

10   born of a liar.  We lost the case in America.

11        Q.    Do I understand you to say that the

12   settlements accepted by the families were

13   accepted only because they were lied to about

14   the case in America?

15        A.    Not only, it was initially because of

16   this dark marks, we lost the case in America,

17   accept it is or you lost everything.  That was

18   the beginning.

19        Q.    Who said that?

20        A.    Arthur Balon did.

21        Q.    And he said it to the clients?

22        A.    Yes.

23        Q.    When did he say that?

24        A.    In the very first few case, first was

25   Sandra Assali, she don't want me there in the


EXHIBIT
15

Page 62

1                    Guimaraes

2    room.  She has her own lawyer.  And then second,

3    third it was my 26 group, they must accept me

4    and they came with this crazy idea, Arthur Balon

5    told me, we lost the case in America.  I said,

6    what, we lost, why you did not tell me yesterday

7    or so.  That was the beginning.  I don't want to

8    kill your time.  But that was the case.  So

9    this, how to pay the Brazilian attorneys and the

10   global settlement was apart of the confusion.

11        Q.    Did he use the word "lost" or did he

12   say that the action in California was dismissed?

13        A.    No, was lost.  We lost the case in

14   America then Lee try to say we "Well, we heard

15   rumors we are going to lose."  Change a little.

16   Then, don't shake the boot and so forth.

17        Q.    Wasn't the case in California

18   dismissed?

19        A.    It was not clear if it was dismissed

20   for irregularity or the merits.  It was not

21   true, that's all.

22        Q.    Look at number 39.  This is

23   identified as letter on Renato Guimaraes Junior

24   letterhead to Speiser, Krause and it's

25   production RG 00194.  The letter is dated April

ce88f693-1406-495f-b956-3ceca5607f09

34

1    doing so.

2    BY MR. RIGUERA:

3        Q.    And what -- Did you have any

4    discussions with Renato Guimaraes concerning

5    whether the families should accept a settlement

6    or not?

7        A.    Yes.  I spoke with him and his advice

8    was for us not to accept the agreement because it

9    was under value.  It should have been much more.

10            MR. APUZZO:  Note my objection,

11    please.

12            MR. RIGUERA:  Mark this as Exhibit 3.

13            (Whereupon, Plaintiff's Exhibit No. 3

14    was marked for identification by the Reporter.)

15    BY MR. RIGUERA:

16        Q.    Sir, I've handed you a document

17    that's entitled authorization to settle marked as

18    Exhibit 3.

19            Do you recognize that document?

20        A.    Yes.

21        Q.    Would you please tell us what - what

22    this document is?

23        A.    This document is about the proposal

24    that was submitted by Arthur Ballen on behalf of

25    Speiser, Krause representing the amount that was

36

1    initially explain - explain in detail how he

2    reached that amount.

3              MR. APUZZO:  Note my objection to

4    everything after "no".

5    BY MR. RIGUERA:

6         Q.    All right.

7              So, did you ask Mr. Ballen to explain

8    to you how they arrived at this settlement offer

9    of $903,371.79?

10             MR. APUZZO:  Objection to leading.

11   But --

12             THE WITNESS:  Yes

13   BY MR. RIGUERA:

14        Q.    Okay.

15             What did he tell you in response?

16        A.    That this was the amount that he

17   could offer and he had no further details to

18   give.

19        Q.    Were you satisfied with that

20   explanation?

21        A.    No.  And we did not accept the

22   agreement.

23        Q.    Did Mr. Ballen tell you who came up

24   with the figure that appears on this document?

25        A.    He said that this was - that this was

EXHIBIT

16

37

1    the amount that the insurance companies and the

2    other companies offered and he could not give

3    anymore cents.

4              Q.   Did you ask whether there was any

5    further opportunity to negotiate this figure?

6              A.   He said that we had 30 days to take

7    it or leave it.  If we didn't take it, that the

8    proposal would be considered to be withdrawn.

9              Q.   Did Mr. Ballen -- In the event you

10   decided - you and your clients decided not to

11   accept the offer, did Mr. Ballen indicate whether

12   Speiser, Krause would continue to pursue the

13   claim?

14             MR. APUZZO:  Objection.

15             THE WITNESS:  Not with the claim per

16   se.  But as far as the amount of the proposal, it

17   was take it or leave it.

18   BY MR. RIGUERA:

19             Q.   And during that meeting, did you

20   indicate one way or the other whether your client

21   was going to accept it?

22             A.   My client was there and I was adamant

23   that my client would not accept it.

24             Q.   Following that meeting, did you have

25   any discussion with Renato Guimaraes about the

38

1    settlement proposal?

2         A.    Yes.

3         Q.    And what did you discuss?

4         A.    He said that he would respect the

5    wish of the families.

6         Q.    Did you discuss anything else?

7         A.    No.

8         Q.    Did Mr. Guimaraes have an opinion as

9    to whether the settlement was - should be

10   accepted or not?

11             MR. APUZZO:  Objection.

12             THE WITNESS:  He stated that he

13   believed that the amount was indeed too low and

14   that we should continue fighting for a higher

15   amount.

16   BY MR. RIGUERA:

17        Q.    Did you have any discussions with any

18   of your other colleagues concerning the

19   settlement offers that - that they received on

20   behalf of their clients?

21        A.    Yes, I did.

22        Q.    And who did you speak with?

23        A.    With Dr. Edna, Ferrera, Ribas.  There

24   were some other attorneys also.  I do not recall

25   their names.

39

1       Q.   Did these attorneys have similar

2  meetings with Speiser, Krause to discuss the

3  settlement similar to the one that you - that you

4  had with your clients?

5       A.   On that day Ballen and his son set up

6  meetings with various other families on a

7  successive fashion but on the same day.

8       Q.   Did these meetings occur over - in

9  one day, all of the meetings, or did they occur

10  over a period of several days?

11       A.   No.  They occurred over the period of

12  three days.

13       Q.   When you had discussions with your -

14  with your colleagues concerning the settlements,

15  did you have any discussion as to whether the

16  settlements should be accepted or not?

17       A.   Some of the families who had higher

18  needs believed that the agreements, settlements

19  should be accepted.  Others did not.

20       Q.   When you had - when you had

21  conversations with the other attorneys, were

22  those individual conversations or were there any

23  group meetings?

24       MR. APUZZO:  Objection.

25       THE WITNESS:  Sometimes we would talk

40

1   individually, sometimes in groups, but nobody

2   would actually mention the amount proposed, just

3   the principal in general.  And I am referring to

4   small groups including two or three.

5            Q.    Following the set of meetings that

6   you have described where the settlement proposals

7   were made, did you - did there come a time when

8   there was a disagreement that arose between

9   Renato Guimaraes and Speiser, Krause concerning

10  the settlement?

11           A.    Yes.

12           Q.    How did you learn of that

13  disagreement?

14           A.    Renato Guimaraes himself told me.

15           Q.    What did he tell you concerning this

16  agreement?

17           A.    He mentioned that the amount proposed

18  was much too low and he cited a US case in which

19  the American victim received three million and

20  also another case pertaining to Banco Rural

21  including the Rabelo family in which the amount

22  received was 30 million.

23           Q.    Was that a different case or was that

24  one of the TAM cases?

25           A.    The one in which the victim was an